1    RICHARD B. GOETZ (S.B. #115666)
     rgoetz@omm.com
2    O'MELVENY & MYERS LLP
     400 South Hope Street
3    Los Angeles, CA 90071-2899
     Telephone:   (213) 430-6000
4    Facsimile:   (213) 430-6407

5    MATTHEW D. POWERS (S.B. #212682)
     mpowers@omm.com
6    VICTORIA L. WEATHERFORD (S.B. #267499)
     vweatherford@omm.com
7    O'MELVENY & MYERS LLP
     Two Embarcadero Center, 28th Floor
8    San Francisco, CA 94111-3823
     Telephone:   (415) 984-8700
9    Facsimile:   (415) 984-8701

10   Attorneys for Defendants
     JOHNSON & JOHNSON and JOHNSON &
11   JOHNSON CONSUMER COMPANIES, INC.

12                    UNITED STATES DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15
     MONA ESTRADA, On Behalf of Herself      Case No. 2:14-cv-01051-TLN-KJN
16   and All Others Similarly Situated,
                                             **DEFENDANTS' MOTION TO DISMISS
17                        Plaintiff,         AND/OR STRIKE COMPLAINT;
                                             MEMORANDUM OF POINTS AND
18           v.                              AUTHORITIES IN SUPPORT THEREOF**

19   JOHNSON & JOHNSON and JOHNSON           Hearing Date:   September 11, 2014
     & JOHNSON CONSUMER                      Time:           2:00 p.m.
20   COMPANIES, INC.,                        Judge:          Hon. Troy L. Nunley
                                             Courtroom:      2
21                        Defendants.
                                             Complaint Filed:   April 28, 2014
22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS AND/OR TO STRIKE**
**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 11, 2014, at 2:00 p.m. or as soon thereafter as the matter may be heard, in the United States District Court, Eastern District of California, Sacramento Courthouse, located at 501 I Street, Courtroom 2, before the Honorable Troy L. Nunley, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively, "J&J" or "Defendants") will, and hereby do, move the Court for an order dismissing Plaintiff Mona Estrada ("Estrada")'s Complaint pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and/or 12(f) of the Federal Rules of Civil Procedure.

Specifically, J&J seeks an order (1) dismissing Estrada's entire Complaint because she has not suffered an "injury" for Article III or statutory standing purposes; (2) dismissing Estrada's UCL, CLRA, and negligent misrepresentation claims because she fails to meet the heightened pleading standard of Rule 9(b); (3) dismissing Estrada's negligent misrepresentation claim because she fails to identify any actionable misstatements; (4) dismissing Estrada's implied warranty claim for failure to state a claim and for lack of privity; (5) dismissing and/or striking Estrada's allegations regarding representations on which she did not rely; (6) dismissing and/or striking Estrada's prayer for injunctive relief for lack of standing; and (7) dismissing and/or striking Estrada's class action allegations.

This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other related documents filed in connection with this Motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated:  June 20, 2014

RICHARD B. GOETZ
MATTHEW D. POWERS
VICTORIA L. WEATHERFORD
O'MELVENY & MYERS LLP

By:  /s/ Matthew D. Powers
　　　　Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson
Consumer Companies, Inc.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND FACTS ...................................................................................... 4

III.    LEGAL STANDARDS ......................................................................................... 5

IV.     PLAINTIFF SUFFERED NO INJURY ............................................................... 7

V.      PLAINTIFF'S CLASS DEFINITION SHOULD BE STRICKEN ..................... 9

VI.     PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED UNDER
        RULE 9(B) .......................................................................................................... 11

VII.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND IMPLIED
        WARRANTY CLAIMS FAIL AS A MATTER OF LAW ............................... 14

        A.      Negligent Misrepresentation Requires a "Positive Assertion" ............ 14

        B.      Breach of Implied Warranty.................................................................. 14

                1.      Johnson's Baby Powder Is Not "Unmerchantable" .................... 14

                2.      Plaintiff Lacks Privity ................................................................ 15

VIII.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF .............. 16

IX.     CONCLUSION ................................................................................................... 17

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

# TABLE OF AUTHORITIES

**Page**

## <u>CASES</u>

*Am. Suzuki Motor Corp. v. Superior Court*,
    37 Cal. App. 4th 1291 (1995) ........................................................................... 10, 15

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
    158 Cal. App. 4th 226 (2007 ................................................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................... 2, 6

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988) ...................................................................................... 5

*Baltazar v. Apple, Inc.*,
    No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ....................... 13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 2, 6

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ........................................................................... passim

*Bishop v. Saab Auto. A.B.*,
    No. 95-cv-0721 JGD (JRX), 1996 WL 33150020 (C.D. Cal. Feb. 16, 1996) ........ 10

*Boysen v. Walgreen Co.*,
    No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ............. 2, 8, 9

*Buckland v. Threshold Enters., Ltd.*,
    155 Cal. App. 4th 798 (2007) .................................................................................... 7

*Campion v. Old Republic Home Prot. Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. 2012) .................................................................. 16

*Cent. Delta Water Agency v. United States*,
    306 F.3d 938 (9th Cir. 2002) ..................................................................................... 6

*Cetacean Cmty. v. Bush*,
    386 F.3d 1169 (9th Cir. 2004) .................................................................................... 6

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ............................................................................. 4, 15

*Cohen v. DirecTV, Inc.*,
    178 Cal. App. 4th 966 (2010) .................................................................................. 13

*Crouch v. Johnson & Johnson Consumer Cos.*,
    No. 09-cv-2905 (DMC), 2010 WL 1530152 (D.N.J. Apr. 15, 2010) ....................... 9

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006) .................................................................................. 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Deitz v. Comcast Corp.*,
No. 06-cv-06532 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ............................... 16

4

*Fair v. U.S. EPA*,
795 F.2d 851 (9th Cir. 1986) ................................................................................................. 6

5

6

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ........................ 7

7

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006) ............................................................................................... 16

8

9

*Herrington v. Johnson & Johnson Consumer Cos.*,
No. C 09–1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................. 2, 8, 9

10

*Hicks v. Kaufman & Broad Home Corp.*,
89 Cal. App. 4th 908 (2001) ................................................................................................... 8

11

12

*Hodes v. Van's Int'l Foods*,
No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193 (C.D. Cal.
July 23, 2009) ......................................................................................................................... 11

13

*Hoey v. Sony Elec., Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ................................................................................ 13

14

15

*In re Actimmune Mktg. Litig.*,
614 F. Supp. 2d 1037 (N.D. Cal. 2009) ................................................................................ 12

16

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382-PBG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...................................... 7

17

18

*In re Hulu Privacy Litig.*,
No. 11-CV-3764, [Dkt. No. 211] (N.D. Cal. June 17, 2014) ................................................ 11

19

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) ..................................................................................... 11

20

21

*Johns v. Bayer Corp.*,
No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................ 3, 13

22

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ................................................................................... 6, 7, 12, 13

23

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ................................................................................................ 7, 12, 13

24

25

*Lanovaz v. Twinings N. Am., Inc.*,
No. C–12–02646–RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ................................ 13

26

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ................................................................................................. 7

27

28

*Long v. Graco Children's Prods. Inc.*,
No. 13–cv–01257–WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ............................ 15

1

2

### TABLE OF AUTHORITIES
### (continued)

Page

3

*Lopez v. Nissan N. Am., Inc.*,
   201 Cal. App. 4th 572 (2011) ........................................................................... 4, 14

4

*Lujan v. Defenders of Wildlife*,

5
   504 U.S. 555 (1992) ............................................................................................. 7

6

*Lyons v. Bank of Am., NA*,
   No. C 11–1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ..................... 10

7

*Maxwell v. Unilever U.S., Inc.*,

8
   No. 12-CV-1736, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) ........................... 13

9

*McCrary v. Elations Co.*,
   No. EDCV 13–0242 JGB (OPx), 2013 WL 6403073 (C.D. Cal. July 12, 2013) .............. 3, 13

10

*McGlinchy v. Shell Chem. Co.*,

11
   845 F.2d 802 (9th Cir. 1988) .............................................................................. 6

12

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) ........................................................................... 4, 14

13

*Myers-Armstrong v. Actavis Totowa*,

14
   No. C 08–04741 WHA, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ............................. 8, 9

15

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................. 6, 12

16

*Pence v. Andrus*,
   586 F.2d 733 (9th Cir. 1978) .............................................................................. 7

17

*Princess Cruise Lines, Ltd. v. Superior Court*,

18
   179 Cal. App. 4th 36 (2009) .............................................................................. 12

19

*Red v. Kraft Foods, Inc.*,
   CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12,
   2012) ................................................................................................................. 11

20

*Rivera v. Wyeth-Ayerst Labs.*,

21
   283 F.3d 315 (5th Cir. 2002) .............................................................................. 2, 8, 9

22

*Rule v. Fort Dodge Animal Health, Inc.*,
   607 F.3d 250 (1st Cir. 2010) .............................................................................. 15

23

*Sanders v. Apple Inc.*,

24
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................... 3, 9

25

*Sevidal v. Target Corp.*,
   189 Cal. App. 4th 905 (2010) ........................................................................... 13

26

*Shamsian v. Atl. Richfield Co.*,
   107 Cal. App. 4th 967 (2003) ........................................................................... 14

27

28

1

2

# TABLE OF AUTHORITIES
## (continued)

Page

3

*Soares v. Lorono*,
No. 12-cv-05979-WHO, 2014 U.S. Dist. LEXIS 24674 (N.D. Cal. Feb. 25,
4      2014) ............................................................................................................................ 15

5     *Stephenson v. Neutrogena Corp.*,
No. C 12-0426-PJH, 2012 WL 8527784 (N.D. Cal. July 27, 2012) ...................................... 16

6
*Tietsworth v. Sears, Roebuck & Co.*,
7      720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................................ 10

8     *Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................................ 3, 6, 12, 13

9     *Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) ........................................................................................ 16
10
*Wang v. OCZ Tech. Grp., Inc.*,
11     276 F.R.D. 618 (N.D. Cal. 2011) .................................................................................... 16

12    *Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................................................... 11, 15

13    **STATUTES**

14    Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................................. 5

15    Cal. Bus. & Prof. Code § 17204 .................................................................................... 7, 12

16    Cal. Bus. & Prof. Code § 17208 ...................................................................................... 10

17    Cal. Bus. & Prof. Code § 17535 ........................................................................................ 7

18    Cal. Civ. Code § 1750 *et seq.* ............................................................................................ 5

19    Cal. Civ. Code § 1780 ...................................................................................................... 12

20    Cal. Civ. Code § 1780(a) ................................................................................................... 7

21    Cal. Civ. Code § 1783 ...................................................................................................... 10

22    Cal. Health & Safety Code § 25249.8(b) ............................................................................. 1

23    **RULES**

24    Fed. R. Civ. P. 12(b)(1) ................................................................................................. 6, 7

25    Fed. R. Civ. P. 12(b)(6) .................................................................................................... 5

26    Fed. R. Civ. P. 12(f) ......................................................................................................... 7

Fed. R. Civ. P. 9(b) .............................................................................................. 6, 12, 13

27

28

I.      **INTRODUCTION**

This is a classic "no injury" case.  Plaintiff Mona Estrada ("Estrada") contends that everyone who purchased Johnson's Baby Powder should get their money back because of an alleged health risk that had no impact on the vast majority of class members, including Estrada herself.  Estrada argues that a subset of the product's purchasers—women who regularly used Johnson's Baby Powder in their genital area for years—were allegedly exposed to a risk of ovarian cancer from the talc in that product.  If this case proceeds, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively, "J&J")[1] will prove that Estrada's assertions about those "risks" are completely meritless.[2]  But that is of no moment here because the facts Estrada alleges show that *she* was never harmed.

Estrada's theory of economic injury is that she would not have bought the product if she had known about its alleged risks.  But she has already received all of the benefits she expected when she purchased the product—she bought and consumed it again and again for decades.  And she admits that she never suffered any ill effects whatsoever.  (Compl. ¶ 9 ("Plaintiff is not

---

[1] To be clear, although Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. are collectively referred to as "J&J" herein, Johnson & Johnson Consumer Companies, Inc. manufactured and marketed Johnson's Baby Powder; Johnson & Johnson did not manufacture or market Johnson's Baby Powder.

[2] For purposes of this Motion, the Court must accept as true Estrada's allegation that extended use of talc by adult women in their genital area is associated with a 33% increased risk of ovarian cancer.  (Compl. ¶ 57.)  But none of the studies Estrada cites actually establish a causal relationship between female genital talc use and ovarian cancer, and many of those studies are seriously flawed.  For example: none of the studies were conducted on the actual products at issue; Cramer (1982) and Chen (1992) (*id.* ¶¶ 24, 31) did not account for confounding factors such as age and obesity; and Egi (1961), Cralley (1968), Henderson (1971), Rohl (1976), Cramer (1982), Hartge (1983), Whittemore (1988), Harlow (1989), Cook (1997), Gertig (2000), and Mills (2004) (*id.* ¶¶ 21-24, 26-27, 29, 36, 41-42) included exposures to products with asbestiform talc (J&J's products have been free of asbestiform talc for decades).  The U.S. Food and Drug Administration ("FDA") has not restricted the use of non-asbestiform talc in cosmetics.  *See* http://www.fda.gov/cosmetics/ productsingredients/ingredients/ucm293184.htm.  Non-asbestiform talc (the type of talc used in Johnson & Johnson's products) is also **not** listed as a cancer-causing agent by the American Cancer Society or by California's Office of Environmental Health Hazard Assessment under California's Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986.  *See* Cal. Health & Safety Code § 25249.8(b), www.cancer.org/cancer/cancercauses/othercarcinogens/generalinformationaboutcarcinogens/ known-and-probable-human-carcinogens.  In addition, the Centers for Disease Control and Prevention ("CDC") does not list talc use in their risk factors for ovarian cancer. *See* http://www.cdc.gov/cancer/ovarian/basic_info/risk_factors.htm.

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1  claiming physical harm or seeking the recovery of personal injury damages.").)  In other words,

2  Estrada got what she paid for and never experienced any of the problems she alleges *others* may

3  have developed.  Under these circumstances, Estrada suffered no cognizable injury and lacks

4  standing to bring any claims against J&J.  *See Herrington v. Johnson & Johnson Consumer Cos.*,

5  No. C 09–1597 CW, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010) (rejecting "no injury"

6  economic claims for failure to warn of alleged carcinogens in Johnson's Baby Shampoo ); *Boysen*

7  *v. Walgreen Co.*, No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012)

8  (rejecting "no injury" economic claims for failure to warn of alleged lead and arsenic in fruit

9  juices).  *See also Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-20 (5th Cir. 2002) (rejecting

10  "no injury" economic claims for failure to warn of risks of medication because "[b]y plaintiff's

11  own admission, [she] paid for an effective [product], and she received just that—the benefit of her

12  bargain.").

13       In fact, Estrada's claim that "all" purchasers suffered an economic injury is implausible on

14  its face.[3]  Estrada argues that "[a]ll persons who purchased Johnson's Baby Powder" should get

15  their money back because, she contends, women who apply the product directly to their genital

16  area have an allegedly increased risk.  But talcum powder has dozens of beneficial uses that have

17  nothing to do with that specific use,[4] and Estrada never explains why the elimination of that one

18  particular use would render the product worthless.  At a minimum, Estrada's proposed class

19  allegations should be stricken because her putative class of "all" purchasers includes many

20  individuals who were never even exposed to the alleged risk in the first place: (1) men (who

21  obviously do not have ovaries), and (2) the many women who bought Johnson's Baby Powder for

---

[3] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff's claims must move "across the line from conceivable to plausible.").

[4] For example, talcum powder is commonly used in shoes and on the feet to eliminate moisture and odors, under the arms in addition to or instead of deodorant, on the hands of athletes to prevent slipperiness, on clothing or carpets to absorb grease, on pets as dry shampoo, on sheets to make sleeping more comfortable, on the skin after shaving, on floor boards to silence squeaks, on skin to help remove sticky sand, on sticky rubber products (such as dish gloves) to store and separate, in litter boxes for freshness, etc.  *See, e.g.*, *Brilliant Uses for Baby Powder*, Reader's Digest, www.rd.com/home/brilliant-uses-for-baby-powder (retrieved on June 11, 2014).

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1    uses other than in their genital area.  *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990-91

2    (N.D. Cal. 2009) (striking class allegations where the class "contain[ed] members lacking Article

3    III standing . . . . The class must therefore be defined in such a way that anyone within it would

4    have standing.").

5         Estrada has also not alleged any valid "misrepresentation" claim because she did not

6    personally rely on any "false" statement by J&J.  To be sure, she does allege that she read the

7    label.  (Compl. ¶ 9 ("Prior to making her purchase, Plaintiff read the label for the Baby Powder

8    . . . described herein and above[.]").  But Estrada does not contend that any statements on the

9    label are false.  (*See id*. ¶ 15 ("silky soft skin," "designed to gently absorb excess moisture

10   helping skin feel comfortable," "glides over skin to leave it delicately soft and dry," "clinically

11   proven mildness," and "providing soothing relief")).  Instead, her misrepresentation claims seem

12   to be based on statements on J&J's website.  (*Id.* ¶¶ 16-17.)  Yet Estrada never actually saw (let

13   alone relied on) those statements before she bought the product.  (*See id*. ¶ 9.)  Thus, to the extent

14   Estrada's claims are based on alleged affirmative misrepresentations she never saw, they must be

15   dismissed (or stricken).  *See McCrary v. Elations Co.*, No. EDCV 13–0242 JGB (OPx), 2013 WL

16   6403073, at *7-8 (C.D. Cal. July 12, 2013) (dismissing claims based on statements on

17   defendant's website because plaintiff only relied on product package); *Johns v. Bayer Corp.*, No.

18   09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (plaintiff "cannot

19   expand the scope of his claims to include . . . advertisements relating to a product that he did not

20   rely upon.").

21        Finally, Estrada's Complaint suffers from a number of additional flaws.  First, although

22   Estrada's UCL, CLRA, and negligent misrepresentation claims are all based in fraud, Estrada

23   never explains which of the many statements described in the Complaint she actually read or

24   relied on—other than her statement that she read "the label" which, again, does not contain any

25   statement that Estrada contends is false.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106

26   (9th Cir. 2003) (plaintiff required to plead "the who, what, when, where, and how" of alleged

27   fraudulent representation or omission).  Second, Estrada's negligent misrepresentation claim fails

28   because that claim requires an ***affirmative*** misrepresentation (omissions are not enough) and

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

Estrada does not (and cannot) point to any actionable affirmative statement that she personally relied on. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011) (negligent misrepresentation "requires a positive assertion, not merely an omission"). Third, Estrada's implied warranty claim fails because Estrada lacks privity with J&J, *see Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008), and does not allege any facts to show Johnson's Baby Powder was "unmerchantable" when sold—*i.e.*, that it failed to "possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). Nor can Estrada allege such facts: talcum powder obviously has many beneficial uses that have nothing to do with the risks alleged in this case (*e.g.*, use by men and use by women on the skin, in shoes, under the arms, etc.).

At the end of the day, Estrada received exactly what she bargained for—and she cannot use her contention that others were injured to manufacture an economic loss claim. Her Complaint should be dismissed with prejudice.

## II.   BACKGROUND FACTS

According to her Complaint, Estrada has been buying Johnson's Baby Powder for personal use in her genital area since approximately 1950. (Compl. ¶ 9.) Estrada has not developed ovarian cancer, and does not contend that her use of the product has put her at an increased risk of developing ovarian cancer in the future. (*Id.*) Instead, she contends that she should get her money back because she would not have purchased Johnson's Baby Powder if she had known that (according to Estrada) women who use talc on their genitals "have a 33% increased risk of ovarian cancer." (*Id.* ¶ 3.)

Estrada does not (and cannot) claim that talc is banned by the FDA for use in cosmetics or that Johnson's Baby Powder is misbranded, adulterated, or otherwise fails to comply with any applicable regulations regarding its ingredients or labeling. Instead, Estrada bases her assertions about the alleged health risks of the product on reports that conclude, for example, that there is "limited evidence" genital talc use is a "possible" carcinogen but that do not establish a causal relationship because "chance, bias or confounding could not be ruled out with reasonable confidence." (*Id.* ¶ 60 (quoting a 2006 World Health Organization paper summarizing global

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1    scientific studies on genital talc use).)

2          In her Complaint, Estrada contends that Johnson's Baby Powder is "advertised for use by

3    women," that J&J "encouraged" "use of the product in the genital area," and that J&J "intended

4    for women to use the Baby Powder in the very manner most likely to result in an increased risk of

5    ovarian cancer."  (*Id.* ¶¶ 4, 13, 70-71.)  But Estrada never identifies any such statements by J&J,

6    and does not contend that she actually relied on any such statements (whatever they were) when

7    she bought the product.  (*See id.* ¶ 9 (claiming only that "[p]rior to making her purchase, Plaintiff

8    read the label for the Baby Powder").)  Instead, Estrada asserts that statements on the

9    www.johnsonsbaby.com and www.safetyandcarecommitment.com websites are misleading

10   because (according to Estrada) the products are not "safe."  (*Id.* ¶¶ 16-17 ("Use [Johnson's Baby

11   Powder] anytime you want skin to feel soft, fresh, and comfortable"; the product is "clinically

12   proven to be safe, gentle, and mild").)  But again, Estrada does not contend she ever even saw

13   those statements before filing this lawsuit.

14         Estrada was satisfied with Johnson's Baby Powder—she used it for decades—and never

15   explains what other products she would or could have used in place of Johnson's Baby Powder to

16   obtain the same benefits at a lower price (or without the alleged risk).  Nevertheless, Estrada

17   contends that she has been economically injured because she would not have purchased the

18   product had she "known the truth about" its safety.  (*Id.* ¶ 9.)  Based on those allegations, Estrada

19   asserts claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

20   § 17200 *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et*

21   *seq.*, as well as claims for negligent misrepresentation and breach of implied warranty.  Estrada

22   seeks to certify a nationwide class of "[a]ll persons" who bought "Johnson's Baby Powder in

23   California and in states with laws that do not conflict with the laws asserted here."  (Compl. ¶ 74.)

24   **III.    LEGAL STANDARDS**

25         Motions to dismiss should be granted where, as here, the plaintiff has failed to state any

26   valid claim for relief.  Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack

27   of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

28   theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Accordingly,

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   Estrada's Complaint should be dismissed if it does not "contain sufficient factual matter, accepted

2   as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

3   678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  And while the Court

4   must accept all well-pled ***facts*** as true, the Court need not assume the truth of legal conclusions

5   merely because they are pled in the form of factual allegations.  *Iqbal*, 556 U.S. at 677-79.

6   "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to

7   state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

8        Next, if Plaintiff lacks standing, the action "should be dismissed" under Rule 12(b)(1).

9   *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "A suit brought by a plaintiff

10  without Article III standing is not a "case or controversy," and "an Article III federal court

11  therefore lacks subject matter jurisdiction over the suit." *Id*.  The burden of establishing standing

12  elements "falls upon the party asserting federal jurisdiction." *Cent. Delta Water Agency v. United*

13  *States*, 306 F.3d 938, 947 (9th Cir. 2002).  The standing elements are "not mere pleading

14  requirements" but are an "indispensable part of the plaintiff's case" and "must be supported at

15  each stage of litigation in the same manner as any other essential element of the case." *Id.*  "At an

16  irreducible minimum, Article III requires that the plaintiff show that he has personally suffered

17  some actual or threatened injury as a result of defendant's illegal conduct . . . and that the injury

18  'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable

19  decision.'" *Fair v. U.S. EPA*, 795 F.2d 851, 853 (9th Cir. 1986) (citation omitted).

20        In addition, Estrada's fraud-based CLRA, UCL, and negligent misrepresentation claims

21  must meet the heightened pleading standard of Rule 9(b), which requires Estrada to "state with

22  particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also*

23  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126-27 (9th Cir. 2009) (applying Rule 9(b) standard

24  to allegations of fraud by omission under the UCL and CLRA); *Neilson v. Union Bank of Cal.,*

25  *N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (negligent misrepresentation claims must

26  satisfy Rule 9(b)).  Under Rule 9(b), Estrada must plead the time, place, and content of the

27  alleged false representation or omission—"the who, what, when, where, and how"—as well as

28  facts demonstrating her reliance on the allegedly fraudulent conduct.  *Vess*, 317 F.3d at 1106

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   (citation omitted); *see also Kearns*, 567 F.3d at 1124.

2     Finally, under Rule 12(f), the Court "may strike from a pleading an insufficient defense or

3   any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The

4   function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise

5   from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Fantasy, Inc. v.*

6   *Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration

7   omitted), *rev'd on other grounds*, 510 U.S. 517 (1994).

8   ## IV. <u>PLAINTIFF SUFFERED NO INJURY</u>

9     Estrada's entire Complaint should be dismissed under Rule 12(b)(1) because she has not

10  suffered any cognizable Article III "injury":[5]

11
12    To satisfy Article III, a plaintiff "must show that (1) it has suffered an 'injury
    in fact' that is (a) concrete and particularized and (b) actual or imminent, not
    conjectural or hypothetical; (2) the injury is fairly traceable to the challenged
13  action of the defendant; and (3) it is likely, as opposed to merely speculative, that
    the injury will be redressed by a favorable decision."

14  *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PBG, 2013 WL 6248499, at *3 (N.D.

15  Cal. Dec. 3, 2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  And in

16  class actions, "the named representatives must allege and show that they personally have been

17  injured" in order to sustain a cause of action. *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d

18  1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

19    Here, Estrada expressly alleges that she never suffered any ill effects from using

20  Johnson's Baby Powder—she has no personal injury claim and does not assert any kind of

21  "medical monitoring" claim (*i.e.*, she does ***not*** allege that she still suffers from an increased risk

22
---
23  [5] In addition to Article III standing, a plaintiff must establish statutory standing to bring claims
    under the UCL or CLRA.  *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code
24  § 1780(a).  These statutes require the plaintiff to show that he or she has suffered an "economic
    injury."  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). The economic injury
    requirement is "narrower than federal standing . . . which may be predicated on a broader range of
25  injuries."  *Id.* at 324.  Thus, after the UCL was amended by Proposition 64, statutory standing
    under the UCL is somewhat narrower than Article III standing.  *Buckland v. Threshold Enters.,*
26  *Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (quoting Prop. 64, § 1, subd. (e)).  In this case, Estrada
    lacks statutory standing for substantially the same reasons she lacks Article III standing.  *See*
27  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959-61 & n.4 (9th Cir. 2009) (explaining that "insofar as
    the UCL incorporates Article III's injury in fact requirement, the plaintiffs would lack an Article
28  III injury in fact for the same reasons").

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   even though she no longer uses talc in her genital area).  Instead, she argues that she is entitled to

2   a refund because other talc users (but not her) may have experienced problems.  But "[m]erely

3   asking for money does not establish an injury in fact," and, as the Fifth Circuit explained more

4   than a decade ago, a plaintiff suffers no injury where, "[b]y plaintiff's own admission, [she] paid

5   for an effective [product], and she received just that—the benefit of her bargain." *Rivera*, 283

6   F.3d at 319-20.  Here, Estrada has no economic injury because her own allegations demonstrate

7   that she received all the benefits she expected when she bought and consumed the product—in

8   fact, she continued to buy it for decades—and never suffered from any of the ill effects that she

9   contends may have impacted other consumers.

10         The fact that a product might pose a risk to ***others*** does not grant uninjured purchasers the

11   right to sue.  Accordingly, courts have rejected similar attempts to transform "no injury" claims

12   into consumer protection cases.  *See Herrington*, 2010 WL 3448531, at *5; *Birdsong v. Apple,*

13   *Inc.*, 590 F.3d 955, 959-61 & n.4 (9th Cir. 2009).  In *Herrington*, for example, Judge Claudia

14   Wilken in the Northern District of California rejected economic injury claims brought by a

15   plaintiff who argued that J&J had "failed" to disclose "probable carcinogens" in Johnson's Baby

16   Shampoo.  There, as here, the "consumer good" had been completely "used to the[ ] [plaintiff's]

17   benefit," the named plaintiff suffered no physical injury from exposure to the alleged

18   "carcinogens" in the product, and was not at risk of future harm.  *Herrington*, 2010 WL 3448531,

19   at *4; *see also Boysen*, 2012 U.S. Dist. LEXIS 100528, at *23-24 (no economic harm from

20   purchase of juice containing lead and arsenic where plaintiff had fully consumed juice and

21   experienced no physical injury); *Myers-Armstrong v. Actavis Totowa*, No. C 08–04741 WHA,

22   2009 WL 1082026, at *5 (N.D. Cal. Apr. 22, 2009) ("[A]fter consuming the pills and obtaining

23   their beneficial effect with no downside, the consumer cannot get a refund on the theory that [he

24   would not have purchased the pills had he known they] came from a source of uncertain quality.

25   . . . [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of

26   some real injury to the civil plaintiff."); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th

27   908, 923 (2001) ("Cars and tires have a limited useful life.  At the end of their lives they, and

28   whatever defect they may have contained, wind up on a scrap heap.  If the defect has not

1    manifested itself in that time span, the buyer has received what he bargained for.").  *See also*

2    *Rivera*, 283 F.3d at 319 ("[Defendants] sold [a product]; [Plaintiff] purchased and used [the

3    product]; [Defendants] did not list enough warnings on [the product], and/or [the product] was

4    defective; other patients were injured by [the product]; [Plaintiff] would like her money

5    back.");*Crouch v. Johnson & Johnson Consumer Cos.*, No. 09-cv-2905 (DMC), 2010 WL

6    1530152, at *5 (D.N.J. Apr. 15, 2010) (rejecting "no injury" economic claims for failure to warn

7    of alleged carcinogens in Johnson's Baby Shampoo).

8         The Ninth Circuit reached a similar conclusion in a case involving allegedly defective

9    headphones.  In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), the plaintiffs argued they

10   had suffered an economic injury because (according to the plaintiffs) Apple's earbuds could cause

11   physical injury (hearing loss) if used at high volume for extended periods of time.  But since the

12   *Birdsong* plaintiffs had not actually suffered any hearing loss, the Court rejected their claims.  *Id.*

13   at 959-61 & n.4.  As the Ninth Circuit explained, "[t]he risk of injury the plaintiffs allege is not

14   concrete and particularized *as to themselves*."  *Id.* at 960.

15        Estrada seeks compensation because she bought a product that, although it worked as

16   expected, also allegedly exposed her to a risk—but she never actually suffered any injury from

17   that risk.  Just like the plaintiffs in *Herrington*, *Boysen*, *Myers-Armstrong*, and *Birdsong*, Estrada

18   has received the "benefit of [her] bargain" and has no valid claim of injury—economic or

19   otherwise.  *Herrington*, 2010 WL 3448531, at *1; *Boysen*, 2012 U.S. Dist. LEXIS 100528, at

20   *23-24; *Myers-Armstrong*, 2009 WL 1082026, at *5; *Birdsong*, 590 F.3d at 961.  She thus lacks

21   standing and her entire Complaint should be dismissed with prejudice.

22   **V.     PLAINTIFF'S CLASS DEFINITION SHOULD BE STRICKEN**

23        The Court should strike Estrada's class definition because many—and in all likelihood,

24   most—members of Estrada's proposed class were never even ***exposed*** to the risks Estrada alleges.

25   Courts may strike class allegations at the pleading stage "[w]here the complaint demonstrates that

26   a class action cannot be maintained on the facts alleged."  *Sanders*, 672 F. Supp. 2d at 990-91

27   ("No class may be certified that contains members lacking Article III standing. . . . The class must

28   therefore be defined in such a way that anyone within it would have standing.").  Indeed, many

9

1   courts have "refused to include in the class those purchasers who have suffered no injury, simply

2   because they allege they have purchased a product which 'tends to' cause injury." *Bishop v. Saab*

3   *Auto. A.B.*, No. 95-cv-0721 JGD (JRX), 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996); *see*

4   *also Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299 (1995) (it was error

5   to include in the class those who experienced no injury; "[t]o hold otherwise would, in effect,

6   contemplate indemnity for a potential injury that never, in fact, materialized."); *Lyons v. Bank of*

7   *Am., NA*, No. C 11–1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (striking class

8   allegations that "include[ ] many members who have not been injured"); *Tietsworth v. Sears,*

9   *Roebuck & Co*., 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. 2010) (same).

10      Here, Estrada seeks to represent a class of "[a]ll persons who purchased Johnson's Baby

11   Powder in California and in states with laws that do not conflict with the laws asserted here."

12   (Compl. ¶ 74.)[6]  But the risk that Estrada claims exists is relatively specific—it only applies to

13   adult women who use the product in a particular way and for an extended period of time.  (*Id.* ¶ 3

14   ("Women who used talc-based powders to powder their genital area have a 33% increased risk of

15   ovarian cancer[.]").)  Estrada's proposed class definition necessarily includes consumers who

16   were never even exposed to that alleged risk and thus have no possible claim: men, and women

17   who purchased Johnson's Baby Powder for any use other than directly on their genitals.[7]  Indeed,

18   even if Estrada's economic loss claims were proper here (they are not) the only purchasers who

19   could conceivably assert those claims would be women who bought the product exclusively for

20   use in their genital area and could not put the product to any other beneficial use.  The current

21   class definition is thus extraordinarily overbroad and should be stricken.  *Tietsworth*, 720 F. Supp.

22   2d at 1146-47.

23

24

25

26   [6] Estrada's class definition is also improperly expansive because it includes members who
    purchased Johnson's Baby Powder outside of the three-year statute of limitations period provided
27   by the CLRA or the four-year statute of limitations provided by the UCL.  *See* Cal. Civ. Code
    § 1783; Cal. Bus. & Prof. Code § 17208.

28   [7] *See* fn. 4, *supra*.

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1    These problems with Plaintiff's class definition cannot be solved by amendment.  Even if
2    Plaintiff were to limit her class,[8] there is no administratively feasible way to ascertain which
3    consumers might actually qualify as class members.  Proof of purchase would not establish
4    membership because the product has many uses that have nothing to do with the alleged risk.
5    Instead, the Court would need to determine, on a consumer-by-consumer basis: (1) that the
6    consumer purchased Johnson's Baby Powder (rather than a similar J&J product (such as
7    Johnson's Baby Pure Cornstarch Powder) or other brand of talcum powder); (2) when the product
8    was purchased; (3) the price paid; and (4) the quantity purchased; as well as, for each purchase,
9    (5) that the product was purchased by an adult female or on behalf of an adult female; (6) who
10   used the product on her genitals; (7) and did not put the product to any other use.  Johnson's Baby
11   Powder is purchased over the counter for a few dollars at retail locations throughout the
12   country—J&J obviously has no record of all purchasers, much less a record that could identify
13   the purchasers' sex and reasons for purchase.  As many courts have held, class treatment is not
14   appropriate where the class depends, as would be the case here, on "the vagaries of memory" to
15   prove class membership.[9]

16   ## VI.   PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED UNDER RULE 9(b)

17       Next, Estrada's fraud-based claims should be dismissed because she has failed to explain
18   what, exactly, she actually relied on when she purchased Johnson's Baby Powder.  Estrada must
19   plead and prove actual reliance to succeed on her CLRA, UCL, and negligent misrepresentation

---

[8] *E.g.*, so that the class encompass only those women who purchased Johnson's Baby Powder exclusively for use in their genital area.

[9] *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 617-18 (W.D. Wash. 2003).  *See also, e.g.*, *Red v. Kraft Foods, Inc.*, CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 186948, at *14-16 (C.D. Cal. Apr. 12, 2012) (declining to certify a class that "rel[ies] on [a customer's] own memory of purchasing a small, everyday item"); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089-90 (N.D. Cal. 2011) (rejecting class of "20 pack-years smokers" because attesting to the number of cigarettes smoked over decades is categorically different from swearing that "I have been to Paris"); *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009) (denying class certification when plaintiffs were unlikely to be able to prove the product they "purchased, in what quantity, and for what purpose"); *In re Hulu Privacy Litig.*, No. 11-CV-3764, [Dkt. No. 211] (N.D. Cal. June 17, 2014) (rejecting certification where class membership depended on whether consumers: "log[ged] into Facebook and Hulu from the same browser; [typically] log[ged] out of Facebook; . . . set browser settings to clear cookies; [or] use[d] software to block cookies").

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   claims. *See* Cal. Civ. Code § 1780; Cal. Bus. & Prof. Code § 17204; *Princess Cruise Lines, Ltd.*

2   *v. Superior Court*, 179 Cal. App. 4th 36, 46 (2009) (CLRA); *Kwikset Corp. v. Superior Court*, 51

3   Cal. 4th 310, 326 (2011) (UCL).  And because Estrada's claims are based in fraud, under Rule

4   9(b), "[i]n alleging fraud or mistake, [Estrada] must state with particularity the circumstances

5   constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *see also Neilson*, 290 F. Supp. 2d at 1141

6   ("It is well-established in the Ninth Circuit that both claims for fraud and negligent

7   misrepresentation must meet Rule 9(b)'s particularity requirements.").  Thus, Estrada must plead

8   the time, place, and specific content of the alleged fraudulent representation or omission[10]—"the

9   who, what, when, where, and how"—as well as facts demonstrating her reliance on the alleged

10  "fraud."  *Vess*, 317 F.3d at 1106 (citation omitted); *see also Kearns*, 567 F.3d at 1124.

11       Here, Estrada alleges only that "[p]rior to making her purchase, [she] read the label for the

12  Baby Powder" and "reli[ed] on the label described herein and above."  (Compl. ¶ 9.)  Yet Estrada

13  does not claim that any statements on the label are actually false—if those statements are at issue

14  in this lawsuit she must identify them and make clear which of them (if any) she actually relied

15  on.  If Estrada's claims are based entirely on an alleged omission, then Estrada should make that

16  clear and explain what, exactly, she contends should have been included on the label.  But that

17  does not appear to be the case: Estrada spends a fair portion of her Complaint alleging that

18  Johnson's Baby Powder is "advertised for use by women" (although she never identifies any such

19  advertisements) and repeatedly refers to "historical" advertising and labels that, according to

20  Estrada, "encouraged women to dust themselves with the Baby Powder daily to mask odors," and

21  "encouraged" the female genital use of the product.  (*Id.* ¶¶ 13, 14, 15-17, 70-71.)  But Estrada

22  never identifies those "encouraging" statements, she never explains *which* specific statements (if

23  any) that she personally either saw or heard, *when* or *where* she saw or heard them, or *which* (if

24  any) statements induced her to purchase the product.  *See In re Actimmune Mktg. Litig.*, 614 F.

25  Supp. 2d 1037, 1051-52 (N.D. Cal. 2009); *accord Baltazar v. Apple, Inc.*, No. CV-10-3231-JF,

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [10] As explained in Section VII.A., *infra*, Estrada cannot bring a negligent misrepresentation claim
    for an omission or for statements that are merely misleading.  Rather, she must point to an

28  affirmatively false statement.

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011) ("Plaintiffs must identify the particular

2   commercial or advertisement upon which they relied and must describe with the requisite

3   specificity the content of that particular commercial or advertisement."); *Cohen v. DirecTV, Inc.*,

4   178 Cal. App. 4th 966, 978-79 (2010) (plaintiff must allege that he was exposed to a specific

5   deceptive representation); *see also Kearns*, 567 F.3d at 1126 (applying Rule 9(b) to dismiss UCL

6   claims where plaintiff failed to specify "what the television advertisements or other sales material

7   specifically stated . . . when [plaintiff] was exposed to them or which ones he found material . . .

8   [and] which sales material he relied upon in making his decision to buy").

9        Since Estrada's allegations fall far short of pleading reliance with the specificity required

10   by Rule 9(b), her fraud-based UCL,[11] CLRA, and negligent misrepresentation claims should be

11   dismissed.  *See Maxwell v. Unilever U.S., Inc.*, No. 12-CV-1736, 2013 WL 1435232, at *4 (N.D.

12   Cal. Apr. 9, 2013) (complaint did not "provide an unambiguous account of the 'time, place, and

13   specific content of the false representations.'"); *Vess*, 317 F.3d at 1106 ("The plaintiff must set

14   forth what is false or misleading about a statement, and why it is false."); *Kwikset*, 51 Cal. 4th at

15   326; *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928-29 (2010).[12]

16

17

18

19

---

20   [11] Estrada's allegations under the "unlawful" prong of the UCL are also defective because she has
     not pled (and cannot plead) that J&J's conduct was "unlawful."  Because Estrada cannot identify

21   a single law that J&J has supposedly violated, her claims under the "unlawful" prong fail.
     *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006) (because the court

22   rejected Daugherty's claims under the CLRA, he "cannot state a violation of the UCL under the
     'unlawful' prong predicated on a violation of either statute, as there were no violations"); *Hoey v.*

23   *Sony Elec., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (UCL claims predicated on other
     claims that were not adequately pled must be dismissed).

24   [12] In addition, her claims should be dismissed to the extent that Estrada is attempting to base them
     on statements that she never actually saw—and the applicable statements should be stricken from

25   the Complaint.  *Lanovaz v. Twinings N. Am., Inc.*, No. C–12–02646–RMW, 2013 WL 675929, at
     *1-2 (N.D. Cal. Feb. 25, 2013) (striking as "immaterial" claims based on labels plaintiff did not

26   read and rely on); *Johns*, 2010 WL 476688, at *5 (holding that plaintiff "cannot expand the scope
     of his claims to include . . . advertisements relating to a product that he did not rely upon");

27   *McCrary*, 2013 WL 6403073, at *7-8 (dismissing claims referring to representations on
     defendant's website for lack of standing, where plaintiff admitted he only relied on product

28   packaging).

DEFENDANTS' MOTION TO DISMISS
                                                       AND/OR STRIKE COMPLAINT
                                                       NO. 2:14-CV-1051-TLN-KJN

**VII.    PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND IMPLIED
WARRANTY CLAIMS FAIL AS A MATTER OF LAW**

**A.    Negligent Misrepresentation Requires a "Positive Assertion"**

Under California law, to state a claim for negligent misrepresentation, Estrada must point to a "positive assertion" that she saw and relied upon—"omissions" are insufficient as a matter of law. *Lopez*, 201 Cal. App. 4th at 596 ("carefully worded" report that may have been misleading, but was not actually false, could not support a negligent misrepresentation claim); *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983-84 (2003); *Lopez*, 201 Cal. App. 4th at 596; *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).  But here, Estrada claims only to have seen and relied on the product's label and does not claim any of the statements on the product label are actually false.  (*See* Compl. ¶¶ 9, 15.)  Instead, her claims appear to be based on an "omission"—namely, that J&J should have affirmatively disclosed some type of information about the "risk" Estrada alleges.  Her negligent misrepresentation claim therefore fails as a matter of law. *Apollo Capital*, 158 Cal. App. 4th at 243.

**B.    Breach of Implied Warranty**

**1.    Johnson's Baby Powder Is Not "Unmerchantable"**

To assert claims for breach of the implied warranty of merchantability, Estrada must allege facts showing that Johnson's Baby Powder failed to "possess even the most basic degree of fitness for ordinary use" such that it was "unmerchantable" when it was sold. *Mocek*, 114 Cal. App. 4th at 406.  Yet Estrada admits that the "intended use" of Johnson's Baby Powder is "to be used as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture . . . ."  (Compl. ¶ 110.)  While Estrada may have chosen to use the product in a particular way that she contends is unsafe, she ***does not*** claim that Johnson's Baby Powder failed to perform as promised or that the product has no beneficial use—as is set out above (*see* fn. 4, *supra*), consumers use Johnson's Baby Powder and other talc-based products in a multitude of ways that have nothing to do with the allegedly risky behavior identified in Estrada's Complaint.

As multiple courts have held, the fact that a risk could be associated with a particular use of a product does not make that product unmerchantable. *Birdsong*, 590 F.3d at 958-59; *Am.*

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

1   *Suzuki*, 37 Cal. App. 4th at 1297-98 (rejecting plaintiffs' argument that "the test of

2   merchantability is . . . whether [the product] is free of all speculative risks, safety-related or

3   otherwise" and holding that a product is not unmerchantable where "a small percentage" had

4   safety issues but "the vast majority . . . did what they were supposed to do for as long as they

5   were supposed to do it.") (internal quotation marks and citation omitted); *see also Rule v. Fort*

6   *Dodge Animal Health, Inc*., 607 F.3d 250, 252 (1st Cir. 2010) ("Recovery generally is not

7   available under the warranty of merchantability where the defect that made the product unfit

8   caused no injury to the claimant . . . ."). Here, Estrada does not claim that she did not get full

9   ordinary use from the product, or that she is "substantially certain to suffer inevitable" physical

10  injury from the product. *Birdsong*, 590 F.3d at 959. Since Estrada has failed to allege that

11  Johnson's Baby Powder "lacks any minimum level of quality," her implied warranty claim should

12  be dismissed. *See id.* at 958.

### 2.      Plaintiff Lacks Privity

14          Estrada's implied warranty claim should also be dismissed because Estrada does not claim

15  to have purchased Johnson's Baby Powder directly from J&J. As the Ninth Circuit recognized in

16  *Clemens v. DaimlerChrysler Corp*, under California law a "plaintiff asserting breach of warranty

17  claims must stand in vertical contractual privity with the defendant . . . ." 534 F.3d at 1023. And

18  while some "federal district court judges erroneously have inferred a third-party [beneficiary]

19  exception to California's privity rule . . . [n]o reported California decision has held that the

20  purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-

21  party beneficiary of the distribution agreements linking the manufacturer to the retailer who

22  ultimately made the sale." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083-84

23  (N.D. Cal. 2011); s*ee also, e.g.*, *Soares v. Lorono*, No. 12-cv-05979-WHO, 2014 U.S. Dist.

24  LEXIS 24674, at *14 (N.D. Cal. Feb. 25, 2014) (dismissing implied warranty claim for lack of

25  privity); *Long v. Graco Children's Prods. Inc.*, No. 13–cv–01257–WHO, 2013 WL 4655763, at

26  *12 (N.D. Cal. Aug. 26, 2013) (following *Clemens* and declining to recognize a third-party

27  beneficiary exception to privity rule under California law).

28

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

## VIII.   PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF

Finally, Estrada's request for injunctive relief—including her demand that this Court "enjoin[ ] Defendant[s] from continuing the unlawful practices as set forth herein"—fails because she has not alleged (and could not credibly allege) that she is personally threatened by any repetition of the injury she claims to have suffered.  To seek injunctive relief in federal court, Estrada must demonstrate that she is "realistically threatened by a repetition of [the violation]." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citations and emphasis omitted).

But here, Estrada is already personally aware of the alleged increased risk of ovarian cancer through personal genital use.  She thus cannot possibly be deceived by any alleged misstatements or omissions about the risk in the future.  Because she cannot be personally threatened by the conduct she seeks to enjoin, she lacks standing to pursue claims for injunctive relief.  *See, e.g.*, *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff was no longer an employee and there was "no indication . . . that [plaintiff] has any interest in returning to work," so she "would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work"); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149 (S.D. Cal. 2012) (plaintiff who did not intend to purchase another warranty plan lacked standing because "Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect to Plaintiff's claim for injunctive relief, is not satisfied."); *Stephenson v. Neutrogena Corp.*, No. C 12-0426-PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (striking prayer for injunctive relief where plaintiff did not allege that she would purchase products in the future).  Consequently, Estrada's claims for injunctive relief should be stricken and/or dismissed.[13]

---

[13] Estrada's failure to allege facts sufficient to support her individual claim for injunctive relief likewise dooms her prayer for injunctive relief on behalf of the class.  *Deitz v. Comcast Corp.*, No. 06-cv-06532 WHA, 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21, 2006) (class averments did not cure the defect in plaintiff's complaint because "[u]nless the named plaintiff is himself entitled to seek injunctive relief, he 'may not represent a class seeking that relief.'") (internal citations omitted); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011) ("Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.").

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

## IX.   <u>CONCLUSION</u>

As discussed above, Estrada lacks Article III standing and her claims all fail as a matter of law.  Accordingly, J&J requests that the Court dismiss the entire Complaint—or, in the alternative, strike Estrada's request for injunctive relief, her overly broad proposed class definition, and her allegations related to statements that she never saw or relied on.

Dated:  June 20, 2014

RICHARD B. GOETZ
MATTHEW D. POWERS
O'MELVENY & MYERS LLP

By:  /s/ Matthew D. Powers
        Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson
Consumer Companies, Inc.

DEFENDANTS' MOTION TO DISMISS
AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN