BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III (*pro hac vice*)
LANCE C. GOULD (*pro hac vice*)
ALISON DOUILLARD HAWTHORNE (*pro hac vice*)
272 Commerce Street
Post Office Box 4160
Montgomery, AL  36103
Tel: 334/269-2343
224/954-7555 (fax)
Dee.Miles@BeasleyAllen.com
Lance.Gould@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com

THE SMITH LAW FIRM
ALLEN SMITH, JR.
618 Towne Center Blvd., Suite B
Ridgeland, MS 39157
Tel: 601/952-1422
601/952-1426 (fax)
allen@smith-law.org

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| MONA ESTRADA, On Behalf of Herself and All Others Similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>Defendants. | Case No.:   2:14-cv-01051-TLN-KJN<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**<br><br>Date:          September 11, 2014<br>Time:          2:00 p.m.<br>Courtroom: 2, 15th Floor<br>Judge:         Hon. Troy L. Nunley |

BLOOD HURST & O'REARDON, LLP

00075407

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................. 2

    A.    Defendants Market Their Baby Powder as Safe for Use by Women................... 2

    B.    Defendants Knew of the Increased Risk of Ovarian Cancer from Using
Their Baby Powder ........................................................................................... 4

    C.    Defendants Failed to Warn Consumers About the Risks of Using Their
Baby Powder ..................................................................................................... 6

III.  LEGAL STANDARDS ....................................................................................... 6

IV.   DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED ............................ 6

    A.    Plaintiff Suffered Economic Injury ................................................................. 6

    B.    The Class Allegations Should Not Be Stricken ................................................ 10

    C.    Plaintiff's Fraud Claim Satisfies Rule 9(b)....................................................... 12

    D.    Plaintiff's Negligent Representation Claim Is Properly Pled ........................... 14

    E.    Plaintiff's Breach of Implied Warranty Claim Is Properly Pled ...................... 15

        1.    Plaintiff Alleged the Baby Powder Was Unmerchantable ................... 15

        2.    Privity Is Not Required ........................................................................ 17

    F.    Plaintiff Does Not Lack Standing to Seek Injunctive Relief ........................... 18

V.    CONCLUSION ................................................................................................... 20

BLOOD HURST & O'REARDON, LLP

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

00075407

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Suzuki Motor Corp. v. Superior Court*,
37 Cal. App. 4th 1291 (1995)............................................................................. 17

*Arnold v. Dow Chem. Co.*,
91 Cal. App. 4th 698 (2001)............................................................................... 18

*Avedisian v. Mercedes-Benz USA, LLC*,
No. CV 12-00936, 2013 U.S. Dist. LEXIS 73444 (C.D. Cal. May 22, 2013).................... 14

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007)........................................................................ 7, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................... 6

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009).......................................................................... 9, 16

*Boysen v. Walgreen Co.*,
No. C 11-06262, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ................. 9, 10

*Cabral v. Supple, LLC*,
No. 12-00085, 2012 U.S. Dist. LEXIS 137365 (C.D. Cal. Sept. 19, 2012)........................ 19

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ................................................................ 9

*Chamberlan v. Ford Motor Co.*,
369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................................. 14

*Chavez v. Blue Sky Natural Beverage Co.*,
340 Fed. App'x 359 (9th Cir. 2009).................................................................... 9

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ..................................................................................... 6

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)........................................................................... 18

*In re Clorox Consumer Litig.*,
894 F. Supp. 2d 1224 (N.D. Cal. 2012) ............................................................. 18

*Contreras v. Johnson & Johnson Consumer Cos., Inc.*,
No. CV 12-7099, 2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012) ................. 19

*Daar v. Yellow Cab*,
67 Cal. 2d 695 (1967) ..................................................................................... 12

BLOOD HURST & O'REARDON, LLP

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006).................................................................. 7

*de Jesus Ortego Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012).................................................................. 20

*Decker v. Mazda Motor of Am., Inc.*,
    No. SACV 11-0873, 2011 U.S. Dist. LEXIS 124182 (C.D. Cal. Oct. 24, 2011) ................. 7

*Fitzpatrick v. Gen. Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011)................................................................ 12

*Garrison v. Whole Foods Mkt. Group, Inc.*,
    No. 13-cv-05222, 2014 U.S. Dist. LEXIS 75271 (N.D. Cal. June 2, 2014) .................. 7, 10

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
    82 Cal. App. 3d 65 (1978)...................................................................... 17

*Hearns v. Terhune*,
    413 F.3d 1036 (9th Cir. 2005).................................................................. 6

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) ................. 19, 20

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. C 09-1597, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010).................... 9

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013).................................................................. 14

*In the Matter of: IKO Roofing Shingle Prods. Liab. Litig.*,
    No. 14-1532, 2014 U.S. App. LEXIS 12684 (7th Cir. July 2, 2014).................................. 11

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007)................................................................... 15

*Ivie v. Kraft Foods Global, Inc.*,
    No. C-12-02554, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013) ...................... 9

*Johns v. Bayer Corp.*,
    No. 09cv1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010)...................... 12, 13

*Jones v. Conagra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ...................................................... 8

*Kane v. Chobani*,
    973 F. Supp. 2d 1120 (N.D. Cal. 2014) ................................................ 7, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)................................................................ 12, 13

BLOOD HURST & O'REARDON, LLP

*Keegan v. Am. Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012)................................................................. 15

*Khasin v. Hershey Co.*,
    No. 12-CV-01862 EJD, 2012 U.S. Dist. LEXIS 161300 (N.D. Cal. Nov. 9, 2012).............. 8

*Koehler v. Litehouse, Inc.*,
    No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012)............. 19

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .................................................................................... 11

*Kosta v. Del Monte Corp.*,
    12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319 (N.D. Cal. May 15, 2013) ................ 8, 9

*Lanovaz v. Twinings N. Am., Inc.*,
    No. 12-02646-RMW, 2013 U.S. Dist. LEXIS 25612 (N.D. Cal. Feb. 25, 2013) ................ 8

*Larsen v. Trader Joe's Co.*,
    No. C 11-05188 SI, 2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012)................ 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 6

*Mass. Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (2002).............................................................................. 13

*Mathison v. Bumbo*,
    No. SA CV08-0369, 2008 U.S. Dist. LEXIS 108511 (C.D. Cal. Aug. 18, 2008) ............... 8

*In re Mattel*,
    588 F. Supp. 2d at 1118 .................................................................................. 8, 13

*McCrary v. Elations Co. LLC*,
    No. 13-00242, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ........................... 12

*Meaunrit v. ConAgra Foods, Inc.*,
    No. C 09-02220, 2010 U.S. Dist. LEXIS 73599 (N.D. Cal. July 20, 2010) ........................ 7

*Moreno v. Autozone, Inc.*,
    251 F.R.D. 417 (N.D. Cal. 2008) ........................................................................ 11

*Myers-Armstrong v. Actavis Totowa*,
    No. C 08-04741, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009) ........................ 9

*Newcal Industries, Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008).............................................................................. 6

*Ries v. Arizona Beverage USA LLC*,
    No. 10-01139, 2012 U.S. Dist. LEXIS 169853 (N.D. Cal. Nov. 27, 2012) ................ 19, 20

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*Roberts v. Electrolux Home Prods.*,
　No. CV 12-1644 CAS, 2013 U.S. Dist. LEXIS 185488 (C.D. Cal. Mar. 4, 2013)........ 15, 16

*Rule v. Fort Dodge Animal Health, Inc.*,
　607 F.3d 250 (1st Cir. 2010) ................................................................................. 17

*Sanchez v. Wal-Mart Stores, Inc.*,
　No. 2:06-cv-2573, 2008 U.S. Dist. LEXIS 70468 (E.D. Cal. Aug. 5, 2008)........................ 8

*Shin v. BMW of North America*,
　No. 09-00398, 2009 U.S. Dist. LEXIS 67994 (C.D. Cal. July 16, 2009) ........................... 12

*In re Tobacco II Cases*,
　46 Cal. 4th 298 (2009) ........................................................................... 9, 13, 14

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices &Prods. Liab. Litig.*,
　890 F. Supp. 2d 1210 (C.D. Cal. 2011)....................................................... 17, 18

*Vess v. Ciba-Geigy Corp.*,
　317 F.3d 1097 (9th Cir. 2003)................................................................. 12

*Vietnam Veterans of Am. v. CIA*,
　288 F.R.D. 192 (N.D. Cal. 2012) ........................................................... 20

*Werderbaugh v. Blue Diamond Growers*,
　No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ...................... 11

*Williams v. Geber Prods. Co.*,
　552 F.3d 934 (9th Cir. 2008)..................................................................... 6

*Windham at Carmel Mountain Ranch Assn. v. Superior Court*,
　109 Cal. App. 4th 1162 (2003).................................................................. 18

*Young v. Nationwide Mut. Ins. Co.*,
　693 F.3d 532 (6th Cir. 2012)..................................................................... 11

**Statutes and Rules**

Cal. Bus. & Prof. Code §17200 *et seq.* ............................................................. *passim*

Cal. Bus. & Prof. Code §17203 ....................................................................... 11

Cal. Civ. Code §1750................................................................................. 1, 11, 12

Cal. Civ. Code §1780(a)............................................................................... 11

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)................................................................................. 6

Fed. R. Civ. P. 23 ....................................................................................... 11

Case No. 2:14-cv-01051-TLN-KJN

00075407

1

**Other Authorities**

2

*Manual for Complex Litigation* §21.222 (4th ed. 2004) ............................................................ 11

3

1 Rubenstein, *Newberg on Class Actions*, (5th ed. 2013) ......................................................... 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00075407

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

1    Plaintiff respectfully submits this memorandum in opposition to Defendants' Johnson

2    & Johnson and Johnson & Johnson Consumer Companies, Inc. (together "Johnson &

3    Johnson") Motion to Dismiss and/or Strike Complaint ("Motion").

4    **I.   INTRODUCTION**

5    For decades, Defendants have marketed their Johnson's Baby Powder ("Baby

6    Powder") for use by women to eliminate friction on the skin, absorb unwanted excess

7    moisture, and maintain freshness.  Defendants have encouraged women, like Plaintiff, to use

8    the Baby Powder daily for these purposes.  The problem is that Defendants' Baby Powder is

9    made almost entirely of talc.  Talcum powder is a carcinogen that when used repeatedly

10   generally around the genital area leads to a significant increased risk of ovarian cancer.

11   Although Defendants have known of these safety risks, they failed to inform Plaintiff or any

12   other class member of them.  Meanwhile, they have branded the Baby Powder as entirely safe,

13   including leveraging their reputation as a reputable company in doing so, allowing them to

14   charge a premium for a dangerous product.

15   Defendants' Motion focuses almost entirely on injury.  According to Defendants,

16   Plaintiff and the vast majority of class members were not injured because they were never

17   diagnosed with ovarian cancer or otherwise physically injured by the Baby Powder.

18   Defendants miss the point.  This is a consumer protection action for overpayment of a falsely

19   branded product – not a personal injury action.  Injury under Article III, the Unfair

20   Competition Law ("UCL"), and the Consumers Legal Remedies Act ("CLRA") is satisfied by

21   allegations that Plaintiff would not have purchased the product had it been accurately labeled.

22   That is precisely what Plaintiff alleges.  Similarly, all consumers who purchased the Baby

23   Powder were injured at the time of purchase, regardless of whether they used the product for a

24   specific purpose or used the product at all, because Defendants were able to sell the Baby

25   Powder at an inflated price by concealing the Baby Powder's known safety risks.

26   Accordingly, Plaintiff and everyone who purchased the Baby Powder were injured at the time

27   they purchased the product.  Defendants' Motion on this basis should be denied.

28

BLOOD HURST & O'REARDON, LLP

1

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

1    Additionally, although Plaintiff is not required to satisfy Rule 9(b) for claims not

2    sounding in fraud, she nonetheless satisfies it by alleging that Plaintiff relied on Defendants'

3    omissions and misrepresentations regarding the safety of the Baby Powder.   Plaintiff

4    specifically identifies the safety risks associated with the Baby Powder, Defendants'

5    knowledge of those safety risks, Defendants' representations on the Baby Powder label

6    regarding use and safety, and Defendants' failure to inform Plaintiff and other consumers of

7    the increased risk of ovarian cancer.  This is sufficient under Rule 9(b).  For the same reasons,

8    Plaintiff adequately alleges a claim for negligent misrepresentation.

9    Plaintiff also sufficiently alleges a claim for breach of implied warranty because she

10   alleges the Baby Powder was not merchantable since it is associated with a significant

11   increased risk of ovarian cancer if used as intended.  Privity with Defendants is not required

12   because Plaintiff is the intended third-party beneficiary of the product manufactured by

13   Defendants, Plaintiff relied on product labels and branding that the product was safe, as

14   established by Defendants, and the Baby Powder is a product that was intended for personal

15   use on the body.

16   Finally, Plaintiff does not lack standing to pursue injunctive relief to require

17   Defendants to adequately inform consumers of the safety risks of using the Baby Powder.

18   Holding otherwise would gut the primary purpose of the consumer protection statutes to

19   provide injunctive relief.

20   Defendants' Motion should be denied.

21   **II.    STATEMENT OF FACTS**

22   **A.    Defendants Market Their Baby Powder as Safe for Use by Women**

23   Since 1893, when the product was first developed, Defendants have consistently

24   marketed the Baby Powder for use by women to eliminate friction on the skin, absorb

25   unwanted excess moisture, and maintain freshness.  ¶¶12, 13.[1]  Historically, the Baby Powder

26   label and advertising encouraged women to dust themselves with the Baby Powder daily to

27   mask odors.  ¶13.  Although the labels themselves have changed over time, the message has

28

---

[1]    All "¶" references are to the Class Action Complaint, Doc. 1.

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

BLOOD HURST & O'REARDON, LLP

00075407

1  always been the same: the Baby Powder is safe for use on women as well as babies.  ¶14.

2  The Baby Powder's current label states: "Johnson's Baby Powder is designed to gently

3  absorb excess moisture helping skin feel comfortable.  Our incredibly soft, hypoallergenic,

4  dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and

5  dry while providing smooth relief."  *Id.*  The label further instructs consumers to "Shake

6  powder directly onto your hand, away from the face, before smoothing onto the skin."  *Id.*

7  Other marketing, including defendants' website, encourages women to use the product daily.

8  ¶16.  Under a heading "When to Use," Defendants recommend consumers "Use anytime you

9  want skin to feel soft, fresh and comfortable.  For baby, use after every bath and diaper

10  change."  *Id.*  Like the label, Defendants' website similarly states that the Baby Powder "keeps

11  skin soft, fresh and comfortable.  It's a classic.  Johnson's Baby Powder helps eliminate

12  friction while keeping skin cool and comfortable."  *Id.*

13  Defendants seek to convey an image as a safe and trusted family brand.  ¶17.  On their

14  website for the Baby Powder, Defendants state that the product is "Clinically proven to be

15  safe, gentle and mild."  ¶16.  Additionally, Defendants' website,

16  www.safetyandcarecommittment.com, is devoted to "Our Safety & Care Commitment."  ¶17.

17  According to Defendants, "safety is our legacy" and "[y]ou have our commitment that every

18  beauty and baby care product from the Johnson & Johnson Family of Consumer Companies is

19  safe and effective when used as directed."  *Id.*  Defendants market a "Five-Level Safety

20  Assurance Process" that they describe as "one of the most thorough and rigorous product

21  testing processes in our industry – to ensure safety and quality of every single product we

22  make."  *Id.*

23  The problem is that the Baby Powder is made up almost entirely of talc.  ¶18.  Since at

24  least 1982, Defendants were aware of studies that demonstrated that women who use talc-

25  based powder in the genital area had a significant increased risk of ovarian cancer.  However,

26  nowhere on the product labeling or in any marketing do Defendants warn of the increased risk

27  of ovarian cancer linked to the use of the Baby Powder.  *Id.*

28

BLOOD HURST & O'REARDON, LLP

From about 1950 to sometime in 2013, Plaintiff purchased the Baby Powder for personal use in the genital area.  ¶9.  Prior to making her purchases, Plaintiff read the label for the Baby Powder and relied on it in making her purchase.  *Id.*  Plaintiff purchased the product believing that it was safe to use on any external area of her body.  *Id.*  Had plaintiff known the truth about the safety of using the Baby Powder, she would not have purchased it.  *Id.*

**B.      Defendants Knew of the Increased Risk of Ovarian Cancer from Using Their Baby Powder**

Defendants have known for decades of the scientific link between the use of talc and the increased risk of ovarian cancer.  There have been numerous studies by renowned doctors, scientists, and clinicians throughout the world that have concluded there is an elevated risk of ovarian cancer with genital talc use.  ¶¶21-57.  Since at least the 1960s, doctors and scientists have worked with thousands of women researching the effects of genital area talc use and have continuously found clear evidence of a significant association between the use of talc and ovarian cancer.  ¶21.  Among these renowned doctors and scientists are highly recognized and respected individuals such as Dr. Daniel Cramer and Dr. Bernard Harlow from Harvard Medical School at Brigham and Women's Hospital, Dr. Stella Chang and Dr. Harvey Risch from Yale University School of Medicine, Dr. Karin Rosenblatt from Johns Hopkins, and many more qualified clinicians associated with organizations such as the Cancer Prevention Coalition ("CPC"), the National Toxicology Program, the National Institute of Environmental Health Sciences, the National Cancer Institute, the American Cancer Society, and the International Association for the Research of Cancer ("IARC").  All of these studies showed a statistically significant increased risk of ovarian cancer related to the use of talcum powders – in some cases, the risk of ovarian cancer was found to be up to three hundred percent.  ¶50.

These various studies not only confirmed a statistically significant increased risk of ovarian cancer in women using talc-based body powders on their perineum, but they also concluded that such findings warrant the need for formal public health warnings.  ¶¶39, 50.  Certain studies specifically concluded that Defendants should place warnings on their company's talc-based body powders regarding the increased risk of ovarian cancer.  ¶¶24, 64.

The studies additionally emphasized the need for physicians to advise patients to discontinue any use of talc in the genital area and further indicated that adequate alternatives to talc exist, such as cornstarch, which has no association with ovarian cancer. ¶¶37, 42, 45, 50.

Defendants even admitted to being aware of a study that concluded women were three times more likely to contract ovarian cancer after daily use of talcum powder in the genital area. ¶63. In fact, soon after this study was published in 1982, its author, Dr. Cramer, was visited by Dr. Bruce Semple from Johnson & Johnson, whereby Dr. Cramer advised Dr. Semple to place a warning on his company's talc-based products cautioning consumers of the increased risk of ovarian cancer. ¶24. Similarly, in 1994, the CPC mailed a letter to Defendants' C.E.O informing the company that studies as far back as the 1960s show conclusively that the frequent use of talcum powder in the genital area poses a serious risk of ovarian cancer. ¶64. The CPC advised Defendants that distinguished experts were discouraging the use of talc in the female genital area. *Id.* The CPC specifically requested that Defendants either withdraw their talc-based products from the market due to the existence of cornstarch alternatives, or at a minimum, place warning information on the talc-based products informing consumers of the risk of ovarian cancer they pose. *Id.*

In 1997, Defendants retained their own toxicology expert who specifically addressed the many studies that prove a statistically significant association between talc use and ovarian cancer. ¶65. Defendants' toxicology expert advised Defendants that on three separate occasions, the Talc Interested Party Task Force ("TIPTF") of the Cosmetic, Toiletry, and Fragrance Association ("CTFA"), which included Defendants, had in fact released false information to the public concerning the safety of talc. *Id.*

Defendants' talc supplier even warned and advised Defendants of the dangers associated with their talc-based products. ¶66. In 2002, Defendants' talc supplier, Imerys, starting placing warnings on the Material Safety Data Sheets that were included in the talc shipments sent directly to Defendants. *Id.* These warnings included information such as IARC's classification of talc as a Group 2B possible human carcinogen, Canada's D2A classification of talc as "very toxic" and a "cancer causing." Defendants admit to receiving

1    these warnings, yet did nothing.  *Id.*

2    **C.    Defendants Failed to Warn Consumers About the Risks of Using Their
3              Baby Powder**

4    Despite the overwhelming scientific and medical evidence regarding talc use and

5    ovarian cancer, Defendants failed to warn consumers of these risks.  ¶69.  The only warnings

6    on the Baby Powder label are to "Keep powder away from child's face to avoid inhalation,

7    which can cause breathing problems," and to "[a]void contact with eyes."  *Id.*  None of

8    Defendants' warnings on the product label or in their marketing materials informed Plaintiff or

9    other Class members that use of the product in the genital area, as was encouraged by

10   Defendants, could lead to an increased risk of ovarian cancer.  *Id.*  Instead, Defendants

11   continue to represent that the Baby Powder is safe for use by women.  *Id.*

12   **III.    LEGAL STANDARDS**

13   A complaint need not contain detailed factual allegations; rather, it must plead "enough

14   facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

15   U.S. 544, 570 (2007).  A court may only rule on questions of law, and must "accept as true all

16   facts alleged in the complaint, and … draw all reasonable inferences in favor of Plaintiffs …."

17   *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).

18   "[T]he motion [to dismiss] is not a procedure for resolving a contest between the parties about

19   the facts or the substantive merits of the plaintiff's case."  *Williams v. Geber Prods. Co.*, 552

20   F.3d 934, 938 (9th Cir. 2008).  "A complaint should not be dismissed unless it appears beyond

21   doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the

22   plaintiff to relief."  *Hearns v. Terhune*, 413 F.3d 1036, 1043 (9th Cir. 2005).  Only under

23   "extraordinary" circumstances is Rule 12(b)(6) dismissal proper.  *Williams*, 552 F.3d at 939.

24   **IV.    DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED**

25   **A.    Plaintiff Suffered Economic Injury**

26   The Article III standing requirements are satisfied at the pleading stage by general

27   factual allegations of injury resulting from the defendant's conduct.  *See Clapper v. Amnesty*

28   *Int'l USA*, 133 S. Ct. 1138, 1147 (2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1  (1992).  In a class action, only the named plaintiff must meet these requirements.  *See Bates v.*

2  *United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

3      Defendants argue that the entire Complaint should be dismissed because Plaintiff has

4  not suffered Article III "injury."  Motion at 7.  According to Defendants, Plaintiff was not

5  injured because she did not suffer "ill effects from using Johnson's Baby Powder" and

6  "received all the benefits she expected when she bought and consumed the product...."  *Id.* at

7  7, 8.  Defendants are misguided.

8      Plaintiff alleges that because of Defendants' omissions and representations regarding

9  the safety of the Baby Powder, she spent money she otherwise would not have spent in

10  purchasing the Baby Powder.  ¶¶5, 9, 72, 104.  Plaintiff alleges that Defendants knew of the

11  safety risks associated with using the Baby Powder as intended and had Defendants informed

12  Plaintiff of these risks, she would not have purchased the product.  ¶¶9, 71, 104; *see*

13  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006) (defendants have

14  a duty to inform consumers of known safety risks); *Decker v. Mazda Motor of Am., Inc.*, No.

15  SACV 11-0873, 2011 U.S. Dist. LEXIS 124182, at *7, *10-11 (C.D. Cal. Oct. 24, 2011)

16  (same).  Accordingly, the injury here is that Plaintiff paid for a product that she otherwise

17  would not have paid for, or at a minimum, paid too much for a falsely branded product.

18      Article III injury is satisfied by allegations that a plaintiff either paid a price premium

19  for a mislabeled product or would not have purchased the product had she known about the

20  misbranding.  *See*, *e.g.*, *Kane v. Chobani*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014)

21  ("Article III's standing requirements may be satisfied by allegations that a plaintiff purchased

22  a product he otherwise would not have purchased, or spent more on such product, in reliance

23  on the defendant's misrepresentations."); *Garrison v. Whole Foods Mkt. Group, Inc.*, No. 13-

24  cv-05222, 2014 U.S. Dist. LEXIS 75271, at *14 (N.D. Cal. June 2, 2014) (finding that

25  plaintiffs' allegation that "because of Whole Foods' misleading labels, plaintiffs spent money

26  they otherwise would not have spent" was sufficient for Article III standing); *Meaunrit v.*

27  *ConAgra Foods, Inc.*, No. C 09-02220, 2010 U.S. Dist. LEXIS 73599, at *9-10 (N.D. Cal. July

28  20, 2010) (rejecting argument that plaintiff did not have standing because she did not allege

1  physical harm because she was injured by purchasing a product based on a representation).[2]

2  Plaintiff need not allege that she was physically harmed by the product to satisfy

3  Article III.  For example, in *Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d

4  1111, 1116 (C.D. Cal. 2008), defendants moved to dismiss plaintiffs' complaint, arguing that

5  failure to allege that any children actually ingested lead or were physically injured by ingestion

6  was a failure to properly allege Article III standing.  *Id.* at 1116, n.6.  The court found,

7  "Plaintiffs also properly allege damages for the purchase price of the toys that allegedly were

8  defective and not fit for their represented use.  Plaintiffs' claim is straightforward – they allege

9  that they purchased toys that were unsafe and unusable and should get their money back."  *Id.*

10  at 1117.  Similarly, in *Lanovaz v. Twinings N. Am. Inc.,* the court rejected defendant's

11  argument that plaintiff lacked standing because the tea she purchased "was not tainted, spoiled,

12  adulterated or contaminated and she consumed it without incident or physical injury."  2013

13  U.S. Dist. LEXIS 25612 at *15.  The court held that "defendant's argument misses the mark

14  because plaintiff's injury is based on the allegation that she would not have *purchased* the

15  product if she had known that the label was unlawful."  *Id.* at *16 (emphasis in original); *see*

16  *also Mathison v. Bumbo*, No. SA CV08-0369, 2008 U.S. Dist. LEXIS 108511, at *9-10 (C.D.

17  Cal. Aug. 18, 2008) ("[A] plaintiff might be injured by purchasing a good that was not as

18  represented due to a latent defect – *i.e.*, a reduction in value"); *Sanchez v. Wal-Mart Stores,*

19  *Inc.*, No. 2:06-cv-2573, 2008 U.S. Dist. LEXIS 70468, *11 (E.D. Cal. Aug. 5, 2008) ("While

20  Sanchez concedes that she  has not suffered physical injury arising out of the use of her

21  stroller, she asserts that she suffered economic injury as a result of purchasing a defective

BLOOD HURST & O'REARDON, LLP

---

[2]  *See also Kosta v. Del Monte Corp.*, 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319, at *35-36 (N.D. Cal. May 15, 2013) (allegation that plaintiffs "paid a premium for Del Monte's products which they otherwise would not have paid but for Del Monte's misrepresentations" satisfies Article III); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-02646-RMW, 2013 U.S. Dist. LEXIS 25612, at *16 (N.D. Cal. Feb. 25, 2013) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims."); *Jones v. Conagra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (same); *Khasin v. Hershey Co.*, No. 12-CV-01862 EJD, 2012 U.S. Dist. LEXIS 161300, at *17-18 (N.D. Cal. Nov. 9, 2012) (same).

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

00075407

BLOOD HURST & O'REARDON, LLP

1  stroller…. This is sufficient to satisfy the standing requirement of concrete injury in fact….").[3]

2  The cases relied on by Defendants are inapposite.  In *Herrington v. Johnson & Johnson*

3  *Consumer Cos.*, No. C 09-1597, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010),

4  although the court recognized "overpayment" as a cognizable economic injury, plaintiff did

5  not allege "that they overpaid" for the products.  *Id.* at *18.  Similarly, in *Birdsong v. Apple,*

6  *Inc.*, 590 F.3d 955, 959-61 (9th Cir. 2009), plaintiffs alleged that the iPods they purchased

7  were defective because they posed an unreasonable risk of noise-induced hearing loss.

8  Plaintiffs' alleged injury was a loss in value of the iPods based on the potential for injury from

9  misusing the iPods.  *Id.* at 960-61.  Here, by contrast, plaintiff alleges she was injured because

10  she purchased a product she otherwise would not have but for Defendants' omissions and

11  representations that it was safe for its intended use when it was not.  ¶¶9, 71, 104.

12  *Myers-Armstrong v. Actavis Totowa*, No. C 08-04741, 2009 U.S. Dist. LEXIS 38112

13  (N.D. Cal. Apr. 22, 2009), also cited by Defendants, involved allegedly unadulterated

14  pharmaceutical drugs.  The court found that if a person consumed the pills and obtained "their

15  beneficial effect with no downside, the consumer cannot get a refund" of the purchase price.

16  *Id.* at *12-13.  However, here, Plaintiff alleges that everyone who purchased the Baby Powder

17  was injured because they spent more for a product than they otherwise would have because it

18  was marketed as safe for use.  ¶¶5, 9, 72, 104.

19  Finally, although the court in *Boysen v. Walgreen Co.* No. C 11-06262, 2012 U.S. Dist.

20  LEXIS 100528 (N.D. Cal. July 19, 2012), found that plaintiff could not establish economic

21  injury by alleging that the fruit juice he purchased contained an unlawful amount of lead and

22  arsenic because he "paid for fruit juice, [] received fruit juice, [and] consumed [it] without

23

24  _____
   [3]     Even under the stricter standing requirements of the UCL, standing is conferred by the
25  economic harm of purchasing a misbranded product.  *See In re Tobacco II Cases*, 46 Cal. 4th
   298, 326 (2009); *Kosta*, 2013 U.S. Dist. LEXIS 69319, at *34-35 (UCL standing satisfied
26  where plaintiffs alleged they "paid a premium…they otherwise would not have paid but for
   [defendant]'s misrepresentations"); *Ivie v. Kraft Foods Global, Inc.*, No. C-12-02554, 2013
27  U.S. Dist. LEXIS 25615, at *11-12 (N.D. Cal. Feb. 25, 2013) (UCL and Article III standing
   satisfied where plaintiff alleged "she would not have *purchased* the product if she had known
28  that the labels were unlawful") (emphasis in original); *Chacanaca v. Quaker Oats Co.*, 752 F.
   Supp. 2d 1111, 1125 (N.D. Cal. 2010) (same); *Chavez v. Blue Sky Natural Beverage Co.*, 340
   Fed. App'x 359, 360-61 (9th Cir. 2009) (same).

BLOOD HURST & O'REARDON, LLP

suffering harm" (*id.* at *11), the court based its decision on the fact that the plaintiff did "not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice." *Id.* at *24.  Unlike in *Boysen*, Plaintiff here alleges that had she known the truth about the safety risks involved in using the Baby Powder as intended, she would not have purchased it.  ¶¶9, 71, 104.  Accordingly, Plaintiff spent money she otherwise would not have spent but for Defendants' conduct and was injured as a result.  Plaintiff has standing.

### B.   The Class Allegations Should Not Be Stricken

Defendants argue that the class definition should be stricken because it necessarily includes consumers who were never exposed to the product's risks because they never used the product in the way alleged by Plaintiff, and thus they do not have standing.

First, it is only Plaintiff that must demonstrate standing for purposes of Article III.  *See Bates*, 511 F.3d at 985.

Second, even if all members of a class must demonstrate injury for standing purposes, Plaintiff alleges that all purchasers of the Baby Powder were injured because they paid more for the product than they otherwise would have, or that they would not have purchased the product at all had Defendants accurately labeled it.  ¶¶9, 71-72, 104.  Plaintiff alleges that due to the omissions, representations, and implied representations that their Baby Powder was safe for use, Defendants were able to charge more for the Baby Powder than they would have had they accurately disclosed the safety risks associated with the product.  *Id.*  Plaintiff does not allege she and other class members developed ovarian cancer, but rather that they suffered economic injury.  ¶9.

As discussed above, these allegations satisfy Article III injury.  *See Chobani*, 973 F. Supp. 2d at 1128 ("Article III's standing requirements may be satisfied by allegations that a plaintiff purchased a product he otherwise would not have purchased, or spent more on such product, in reliance on the defendant's misrepresentations."); *Garrison*, 2014 U.S. Dist. LEXIS 75271, at *14 (finding that plaintiffs' allegation that "because of Whole Foods' misleading labels, Plaintiffs spent money they otherwise would not have spent" was sufficient for Article III standing).  Injuries based on the purchase of misbranded products are well-

1    suited for class treatment. *See In the Matter of: IKO Roofing Shingle Prods. Liab. Litig.*, No.

2    14-1532, 2014 U.S. App. LEXIS 12684, at *11 (7th Cir. July 2, 2014) (plaintiffs' theory "that

3    every purchaser of a tile is injured (and in the same amount per tile) by delivery of a tile that

4    does not meet the quality standard represented by the manufacturer" can "be applied to every

5    member of the class" regardless of other damages class members may have incurred from

6    failure of the tiles).

7    The UCL authorizes courts to make "such orders … as may be necessary to restore to

8    any person … any money or property, real or personal, which may have been acquired by

9    means" of the unlawful conduct. Cal. Bus. & Prof. Code §17203. The CLRA similarly

10   provides for "[r]estitution of property" in addition to "[a]ctual damages" to "[a]ny consumer

11   who suffers any damage as a result of" a prohibited act. Cal. Civ. Code §1780(a). Restitution

12   is an equitable remedy and its purpose is "to restore the status quo by returning to the plaintiff

13   funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockhead Martin*

14   *Corp.*, 29 Cal. 4th 1134, 1149 (2003). Accordingly, "[t]he proper measure of restitution in a

15   mislabeling case is the amount necessary to compensate the purchaser for the difference

16   between a product as labeled and the produce as received." *Werderbaugh v. Blue Diamond*

17   *Growers*, No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575, at *77 (N.D. Cal. May 23, 2014)

18   (citing *Colgan v. Letherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 700 (2006)). Thus, the

19   class definition is proper because every person that purchased Defendants' products paid an

20   inflated price due to Defendants' unlawful actions.

21   Defendants' argument on ascertainability is misplaced. *See* Motion at 11. Rule 23

22   presumes the existence of "a definite or ascertainable class." 1 Rubenstein, *Newberg on Class*

23   *Actions* §3:2 (5th ed. 2013). Rule 23 "focus[es] on the question of whether the class can be

24   ascertained by objective criteria" as opposed to "subjective standards (e.g., a plaintiff's state of

25   mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated

26   against)." *Newberg*, §3:3; *Manual for Complex Litigation* §21.222 (4th ed. 2004); *see also*

27   *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008) (finding definition that allows

28   class members to identify themselves is sufficient); *Young v. Nationwide Mut. Ins. Co.*, 693

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1   F.3d 532, 538 (6th Cir. 2012) (same); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83

2   (11th Cir. 2011) (rejecting defendant's argument that "individualized fact-finding" was

3   required "to ascertain the members of the class"); *Daar v. Yellow Cab*, 67 Cal. 2d 695, 706

4   (1967) ("If the existence of an ascertainable class has been shown, there is no need to identify

5   its individual members in order to bind all members by the judgment.").  "In this Circuit, it is

6   enough that the class definition describes a set of common characteristics sufficient to allow a

7   prospective plaintiff to identify himself or herself as having a right to recover based on the

8   description." *McCrary v. Elations Co. LLC*, No. 13-00242, 2014 U.S. Dist. LEXIS 8443, at

9   *24-25 (C.D. Cal. Jan. 13, 2014) (quoting *Moreno*, 251 F.R.D. at 421).

10      Here, the class is defined by objective criteria based on class members' purchase of the

11   Baby Powder.  Defendants' focus on female consumers who purchased Defendants' products

12   for a specific use is thus misplaced.  The class encompasses all consumers who purchased the

13   product because they were all damaged by paying more for a falsely branded product.

14      **C.      Plaintiff's Fraud Claim Satisfies Rule 9(b)**

15      Defendants argue Plaintiff's fraud-based claims should be dismissed under Rule 9(b)

16   because she does not allege "what, exactly, she actually relied on when she purchased [the]

17   Baby Powder."  Motion at 11.  In making this argument, Defendants overstate the application

18   of Rule 9(b) to claims brought pursuant to the CLRA and the UCL.  Defendants' argument

19   assumes that Rule 9(b) applies automatically and across the board to all UCL and CLRA

20   claims, but it does not.  Defendants are incorrect.

21      Only those aspects of the UCL allegations that "aver fraud" or are "grounded in fraud"

22   implicate Rule 9(b).  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124-25 (9th Cir. 2009); *Vess*

23   *v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003).  If a plaintiff chooses to allege

24   some fraudulent conduct and some non-fraudulent conduct, "only the allegations of fraud are

25   subject to Rule 9(b)'s heightened pleading requirements."  *Vess*, 317 F.3d at 1104.  In short, if

26   conduct other than fraud is alleged that constitutes violations of the UCL and CLRA, Rule 9(b)

27   does not apply.  *See Shin v. BMW of North America*, No. 09-00398, 2009 U.S. Dist. LEXIS

28   67994, at *10 (C.D. Cal. July 16, 2009); *Johns v. Bayer Corp.*, No. 09cv1935, 2010 U.S. Dist.

1    LEXIS 10926, at *14 (S.D. Cal. Feb. 9, 2010); *In re Mattel*, 588 F. Supp. 2d at 1118.

2          Defendants do not argue that the Complaint contains all of the necessary elements of

3    fraud.  Defendants merely state the unsupported legal conclusion that Plaintiff's claims are

4    based in fraud.  Absent allegations satisfying all of the necessary elements of fraud, Rule 9(b)

5    does not apply.  *See Johns*, 2010 U.S. Dist. LEXIS 10926, at *14.  Defendants only objection

6    is that Plaintiff does not sufficiently allege reliance.  *See* Motion at 11-13.  In making this

7    argument, Defendants parse the Complaint instead of reading it as a whole.

8          Rule 9(b) demands that the circumstances constituting the alleged fraud "be 'specific

9    enough to give defendants notice of the particular misconduct ... so that they can defend

10   against the charge and not just deny that they have done anything wrong.'"  *Kearns v. Ford

11   Motor Co.*, 567 F.3d at 1124 (citing *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.

12   2001)).  "California courts have repeatedly held that relief under the UCL is available without

13   individualized proof of deception, reliance and injury."  *Mass. Mutual Life Ins. Co. v. Superior

14   Court*, 97 Cal. App. 4th 1282, 1288 (2002).  Under the "fraudulent" prong of the UCL,

15   however, a plaintiff (but not the class members) is required to prove causation by

16   demonstrating that she relied on defendants' representations or omissions.  *In re Tobacco II*,

17   46 Cal. 4th at 326.  Plaintiff alleges that every time she purchased the Baby Powder, she relied

18   on the packaging and her belief that the Baby Powder was safe.  ¶¶9, 16-17.  The Complaint

19   contains an image of the Baby Powder packaging and includes quotes from the label.  ¶¶14-17.

20         An inference of reliance exists where a misrepresentation is deemed "material."  *In re

21   Tobacco II*, 46 Cal. 4th at 327.  "A misrepresentation is judged to be 'material' if 'a reasonable

22   man would attach importance to its existence or nonexistence in determining his choice of

23   action in the transaction in question,' and as such materiality is generally a question of fact

24   unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably

25   find that a reasonable man would have been influenced by it.'"  *Id.* (internal citations omitted)

26   (quoting *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 976-977 (1997)).  As

27   the court held in *In re Tobacco II*, "where, as here, a plaintiff alleges exposure to a long-term

28   advertising campaign, the plaintiff is not required to plead with an unrealistic degree of

BLOOD HURST & O'REARDON, LLP

00075407

BLOOD HURST & O'REARDON, LLP

1    specificity that the plaintiff relied on particular advertisements or statements."  46 Cal. 4th at

2    328.  Defendants misrepresented and concealed a safety related attribute that allowed them to

3    charge more than they should have.  Both safety and price are *per se* material.  *See Avedisian*

4    *v. Mercedes-Benz USA, LLC*, No. CV 12-00936, 2013 U.S. Dist. LEXIS 73444, at *16 (C.D.

5    Cal. May 22, 2013) (safety is material) (citing *Daugherty*, 144 Cal. App. 4th at 836); *Hinojos*

6    *v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (price is material); *Chamberlan v. Ford*

7    *Motor Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005).  In this case, Plaintiff alleges

8    reliance upon and the materiality of Defendants' misrepresentations and omissions to satisfy

9    Rule 9(b).  ¶¶9, 16-17, 71-72, 104; *see also In re Tobacco II*, 46 Cal. 4th at 327-28.

10    **D.    Plaintiff's Negligent Representation Claim Is Properly Pled**

11    Defendants argue that Plaintiff's negligent representation claim must be dismissed

12    because Plaintiff fails to allege a positive assertion upon which she relied.  Motion at 14.

13    Defendants misapply the law.

14    Much like in their argument for dismissal under Rule 9(b), Defendants ignore the full

15    allegations contained in the Complaint.  After citing that an "omission" is insufficient to justify

16    a claim for negligent misrepresentation, Defendants' argument then devolves into a one-

17    sentence recognition that "Estrada claims only to have seen and relied on the product's label"

18    but claims dismissal is proper because Plaintiff "does not claim any of the statements on the

19    product label are actually false."  *Id.* (citing ¶¶9, 15).  Next, Defendants flatly state, without

20    support, that '[plaintiff's] claims appear to be based on an 'omission' – namely that

21    [defendant] should have affirmatively disclosed some type of information about the 'risk

22    [plaintiff] alleges."  *Id.*  Certainly, such a disclosure should have been made by Defendants,

23    but that omission is not the basis for plaintiff's negligent misrepresentation claim.

24    First, Plaintiff alleges that "Defendants misrepresented that the Baby Powder was

25    clinically proven to be safe when they knew or should have known that there is an increased

26    risk of ovarian cancer for women who use talc powders in the genital area."  ¶103; *see also*

27    ¶16 (same representation on website), ¶70 (same).  Second, Plaintiff further alleges that she

28    relied on the label when purchasing the Baby Powder.  ¶9.  Third, the Complaint states

1    "Defendants misrepresented that the Baby Powder was clinically proven to be safe when they

2    knew or should have known that there is an increased risk of ovarian cancer for women who

3    use talc powders in the genital area." ¶103.  Fourth, Defendants' product label declares the

4    talc-containing products are "gently," "helping," "comfortable," "tested," "delicate," "soft,"

5    and "soothing."   All of these representations, in light of the known scientific evidence

6    linking genital use of talc with ovarian cancer, are certainly false – a product that causes

7    ovarian cancer cannot be truthfully and accurately described as gentle, helpful, comfortable,

8    tested, delicate, soft, or soothing.     ¶¶21-62.    Yet, these very statements and

9    misrepresentations by Defendants are on the label upon which Plaintiff contends she relied.

10   ¶9.  Plaintiff alleged positive assertions that were false, i.e. misrepresentations, upon which

11   she relied in making her purchasing decisions.

12        **E.     Plaintiff's Breach of Implied Warranty Claim Is Properly Pled**

13             **1.     Plaintiff Alleged the Baby Powder Was Unmerchantable**

14        Defendants first argue that Plaintiff's breach of implied warranty claim fails because

15   she does not allege the Baby Powder is unmerchantable since it performed as promised for the

16   vast majority of consumers.  Motion at 14-15.  Defendants miss the point.

17        A product is unmerchantable if it does not possess "even the most basic degree of

18   fitness for ordinary use."  *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 945

19   (C.D. Cal. 2012).  Just because a product retains "some functionality" does not satisfy the

20   implied warranty.  *See Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007)

21   (rejecting argument that vehicle is unfit only if it does not provide transportation).  For

22   example, in *Roberts v. Electrolux Home Prods.*, No. CV 12-1644 CAS, 2013 U.S. Dist. LEXIS

23   185488 (C.D. Cal. Mar. 4, 2013), plaintiff alleged defendant breached an implied warranty by

24   selling defective dryers that could catch fire during use.  *Id.* at *1.  Defendant argued "the

25   safety defect in the dryers did not render them unmerchantable or unfit for drying clothes in a

26   residential setting."  *Id.* at *11.  The court rejected this argument and found that "[d]ue to [the]

27   fire hazard" created by the defective design, "the dryers are not safe for drying clothes in a

28   residential setting, and this safety defect renders the dryers unfit and unmerchantable."  *Id.* at

BLOOD HURST & O'REARDON, LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

*13-14.   The court concluded: "While defendant argues that no breach of the implied warranties has occurred because the dryers dry clothes despite the safety defect, California courts have rejected the argument that unsafe products retaining some functionality satisfy the implied warranties."  *Id.* at *14 (citing *Isip*, 155 Cal. App. 4th at 27).

Here, Plaintiff alleges the Baby Powder is unmerchantable because it was intended "to be used as a daily use powder to eliminate friction on the skin and to absorb unwanted excess moisture for both babies and women" (¶110), but is not safe for that use because if used for that purpose in the genital region, it could cause "serious and even fatal health problems." ¶113.  Like the dryers in *Roberts* that could still dry clothes despite the fire hazard, the fact that the Baby Powder may have some safe functionality in eliminating friction in other parts of the body does not make it conform to the safety warranty.

Additionally, the fact Plaintiff or other Class members have not been diagnosed with ovarian cancer as a result of using the Baby Powder does not render the product compliant with the warranty.  The court in *Roberts* rejected a similar argument that the fire hazard in the dryers only manifested after years of use.  2013 U.S. Dist. LEXIS 185488, at *16.  The court held: "The Court rejects defendant's argument, which conflates the existence of a defect and the manifestation of harms or hazards caused by a defect.  Plaintiffs here have alleged that the dryers contain a latent defect, and contrary to defendant's argument, a breach of the implied warranties occurs when a product containing the latent defect is sold, not when the product's defect causes harm."  *Id.* at *16-17 (citing *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1301-1302 (2009)).

Similarly here, Plaintiff alleges that because the Baby Powder is made from talc, which is a known carcinogen that can lead to ovarian cancer after daily use in the genital region, it was not safe for use from the moment it was sold.  ¶¶71, 86, 113-114, 116.  Thus, the fact that some people are never diagnosed with ovarian cancer or get some use of the product does not render it merchantable.

The cases Defendants cite are inapposite.  Motion at 14-15.  In *Birdsong*, 590 F.3d at 958, the court found that although plaintiffs alleged that iPods could cause hearing damage

BLOOD HURST & O'REARDON, LLP

00075407

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

BLOOD HURST & O'REARDON, LLP

1   when used improperly, plaintiffs failed to allege that iPods were unsafe or defective for their

2   admitted intended purpose of listening to music.  Here, however, Plaintiff alleges that the Baby

3   Powder is intended for use on babies and women in the genital area and that this use is

4   dangerous.  ¶¶4, 12-16, 110.

5          In *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1293-94 (1995),

6   plaintiffs alleged that the cars purchased by class members were defective because they had a

7   high center of gravity and light tread.  On plaintiffs' motion for class certification, the court

8   found that the cars were fit for their ordinary purpose because nearly all of the vehicles never

9   evidenced a defect and there was no evidence of an inherent defect.  *Id.* at 1298-99.  By

10  contrast, here, Plaintiff alleges that all Baby Powder that was purchased by class members

11  suffers from the same safety risk because it is all made from talc which is shown to lead to

12  ovarian cancer.  ¶¶24-26, 29-32, 37, 39, 44, 50-52, 54-57, 59, 64, 65.  Thus, all Baby Powder

13  purchased by class members is unsafe and unmerchantable from the moment it is sold.[4]

### 2.      Privity Is Not Required

15         Defendants also argue that Plaintiff's breach of implied warranty claim should be

16  dismissed for lack of privity.  Motion at 15.  Although privity is ordinarily required, several

17  exceptions apply to Plaintiff's claims.

18         Privity is not required "where the plaintiff consumer is an intended third-party

19  beneficiary of the contract for sale of a good" between a manufacturer and a seller.  *In re

20  Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices &Prods. Liab. Litig.*, 890 F. Supp.

21  2d 1210, 1222 (C.D. Cal. 2011); *see also Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82

22  Cal. App. 3d 65, 69-70 (1978) (finding that consumer could sue subcontractor for breach of

23  implied warranty as a third-party beneficiary of subcontractor's implied warranty to general

24  contractor).  Here, Plaintiff was the intended beneficiary of an implied warranty of

25  merchantability between Defendants and the retailers because Defendants intended for the

---

27  [4]    *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 252 (1st Cir. 2010) is similarly

28  inapplicable.  There, plaintiff failed to allege that her dog was injured or susceptible to injury.
    *Id.*  Here, Plaintiff alleges that all class members were injured by purchasing a product that
    was falsely advertised as safe when the overwhelming evidence indicates it is not.

1   retailers to sell the product to consumers.  ¶¶13, 14, 110; *see also In re Toyota*, 890 F. Supp.

2   2d at 1222.  The safety of the Baby Powder for use in eliminating friction on the skin and to

3   absorb unwanted excess moisture was intended for consumers, not the retailers.  *See* ¶110.

4       Additionally, privity is not required where "plaintiff relies on written labels or

5   advertisements of a manufacturer."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023

6   (9th Cir. 2008) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 3d 682, 696 (1954)); *see also In*

7   *re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012) (recognizing

8   exception where plaintiff relies on labels or advertisements by manufacturer).  Here, Plaintiff

9   alleges that she relied on the Baby Powder label when making her purchases, and as a result,

10   believed the product to be safe for use.  ¶9.  Plaintiff alleges that the label merely informed her

11   to keep the Baby Powder away from her eyes and not to inhale it.   ¶69.  The label never

12   informed Plaintiff that using the Baby Powder in her genital area, a use that Plaintiff alleges

13   Defendants encouraged (¶¶13-15), could lead to an increased risk of ovarian cancer.  ¶70.

14       Finally, courts recognize an exception to the privity requirement for food and

15   pharmaceutical products.  *See Windham at Carmel Mountain Ranch Assn. v. Superior Court*,

16   109 Cal. App. 4th 1162, 1169 (2003) ("Exceptions to the privity requirement have been

17   established in cases involving foodstuffs, drugs and pesticides.").   Courts applying this

18   exception do so because the products at issue are "intended for human consumption."  *See*

19   *Arnold v. Dow Chem. Co.*, 91 Cal. App. 4th 698, 720 (2001).  Like food and pharmaceuticals,

20   the Baby Powder is a health care product that Defendants intended consumers to use on their

21   bodies.  ¶¶13-16.  Accordingly, the same exception applies.

22       **F.**    **Plaintiff Does Not Lack Standing to Seek Injunctive Relief**

23       Defendants narrowly construe the Article III requirements and argue that Plaintiff does

24   not have standing to seek injunctive relief because she is aware of the alleged increased risk of

25   ovarian cancer.  Motion at 16.  Defendants are wrong on the law.

26       "Construing Article III standing as narrowly as defendant suggests in consumer

27   protection cases would eviscerate the intent of the California legislature in creating consumer

28   protection statutes because it would effectively bar any consumer who avoids the offending

BLOOD HURST & O'REARDON, LLP

1  product from seeking injunctive relief." *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012

2  U.S. Dist. LEXIS 162402, at *9-12 (N.D. Cal. June 14, 2012).   Numerous courts have agreed

3  and correctly ruled that there is standing for injunctive relief.  *See Koehler v. Litehouse, Inc.*,

4  No. CV 12-04055 SI, 2012 U.S. Dist. LEXIS 176971, at *15-16 (N.D. Cal. Dec. 13, 2012);

5  *Ries v. Arizona Beverage USA LLC*, No. 10-01139, 2012 U.S. Dist. LEXIS 169853, at *25

6  (N.D. Cal. Nov. 27, 2012) ("[W]ere the Court to accept the suggestion that plaintiffs' mere

7  recognition of the alleged deception operates to defeat standing for an injunction, then

8  injunctive relief would never be available in false advertising cases, a wholly unrealistic

9  result."); *Henderson v. Gruma Corp.*, No. 10-04173, 2011 U.S. Dist. LEXIS 41077, at *19-21

10  (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and

11  UCL claims as narrowly as defendant advocates, federal courts would be precluded from

12  enjoining false advertising under California consumer protection laws because a plaintiff who

13  had been injured would always be deemed to avoid the cause of the injury thereafter ('once

14  bitten, twice shy') and would never have Article III standing."); *Cabral v. Supple, LLC*, No.

15  12-00085, 2012 U.S. Dist. LEXIS 137365, at *5-6 (C.D. Cal. Sept. 19, 2012) (in case

16  involving allegations that defendant misrepresented the benefits of its beverage, the court

17  "agree[d] with the reasoning and conclusion of *Henderson v. Gruma*" and denied defendant's

18  motion to dismiss); *Contreras v. Johnson & Johnson Consumer Cos., Inc.*, No. CV 12-7099,

19  2012 U.S. Dist. LEXIS 186949, at *7-8 (C.D. Cal. Nov. 29, 2012) ("If Plaintiff were not

20  allowed to [pursue injunctive relief] because of an argument that there was an insufficient

21  threat of future injury as to her, no individual would ever be able to seek such relief….").

22      The narrow construction of Article III that Defendants advocate "would surely thwart

23  the objective of California's consumer protection laws."  *Henderson*, 2011 U.S. Dist. LEXIS

24  41077, at *20.   That is because "[i]f the Court were to construe Article III as narrowly as

25  defendant advocates, federal courts would be precluded from enjoining false advertising under

26  California consumer laws because a plaintiff who had been injured would always be deemed to

27  avoid the cause of the injury thereafter…and would never have Article III standing."  *Koehler*,

28  2012 U.S. Dist. LEXIS, at *15-16 (quoting *Henderson*, 2011 U.S. Dist. LEXIS, at *19-20).

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1    Additionally, the fact that Defendants have not changed their practices and informed

2    consumers of the safety risks is sufficient to confer Article III standing.  *See Henderson*, 2011

3    U.S. Dist. LEXIS 41077, at *20-21 (because defendant did not offer evidence that it had

4    "removed its allegedly misleading advertising from its products" plaintiff satisfied Article III

5    standing requirements to pursue injunctive relief).  As stated in *Ries*, "the fact that [plaintiffs]

6    discovered the supposed deception some years ago does not render the advertising any more

7    truthful.  Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage

8    at the grocery store today, they could not rely on that representation with any confidence."

9    2011 U.S. Dist. LEXIS 169853, at *24-25.  Similarly, here, the fact that Plaintiff is aware of

10   the safety risks associated with the Baby Powder does not make the product any safer.

11    Moreover, Plaintiff has standing to seek injunctive relief because she represents a class

12   of people who are realistically threatened by repetition of Defendants' conduct.  *See de Jesus*

13   *Ortego Melendres v. Arpaio*, 695 F.3d 990, 997-998 (9th Cir. 2012).  An order from the Court

14   enjoining Defendants to adequately warn consumers concerning the safety risks associated

15   with the use of the Baby Powder would redress the harm suffered by Plaintiff and the class and

16   will prevent future harm.  *See Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192, 205 (N.D. Cal.

17   2012) ("[A] plaintiff demonstrates redressability if the court's statement would require the

18   defendant to 'act in any way' that would redress past injuries or prevent future harm.").

19   **V.    CONCLUSION**

20    For the foregoing reasons, Defendants' Motion should be denied.

21

22   Dated: July 31, 2014                    BLOOD HURST & O'REARDON, LLP
                                             TIMOTHY G. BLOOD (149343)
23                                           LESLIE E. HURST (178432)
                                             THOMAS J. O'REARDON II (247952)
24                                           PAULA M. ROACH (254142)

25                                           By:        *s/ Timothy G. Blood*
                                                      TIMOTHY G. BLOOD
26
                                             701 B Street, Suite 1700
27                                           San Diego, CA  92101
                                             Tel: 619/338-1100
28                                           619/338-1101 (fax)

1

tblood@bholaw.com
lhurst@bholaw.com

2

toreardon@bholaw.com
proach@bholaw.com

3

BEASLEY, ALLEN, CROW, METHVIN,
       PORTIS & MILES, P.C.

4

W. DANIEL "DEE" MILES, III (*pro hac vice*)

5

LANCE C. GOULD (*pro hac vice*)
ALISON DOUILLARD HAWTHORNE

6

    (*pro hac vice*)
272 Commerce Street

7

Post Office Box 4160
Montgomery, AL 36103

8

Tel: 334/269-2343
224/954-7555 (fax)

9

Dee.Miles@BeasleyAllen.com
Lance.Gould@BeasleyAllen.com

10

Alison.Hawthorne@BeasleyAllen.com

11

THE SMITH LAW FIRM
ALLEN SMITH, JR.

12

618 Towne Center Blvd., Suite B
Ridgeland, MS  39157

13

Tel: 601/952-1422
601/952-1426 (fax)

14

allen@smith-law.org

15

*Attorneys for Plaintiff and the Class*

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

21

PLAINTIFF'S OPPOSITION TO MOTION TO DIMSISS

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on July 31, 2014, I electronically filed the foregoing with the Clerk

3 of the Court using the CM/ECF system which will send notification of such filing to the e-mail

4 addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed

5 the foregoing document or paper via the United States Postal Service to the non-CM/ECF

6 participants indicated on the Electronic Mail Notice List.

7          I certify under penalty of perjury under the laws of the United States of America that

8 the foregoing is true and correct.  Executed on July 31, 2014.

9

10

11                                          *s/  Timothy G. Blood*
                                          TIMOTHY G. BLOOD

12                                          BLOOD HURST & O'REARDON, LLP
13                                          701 B Street, Suite 1700
                                          San Diego, CA  92101
14                                          Telephone:  619/338-1100
                                          619/338-1101 (fax)
15                                          tblood@bholaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00075407