| | |
|---|---|
| 1 | RICHARD B. GOETZ (S.B. #115666) |
|   | rgoetz@omm.com |
| 2 | O'MELVENY & MYERS LLP |
|   | 400 South Hope Street |
| 3 | Los Angeles, CA 90071-2899 |
|   | Telephone: (213) 430-6000 |
| 4 | Facsimile: (213) 430-6407 |
| 5 | MATTHEW D. POWERS (S.B. #212682) |
|   | mpowers@omm.com |
| 6 | VICTORIA L. WEATHERFORD (S.B. #267499) |
|   | vweatherford@omm.com |
| 7 | O'MELVENY & MYERS LLP |
|   | Two Embarcadero Center, 28th Floor |
| 8 | San Francisco, CA 94111-3823 |
|   | Telephone: (415) 984-8700 |
| 9 | Facsimile: (415) 984-8701 |
| 10 | Attorneys for Defendants |
|    | JOHNSON & JOHNSON and JOHNSON & |
| 11 | JOHNSON CONSUMER COMPANIES, INC. |

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONA ESTRADA, On Behalf of Herself and All Others Similarly Situated, | Case No. 2:14-cv-01051-TLN-KJN |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT** |
| v. | Hearing Date: September 11, 2014 |
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., | Time: 2:00 p.m. |
|  | Judge: Hon. Troy L. Nunley |
|  | Courtroom: 2 |
| Defendants. | Complaint Filed: April 28, 2014 |

REPLY ISO DEFENDANTS' MOTION TO
DISMISS AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FOR ESTRADA, THE PRODUCT PERFORMED EXACTLY AS PROMISED ............ 3

III. ESTRADA'S CLASS ALLEGATIONS DEPEND ON A THEORY OF INJURY THAT IS INVALID AS A MATTER OF LAW .................................................. 6

   A. "Price Inflation" and "Fraud on the Market" ............................................. 6
   B. As Pled, the Class Definition Is Overbroad and Must Be Stricken ........ 8

IV.  ESTRADA'S CLAIMS SOUND IN FRAUD AND MUST COMPLY WITH 9(B) ......... 8

V.   ESTRADA'S IMPLIED WARRANTY CLAIM FAILS AS A MATTER OF LAW ........ 9

VI.  ESTRADA HAS NO "REAL AND IMMEDIATE THREAT" OF INJURY .................. 10

VII. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................................... 7

*Birdsong v. Apple*,
   590 F.3d 955 (9th Cir. 2009) .................................................................................. 5, 9

*Boysen v. Walgreen*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012) ..................................................... 1, 3, 5

*Burns v. Tristar*,
   2014 WL 3728115 (S.D. Cal. July 25, 2014) ........................................................... 10

*Burr v. Sherwin Williams*,
   42 Cal. 3d 682 (1954) ............................................................................................... 10

*Chacanaca v. Quaker Oats*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..................................................................... 4

*Chavez v. Blue Sky*,
   340 Fed. App'x 359 (9th Cir. 2009) ........................................................................... 4

*Colgan v. Leatherman Tool Grp.*,
   135 Cal. App. 4th 663 (2006) .................................................................................... 8

*Daugherty v. Am. Honda*,
   144 Cal. App. 4th 824 (2006) ................................................................................ 5, 6

*Forcellati v. Hyland's*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ............................................................ 10

*Frye v. L'Oreal USA*,
   583 F. Supp. 2d 954 (N.D. Ill. 2008) ......................................................................... 1

*Garcia v. MedVed Chevrolet, Inc.*,
   240 P.3d 371 (Colo. Ct. App. 2009) .......................................................................... 7

*Garrison v. Whole Foods*,
   2014 WL 2451290 (N.D. Cal. June 2, 2014) ..................................................... 1, 4, 8

*Gartin v. S&M NuTec LLC*,
   245 F.R.D. 429 (C.D. Cal. 2007) ............................................................................... 7

*Gest v. Bradbury*,
   443 F.3d 1177 (9th Cir. 2006) .................................................................................. 10

*Gilbert Fin. Corp. v. Steelform*,
   82 Cal. App. 3d 65 (1978) ........................................................................................ 10

*Gottsdanker v. Cutter Labs.*,
   182 Cal. App. 2d 602 (1960) .................................................................................... 10

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014) ............................................................................................................. 7

*Henderson v. Gruma Corp.*,
   2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ......................................................................... 10

*Herrington v. Johnson & Johnson*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .................................................................. 1, 3, 5

*Hicks v. Kaufman & Broad*,
   89 Cal. App. 4th 908 (2001) ..................................................................................................... 4

*Hovsepian v. Apple*,
   2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ......................................................................... 8

*I.B. v. Facebook*,
   905 F. Supp. 2d 989 (N.D. Cal. 2012) ...................................................................................... 9

*In re Actimmune*,
   2009 WL 3740648 (N.D. Cal. Nov. 6, 2009)........................................................................ 6, 7

*In re Actimmune*,
   614 F. Supp. 2d 1037 (N.D. Cal. 2009) .................................................................................... 7

*In re Bisphenol-A (BPA)*,
   687 F. Supp. 2d 897 (W.D. Mo. 2009) ................................................................................. 1, 6

*In re Bisphenol-A*,
   2011 WL 6740338 (W.D. Mo. Dec. 22, 2011) ......................................................................... 6

*In re Fruit Juice Litig.*,
   831 F. Supp. 2d 507 (D. Mass. 2011) ....................................................................................... 4

*In re IKO Roofing*,
   2014 WL 2958615 (7th Cir. July 2, 2014).................................................................................8

*In re IPO Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)........................................................................................................ 8

*In re Mattel*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) .................................................................................... 4

*In re POM Wonderful*,
    2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .................................................................... 2, 7

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) .............................................................................................................. 9

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ................................................................................................... 7

*Int'l Union v. Merck*,
   929 A.2d 1076 (NJ 2007).......................................................................................................... 7

*Ivie v. Kraft Foods*,
   2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ............................................................................ 4

*James v. Johnson & Johnson*,
   2011 WL 198026 (D.N.J. Jan. 20, 2011) .................................................................................. 4

*Jones v. Conagra Foods*,
   912 F. Supp. 2d 889 (N.D. Cal. 2012) ..................................................................................... 4

*Jou v. Kimberly-Clark*,
   2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) ........................................................................ 10

*Kane v. Chobani*,
   973 F. Supp. 2d 1120 (N.D. Cal. 2014) ........................................................................... 1, 4, 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................................. 9

*Khasin v. Hershey*,
   2012 WL 5471153, (N.D. Cal. Nov. 9, 2012) .......................................................................... 4

*Kosta v. Del Monte*,
   2013 WL 2147413 (N.D. Cal. May 15, 2013) ......................................................................... 4

*Lanovaz v. Twinings*,
   2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ........................................................................ 4, 9

*Long v. Graco*,
   2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ....................................................................... 10

*Lopez v. Nissan*,
   201 Cal. App. 4th 572 (2011) ................................................................................................... 9

*Luman v. Theismann*,
   2014 WL 443960 (E.D. Cal. Feb. 4, 2014) ........................................................................ 3, 10

*Mathison v. Bumbo*,
   2008 WL 8797937 (C.D. Cal. Aug. 18, 2008) ........................................................................ 4

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008), *abrogated in part by Bridge v. Phoenix Bond*,
   553 U.S. 639 (2008) .................................................................................................................. 8

*Meaunrit v. ConAgra Foods*,
   2010 WL 2867393 (N.D. Cal. July 20, 2010) ...................................................................... 1, 4

*Merck v. Ratliff*,
   2012 Ky. App. LEXIS 31 (Feb. 10, 2012) ........................................................................... 2, 7

*Minkler v. Kramer Labs.*,
   2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ........................................................................... 8

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) .......................................................................................................... 2, 7

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) ................................................................................................... 9

*Myers-Armstrong v. Actavis Totowa*,
   2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ................................................................. 1, 2, 3

*Oliveira v. Amoco*,
   201 Ill. 2d 134 (2002) .................................................................................................. 7

*Polk v. KV Pharm.*,
   2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) ............................................................ 4

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) .................................................................................................. 1

*Rivera v. Wyeth-Ayerst Labs.*,
   283 F.3d 315 (5th Cir. 2002) ...................................................................................... 3

*Roberts v. Electrolux*,
   2013 WL 7753579 (C.D. Cal. Mar. 4, 2013) ............................................................. 9

*Sanchez v. Wal-Mart*,
   2008 WL 3272101 (E.D. Cal. Aug. 5, 2008) ............................................................. 4

*Sanders v. Apple*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ....................................................................... 8

*Sevidal v. Target*,
   189 Cal. App. 4th 905 (2010) .................................................................................... 7

*Tomek v. Apple*,
   2012 WL 2857035 (E.D. Cal. July 10, 2010) ............................................................ 3

*Tucker v. Pac. Bell Mobile Servs.*,
   208 Cal. App. 4th 201 (2012) .................................................................................... 7

*Werderbaugh v. Blue Diamond*,
   2014 WL 2191901 (N.D. Cal. May 23, 2014) ........................................................... 8

*Williams v. Purdue Pharma*,
   297 F. Supp. 2d 171 (D.D.C. 2003) ........................................................................... 7

*Xavier v. Philip Morris*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................... 10

**STATUTES**

Mo. Rev. Stat. § 407.020(1) ............................................................................................. 6

**RULES**

Fed. R. Civ. P. 9(b) ..................................................................................................... 3, 9

## I. INTRODUCTION

As Estrada's Opposition demonstrates, her personal claims are quite different from those she is seeking to assert on behalf of the purported class. Both claims should be rejected. Estrada's personal claims fail because, for her, the product worked as expected and she got everything she paid for. And her class allegations must be stricken because they rely on a "price inflation" causation theory that has been rejected by California's courts, is inconsistent with Estrada's own personal claims, and is not even pled in the current Complaint.

For her personal claims, Estrada contends she bought Baby Powder to use on her genital area, and would not have bought the product if J&J had disclosed the "risk" allegedly associated with that use. (Comp. ¶ 9). For the reasons discussed below (and in J&J's opening brief), that claim fails—the fact that Estrada spent money on a product she would not have purchased is **not** enough, by itself, to establish injury.[1] If it were, then the claims in *Boysen*, *Herrington* and *Myers-Armstrong* (for example) would not have been rejected. Instead, the purchase price qualifies as economic "harm" *if* the plaintiff failed to receive a benefit she was promised by J&J. No such facts are alleged here, and none of the cases Estrada cites justify her claim of "economic loss." Instead, in each of her cases, the product at issue failed to deliver something specific the plaintiff was promised.[2] Estrada's core claim is that she was exposed to an alleged risk. Ordinarily, Estrada would have to prove that she is more likely than not to develop health problems because of that "exposure" in order to recover. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006 (1993) (standards for medical monitoring claim). But here, Estrada admits she has no health problems and is **not** at risk of any future issues. Instead, she seeks a windfall—

---

[1] *See Boysen v. Walgreen*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (undisclosed lead in fruit juice); *Herrington v. Johnson & Johnson*, 2010 WL 3448531, at *2-4 (N.D. Cal. Sept. 1, 2010) (carcinogen in shampoo); *Myers-Armstrong v. Actavis Totowa*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009) (risk with medication); *In re Bisphenol-A (BPA)*, 687 F. Supp. 2d 897, 910-13 (W.D. Mo. 2009) ("*BPA I*") (toxin in baby formula and bottles); *Frye v. L'Oreal USA*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (lead in lipstick).

[2] *E.g.*, *Kane v. Chobani*, 973 F. Supp. 2d 1120, 1124 (N.D. Cal. 2014) (dismissing claims with prejudice because plaintiffs could not allege actual reliance on product statements about yogurt labeled "all natural"); *Garrison v. Whole Foods*, 2014 WL 2451290, at *4 (N.D. Cal. June 2, 2014) (food falsely labeled "all natural"); *Meaunrit v. ConAgra Foods*, 2010 WL 2867393, at *1 (N.D. Cal. July 20, 2010) (plaintiff forced to discard pot pies she paid for but could not use).

a complete refund for a product that, for her, performed exactly as promised. *In re POM Wonderful*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) (rejecting demand for "the windfall of a full refund" for juice buyers). Since the "risk" did not affect her use of the product in any way, she has no loss. *E.g.*, *Myers-Armstrong*, 2009 WL 1082026, at *4 (plaintiffs who consumed pills and received "their beneficial effect with no downside … cannot get a refund").

The claims Estrada seeks to assert on behalf of the class, on the other hand, are quite different: Estrada's class is ***not*** limited to adult women who, like her, bought the product to use on their genital area. Instead, Estrada argues that the price of Baby Powder should be treated like the price of a publicly traded stock—and that "everyone who purchased the Baby Powder [was] injured" because they paid an "inflated" market price for the product that would have been lower if J&J had "disclosed" the alleged risk. (Opp. 1.) Thus, under Estrada's "inflated price" theory, literally everyone was "injured," even consumers for whom the product was absolutely safe: men, and women who used the product for any purpose other than on their genital area. (*E.g.*, *id.* 11 ("[E]very person that purchased Defendants' products paid an inflated price ….") Here, Estrada is trying to do what many courts have already rejected: import "price inflation" and "fraud on the market" theories from the securities context and use them in consumer class litigation. But California has rejected "fraud on the market" in securities cases,[3] and "every other jurisdiction … which has been confronted with the theory has rejected it outside of the securities litigation context." *Merck v. Ratliff*, 2012 Ky. App. LEXIS 31, at *20 (Feb. 10, 2012). Indeed, Estrada's dogged assertion that even men—who obviously have no risk of ovarian cancer—were "injured" shows just how aggressive Estrada's "price inflation" theory really is.[4]

Estrada's other arguments should also be rejected. Estrada's suggestion that her claims are not "grounded in fraud" (Opp. 12-13) is absurd. Rule 9(b) applies: Estrada's claims are all based on alleged "omissions and representations regarding the safety of Baby Powder," and she

---

[3] *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1089, 1108 (1993) ("the [so-called] fraud-on-the-market doctrine would open the door to class action lawsuits based on exceedingly speculative theories").

[4] For the first time in her Opposition, Estrada suggests that the "risk" might not be limited to long-term use by adult women on their genital area. (Opp. 17.) But that is not supported by her Complaint or the studies she cites, and she does ***not*** allege any risk associated with use on infants (male or female). Her suggestion that talc is vaguely "dangerous" lacks any support.

never identifies a single allegation that is ***not*** "grounded in fraud." (*Id.* 2, 12-13.) Next, her claim that Baby Powder lacked "the most basic degree of fitness for ordinary use" is inconsistent with her own allegations—the risk Estrada alleges applies only to a specific subset of purchasers; for everyone else (*e.g.*, men, and women who bought the product for uses other than on their genital area) the product was safe and "fit for ordinary use." *Tomek v. Apple*, 2012 WL 2857035, at *6-7 (E.D. Cal. July 10, 2010) (product cannot be "unmerchantable" if many customers used it safely). And, finally, the fact that Estrada has no risk of future injury dooms her claim for injunctive relief—there is no "public-policy exception to the [Article III] standing requirement," as Estrada suggests. *Luman v. Theismann*, 2014 WL 443960, at *7-8 (E.D. Cal. Feb. 4, 2014).

In short, Estrada's personal claims fail because for her the product worked as promised, and her "class" is full of consumers who have no injury. Her Complaint should be dismissed.

## II.     FOR ESTRADA, THE PRODUCT PERFORMED EXACTLY AS PROMISED

Estrada does not argue that Baby Powder failed to perform as she expected, or that she was promised some benefit that Baby Powder failed to provide. Nor could she. Since Estrada used Baby Powder for decades, she obviously believed that its benefits—e.g., "eliminate[ing] friction on the skin," "absorb[ing] unwanted excess moisture," and "maintain[ing] freshness"— were worth the price. (*See* Comp. ¶¶ 12-13.) Instead, Estrada claims she has standing because she would not have bought the product—she "paid for a product she otherwise would not have paid for." (Opp. 7.) To be sure, it is ***often*** the case that paying for a product can constitute an injury; if that product does not provide benefits the consumer was promised, then the consumer has suffered an economic loss. But as J&J explained in its opening brief, customers who "consume [a product] and obtain[ its] beneficial effect with no downside … cannot get a refund." *Myers-Armstrong*, 2009 WL 1082026, at *4. In case after case, courts have held that where (as here) a consumer fully uses a product and receives the promised benefits, the "omission" of "risks" that never materialize is not grounds for an economic loss claim.[5]

---

[5] *Boysen*, 2012 WL 2953069, at *7; *Herrington*, 2010 WL 3448531, at *5 (alleged toxin in Baby Shampoo that was fully "used to the [plaintiff's] benefit"); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) ("[B]y plaintiff['s] own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain."); *Polk v. KV Pharm.*, 2011 WL

None of the cases Estrada cites in her Opposition (*see* Opp. 6-8) deal with the facts presented here—in each of those cases the plaintiffs were specifically promised (and paid for) benefits they never actually received. In *Kane*, 973 F. Supp. 2d at 1124, and *Garrison*, 2014 WL 2451290, at *4, for example, the plaintiffs bought food specifically because it was labeled "all natural"—and did ***not*** receive what they paid for because the products contained artificial ingredients.[6] Estrada's other cases involve products that had not yet been consumed and could not be used. In *Meaunrit*, 2010 WL 2867393, at *1, for example, the plaintiff had to throw out unused pot pies. And in *In re Mattel*, 588 F. Supp. 2d 1111, 1117 (C.D. Cal. 2008), the plaintiffs purchased "unusable" toys that were contaminated with lead.[7] The facts here are very different: Estrada does ***not*** seek compensation for unused bottles or claim the product did not perform as she expected. Nor has she alleged facts to show she paid a "premium" for Baby Powder because of some representation by J&J. As discussed in Section IV, Estrada does ***not*** contend she relied

---

6257466, at *5 (E.D. Mo. Dec. 15, 2011) ("Plaintiff failed to allege he did not receive the benefit from the medication for which he bargained; i.e. the medication did not perform as intended."); *In re Fruit Juice Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Plaintiffs are unable to show that *any* actual harm resulted from consumption of the [lead-containing] fruit juice …. The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm."); *James v. Johnson & Johnson*, 2011 WL 198026, at *2 (D.N.J. Jan. 20, 2011) ("Plaintiffs bought and used shampoo, and subsequently wished that they had not done so because they feared for the future safety of their children.... Once the product had been consumed ... there was no economic injury for Plaintiffs to complain of ...."); *see also Hicks v. Kaufman & Broad*, 89 Cal. App. 4th 908, 923 (2001) ("Cars and tires have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for.").

[6] *See also Chavez v. Blue Sky*, 340 Fed. App'x 359, 360 (9th Cir. 2009) (iced tea falsely labeled as made in New Mexico); *Lanovaz v. Twinings*, 2013 WL 675929, at *1 (N.D. Cal. Feb. 25, 2013) (tea labeled as containing antioxidants); *Ivie v. Kraft Foods*, 2013 WL 685372, at *3 (N.D. Cal. Feb. 25, 2013) (food falsely labeled as "all natural" or "sugar free"); *Jones v. Conagra Foods*, 912 F. Supp. 2d 889, 901-02 (N.D. Cal. 2012) (products falsely labeled "100% natural"); *Khasin v. Hershey*, 2012 WL 5471153, at *1 (N.D. Cal. Nov. 9, 2012) (chocolate marketed as containing antioxidants); *Chacanaca v. Quaker Oats*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010) (food falsely labeled as healthy and "wholesome" when it contained dangerous transfat); *Mathison v. Bumbo*, 2008 WL 8797937, at *3-4 (C.D. Cal. Aug. 18, 2008) (speculating in dicta that product "not as represented due to a latent defect" "might" support a claim for economic loss, but holding plaintiffs lacked standing because they did not buy the product); *Kosta v. Del Monte*, 2013 WL 2147413, at *1 (N.D. Cal. May 15, 2013) (canned fruit and vegetables falsely labeled as "fresh" and "all natural"). Indeed, in *Kosta*, the court found *Herrington* and *Boysen* did not apply because the plaintiffs in *Kosta* did not claim the products were "defective or injurious" but instead specifically asserted they relied on Del Monte's allegedly false statements. *Id.* at *11.
[7] *See also Sanchez v. Wal-Mart*, 2008 WL 3272101, at *3 (E.D. Cal. Aug. 5, 2008) (plaintiff had to "stop[] using and eventually replace[]" defective stroller).

on an affirmative "safety" promise when she bought the product—much less that she paid a premium because of such a promise. Instead, she simply seeks a 100% refund. (Comp. ¶¶ 5, 9.)

Next, Estrada's attempt to distinguish *Myers-Armstrong*, *Boysen* and *Herrington* (Opp. at 9-10) should be rejected—those cases are directly on point and dealt with claims that are virtually identical to those asserted here. In her Opposition, Estrada argues that the *Herrington* plaintiffs "did not allege 'that they overpaid' for the products" and that in *Myers-Armstrong* the plaintiff sought a refund "of the purchase price" (whereas Estrada claims that "everyone" "spent more" for Baby Powder). (*Id.* 9.) Similarly, Estrada contends that in *Boysen* the plaintiff "did not allege … he would have purchased an alternative juice," whereas Estrada alleges "she would not have purchased" Baby Powder. (*Id.* 9-10.) But those distinctions make no sense. First, they are based on a false premise: Estrada does ***not*** allege that she "would have purchased an alternative" product. Instead, she alleges only that she was "damaged in the amount of the purchase price." (Comp. ¶¶ 5, 9, 104.) And, second, Estrada's "distinctions" are meaningless in any event. In *Boysen*, for example, the plaintiff (like Estrada) did not claim "that the [allegedly contaminated product] actually performed at a lower level than comparable products and less well than advertised." 2012 WL 2953069, at *6. And in *Herrington*, the plaintiff's claims were rejected because he could not plead that, for him, the product "failed to perform" as promised.[8] Those cases precisely mirror the problems with Estrada's claims here: she pleads no facts to suggest that *for her* Baby Powder did not perform as J&J promised. And, finally, Estrada argues that the plaintiffs in *Birdsong v. Apple*, 590 F.3d 955 (9th Cir. 2009), alleged "a loss in value" whereas Estrada alleges "she purchased a product she otherwise would not have." (Opp. 9.) But again, that distinction is meaningless. In *Birdsong*, just as here, the plaintiffs claimed that they had suffered an economic loss because the product allegedly exposed them to a risk (hearing loss) that never materialized—and the Ninth Circuit rejected those claims. 590 F.3d at 960.[9]

---

[8] *Herrington*, 2010 WL 3448531, at *4, n.4. *Herrington* does not support an "overpayment" injury for fully used products (Opp. 9); in fact, the *Herrington* court questioned whether an "overpayment" theory could be valid at all. *Id.* (discussing *Rivera*).

[9] Estrada argues, based on *Daugherty v. Am. Honda*, 144 Cal. App. 4th 824 (2006), that manufacturers have a duty to disclose known safety risks. (Opp. 7, 14.) But *Daugherty* dealt with duty, not injury—Estrada must plead an ***injury*** to satisfy Article III. And as the *Daugherty*

A court in the Western District of Missouri recently addressed claims that were virtually identical to those presented here. In *BPA I*, 687 F. Supp. 2d at 910-13, the plaintiffs sought refunds for baby products (infant formula and bottles) that allegedly contained an undisclosed toxin. Just as here, the products performed well without ill effect. *Id*. at 912.[10] And, just as here, the plaintiffs argued that even though they had used and consumed the products, they were nevertheless "injured" because they paid for a product they would not have otherwise purchased. *Id*. But as the court explained, consumers "who disposed of or used the products before learning about [the toxin] ... received all the benefits they desired and were unaffected by Defendant's alleged concealment. While they may contend they would not have purchased the goods had they known … these Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages." *Id.*; *see also In re Bisphenol-A*, 2011 WL 6740338, at *3 (W.D. Mo. Dec. 22, 2011) (rejecting claim that "purchases, *ipso facto*, caused an economic loss") (citing *Rivera* and *Myers-Armstrong*). The same reasoning applies here: Estrada got "100% use (and benefit) from the product[,] and ha[s] no quantifiable damages." 687 F. Supp. 2d at 912.

### III. ESTRADA'S CLASS ALLEGATIONS DEPEND ON A THEORY OF INJURY THAT IS INVALID AS A MATTER OF LAW

#### A. "Price Inflation" and "Fraud on the Market"

According to Estrada, her class definition is not overbroad because literally everyone was "injured" because "Defendants were able to sell the Baby Powder at an inflated price." (Opp. at 1). Thus, according to Estrada, it makes no difference why a consumer bought the product or how she used it—even users who were never *exposed* to the "risk" (*i.e.*, men, and women who bought the product for uses other than on their genitals) were injured because the price would have been lower if J&J had disclosed that "risk."[11]

---

court held, "failure to disclose a defect ... [in a product] that functions precisely as warranted throughout the term of its express warranty" is ***not*** actionable in California. *Id.* at 839.

[10] Like the UCL and CLRA, the Missouri Merchandising Practices Act ("MMPA") applies to any unfair business practice. *See* Mo. Rev. Stat. § 407.020(1). But unlike the UCL and CLRA, MMPA plaintiffs are not required to plead reliance. *In re Actimmune II*, 2009 WL 3740648, at *18 (N.D. Cal. Nov. 6, 2009).

[11] Opp. 9 ("everyone who purchased the Baby Powder ... spent more"); 11 ("every person … paid an inflated price"); 12 ("all consumers ... were all damaged by paying more").

6

REPLY ISO DEFENDANTS' MOTION TO
DISMISS AND/OR STRIKE COMPLAINT
NO. 2:14-CV-1051-TLN-KJN

Both the UCL and CLRA require Estrada to prove that she and every class member were exposed to a deceptive claim about Johnson's Baby Powder, that there is at least some causal link between the statement (or omission) and the class member's alleged harm, and that each class member incurred an injury because of his or her purchase.[12] Estrada's "price inflation" argument, on the other hand, is quite different—it has nothing to do with the buyer's expectations, whether the buyer was exposed to a false statement, or how the product actually performed. Instead, "price inflation" (or "fraud on the market") presumes that if prices are set by an efficient market, any omissions or misrepresentations about a product will be reflected in the product's price.[13]

This theory of causation has been limited to securities claims, where the "product" (a stock) is traded on an exchange that, in theory, reacts immediately to new information and sets prices accordingly. Even in securities cases, the doctrine is controversial,[14] and multiple courts in California[15] and elsewhere[16] have rejected attempts to apply "price inflation" to consumer class actions. And with good reason: the theories that underlie a "fraud on the market" presumption in

---

[12] *E.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (CLRA requires "'not only that a defendant's conduct was deceptive but that the deception caused [the plaintiff's] harm.'" (citation omitted)); *Tucker v. Pac. Bell*, 208 Cal. App. 4th 201, 228 (2012) ("Even if we assume that there were a common [material] misrepresentation ..., Plaintiffs could not present UCL class claims for restitution [here.]"); *Sevidal v. Target*, 189 Cal. App. 4th 905, 924 (2010) ("Even after the *Tobacco II* decision, the UCL and FAL still require some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief.").

[13] *Compare Basic Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988) ("[T]he market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."), *with* Opp. 1 ("[A]ll consumers who purchased the Baby Powder were injured at the time of purchase, regardless of whether they used the product for a specific purpose or used the product at all, because Defendants were able to sell the Baby Powder at an inflated price by concealing the Baby Powder's known safety risks.").

[14] *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014).

[15] *Mirkin*, 5 Cal. 4th at 1108 (rejecting "fraud on the market" in securities litigation); *In re POM Wonderful*, 2014 WL 1225184, at *3-4 ([P]laintiff's "Price Premium model depends upon a 'fraud on the market' theory ... [but the court is not] aware of any authority applying a fraud on the market theory to a consumer action."); *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 438 (C.D. Cal. 2007) (rejecting class premised on fraud on the market theory); *In re Actimmune (Actimmune I)*, 614 F. Supp. 2d 1037, 1054 (N.D. Cal. 2009) (rejecting attempt "to use a fraud-on-the-market theory to circumvent the reliance element of [UCL and CLRA] claims"), *Actimmune II*, 2009 WL 3740648, at *14 ([P]laintiffs' "'saturation' argument is nothing more than a repackaging of the 'fraud on the market' theory the court rejected in *Actimmune I*.... Even under *Tobacco II*, plaintiffs must allege that they relied upon defendants' misstatements." (citation omitted)).

[16] *E.g.*, *Williams v. Purdue Pharma*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003); *Int'l Union v. Merck*, 929 A.2d 1076, 1088 (N.J. 2007); *Oliveira v. Amoco*, 201 Ill. 2d 134, 140 (2002); *Merck*, 2012 Ky. App. LEXIS 31, at *20; *Garcia v. MedVed Chevrolet, Inc.*, 240 P.3d 371, 380 (Colo. Ct. App. 2009).

securities cases have no application to consumer products.[17] Estrada's "price inflation" theory is fundamentally inconsistent with cases like *Herrington*, *Boysen*, and *Myers-Armstrong*, and none of the cases Estrada cites come close to adopting it. Instead, in each of those cases, the plaintiff did not get the benefits promised.[18] The Court should reject the invitation to do that which, to J&J's knowledge, no court has ever done: adopt a securities-style "price inflation" theory of injury for California's consumer protection laws.

### B. As Pled, the Class Definition Is Overbroad and Must Be Stricken

In her Opposition, Estrada argues that her class definition ("all consumers") is appropriate because it is based on "objective" criteria. (Opp. 11.) Estrada is wrong. In the Ninth Circuit, "'[n]o class may be certified that contains members lacking Article III standing ... [Instead,] [t]he class must … be defined in such a way that anyone within it would have standing.'" *Sanders v. Apple*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009) (citation omitted).[19] Since the bulk of her proposed "class" has no injury, her class claims should be stricken from the Complaint.

### IV. ESTRADA'S CLAIMS SOUND IN FRAUD AND MUST COMPLY WITH 9(b)

Next, Estrada's assertion that Rule 9 should not apply because her claims do not "sound in fraud" is bizarre. (Opp. 12-13.) Estrada repeatedly argues that J&J misrepresented and omitted information about Baby Powder's alleged "risk"—if any of her allegations do not "sound in fraud," they are difficult to identify. (*Id.* 1, 7, 9-10, 14.) Here, Estrada cannot simply allege a

---

[17] If the market for Baby Powder were "efficient"—it is not—the public studies Estrada cites (Comp. ¶¶ 21-62) would have been promptly reflected in the product's price. *See In re IPO Sec. Litig.*, 471 F.3d 24, 43 (2d Cir. 2006) ("Plaintiffs' own allegations as to how slow the market was to correct the alleged price inflation despite what they also allege was widespread knowledge of the scheme indicate the very antithesis of an efficient market."); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 224 (2d Cir. 2008) ("the market for consumer goods, however, is anything but efficient"), *abrogated in part by Bridge v. Phoenix*, 553 U.S. 639 (2008).

[18] *In re IKO Roofing*, 2014 WL 2958615, at *1 (7th Cir. July 2, 2014) (tiles falsely marketed as meeting industry standard); *Garrison*, 2014 WL 2451290, at *4 (products not "all natural"); *Werderbaugh v. Blue Diamond*, 2014 WL 2191901, at *6 (N.D. Cal. May 23, 2014) (almond milk not "all natural"); *Colgan v. Leatherman*, 135 Cal. App. 4th 663, 672 (2006) (tool not "Made in U.S.A."). And *Kane*, 973 F. Supp. 2d at 1128-29, held that individual reliance is required.

[19] *See also Hovsepian v. Apple*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (class of "all" iMac buyers was "not ascertainable because it includes members who ... have no injury and no standing to sue"); *Minkler v. Kramer Labs.*, 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) (class of "all" buyers rejected because "the Class will include members who derived benefit from Fungi–Nail and are satisfied users of the product.… '[s]uch members have no injury and no standing to sue'" (citation omitted)).

1 laundry list of J&J statements without ever explaining whether she saw them or how they caused

2 her injuries (if at all). (*Id.* 14-15.)[20] And Estrada's assertion that her own reliance can be inferred

3 under *Tobacco II* is simply wrong. (*Id.* 13-14.) In fact, *Tobacco II* stands for the *opposite* point:

4 "a [named] plaintiff must plead and prove actual reliance to satisfy the standing requirement of

5 [the UCL]." *In re Tobacco II*, 46 Cal. 4th 298, 328 (2009). While Estrada suggests in her

6 Opposition that statements on the label—e.g., "soothing" and "comfortable"—are misleading

7 (Opp. 14-15), she does not actually *allege* those statements are false. (*Id*.) Nor could she—

8 Estrada would not have used Baby Powder for decades if it was not "soothing." Instead, her

9 claims all depend on the assertion that J&J failed to disclose a "risk"—*i.e.*, an omission.[21] Yet

10 she never states what, specifically, J&J should have put on the label. *See I.B. v. Facebook*, 905 F.

11 Supp. 2d 989, 1012 (N.D. Cal. 2012). In sum, Estrada's claims should comply with Rule 9(b).

12 **V.     ESTRADA'S IMPLIED WARRANTY CLAIM FAILS AS A MATTER OF LAW**

13         Next, Baby Powder is not "unmerchantable" just because one particular use (among

14 many) is associated with a "risk." (Opp. 15-16.) Products are only unmerchantable if they lack

15 "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure, Inc.*, 114 Cal.

16 App. 4th 402, 406 (2003).[22] Here, Plaintiff *does not* claim Baby Powder failed to perform, and

17 most users were never exposed to the "risk" she alleges.[23] Nor can Estrada evade the privity

18 requirement, which she concedes is "ordinarily required." (Opp. 17.) First, the "written labels"

19 exception she identifies "is applicable only to express warranties." *Burr v. Sherwin Williams*, 42

---

[20] Estrada must plead whether she personally relied on the statements she alleges. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (plaintiff did not specify "which sales material he relied upon in making his decision to buy"); *Lanovaz*, 2013 WL 675929, at *2 (striking claims related to defendant's website because a plaintiff "cannot expand the scope of his or her claims to include ... advertisements not relied upon").

[21] Again, since Estrada has not pled that J&J made a false affirmative statement *to her*, her negligent misrepresentation claim fails as a matter of law. *Lopez v. Nissan*, 201 Cal. App. 4th 572, 596 (2011) ("omissions" cannot support negligent misrepresentation).

[22] As even Plaintiff's own case demonstrates, products are only unmerchantable when the "risk" or "defect" impairs *all* intended uses. *See Roberts v. Electrolux*, 2013 WL 7753579, at *5 (C.D. Cal. Mar. 4, 2013) (dryers could not be used safely at all).

[23] Estrada argues that *Birdsong*, 590 F.3d at 958, does not apply because the iPod earbuds in that case had a broader "intended purpose," whereas Baby Powder (Estrada argues) has only a single use that "is dangerous." (Opp. 17.) But as J&J pointed out in its Motion, Baby Powder has a wide variety of uses that are unquestionably safe. (*See* Motion to Dismiss, Dkt. 18 at 2 n.4.)

Cal.2d 682, 696 (1954). Second, the "food and pharmaceutical" privity exception applies only to goods "designed solely for the introduction into the body of a human being"—for which Baby Powder is obviously not intended. *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 607 (1960) (applying exception to vaccine). Estrada's implied warranty claim should be dismissed with prejudice.[24]

## VI. **ESTRADA HAS NO "REAL AND IMMEDIATE THREAT" OF INJURY**

Finally, Estrada does not deny she is not "'realistically threatened by a *repetition*'" of any injury. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation omitted). Instead, she relies on cases following *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *4 (C.D. Cal. Apr. 11, 2011) to argue Article III should not "thwart the objective of California's consumer protection laws." (Opp. 19.) But many courts have rejected *Henderson* because "'a public-policy exception to the standing requirement ... does not square with Article III's mandate.'" *Luman*, 2014 WL 443960, at *8 (citation omitted).[25] Estrada's demand for injunctive relief should be stricken.

## VII. **CONCLUSION**

For the reasons set forth above, J&J respectfully requests that the Court dismiss the complaint and strike Estrada's class definition and request for injunctive relief.

---

[24] *Gilbert v. Steelform*, 82 Cal. App. 3d 65, 69-70 (1978), is of no help to Estrada—that court did "not need to decide the issue of privity" (*id*.) and later courts rejected attempts to use *Gilbert* to create a third-party beneficiary exception. *Xavier v. Philip Morris*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011); *Long v. Graco*, 2013 WL 4655763, at*12 (N.D. Cal. Aug. 26, 2013).

[25] *See also Burns v. Tristar*, 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) (Article III does not allow federal courts to enjoin conduct under the CLRA or UCL absent a "'real and immediate threat of repeated injury.'" (citation omitted)); *Forcellati v. Hyland's*, 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014) ("[I]t is improper 'to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws.'" (citation omitted)). Even if the Court accepts these policy arguments, Estrada does *not* allege, as she must, that she will buy the product in the future. *See Jou v. Kimberly-Clark*, 2013 WL 6491158, at *3-4 (N.D. Cal. Dec. 10, 2013) ("disagree[ing] with *Henderson* to the extent it holds that a plaintiff may seek injunctive relief even if she fails to allege any interest in purchasing the product in the future").

| | | |
|---|---|---|
| 1 | Dated:  August 28, 2014 | RICHARD B. GOETZ<br>MATTHEW D. POWERS<br>O'MELVENY & MYERS LLP |

By  /s. Matthew D. Powers
　　　Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson
Consumer Companies, Inc.

1 **PROOF OF SERVICE**

2       I, Linda M. Sarson, declare:

3       I am over the age of eighteen years and not a party to the within action. I am a

4 resident of or employed in the county where the service described below occurred. My business

5 address is Two Embarcadero Center, 28th Floor, San Francisco, California 94111-3823.

6       I hereby certify that on August 28, 2014, I electronically filed the following

7 document(s) with the Clerk of the Court for the United States District Court, Eastern District of

8 California, by using the Pacer CM/ECF system:

9 **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT**

10

11       Participants in the case who are registered Pacer CM/ECF users will be served

12 with the foregoing document(s) by the Pacer CM/ECF system.

13       I further certify that some of the participants in the case are not registered Pacer

14 CM/ECF users. I have served the foregoing document(s) as indicated below to the following non-

15 Pacer CM/ECF participant(s) as follows:

16

17 ☐   **ELECTRONIC SERVICE:** by causing a true and correct copy of the document(s) listed above to be transmitted via electronic mail (in PDF format) as set forth below

18

19 ☒   **U.S. MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco,

20     California addressed as set forth below. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that

21     practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that

22     on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit

23     for mailing in affidavit.

24

25

26

27

28                                                                                PROOF OF ELECTRONIC AND MAIL SERVICE
NO. 2:14-cv-1051-TLN-KJN

☐ **FEDERAL EXPRESS:** by putting a true and correct copy thereof in a sealed envelope designated by the carrier, with delivery fees paid or provided for, for delivery the next business day to the person(s) listed below, and placing the envelope for collection today by the overnight courier in accordance with the firm's ordinary business practices. I am readily familiar with this firm's practice for collection and processing of overnight courier correspondence. In the ordinary course of business, such correspondence collected from me would be processed on the same day, with fees thereon fully prepaid, and deposited that day in a box or other facility regularly maintained by Federal Express, which is an express carrier.

☐ **EMAIL:** by transmitting the document(s) indicated above in PDF format by electronic mail to the following person(s) at the email addresses set forth below.

<u>*Attorneys for Plaintiff and the Class*</u>

Allen Smith, Jr.
allen@smith-law.org
THE SMITH LAW FIRM
618 Towne Center Blvd., Suite B
Ridgeland, MS  39157
Telephone:  (601) 952-1422
Facsimile:  (601) 952-1426

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 28, 2014, at San Francisco, California.

_____
LINDA M. SARSON

OMM_US:72321221.1

PROOF OF ELECTRONIC AND MAIL SERVICE
NO. 2:14-cv-1051-TLN-KJN