UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONA ESTRADA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>Defendants. | No. 2:14-cv-01051-TLN-EFB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE COMPLAINT** |

This matter is before the Court pursuant to Defendants' Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Companies, Inc.'s ("J&J Consumer") (collectively "Defendants") Motion to Dismiss and/or Strike Plaintiff's Complaint. (Defs.' Mot. to Dismiss, ECF No. 18.) Plaintiff Mona Estrada ("Plaintiff"), on behalf of herself and all others similarly situated (collectively "Plaintiffs") filed an opposition to Defendants' motion. (Pls.' Opp'n, ECF No. 21.) The Court has carefully considered the arguments raised in Defendants' motion and reply, as well as Plaintiff's opposition. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.[1]

---

[1] Because the Court is granting Defendants' Motion to Dismiss for lack of Article III standing, the Court will not address Defendants' other arguments.

1

## I. FACTUAL BACKGROUND

From 1950 to sometime in 2013, the named Plaintiff, Mona Estrada, purchased Johnson's® Baby Powder ("Baby Powder") for personal use in her genital area after initially reading the label and determining the product was safe to use. (Compl., ECF No. 1 at ¶ 9.) Defendant J&J markets, distributes, and sells Baby Powder products to consumers in the United States, and Defendant J&J Consumer researches, distributes, and sells Baby Powder products to consumers in the United States. (ECF No. 1 at ¶¶ 10–11.)

Plaintiff claims Defendants' Baby Powder is a talc-based powder sold as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture for both babies and women. (ECF No. 1 at ¶ 9.) Plaintiff alleges that talc-based powders have a 33% increased risk of ovarian cancer when used to powder women's genitals compared to those women who never used the powders. (ECF No. 1 at ¶ 3.) For this reason, Plaintiff argues that Baby Powder is not safe. (ECF No. 1 at ¶ 19.) Plaintiff alleges that Defendants knew of the increased risk of ovarian cancer from use of the product. (ECF No. 1 at ¶¶ 21–57.) Plaintiff alleges that Defendants seek to convey an image as a safe and trusted family brand by operating a website dedicated to the safety of their products. (ECF No. 1 at ¶ 17.) Plaintiff argues that Defendants do not warn or inform customers of the increased risk of ovarian cancer when used in the genital area. (ECF No. 1 at ¶ 20.) Plaintiff alleges that had she known the truth about the safety of using the product, she would not have purchased the product. (ECF No. 1 at ¶ 9.) Plaintiff argues that she suffered an economic injury-in-fact. (ECF No. 1 at ¶ 9.) Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages. (ECF No. 1 at ¶ 9.)

On April 28, 2014, Plaintiff brought this suit against Defendants for: 1) violation of the Consumers Legal Remedies Act ("CLRA") under California Civil Code section 1750, *et seq*; 2) violation of the Unfair Competition Law ("UCL") under California Business and Professions Code section 17200, *et seq*; 3) Negligent Misrepresentation; and 4) Breach of Implied Warranty. (ECF No. 1 at 1.) Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased Baby Powder. (ECF No. 1 at ¶ 5.) Plaintiff seeks declaratory and injunctive relief requiring Defendants to properly inform consumers regarding the

health hazards of using Baby Powder and to obtain redress for those who have purchased the product.  (ECF No. 1 at ¶ 5.)

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(1) allows a party, or the Court on its own initiative, to challenge the court's subject matter jurisdiction at any stage in the litigation.  Fed. Rule Civ. Pro. 12(b)(1) & (h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).  If a plaintiff lacks standing under Article III of the United States Constitution, then the Court lacks subject matter jurisdiction and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).  Once a party has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction by putting forth "the manner and degree of evidence required" by whatever stage of the litigation the case has reached.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *see also Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011) (at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met).

To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).  "The party invoking federal jurisdiction bears the burden of establishing these elements [ . . . ] with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.  In class actions, "the named representatives must allege and show that they personally have been injured." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F. 3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F. 2d 733, 736–37 (9th Cir. 1978)).  The "injury must have actually occurred or must occur imminently; hypothetical speculative or other 'possible future' injuries do not count in the standings calculus." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F. 3d 817, 820 (9th

Cir. 2002) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

### III. ANALYSIS

Plaintiff brought this suit against Defendants for: 1) violation of the CLRA; 2) violation of the UCL; 3) Negligent Misrepresentation; and 4) Breach of Implied Warranty. (ECF No. 1 at 1.) Defendants contend that Plaintiffs do not have an injury within the meaning of Article III of the United States Constitution. The Court agrees and finds that Plaintiff does not allege an injury sufficient to meet Article III standing for any of its claims.

Consistent with the requirements of Article III, plaintiffs must allege an injury that is "concrete and particularized *as to themselves*." *Birdsong v. Apple*, 590 F. 3d 955, 960 (9th Cir. 2009); *see Lujan*, 504 U.S. at 561 n.1. "[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing." *Sierra Club v. Morton*, 405 U.S. 727, 733–34 (1972). However, in order to have standing to bring claims asserting an economic injury-in-fact under Article III, courts have found that plaintiffs must demonstrate they were deceived, and either paid a premium for the product or would have purchased an alternative product.[2] *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846–47 (N.D. Cal. 2012) ("Overpaying for goods or purchasing goods a person otherwise would not have purchased based upon alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing"); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (an economic injury is sufficiently alleged if plaintiff would have purchased an alternative beverage "had defendant's [beverage] been differently labeled").[3] Article III standing may also be satisfied by allegations that a plaintiff would not have purchased the product had she known about the misbranding. *Kane*, 973 F. Supp. 2d at 1128; *Boysen*, 2012 WL 2953069, at *7; *Herrington*, 2010 WL 3448531, at *5.

If a plaintiff received the benefit-of-the-bargain because the product performed as

---

[2] Because each of Plaintiff's claims rely on establishing an economic injury-in-fact, this Court's analysis applies to each of Plaintiff's four claims.

[3] *See also Birdsong*, 590 F. 3d at 961; *Maya*, 658 F.3d at 1069; *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962 (N.D. Cal. 2013); *Kane v. Chobani*, 973 F. Supp. 2d 1120, 1128 (N.D. Cal. 2014); *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *10-12 (N.D. Cal. May 15, 2013); *Lanovaz v. Twinings North America, Inc.*, No. 12-02646, 2013 WL 675929, *6 (N.D. Cal. Feb. 25, 2013); *Fisher v. Monster Beverage Corp.*, No. EDCV 12-02188-VAP, 2013 WL 4804385, at *6 (C.D. Cal. July 9, 2013).

promised, the plaintiff does not have an injury to satisfy Article III standing. *See Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08-04741 WHA, 2009 WL 1082026, at *3-4 (N.D. Cal. Apr. 22, 2009) aff'd, 382 F. App'x 545 (9th Cir. 2010) ("after consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund [ . . . .] [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff"). *See also Herrington*, 2010 WL 3448531, at *2-5; *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1004 (S.D. Cal. 2011); *Boysen*, 2012 WL 2953069, at *7; *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002); *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011).

In the instant case, Defendants argue that Plaintiff does not have standing to bring this action because Plaintiff has not suffered an "injury" which satisfies Article III of the United States Constitution.[4] (ECF No. 18 at 7–9.) Plaintiff contends that she suffered an economic injury because she spent money she otherwise would not have spent in purchasing the Baby Powder. (ECF No. 21 at 7.) Plaintiff alleges that either she paid a premium price for a mislabeled product or she would not have purchased the Baby Powder had she known the alleged increased risk of ovarian cancer. (ECF No. 21 at 7.) Plaintiff argues that Defendants misrepresented that the Baby Powder was clinically proven to be safe when they knew or should have known that there is an increased risk of ovarian cancer for women who use talc powders in their genital area. (ECF No. 21 at 14.)

Defendants argue that Plaintiff has not suffered an economic injury because she received all the benefits she expected when she purchased and used the Baby Powder and never suffered any of the ill effects that she contends may have impacted other consumers. (ECF No. 18 at 8.) Defendants further argue that Plaintiff fails to allege that any statements on the label are actually false and fails to identify a claim on which statements Plaintiff relied. (ECF No. 18 at 12.) Defendants contend that Plaintiff does not allege that she relied on an affirmative "safety" promise when she bought the product—much less that she paid a premium because of such a

---

[4] Defendants also argue that Plaintiff must establish standing under the statutory requirements of the UCL and the CLRA. (ECF No. 18 at 7 n.9.) Because the Court finds that Plaintiff lacks Article III standing, it will not address the individual statutory requirements of these claims.

promise. (Defs.' Reply, ECF No. 22 at 4–5.)

### a. **Specific Misrepresentations by Defendants**

For Plaintiff to show she suffered an economic injury sufficient for Article III standing, Plaintiff must allege she was deceived, and either paid a premium for the product or would have purchased an alternative product. *See Pirozzi*, 913 F. Supp. 2d at 846–847.[5] In *Pirozzi v. Apple*, the plaintiff alleged "that she overpaid for her Apple Device and/or was induced to purchase an Apple Device." *Id.* at 846. The plaintiff claimed to have relied on Apple's "repeated[] advertising that its products were safe and secure [and the assertion that Apple] closely monitor[ed] the apps available in the App Store." *Id.* The court acknowledged that "[o]verpaying for goods or purchasing goods a person otherwise would not have purchased based on alleged misrepresentations by the manufacturer would satisfy the injury-in-fact and causation requirements for Article III standing." *Id.* at 846–847. However, the court found that because the "[p]laintiff fail[ed] to allege specifically which statements she found material to her decision to purchase an Apple Device or App. [ . . . the], [p]laintiff ha[d] not suffered an injury-in-fact that is caused by the complained of conduct." *Id.* at 847.

Similarly, Plaintiff here alleges that she was deceived when she relied on Defendants' representation that the Baby Powder was "safe." (ECF No. 1 at ¶¶ 4, 9, 14, 16, 17, 70, 71, 86, 103, 104, 111, & 116; ECF No. 21 at 1–4, 6, 9, 10, 13–15, & 18.) However, Plaintiff fails to identify any specific statements about safety made by Defendants that she found material to her decision to purchase the Baby Powder. Instead, Plaintiff continuously cites to the fact that she relied *on the label* of the Baby Powder when she purchased the product and *her belief* that the product was safe. (ECF No. 1 at ¶¶ 4, 9, 15, 16, 70, & 71; ECF No. 21 at 2, 4, 13, 14, & 18.) According to Plaintiff, the label of the Baby Powder states that "Johnson's® Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable. Our incredibly soft,

---

[5] *See also Bruton v. Gerber Products Co.*, 961 F. Supp. 2d 1062, 1088 (N.D. Cal. 2013); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 962 (N.D. Cal. 2013); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *5 (N.D. Cal. Mar. 26, 2013); *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2014 WL 1973378, at *7 (N.D. Cal. May 14, 2014); *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *8 (N.D. Cal. Dec. 3, 2013); *Fisher v. Monster Beverage Corp.*, No. EDCV 12-02188-VAP, 2013 WL 4804385, at *6 (C.D. Cal. July 9, 2013).

hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief" and to "[s]hake powder directly into your hand, away from the face, before smoothing onto the skin." (ECF No. 1 at ¶ 14.) Plaintiff does not assert that the product was labeled "safe," and instead, Plaintiff alleges that she relied on Defendants' branding that the Baby Powder was safe. (ECF No. 1 ¶¶ 16 & 17.) However, the only branding that Plaintiff cites to are the general safety statements on both of Defendants' websites.[6] (ECF No. 1 ¶¶ 16 & 17.) These statements lack sufficient specificity to substantiate an injury. Moreover, Plaintiff does not specifically claim to have relied on these online statements at all when purchasing the Baby Powder and could not have relied on them in 1950 when she initially purchased the product.[7] Thus, Plaintiff fails "to allege specifically which statements she found material to her decision to purchase" to provide an injury for Article III standing.[8] *Pirozzi*, 913 F. Supp. 2d 840 at 847.

b. **Benefit-of-the-Bargain**

Furthermore, Plaintiff cannot claim that she paid a premium for the Baby Powder because she received all of the intended benefits of the bargain.[9] Plaintiff used the Baby Powder

---

[6] Plaintiff alleges that the website makes the following statements, "[c]linically proven to be safe, gentle and mild," "safety is our legacy," and "every beauty and baby care product […] is safe and effective when used as directed." [6] (ECF No. 1 ¶¶ 16 & 17.)

[7] In addition, Plaintiff claims that Defendants made statements that women can use the Baby Powder daily on their genital area. (ECF No. 1 at ¶¶ 4, 14, 16, 70, 71, & 103; ECF No. 21 at 1, 2, 3, 6, 14, & 15.) However, Plaintiff fails to allege a single specific statement made by Defendants to this effect.

[8] Plaintiff also claims that the product label misrepresents that the Baby Powder is "gently," "helping," "comfortable," "tested," "delicate," "soft," and "soothing." (ECF No. 21 at 15.) However, Plaintiff merely argues that the Baby Powder is not "gently," "helping," "comfortable," "tested," "delicate," "soft," or "soothing" because it allegedly increases the risk of ovarian cancer. (ECF No. 21 at 15.) These arguments are not mutually exclusive. Plaintiff does not allege specifically why the Baby Powder cannot be "gently," "helping," "comfortable," "tested," "delicate," "soft," or "soothing" when it also increases the risk of ovarian cancer. Thus, the Court does not give this argument any weight.

[9] *See Myers-Armstrong*, 2009 WL 1082026, at *3-4 ("after consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund [ . . . .] [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff"); *Herrington*, 2010 WL 3448531, at *2-5 (holding that plaintiffs who alleged the baby shampoo contained carcinogens did not have a cognizable injury because they used "a consumable good [. . .] to their benefit"); *Rivera*, 283 F.3d at 320 ("[plaintiff] paid for an effective pain killer, and she received just that—the benefit of her bargain"); *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d at 512 ("[p]laintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm. The products have not been recalled, have not caused any reported injuries, and do not fail to comply with any federal standards. The products had no diminished value due to the presence of the lead. Thus, Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products"); *Boysen*, 2012 WL 2953069, at *7 (adopting the *In re Fruit Juice* court's reasoning as it applied to Walgreen's fruit juice). *Cf. In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d at 1004 (holding plaintiffs did not receive the benefit-of-the-bargain because they "received a product with no proved weight loss benefit").

7

for decades presumably because Plaintiff enjoyed the benefits of the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness. (ECF No. 1 ¶¶ 9, 12, & 13.) Her continued purchase of the Baby Powder suggests that Plaintiff indeed received such benefits from the Baby Powder and believed it was worth the price. Thus, Plaintiff received the benefit-of-the-bargain for the Baby Powder. Because she received the benefit-of-the-bargain, Plaintiff's allegation that she paid a premium for the Baby Powder fails.[10] Plaintiff received exactly what she paid for—the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness. Plaintiff's only complaint against the Baby Powder is the alleged risk of ovarian cancer. Plaintiff received the benefit-of-the-bargain because she received the exact product she intended to purchase, unlike the cases she cites where the consumers received products that were mislabeled or defective.[11] Here, Plaintiff received the exact benefits for which she purchased the Baby Powder. Because Plaintiff received the benefit-of-the-bargain, she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing the product.

### c. Alternative Product

Finally, Plaintiff did not allege that she would have purchased an alternative product in order to satisfy Article III standing. *See Pirozzi*, 913 F. Supp. 2d at 846–847. In fact, Plaintiff cannot allege that she would have purchased an alternative product because she alleges that *all* talc-based products increase the risk of ovarian cancer. Thus, any alternative product Plaintiff could have purchased would have the same alleged repercussions if she had used the

---

[10] *See Myers-Armstrong*, 2009 WL 1082026, at *3-4 (holding that plaintiff does not have a cognizable injury for Article III standing because she received the benefit-of-the-bargain); *Herrington*, 2010 WL 3448531, at *2-5 (same); *Rivera*, 283 F.3d at 320 (same); *In re Fruit Juice Products Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d at 512 (same); *Boysen*, 2012 WL 2953069, at *7 (same).

[11] *See Kane*, 973 F. Supp. 2d at 1128 (plaintiffs alleged yogurt was mislabeled as "natural" because it contained artificial ingredients); *Garrison v. Whole Foods*, 2014 WL 2451290 (N.D. Cal. June 2, 2014) (plaintiffs alleged that they received products labeled "natural" when they contained artificial ingredients); *Lanovaz v. Twinings N. Am., Inc.*, No. 12–cv–02646 (RMW), 2013 WL 2285221, at *3 (N.D. Cal. May 23, 2013) (plaintiff purchased teas which contained a non-tea plant); *Meaunrit v. ConAgra Foods*, 2010 WL 2867393 (N.D. Cal. July 20, 2010) (plaintiff threw away chicken pot pies labeled microwavable because they could not reach the "kill-step" temperature required to eliminate any pathogens in the microwave); *Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1116 (C.D. Cal. 2008) (plaintiffs alleged the toy was unusable because it contained lead); *Sanchez v. Wal-Mart Stores, Inc.*, No. 2:06-cv-2573, 2008 WL 3272101, at *3 (E.D. Cal. Aug. 5, 2008) (plaintiffs alleged a defective stroller was unusable).

product in the same way. *See Boysen v. Walgreen Co.*, 2012 WL 2953069 at n.9 (noting that it is unclear whether alternative products exist because "most if not all consumer fruit juices contain levels of lead and arsenic").

Thus, Plaintiff does not have an economic injury to meet Article III standing because Plaintiff did not allege specific misrepresentations by Defendants, received the benefit-of-the-bargain, and did not allege any alternative product that she would have purchased.

Because she has no economic injury as discussed above and she does not allege that she has ovarian cancer caused by the Baby Powder, Plaintiff does not suffer from any actual or imminent injury. (ECF No. 1 at ¶ 9.) Therefore, Plaintiff lacks standing under Article III and this Court does not have jurisdiction over Plaintiff's claims.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint with leave to amend. (ECF No. 9.) Plaintiff is instructed to file an amended complaint within 30 days of entry of this Order.

IT IS SO ORDERED.

Dated:  March 26, 2015

_____
Troy L. Nunley
United States District Judge