RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MONA ESTRADA, On Behalf of Herself and All Others Similarly Situated,

Plaintiff,

v.

JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,

Defendants.

Case No. 2:14-cv-01051-TLN-KJN

**DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Hearing Date: July 2, 2015
Time: 2:00 p.m.
Judge: Hon. Troy L. Nunley
Courtroom: 2

First Amended Complaint Filed: April 24, 2015

**NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE**

**TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 2, 2015, at 2:00 p.m. or as soon thereafter as the matter may be heard, in the United States District Court, Eastern District of California, Sacramento Courthouse, located at 501 I Street, Courtroom 2, before the Honorable Troy L. Nunley, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively, "J&J" or "Defendants") will, and hereby do, move the Court for an order dismissing Plaintiff Mona Estrada's ("Estrada") First Amended Complaint ("FAC") pursuant to Rules 12(b)(1), 12(b)(6), 9(b), and/or 12(f) of the Federal Rules of Civil Procedure.

Estrada's FAC suffers from the same defects as her original Complaint and should be dismissed with prejudice. Specifically, J&J seeks an order (1) dismissing Estrada's entire FAC because, like her original Complaint, the FAC demonstrates that she has not suffered an "injury" for Article III or statutory standing purposes; (2) dismissing Estrada's UCL, CLRA, and negligent misrepresentation claims because she fails to meet the heightened pleading standard of Rule 9(b); (3) dismissing Estrada's negligent misrepresentation claim because she fails to identify any actionable misstatements; (4) dismissing Estrada's implied warranty claim for failure to state a claim and for lack of privity; (5) dismissing and/or striking Estrada's prayer for injunctive relief for lack of standing; and (6) dismissing and/or striking Estrada's class action allegations. Because Estrada's failure to amend her complaint to state a cognizable claim indicates that she is unable to do so, the Court should now dismiss the entire FAC with prejudice.

This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other related documents filed in connection with this Motion, the papers and records on file in this action, and such other written and oral argument as may be presented to the Court.

Dated: May 18, 2015

RICHARD B. GOETZ
MATTHEW D. POWERS
O'MELVENY & MYERS LLP

By: */s/* Matthew D. Powers
Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc.

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND FACTS | 4 |
| | A. The Original Complaint | 4 |
| | B. The Dismissal Order | 5 |
| | C. The New Amended Complaint | 6 |
| III. | LEGAL STANDARDS | 7 |
| IV. | PLAINTIFF SUFFERED NO INJURY | 9 |
| | A. Estrada Received the Benefit of Her Bargain | 10 |
| | B. Estrada Has Not Alleged an Economic Loss | 11 |
| V. | PLAINTIFF'S CLASS DEFINITION SHOULD BE STRICKEN | 13 |
| VI. | PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED UNDER RULE 9(B) | 15 |
| VII. | PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND IMPLIED WARRANTY CLAIMS FAIL AS A MATTER OF LAW | 16 |
| | A. Negligent Misrepresentation Requires a "Positive Assertion" | 16 |
| | B. Breach of Implied Warranty | 17 |
| | 1. Johnson's Baby Powder Is Not "Unmerchantable" | 17 |
| | 2. Plaintiff Lacks Privity | 18 |
| VIII. | PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF | 18 |
| IX. | CONCLUSION | 19 |

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Adesokan v. U.S. Bank, N.A.*,
No. 1:11–cv–01236–LJO–SKO, 2012 WL 395969 (E.D. Cal. Feb. 7, 2012) .......................... 9

*Am. Suzuki Motor Corp. v. Superior Court*,
37 Cal. App. 4th 1291 (1995) .......................................................................................... 13, 17

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
158 Cal. App. 4th 226 (2007) .......................................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................ 3, 7

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988) ........................................................................................... 7

*Baltazar v. Apple, Inc.*,
No. CV-10-3231-JF, 2011 WL 588209 (N.D. Cal. Feb. 10, 2011) ...................................... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 3, 7

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................................................ passim

*Bishop v. Saab Auto. A.B.*,
No. 95-cv-0721 JGD (JRX), 1996 WL 33150020 (C.D. Cal. Feb. 16, 1996) ....................... 13

*Boysen v. Walgreen Co.*,
No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) .......... 2, 10, 11

*Buckland v. Threshold Enters., Ltd.*,
155 Cal. App. 4th 798 (2007) ........................................................................................... 9

*Campion v. Old Republic Home Prot. Co.*,
861 F. Supp. 2d 1139 (S.D. Cal. 2012) ............................................................................ 19

*Cent. Delta Water Agency v. United States*,
306 F.3d 938 (9th Cir. 2002) ........................................................................................... 7

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ......................................................................................... 7

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ......................................................................................... 18

*Cohen v. DirecTV, Inc.*,
178 Cal. App. 4th 966 (2010) .......................................................................................... 16

*Crouch v. Johnson & Johnson Consumer Cos.*,
No. 09-cv-2905 (DMC), 2010 WL 1530152 (D.N.J. Apr. 15, 2010) .................................... 11

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006) ..... 16

*Deitz v. Comcast Corp.*, No. 06-cv-06532 WHA, 2006 WL 3782902 (N.D. Cal. Dec. 21, 2006) ..... 19

*Fair v. U.S. EPA*, 795 F.2d 851 (9th Cir. 1986) ..... 8

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ..... 8

*Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983 (E.D. Cal. 2012) ..... 9

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ..... 9

*Gest v. Bradbury*, 443 F.3d 1177 (9th Cir. 2006) ..... 19

*Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09–1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..... 2, 10, 11

*Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908 (2001) ..... 11

*Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009) ..... 14

*Hoey v. Sony Elec., Inc.*, 515 F. Supp. 2d 1099 (N.D. Cal. 2007) ..... 16

*In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) ..... 15

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07–MDL–01871, 2011 WL 4007878 (E.D. Pa. Sept. 7, 2011) ..... 12

*In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PBG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ..... 9

*In re Hulu Privacy Litig.*, No. 11-CV-3764 (Dkt. No. 211) (N.D. Cal. June 17, 2014) ..... 14

*In re Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172 (D. Mass. 2006) ..... 12

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614 (W.D. Wash. 2003) ..... 14

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ..... 8, 15, 16

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Khasin v. Hershey Co.*,
No. 5:12–CV–01862 EJD, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .............................. 12

*Koh v. S.C. Johnson & Son*,
No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010) ...................... 12

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) ........................................................................................................ 9, 16

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)................................................................................................ 9

*Long v. Graco Children's Prods. Inc.*,
No. 13–cv–01257–WHO, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ............................ 18

*Lopez v. Nissan N. Am., Inc.*,
201 Cal. App. 4th 572 (2011) ............................................................................................... 16

*Loreto v. Proctor & Gamble Co.*,
515 F. App'x 576 (6th Cir. 2013) .......................................................................................... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ................................................................................................................ 9

*Lyons v. Bank of Am., NA*,
No. C 11–1232 CW, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011) ..................................... 13

*Maxwell v. Unilever U.S., Inc.*,
No. 12-CV-1736, 2013 WL 1435232 (N.D. Cal. Apr. 9, 2013) ............................................ 16

*McGlinchy v. Shell Chem. Co.*,
845 F.2d 802 (9th Cir. 1988).................................................................................................. 7

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996).................................................................................................. 9

*Mikhlin v. Johnson & Johnson*,
No. 4:14-CV-881 RLW, 2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) ................................. 2

*Mocek v. Alfa Leisure, Inc.*,
114 Cal. App. 4th 402 (2003) ............................................................................................... 17

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ................................................................................................................ 9

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
No. 14–cv–02006–JST, 2015 WL 510919 (N.D. Cal. Feb. 5, 2015)..................................... 12

*Myers-Armstrong v. Actavis Totowa, LLC*,
No. C 08–04741 WHA, 2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) ....................... 2, 10, 11

*Neilson v. Union Bank of Cal., N.A.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) ............................................................................ 8, 15

**TABLE OF AUTHORITIES**
**(continued)**


**Page**

*Pence v. Andrus*, 586 F.2d 733 (9th Cir. 1978)........................................................................ 9

*Red v. Kraft Foods, Inc.*, CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 186948 (C.D. Cal. Apr. 12, 2012)................................................ 14

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002)...................................................................... 2, 10, 11

*Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250 (1st Cir. 2010)........................................................................ 18

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)............................................................. 3, 13

*Sevidal v. Target Corp.*, 189 Cal. App. 4th 905 (2010)........................................................................ 16

*Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967 (2003)........................................................................ 17

*Soares v. Lorono*, No. 12-cv-05979-WHO, 2014 U.S. Dist. LEXIS 24674 (N.D. Cal. Feb. 25, 2014)................................................................................................ 18

*Stephenson v. Neutrogena Corp.*, No. C 12-0426-PJH, 2012 WL 8527784 (N.D. Cal. July 27, 2012)............................ 19

*Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010)............................................................ 13

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)............................................................ 4, 8, 15, 16

*Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033 (9th Cir. 2006)...................................................................... 19

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011)...................................................................... 19

*Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. 2011)...................................................... 14, 18

**<u>STATUTES</u>**

Cal. Bus. & Prof. Code § 17204 ........................................................................ 9

Cal. Bus. & Prof. Code § 17208 ........................................................................ 13

Cal. Bus. & Prof. Code § 17535 ........................................................................ 9

Cal. Civ. Code § 1780(a) ........................................................................ 9

Cal. Civ. Code § 1783........................................................................ 13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Cal. Health & Safety Code § 25249.8(b) ........ 1

Prop. 64, § 1, subd. (e) ........ 9

**OTHER AUTHORITIES**

Serena C. Houghton et al., *Perineal Powder Use and Risk of Ovarian Cancer*, 106(9) J. NAT'L CANCER INST. (2014) ........ 1

**RULES**

Fed. R. Civ. P. 12(b)(1) ........ 7, 9

Fed. R. Civ. P. 12(b)(6) ........ 7

Fed. R. Civ. P. 12(f) ........ 8

Fed. R. Civ. P. 9(b) ........ 4, 8, 15, 16

## I. INTRODUCTION

Plaintiff Mona Estrada's First Amended Complaint ("FAC") rests on the same allegations that this Court has already rejected. (*See* March 27, 2015 Order Granting Defendants' Motion to Dismiss and/or Strike Complaint (Dkt. 26) (the "Order").) In her original complaint, Estrada contended that all purchasers of Johnson's Baby Powder should get their money back because of an alleged health "risk" that had no impact on the vast majority of class members, including Estrada herself. Specifically, Estrada alleged that a subset of the product's purchasers—women who regularly used Johnson's Baby Powder in their genital area for years—was supposedly exposed to a risk of ovarian cancer from the talc in that product.[1] But as this Court has already held, Estrada herself suffered no injury whatsoever (economic or otherwise) because the Baby Powder she purchased performed exactly as she expected it would, and she never suffered any ill effects from the product's supposed health "risks." (Order at 8 (since Estrada "received the exact benefits for which she purchased the Baby Powder," she "cannot claim that she spent money that she would not have otherwise spent …").) Instead, as this Court recognized, Estrada "received the benefit-of-the-bargain for the Baby Powder," and has no cognizable economic injury. (*Id.*)

[1] For purposes of this Motion, the Court must accept as true Estrada's allegation that extended use of talc by adult women in their genital area is associated with a 33% increased risk of ovarian cancer. (FAC ¶ 4.) But if this case proceeds, Defendants Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc. (collectively, "J&J") will prove that Estrada's assertions about those "risks" are completely meritless. As a recent study published in the *Journal of the National Cancer Institute* reaffirmed, "perineal powder use does not appear to influence ovarian cancer risk." Serena C. Houghton et al., *Perineal Powder Use and Risk of Ovarian Cancer*, 106(9) J. NAT'L CANCER INST. (2014). None of the older studies Estrada cites actually establish a causal relationship between female genital talc use and ovarian cancer, and many of those studies are seriously flawed. For example, none of the studies were conducted on the actual products at issue; Cramer (1982) and Chen (1992) (*id.* ¶¶ 27, 34) did not account for confounding factors such as age and obesity; and Egi (1961), Cralley (1968), Henderson (1971), Rohl (1976), Cramer (1982), Hartge (1983), Whittemore (1988), Harlow (1989), Cook (1997), Gertig (2000), and Mills (2004) (*id.* ¶¶ 24–27, 29–30, 32, 39, 44–45) included exposures to products with asbestiform talc (J&J's products have been free of asbestiform talc for decades). The U.S. Food and Drug Administration ("FDA") has not restricted the use of non-asbestiform talc in cosmetics. *See* http://www.fda.gov/cosmetics/ productsingredients/ingredients/ucm293184.htm. Non-asbestiform talc (the type of talc used in Johnson & Johnson's products) is also not listed as a cancer-causing agent by the American Cancer Society or by California's Office of Environmental Health Hazard Assessment under California's Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986. *See* Cal. Health & Safety Code § 25249.8(b), www.cancer.org/cancer/cancercauses/othercarcinogens/generalinformationaboutcarcinogens/ known-and-probable-human-carcinogens. In addition, the Centers for Disease Control and Prevention ("CDC") does not list talc use in their risk factors for ovarian cancer. *See* http://www.cdc.gov/cancer/ovarian/basic_info/risk_factors.htm.

With few exceptions, the allegations in Estrada's FAC are virtually identical to the claims that this Court already rejected. Just as in her original Complaint, Estrada claims economic injury in the form of the purchase price of Johnson's Baby Powder, even though she admits that the product performed as expected and she never suffered any ill effects from its use. (FAC ¶ 11 ("Plaintiff is not claiming physical harm or seeking the recovery of personal injury damages.").) In other words, as J&J pointed out in its original motion to dismiss, Estrada "received the exact benefits for which she purchased the Baby Powder" and never experienced any of the problems she alleges *others* may have developed. (Order at 8.) Yet she continues to seek a windfall in the form of a complete refund for a product that, for her, performed exactly as promised.[2]

In the new FAC, Estrada now also contends, for the first time, that if the "omitted" information had been disclosed, Estrada would have purchased an "alternative" cornstarch-based powder that was "functionally the same" as Baby Powder. (FAC ¶¶ 5, 22.) But, first, Estrada never identifies which cornstarch-based "alternative" she would have (or could have) purchased. Second, and more fundamentally, Estrada does *not* allege that buying this unidentified "alternative" would have saved her any money. Conspicuously absent from the FAC is any allegation that this cornstarch alternative would have been *cheaper* than Baby Powder. That is no accident: Talc and cornstarch products are often sold *at the same price*[3]—Estrada cannot allege in

[2] *See Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) (dismissing nearly identical claims over Baby Powder under Missouri law because plaintiffs "received 100% use (and benefit) from the products and have no quantifiable damages"); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08–04741 WHA, 2009 WL 1082026, at *3–4 (N.D. Cal. Apr. 22, 2009) ("[A]fter consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund …. [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff."); *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09–1597 CW, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010) (rejecting "no injury" economic claims for failure to warn of alleged carcinogens in Johnson's Baby Shampoo ); *Boysen v. Walgreen Co*., No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) (rejecting "no injury" economic claims for failure to warn of alleged lead and arsenic in fruit juices); *Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 319–20 (5th Cir. 2002) (rejecting "no injury" economic claims for failure to warn of risks of medication because "[b]y plaintiffs' own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain.").

[3] *Compare* http://www.cvs.com/shop/baby-child/bath-skin-care/powders/johnson-s-baby-powder-skuid-101683 (Johnson's Baby Powder Original, 4 oz, $2.77) and http://www.walgreens.com/store/c/johnson's-baby-powder-original/ID=prod6144747-product (Johnson's Baby Powder Original, 22 oz, $6.99), *with* http://www.cvs.com/shop/baby-child/bath-skin-care/powders/johnson-s-pure-cornstarch-baby-powder-skuid-107326 (Johnson's Pure Cornstarch Baby

good faith that buying an "alternative" cornstarch product would have saved her money. In other words, Estrada still has not alleged—and, under the circumstances, cannot possibly allege—that she "spent money that she would not have otherwise spent." (Order at 8.)

Estrada's claim that "all" purchasers suffered an economic injury is also implausible on its face.[4] As before, Estrada argues that "[a]ll persons who purchased Johnson's Baby Powder" should get their money back because, she contends, women who apply the product directly to their genital area allegedly have an increased risk. (FAC ¶ 78.) But as J&J explained in its motion to dismiss Estrada's last complaint, Baby Powder has dozens of beneficial uses that have nothing to do with that specific use,[5] and Estrada still fails to explain why the elimination of that one particular use would render the product worthless. At a minimum, Estrada's proposed class allegations should be stricken because her putative class of "all" purchasers includes many individuals who were never exposed to the alleged risk: (1) men (who do not have ovaries), and (2) the many women who bought Baby Powder for uses other than in their genital area. *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990–91 (N.D. Cal. 2009) (striking class allegations where the class "contain[ed] members lacking Article III standing …. The class must therefore be defined in such a way that anyone within it would have standing.").

Estrada also has not pled any new facts that would alter this Court's conclusion that she "fails to allege specifically which statements she found material to her decisions to purchase." (Order at 7.) Instead, Estrada continues to argue that she "relied" on statements on the product's

---

Powder, 4 oz, $2.77) and http://www.walgreens.com/store/c/johnson's-baby-pure-cornstarch-powder-aloe-vera--vitamin-e/ID=prod6155197-product (Johnson's Pure Cornstarch Baby Powder, 22 oz, $6.99) (retrieved on May 8, 2015).

[4] *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff's claims must move "across the line from conceivable to plausible.").

[5] For example, talcum powder is commonly used in shoes and on the feet to eliminate moisture and odors, under the arms in addition to or instead of deodorant, on the hands of athletes to prevent slipperiness, on clothing or carpets to absorb grease, on pets as dry shampoo, on sheets to make sleeping more comfortable, on the skin after shaving, on floor boards to silence squeaks, on skin to help remove sticky sand, on sticky rubber products (such as dish gloves) to store and separate, in litter boxes for freshness, etc. *See, e.g.*, *Brilliant Uses for Baby Powder*, Reader's Digest, www.rd.com/home/brilliant-uses-for-baby-powder (retrieved on June 11, 2014).

label (FAC ¶ 11) that have nothing to do with safety and that, as this Court already recognized, she never actually alleges are "false." (*See* Order at 7.) Estrada also cites general safety statements on J&J's website which she still does not plead she actually saw (much less relied on) before buying Baby Powder (FAC ¶ 19) and which, in any event, the Court has already held "lack sufficient specificity to substantiate an injury" for purposes of Article III standing. (Order at 7.) Thus, although her UCL, CLRA, and negligent misrepresentation claims are all based in fraud, Estrada never alleges where or when she saw the allegedly false statements, or which specific statements induced her to buy the product. *See* Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (plaintiff required to plead "the who, what, when, where, and how" of alleged fraudulent representation or omission). In short, Estrada has not cured the defects in the original complaint that were specifically identified by this Court in its March 27 Order.

Finally, the FAC continues to suffer from a number of additional flaws. ***First***, Estrada's negligent misrepresentation claim fails because she has not pointed to any specific, actionable affirmative statement (rather than an omission) that she personally relied on. ***Second***, the implied warranty claim fails because Estrada lacks privity with J&J and does not allege any facts to show that Johnson's Baby Powder (which has many beneficial uses that have nothing to do with the risks alleged in this case) was "unmerchantable" when sold—*i.e.*, that it failed to "possess even the most basic degree of fitness for ordinary use." ***Third***, injunctive relief is not warranted because Estrada is already aware of the alleged "risk" and thus is not personally threatened by a repetition of her supposed "injury."

Nothing in the FAC should change the Court's original conclusion: Estrada received exactly what she bargained for, and cannot use her contention that *others* were injured to manufacture a claim for "economic loss." The FAC should be dismissed with prejudice.

## II. BACKGROUND FACTS

### A. The Original Complaint

In her original Complaint, Estrada alleged she had been buying Johnson's Baby Powder for personal use in her genital area since approximately 1950. (Compl. ¶ 9.) She has never

developed ovarian cancer, and does not contend her use of the product put her at an increased risk of future health problems. (*Id.*) Nonetheless, she argued that she should get her money back because she would not have purchased Baby Powder had she known that (according to Estrada) women who use talc on their genitals "have a 33% increased risk of ovarian cancer." (*Id.* ¶ 3.)

Specifically, Estrada alleged that Johnson's Baby Powder was "advertised for use by women," that J&J "encouraged" "use of the product in the genital area," and that J&J "intended for women to use the Baby Powder in the very manner most likely to result in an increased risk of ovarian cancer." (*Id.* ¶¶ 4, 13, 70–71.) That said, Estrada never actually identified any such statements—she only identified generic website statements such as "Use [Johnson's Baby Powder] anytime you want skin to feel soft, fresh, and comfortable" and that the product is "clinically proven to be safe, gentle, and mild." (*Id.* ¶¶ 16–17.) In any event, Estrada never claimed to have seen or relied on such statements before buying the product. Estrada did allege that "[p]rior to making her purchase, [she] read the label for the Baby Powder," but she did not contend that any statements on the label were actually false. (*Id.* ¶¶ 9, 14–15.)

**B. The Dismissal Order**

On March 27, 2015, this Court dismissed Estrada's Complaint in its entirety, holding that Estrada lacked Article III standing and failed to allege any cognizable theory of injury. Specifically, the Court concluded Estrada (1) failed to allege any actionable misrepresentations by J&J, (2) received the full benefit of her bargain when she purchased and used Johnson's Baby Powder for decades without ill effect, and (3) failed to allege that she would (or could) have purchased an alternative product. (Order at 6–9.)

***First***, the Court held that Estrada lacked standing because she "fail[ed] to identify any specific statements about safety made by Defendants that she found material to her decision to purchase the Baby Powder." (*Id.* at 6.) The statements on the label that Estrada cited—*e.g.*, that "Johnson's Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable"—make no reference to safety; and the statements on J&J's website (*e.g.*, "[c]linically proven to be safe, gentle and mild," "safety is our legacy") "lack[ed] sufficient specificity to substantiate an injury." (*Id.* at 6–7.) More fundamentally, Estrada never claimed

"to have relied on the[] online statements," and in fact "could not have relied on them in 1950 when she initially purchased the product." (*Id*. at 7.)

***Second***, the Court held that Estrada "cannot claim that she paid a premium for the Baby Powder because she received all the intended benefits of the bargain." (*Id.*) Instead, the fact that Estrada used Baby Powder for decades "suggests that Plaintiff indeed received such benefits from the Baby Powder and believed it was worth the price." (*Id.* at 8.) Estrada thus "received the exact benefits for which she purchased the Baby Powder. Because [she] received the benefit-of-the-bargain, she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing a product." (*Id*.)

***Third***, the Court concluded that Estrada lacked any cognizable injury, and thus had no standing, because she failed to allege "that she would have purchased an alternative product." (*Id.*) Accordingly, the Court dismissed the complaint in its entirety because Plaintiff "did not allege specific misrepresentations by [J&J], received the benefit-of-the-bargain, and did not allege any alternative product that she would have purchased" that could provide the same benefits for a cheaper price. (*See id.* at 9.) Because the Court dismissed the entire complaint for lack of Article III standing, it did not reach the other arguments in J&J's motion to dismiss. (*Id.* at 1 n.1.)

**C. <u>The New Amended Complaint</u>**

Estrada filed her FAC on April 24, 2015. The new FAC is based on the same core allegations as Estrada's original Complaint—namely, that everyone who purchased Baby Powder should get their money back because J&J did not disclose an alleged "risk" for women who apply the product directly to their genital area. (FAC ¶ 2.) Just as in her original complaint, Estrada alleges that Johnson's Baby Powder is "advertised for use by women," that J&J "encouraged" "use of the Baby Powder in the genital area," and that J&J "intended for women to use the Baby Powder in the very manner most likely to result in an increased risk of ovarian cancer." (*Id.* ¶¶ 6, 15, 18, 74, 75.) And just as before, Estrada alleges that she "reli[ed] on the label" (*id.* ¶ 11), citing to the same label statements that the Court has already held have nothing to do with safety. (*Id.* ¶ 16; Order at 6–7.) Estrada also continues to cite the same "general safety statements" from websites that the Court held "lack sufficient specificity to substantiate an injury." (FAC ¶¶ 19,

74; Order at 7.)

In the new FAC, Estrada does contend that she "relied" on general "[website] statements and Defendants' marketing and branding efforts." (FAC ¶ 19). But she does *not* allege that she ever reviewed J&J's website *before* she bought the product, and never explains what specific "marketing and branding efforts" she relied on (if any) when she made her purchases. (*See id.*) Indeed, since Estrada has apparently been using Baby Powder regularly since the 1950s, it is highly unlikely that she ever "relied" on J&J's website. (*See id.* ¶ 11; Order at 7.)

Finally, Estrada also contends, for the first time, that she "would have purchased an alternative product containing cornstarch instead of talc." (FAC ¶¶ 5, 11, 75.) But she never identifies the alternative product she would have used, and does not allege that this never-identified alternative would have been cheaper than Baby Powder.

## III. LEGAL STANDARDS

Motions to dismiss should be granted where, as here, the plaintiff has failed to state any valid claim for relief. Dismissal under Rule 12(b)(6) is appropriate where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Accordingly, Estrada's FAC should be dismissed if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544. 570 (2007)). And while the Court must accept all well-pled *facts* as true, the Court need not assume the truth of legal conclusions merely because they are pled in the form of factual allegations. *Iqbal*, 556 U.S. at 677–79. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

Next, if Plaintiff lacks standing, the action "should be dismissed" under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A suit brought by a plaintiff without Article III standing is not a "case or controversy," and "an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Id.* The burden of establishing standing elements "falls upon the party asserting federal jurisdiction." *Cent. Delta Water Agency v. United*

*States*, 306 F.3d 938, 947 (9th Cir. 2002). The standing elements are "not mere pleading requirements" but are an "indispensable part of the plaintiff's case" and "must be supported at each stage of litigation in the same manner as any other essential element of the case." *Id.* "At an irreducible minimum, Article III requires that the plaintiff show that he has personally suffered some actual or threatened injury as a result of defendant's illegal conduct ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision.'" *Fair v. U.S. EPA*, 795 F.2d 851, 853 (9th Cir. 1986) (citation omitted). (*See also* Order at 4 ("[C]onsistent with the requirements of Article III, plaintiffs must allege an injury that is 'concrete and particularized *as to themselves*.'") (emphasis in original; internal citation omitted).)

In addition, Estrada's fraud-based CLRA, UCL, and negligent misrepresentation claims must meet the heightened pleading standard of Rule 9(b), which requires Estrada to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) (applying Rule 9(b) standard to allegations of fraud by omission under the UCL and CLRA); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (negligent misrepresentation claims must satisfy Rule 9(b)). Under Rule 9(b), Estrada must plead the time, place, and content of the alleged false representation or omission—"the who, what, when, where, and how"—as well as facts demonstrating her reliance on the allegedly fraudulent conduct. *Vess*, 317 F.3d at 1106 (citation omitted); *see also Kearns*, 567 F.3d at 1124.

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial ...." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (quotation marks, citation, and first alteration omitted), *rev'd on other grounds*, 510 U.S. 517 (1994).

A complaint should be dismissed with prejudice where a plaintiff "has been unable to amend [the] complaint to state a cognizable claim, indicating an inability to do so." *See, e.g.*,

*Adesokan v. U.S. Bank, N.A.*, No. 1:11–cv–01236–LJO–SKO, 2012 WL 395969, at *7 (E.D. Cal. Feb. 7, 2012) (citing *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996)); *see also Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 998 (E.D. Cal. 2012).

## IV. PLAINTIFF SUFFERED NO INJURY

Estrada's entire FAC should be dismissed with prejudice under Rule 12(b)(1) because, just as before, she has not alleged facts showing that she suffered any cognizable Article III "injury."[6] "To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury is redressable by a favorable ruling." (Order at 3 (citing *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).) *See also In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PBG, 2013 WL 6248499, at *3 (N.D. Cal. Dec. 3, 2013); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And in class actions, "the named representatives must allege and show that they personally have been injured" in order to sustain a cause of action. (Order at 3 (citing *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736–37 (9th Cir. 1978))).) Estrada has failed to allege any new facts in the FAC that would support a cognizable theory of injury because (1) as the Court already held, she received the full benefit of her bargain, and (2) she has not alleged (and cannot allege) that switching to an "alternative" cornstarch product would have saved her any money.

---

[6] In addition to Article III standing, a plaintiff must establish statutory standing to bring claims under the UCL or CLRA. *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a). These statutes require the plaintiff to show that he or she has suffered an "economic injury." *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011). The economic injury requirement is "narrower than federal standing ... which may be predicated on a broader range of injuries." *Id*. at 324. Thus, after the UCL was amended by Proposition 64, statutory standing under the UCL is somewhat narrower than Article III standing. *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (quoting Prop. 64, § 1, subd. (e)). In this case, Estrada lacks statutory standing for substantially the same reasons she lacks Article III standing. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–61 & n.4 (9th Cir. 2009) (explaining that "insofar as the UCL incorporates Article III's injury in fact requirement, the plaintiffs would lack an Article III injury in fact for the same reasons").

### A. Estrada Received the Benefit of Her Bargain

Here, Estrada admits that she never suffered any ill effects from using Johnson's Baby Powder—she has no personal injury claim and does not assert any kind of "medical monitoring" claim (*i.e.*, she does *not* allege that she still suffers from an increased risk even though she no longer uses talc in her genital area). Instead, she continues to argue (as she did before) that she is entitled to a refund because other talc users (but not her) may have experienced problems. But "[m]erely asking for money does not establish an injury in fact," and, as the Fifth Circuit explained more than a decade ago, a plaintiff suffers no injury where, "[b]y plaintiff's own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-20 (5th Cir. 2002). Here, Estrada has no economic injury because her own allegations demonstrate that she received all the benefits she expected when she bought and consumed the product—in fact, she continued to buy it for decades—and never suffered from any of the ill effects that she contends may have impacted other consumers. Since she "received the exact benefits for which she purchased the Baby Powder … she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing the product." (Order at 8.)

The fact that a product might pose a risk to *others* does not grant uninjured purchasers the right to sue. Accordingly, many courts—including this one—have rejected similar attempts to transform "no injury" claims into consumer protection cases. (*See* Order at 7-8); *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09–1597 CW, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010)*; Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–61 & n.4 (9th Cir. 2009). In *Herrington*, for example, Judge Claudia Wilken in the Northern District of California rejected economic injury claims brought by a plaintiff who argued that J&J had "failed" to disclose "probable carcinogens" in Johnson's Baby Shampoo. There, as here, the "consumer good" had been completely "used to the[ ] [plaintiff's] benefit," the named plaintiff suffered no physical injury from exposure to the alleged "carcinogens" in the product, and was not at risk of future

harm. *Herrington*, 2010 WL 3448531, at *4.[7] The Ninth Circuit reached a similar conclusion in a case involving allegedly defective headphones. In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), the plaintiffs argued they had suffered an economic injury because (according to the plaintiffs) Apple's earbuds could cause physical injury (hearing loss) if used at high volume for extended periods of time. But since the *Birdsong* plaintiffs had not actually suffered any hearing loss, the Court rejected their claims. *Id.* at 959–61 & n.4. As the Ninth Circuit explained, "[t]he risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*." *Id.* at 960.

Estrada seeks compensation because she bought a product that, although it worked as expected, also allegedly exposed her to a risk—but she never actually suffered any injury from that risk. Just like the plaintiffs in *Herrington*, *Boysen*, *Myers-Armstrong*, and *Birdsong*, Estrada has received the "benefit of [her] bargain" and has no valid claim of injury—economic or otherwise. *Herrington*, 2010 WL 3448531, at *1; *Boysen v. Walgreen Co.,* No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528, at *23–24 (N.D. Cal. July 19, 2012); *Myers-Armstrong v. Actavis Totowa, LLC*, No. C 08–04741 WHA, 2009 WL 1082026, at *5 (N.D. Cal. Apr. 22, 2009); *Birdsong*, 590 F.3d at 961; (*see also* Order at 7–8). She thus lacks standing and her entire FAC should be dismissed with prejudice.

**B. <u>Estrada Has Not Alleged an Economic Loss</u>**

In her FAC, Estrada now claims that she would have purchased an "alternative cornstarch based powder" that allegedly does not carry the same "risk." (FAC ¶¶ 5, 11, 22, 75.) But since

---

[7] *See also Boysen*, 2012 U.S. Dist. LEXIS 100528, at *23–24 (no economic harm from purchase of juice containing lead and arsenic where plaintiff had fully consumed juice and experienced no physical injury); *Myers-Armstrong*, 2009 WL 1082026, at *4 ("[A]fter consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund on the theory that [he would not have purchased the pills had he known they] came from a source of uncertain quality.... [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff."); *Hicks v. Kaufman & Broad Home Corp*., 89 Cal. App. 4th 908, 923 (2001) ("Cars and tires have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for."); *Rivera*, 283 F.3d at 319 ("[Defendants] sold [a product]; [Plaintiff] purchased and used [the product]; [Defendants] did not list enough warnings on [the product], and/or [the product] was defective; other patients were injured by [the product]; [Plaintiff] would like her money back."); *Crouch v. Johnson & Johnson Consumer Cos.*, No. 09-cv-2905 (DMC), 2010 WL 1530152, at *5 (D.N.J. Apr. 15, 2010) (rejecting "no injury" economic claims for failure to warn of alleged carcinogens in Johnson's Baby Shampoo).

she cannot allege that this "alternative" would have been any less expensive, she would have spent the same amount of money either way and, accordingly, did not suffer any sort of "economic loss."

To be sure, under some circumstances, customers who can allege that they would have purchased a cheaper alternative product may be able to allege an economic loss.[8] But here, Estrada does *not* allege that switching to cornstarch would have saved her any money. Instead, she simply alleges that talc and cornstarch were "functionally the same," and that cornstarch was a potential alternative. (*See* FAC ¶ 22.) That is not enough—without an allegation that the "alternative" would have been cheaper, Estrada's "economic loss" arguments all fail. *Cf. In re Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172, 186 (D. Mass. 2006) (no injury where plaintiffs do not "make any allegations that cheaper alternatives were available and that [p]laintiffs are seeking any difference in price"). For example, switching to an "alternative" that would have been *more* expensive cannot possibly constitute an "economic loss"—under those circumstances, Estrada would have paid *more* for a product that, for her, was "functionally the same" as Baby Powder. At the end of the day, Estrada "received exactly what she paid for—the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness" (Order at 8)—and she received those benefits at a price that was apparently the same (or better) than any of the "alternatives."

---

[8] *See, e.g., Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, No. 14–cv–02006–JST, 2015 WL 510919, at *7 (N.D. Cal. Feb. 5, 2015) (plaintiff alleged "that had he known that the products were not 'all natural,'" he could have "purchased less expensive non-natural food products"); *Khasin v. Hershey Co.*, No. 5:12–CV–01862 EJD, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012) ("Plaintiff alleges that he had cheaper product alternatives for purchase at his disposal."); *Koh v. S.C. Johnson & Son*, No. C-09-00927 RMW, 2010 U.S. Dist. LEXIS 654, at *5 (N.D. Cal. Jan. 5, 2010) ("Plaintiff has sufficiently alleged that he did not receive the benefit of the bargain in that Windex cost more than similar products without misleading labeling.") (emphasis added); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, No. 07–MDL–01871, 2011 WL 4007878, at *1 (E.D. Pa. Sept. 7, 2011) (complaint does not "allege that other drugs Plaintiff identifies as alternatives to Avandia … are less expensive"); *Loreto v. Proctor & Gamble Co.*, 515 F. App'x 576, 580 (6th Cir. 2013) (unpublished) ("[P]laintiff would have purchased a lower-priced cold remedy (thus saving money) were it not for [defendants'] alleged misrepresentations. The 'quantifiable or measurable' loss in this case is the difference in price between [defendants'] product and a lower-priced competing product.").

## V. PLAINTIFF'S CLASS DEFINITION SHOULD BE STRICKEN

Next, the Court should strike Estrada's class definition because many—and probably most—members of Estrada's proposed class were never even *exposed* to the risks Estrada alleges. Courts may strike class allegations at the pleading stage "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Sanders*, 672 F. Supp. 2d at 990–91 ("No class may be certified that contains members lacking Article III standing.... The class must therefore be defined in such a way that anyone within it would have standing."). Indeed, many courts have "refused to include in the class those purchasers who have suffered no injury, simply because they allege they have purchased a product which 'tends to' cause injury." *Bishop v. Saab Auto. A.B.*, No. 95-cv-0721 JGD (JRX), 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996); *see also Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299 (1995) (it was error to include in the class those who experienced no injury; "[t]o hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized."); *Lyons v. Bank of Am., NA*, No. C 11–1232 CW, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (striking class allegations that "include[ ] many members who have not been injured"); *Tietsworth v. Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1146–47 (N.D. Cal. 2010) (same).

As before, Estrada seeks to represent a class of "[a]ll persons who purchased Johnson's Baby Powder in California and [in] states with laws that do not conflict with the laws asserted here." (FAC ¶ 78.)[9] But the risk that Estrada claims exists is very specific—it only applies to adult women who use the product in a particular way and for an extended period of time. (*Id.* ¶ 4 ("Women who used talc-based powders to powder their genital area have a 33% increased risk of ovarian cancer[.]").) Estrada's proposed class definition necessarily includes consumers who were never exposed to that alleged risk and thus have no possible claim: men, and women who purchased Johnson's Baby Powder for any use other than directly on their genitals. Indeed, even if Estrada's economic loss claims were proper (they are not), the only purchasers who could

---

[9] Estrada's class definition is also improperly expansive because it includes members who purchased Johnson's Baby Powder outside of the three-year statute of limitations period provided by the CLRA or the four-year statute of limitations provided by the UCL. *See* Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208.

assert those claims would be women who bought the product exclusively for use in their genital area and could not put the product to any other beneficial use. The current class definition is thus extraordinarily overbroad and should be stricken. *Tietsworth*, 720 F. Supp. 2d at 1146–47.

These problems with Estrada's class definition cannot be solved by amendment. Even if Estrada were to limit her class,[10] there is no administratively feasible way to ascertain which consumers might actually qualify as class members. Proof of purchase would not establish membership because the product has many uses that have nothing to do with the alleged risk. Instead, the Court would need to determine, on a consumer-by-consumer basis: (1) that the consumer purchased Johnson's Baby Powder (rather than a similar J&J product (such as Johnson's Baby Pure Cornstarch Powder) or other brand of talcum powder); (2) when the product was purchased; (3) the price paid; and (4) the quantity purchased; as well as, for each purchase, (5) that the product was purchased by an adult female or on behalf of an adult female; (6) who used the product on her genitals; (7) and did not put the product to any other use. Johnson's Baby Powder can be purchased over the counter for a few dollars at retail locations throughout the country—J&J obviously has no record of all purchasers, much less a record that could identify the purchasers' sex and reasons for purchase. As many courts have held, class treatment is not appropriate where the class depends, as would be the case here, on "the vagaries of memory" to prove class membership.[11]

[10] *E.g.*, so that the class encompass only those women who purchased Johnson's Baby Powder exclusively for use in their genital area.

[11] *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 617–18 (W.D. Wash. 2003). *See also, e.g.*, *Red v. Kraft Foods, Inc.*, CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 186948, at *14–16 (C.D. Cal. Apr. 12, 2012) (declining to certify a class that "rel[ies] on [a customer's] own memory of purchasing a small, everyday item"); *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075, 1089–90 (N.D. Cal. 2011) (rejecting class of "20 pack-years smokers" because attesting to the number of cigarettes smoked over decades is categorically different from swearing that "I have been to Paris"); *Hodes v. Van's Int'l Foods*, No. CV 09-01530 RGK (FFMx), 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009) (denying class certification when plaintiffs were unlikely to be able to prove the product they "purchased, in what quantity, and for what purpose"); *In re Hulu Privacy Litig.*, No. 11-CV-3764 (Dkt. No. 211) (N.D. Cal. June 17, 2014) (rejecting certification where class membership depended on whether consumers "log[ged] into Facebook and Hulu from the same browser; [typically] log[ged] out of Facebook; ... set browser settings to clear cookies; [or] use[d] software to block cookies").

## VI. PLAINTIFF'S FRAUD CLAIMS SHOULD BE DISMISSED UNDER RULE 9(b)

The Court held that Estrada's original complaint "fail[ed] to identify any specific statement about safety made by [J&J] that she found material to her decision to purchase the Baby Powder," and thus does not have a cognizable "injury for Article III standing." (Order at 6–7.) The FAC should be dismissed for the same reasons: Estrada still does not identify a single false or misleading statement by J&J that she relied on at the time of her purchases.

Estrada does allege, again, that she "reli[ed] on the label." (FAC ¶ 11.) But as the Court already noted, the product is not labeled "safe," and Estrada does not contend that any statements on the label are actually false. (Order at 7.) Estrada also cites statements on J&J's website, but they are similar to those the Court already held "lack[ed] sufficient specificity to substantiate an injury" (*id.*; FAC ¶ 19.) And although Estrada sprinkles in vague new allegations about unspecified "marketing and branding efforts" that "convey the message" that the product is safe (*e.g.*, FAC ¶¶ 18–20), none of those come close to "stat[ing] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Neilson*, 290 F. Supp. 2d at 1141 ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

Estrada was required to plead "the who, what, when, where, and how" of the alleged fraudulent representation or omission[12]—as well as facts demonstrating her reliance on the alleged "fraud." *Vess*, 317 F.3d at 1106 (citation omitted); *see also Kearns*, 567 F.3d at 1124. But Estrada never specifically identifies the various statements to which she alludes, she never explains *which* specific statements (if any) that she personally either saw or heard, *when* or *where* she saw or heard them, or *which* specific statements (if any) induced her to purchase the product. *See In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1051–52 (N.D. Cal. 2009); *accord Baltazar v. Apple, Inc.*, No. CV-10-3231-JF, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011) ("Plaintiffs must identify the particular commercial or advertisement upon which they relied and

---

[12] As explained in Section VII.A., *infra*, Estrada cannot bring a negligent misrepresentation claim for an omission or for statements that are merely misleading. Rather, she must point to an affirmatively false statement.

must describe with the requisite specificity the content of that particular commercial or advertisement."); *Cohen v. DirecTV, Inc.*, 178 Cal. App. 4th 966, 978–79 (2010) (plaintiff must allege that he was exposed to a specific deceptive representation); *see also Kearns*, 567 F.3d at 1126 (applying Rule 9(b) to dismiss UCL claims where plaintiff failed to specify "what the television advertisements or other sales material specifically stated ... when [plaintiff] was exposed to them or which ones he found material ... [and] which sales material he relied upon in making his decision to buy").

Estrada's allegations still fall far short of demonstrating a cognizable injury, let alone pleading her fraud-based UCL,[13] CLRA, and negligent misrepresentation claims with the specificity required by Rule 9(b). *See Maxwell v. Unilever U.S., Inc.*, No. 12-CV-1736, 2013 WL 1435232, at *4 (N.D. Cal. Apr. 9, 2013) (complaint did not "provide an unambiguous account of the 'time, place, and specific content of the false representations.'"); *Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *Kwikset*, 51 Cal. 4th at 326; *Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 928–29 (2010). This is the second time Estrada has been unable to plead sufficient facts to support her claims. At this point, the Court should dismiss her fraud-based claims with prejudice.

## VII. PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND IMPLIED WARRANTY CLAIMS FAIL AS A MATTER OF LAW

### A. Negligent Misrepresentation Requires a "Positive Assertion"

Under California law, to state a claim for negligent misrepresentation, Estrada must point to a "positive assertion" that she saw and relied upon—"omissions" are insufficient as a matter of law. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011) (negligent misrepresentation "requires a positive assertion, not merely an omission"; "carefully worded"

[13] Estrada's allegations under the "unlawful" prong of the UCL are also defective because she has not pled (and cannot plead) that J&J's conduct was "unlawful." Because Estrada cannot identify a single law that J&J has supposedly violated, her claims under the "unlawful" prong fail. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006) (because the court rejected Daugherty's claims under the CLRA, he "cannot state a violation of the UCL under the 'unlawful' prong predicated on a violation of either statute, as there were no violations"); *Hoey v. Sony Elec., Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (UCL claims predicated on other claims that were not adequately pled must be dismissed).

report that may have been misleading, but was not actually false, could not support a negligent misrepresentation claim); *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983–84 (2003); *Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007). But here, Estrada claims only to have seen and relied on the product's label and various generic statements on J&J's website and does not claim any of the statements are actually false. (*See* FAC ¶¶ 11, 19.) Instead, her claims still appear to be based on an "omission"—namely, that J&J should have affirmatively disclosed some type of information about the "risk" Estrada alleges. (*See, e.g.*, *id.* ¶ 11 ("Defendants knew the Baby Powder was unsafe for Plaintiff to use in the genital area, but did not inform Plaintiff of the safety risk and omitted this safety information from its labelling.").) Her negligent misrepresentation claim therefore fails as a matter of law. *Apollo Capital*, 158 Cal. App. 4th at 243.

**B. <u>Breach of Implied Warranty</u>**

**1. Johnson's Baby Powder Is Not "Unmerchantable"**

To assert claims for breach of the implied warranty of merchantability, Estrada must allege facts showing that Johnson's Baby Powder failed to "possess even the most basic degree of fitness for ordinary use" such that it was "unmerchantable" when it was sold. *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003). Yet Estrada admits that the "intended use" of Johnson's Baby Powder is "to be used as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture ...." (FAC ¶ 114.) While Estrada may have chosen to use the product in a particular way that she contends is unsafe, she ***does not*** claim that Johnson's Baby Powder failed to perform as promised or that the product has no beneficial use—as is set out above (*see* fn. 5, *supra*), consumers use Johnson's Baby Powder and other talc-based products in a multitude of ways that have nothing to do with the allegedly risky behavior identified in Estrada's Complaint. As multiple courts have held, the fact that a risk could be associated with a particular use of a product does not make that product unmerchantable. *Birdsong*, 590 F.3d at 958–59; *Am. Suzuki*, 37 Cal. App. 4th at 1297–98 (rejecting plaintiffs' argument that "the test of merchantability is ... whether [the product] is free of all speculative risks, safety-related or otherwise" and holding that a product is not unmerchantable where "a

small percentage" had safety issues but "the vast majority ... did what they were supposed to do for as long as they were supposed to do it.") (internal quotation marks and citation omitted); *see also Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 252 (1st Cir. 2010) ("Recovery generally is not available under the warranty of merchantability where the defect that made the product unfit caused no injury to the claimant ...."). Here, Estrada does not claim that she did not get full ordinary use from the product, or that she is "substantially certain to suffer inevitable" physical injury from the product. *Birdsong*, 590 F.3d at 959. Since Estrada has failed to allege that Johnson's Baby Powder "lacks any minimum level of quality," her implied warranty claim should be dismissed. *See id.* at 958.

**2. Plaintiff Lacks Privity**

Estrada's implied warranty claim should also be dismissed because Estrada does not claim to have purchased Johnson's Baby Powder directly from J&J. As the Ninth Circuit recognized in *Clemens v. DaimlerChrysler Corp.*, under California law a "plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant ...." 534 F.3d 1017, 1023 (9th Cir. 2008). And while some "federal district court judges erroneously have inferred a third-party [beneficiary] exception to California's privity rule ... [n]o reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083–84 (N.D. Cal. 2011); s*ee also, e.g.*, *Soares v. Lorono*, No. 12-cv-05979-WHO, 2014 U.S. Dist. LEXIS 24674, at *14 (N.D. Cal. Feb. 25, 2014) (dismissing implied warranty claim for lack of privity); *Long v. Graco Children's Prods. Inc.*, No. 13–cv–01257–WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (following *Clemens* and declining to recognize a third-party beneficiary exception to privity rule under California law).

**VIII. <u>PLAINTIFF LACKS STANDING TO SEEK INJUNCTIVE RELIEF</u>**

Finally, Estrada's request for injunctive relief—including her demand that this Court "enjoin[ ] Defendants from continuing the unlawful practices as set forth herein"—fails because she has not alleged (and could not credibly allege) that she is personally threatened by any

repetition of the injury she claims to have suffered. *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citations and emphasis omitted) (to seek injunctive relief in federal court, plaintiff must demonstrate that she is "realistically threatened by a repetition of [the violation]"). Estrada is already personally aware of the alleged increased risk of ovarian cancer through personal genital use and cannot possibly be deceived by any alleged misstatements or omissions about the risk in the future. Because she cannot be personally threatened by the conduct she seeks to enjoin, she lacks standing to pursue claims for injunctive relief. *See, e.g.*, *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (plaintiff was no longer an employee and there was "no indication ... that [plaintiff] has any interest in returning to work," so she "would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work"); *Campion v. Old Republic Home Prot. Co.*, 861 F. Supp. 2d 1139, 1149 (S.D. Cal. 2012) (plaintiff who did not intend to purchase another warranty plan lacked standing because "Article III imposes a jurisdictional requirement that is more stringent than the UCL, and which, with respect to Plaintiff's claim for injunctive relief, is not satisfied."); *Stephenson v. Neutrogena Corp.*, No. C 12-0426-PJH, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (striking prayer for injunctive relief where plaintiff did not allege that she would purchase products in the future). Consequently, Estrada's claims for injunctive relief should be stricken and/or dismissed.[14]

## IX. CONCLUSION

As discussed above, Estrada lacks Article III standing and her claims all fail as a matter of law. Accordingly, J&J requests that the Court dismiss the entire First Amended Complaint with prejudice—or, in the alternative, strike Estrada's request for injunctive relief and her overly broad

---

[14] Estrada's failure to allege facts sufficient to support her individual claim for injunctive relief likewise dooms her prayer for injunctive relief on behalf of the class. *Deitz v. Comcast Corp.*, No. 06-cv-06532 WHA, 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21, 2006) (class averments did not cure the defect in plaintiff's complaint because "[u]nless the named plaintiff is himself entitled to seek injunctive relief, he 'may not represent a class seeking that relief.'") (internal citations omitted); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011) ("Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.").

proposed class definition.

Dated: May 18, 2015

RICHARD B. GOETZ
MATTHEW D. POWERS
O'MELVENY & MYERS LLP

By: /s/ Matthew D. Powers
Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc.