BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
PAULA M. ROACH (254142)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

BEASLEY, ALLEN, CROW, METHVIN,
    PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III (*pro hac vice*)
LANCE C. GOULD (*pro hac vice*)
ALISON DOUILLARD HAWTHORNE (*pro hac vice*)
272 Commerce Street
Post Office Box 4160
Montgomery, AL  36103
Tel: 334/269-2343
224/954-7555 (fax)
Dee.Miles@BeasleyAllen.com
Lance.Gould@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com

THE SMITH LAW FIRM
ALLEN SMITH, JR.
618 Towne Center Blvd., Suite B
Ridgeland, MS 39157
Tel: 601/952-1422
601/952-1426 (fax)
allen@smith-law.org

Attorneys for Plaintiff and the Class

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO

| | |
|---|---|
| MONA ESTRADA, On Behalf of Herself and All Others Similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,<br><br>        Defendants. | Case No.:   2:14-cv-01051-TLN-KJN<br><br>CLASS ACTION<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE FIRST AMENDED COMPLAINT**<br><br>Date:       July 2, 2015<br>Time:      2:00 p.m.<br>Courtroom: 2, 15th Floor<br>Judge:    Hon. Troy L. Nunley |

*(left margin, vertical)* BLOOD HURST & O'REARDON, LLP

00085601

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.   BACKGROUND FACTS .................................................................................... 2

    A.   Defendants' Marketing and Sale of an Unsafe Product ...................... 2

    B.   The Court's Prior Order .......................................................................... 4

    C.   Plaintiff's First Amended Complaint Addresses the Court's Prior Order ........... 5

III.   LEGAL STANDARDS ...................................................................................... 6

IV.   PLAINTIFF HAS ARTICLE III STANDING ................................................. 6

    A.   Plaintiff Suffered Injury-in-Fact and Did Not Receive the Benefit of Her Bargain ........... 7

    B.   Plaintiff Alleges Economic Loss ........................................................... 10

V.   THE CLASS DEFINITION SHOULD NOT BE STRICKEN ...................... 11

VI.   PLAINTIFF SATISFIES RULE 9(B) ............................................................ 13

VII.   PLAINTIFF PLEADS NEGLIGENT MISREPRESENTATION ................ 14

VIII.   PLAINTIFF PLEADS AN IMPLIED WARRANTY CLAIM ...................... 16

    A.   Plaintiff Sufficiently Alleges the Baby Powder Is Unmerchantable ........... 16

    B.   Privity Is Not Required .......................................................................... 17

IX.   PLAINTIFF DOES NOT LACK STANDING TO SEEK INJUNCTIVE RELIEF ........... 18

X.   CONCLUSION ................................................................................................. 20

BLOOD HURST & O'REARDON, LLP

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

00085601

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atkinson v. Elk Corp. of Texas*,
142 Cal. App. 4th 212 (2006) .......................................................................................... 17

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ..................................................................................... 6, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 6

*Bias v. Wells Fargo & Co.*,
942 F. Supp. 2d 915 (N.D. Cal. 2013) .......................................................................... 14

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ........................................................................................... 9

*Boysen v. Walgreen Co.*,
No. 11-06262, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ..................... 9, 11

*Byrd v. Aaron's Inc.*,
No. 14-3050, 2015 U.S. App. LEXIS 6190 (3d Cir. Jan. 23, 2015) ................................. 13

*Cabral v. Supple, LLC*,
No. 12-00085, 2012 U.S. Dist. LEXIS 137365 (C.D. Cal. Sept. 19, 2012) ...................... 19

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) ..................................................................................................... 6

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ................................................................................. 17, 18

*In re Clorox Consumer Litig.*,
No. 12-00280, 2013 U.S. Dist. LEXIS 107704 (N.D. Cal. July 31, 2013) ...................... 10

*Cole v. GMC*,
484 F.3d 717 (5th Cir. 2007) ......................................................................................... 10

*Committee on Children's Television, Inc. v. Gen. Foods Corp.*,
35 Cal. 3d 197 (1983) .................................................................................................... 14

*Contreras v. Johnson & Johnson Consumer Cos., Inc.*,
No. 12-7099, 2012 U.S. Dist. LEXIS 186949 (C.D. Cal. Nov. 29, 2012) ....................... 19

*Daar v. Yellow Cab*,
67 Cal. 2d 695 (1967) .................................................................................................... 13

BLOOD HURST & O'REARDON, LLP

ii

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

*Fitzpatrick v. Gen. Mills, Inc.*,
    635 F.3d 1279 (11th Cir. 2011).................................................................. 13

*Gest v. Bradbury*,
    443 F.3d 1177 (9th Cir. 2006).................................................................. 20

*Gilbert Fin. Corp. v. Steelform Contracting Co.*,
    82 Cal. App. 3d 65 (1978).................................................................. 18

*Guido v. L'Oreal USA, Inc.*,
    284 F.R.D. 468 (C.D. Cal. 2012) .................................................................. 7

*Henderson v. Gruma Corp.*,
    No. 10-04173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011) .......................... 19

*Herremans v. BMW of N. Am., LLC*,
    No. 14-02363, 2014 U.S. Dist. LEXIS 145957 (C.D. Cal. Oct. 3, 2014)..................... 13, 14

*Herrington v. Johnson & Johnson Consumer Cos.*,
    No. 09-1597, 2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) .......................... 9

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013).................................................................. 1, 7, 8, 11

*In the Matter of: IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014).................................................................. 12

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007).................................................................. 17

*Johns v. Bayer Corp.*,
    No. 09cv1935, 2010 U.S. Dist. LEXIS 10926 (S.D. Cal. Feb. 9, 2010).......................... 13

*Jones v. ConocoPhillips*,
    198 Cal. App. 4th 1187 (2011).................................................................. 17, 18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................. 13

*Koehler v. Litehouse, Inc.*,
    No. 12-04055, 2012 U.S. Dist. LEXIS 176971 (N.D. Cal. Dec. 13, 2012) .................. 18, 19

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) .................................................................. 8, 10, 11

*Larsen v. Trader Joe's Co.*,
    No. 11-05188, 2012 U.S. Dist. LEXIS 162402 (N.D. Cal. June 14, 2012) .......................... 18

*Mary Pickford Co. v. Bayly Bros., Inc.*,
    12 Cal. 2d 501 (1939) .................................................................. 16

BLOOD HURST & O'REARDON, LLP

*Mayfield v. United States*,
  599 F.3d 964 (9th Cir. 2010).............................................................. 20

*Mazza v. Am. Honda Motor*,
  666 F.3d 581 (9th Cir. 2012)................................................................ 7

*McCrary v. Elations Co., LLC*,
  No. 13-00242, 2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) ............................. 13

*Myers-Armstrong v. Actavis Totowa, LLC*,
  No. 08-04741, 2009 U.S. Dist. LEXIS 38112 (N.D. Cal. Apr. 22, 2009) ............................ 9

*Neurontin Mktg., Sales Practices & Prods.*,
  433 F. Supp. 2d 172 (D. Mass. 2006) ..................................................... 11

*Newcal Indus., Inc. v. Ikon Office Solution*,
  513 F.3d 1038 (9th Cir. 2008).............................................................. 6

*Pirozzi v. Apple Inc.*,
  913 F. Supp. 2d 840 (N.D. Cal. 2012) .................................................... 11

*Randi W. v. Muroc Joint Unified School Dist.*,
  14 Cal. 4th 1066 (1997) .................................................................. 16

*Ries v. Arizona Beverage USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ..................................................... 18, 20

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002).......................................................... 9, 10

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)........................................................................ 6

*Thorpe v. Abbott Labs, Inc.*,
  534 F. Supp. 2d 1120 (N.D. Cal. 2008) .................................................. 12

*Tijsseling v. General Acc. Assur. Corp.*,
  55 Cal. App. 3d 623 (1976)................................................................ 16

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*,
  890 F. Supp. 2d 1210 (C.D. Cal. 2011)................................................... 17

*Vess v. Ciba-Geigy Corp.*,
  317 F.3d 1097 (9th Cir. 2003)............................................................ 13

*Vietnam Veterans of Am. v. CIA*,
  288 F.R.D. 192 (N.D. Cal. 2012) ........................................................ 20

*In re Wal-Mart Stores, Inc.*,
  505 F. Supp. 2d 609 (N.D. Cal. 2007) ................................................... 12

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

00085601

BLOOD HURST & O'REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................................ 6

*Werderbaugh v. Blue Diamond Growers*,
  No. 12-2724, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ............................ 12

*Williams v. Gerber Prods.*,
  552 F.3d 934 (9th Cir. 2008) .................................................................... 14

**Statutes and Rules**

California Safe Cosmetics Act ................................................................... 3, 4

Fed. R. Civ. P. 9(b) ........................................................................ 2, 3, 13, 14

Fed. R. Civ. P. 12(b)(1) ......................................................................... 6

Fed. R. Civ. P. 23 .............................................................................. 13

**Other Authorities**

*Manual for Complex Litigation* § 21:222 (4th ed. 2004) .......................................... 13

1 Rubenstein, *Newberg on Class Action* § 3:3 ................................................... 13

00085601

Case No. 2:14-cv-01051-TLN-KJN
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

1    Plaintiff Mona Estrada respectfully submits this memorandum in opposition to

2  Defendants' Motion to Dismiss and/or Strike First Amended Complaint ("Motion" or "Mot.").

3  **I.    INTRODUCTION**

4    For decades, Defendants have marketed Johnson's Baby Powder for use to eliminate

5  friction on the skin, absorb unwanted moisture, and maintain freshness.  Defendants even

6  specifically marketed to women to use the Baby Powder daily to mask odors.  Indeed, this is a

7  recognized common use of the Baby Powder to which Defendants are aware.  For decades,

8  Defendants also have known that frequent use of the Baby Powder by women in the genital

9  area is unsafe, resulting in a significantly increased risk of ovarian cancer – an extremely

10 deadly form of cancer.  Defendants, however, have never warned consumers of this safety

11 issue and refuse to even register the Baby Powder with the California Department of Health as

12 a consumer product containing chemicals known or suspected to cause cancer.  Instead,

13 Defendants continue to conceal the issue, only warn consumers to not inhale the Baby Powder

14 and to keep it out of eyes, and in their Motion blame women, including Plaintiff, for their

15 "risky behavior" in using the Baby Powder as intended.

16   Defendants, as sellers of a consumer product, have a duty to properly inform

17 consumers of known safety risks with using the Baby Powder as advertised.  Plaintiff suffered

18 injury in fact and has Article III standing because she purchased the Baby Powder she

19 reasonably believed was safe for its intended use, when it was not and thus, purchased a

20 product she otherwise would not have purchased.  *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098,

21 1104 n.3 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor*, 666 F.3d 581, 595 (9th Cir.

22 2012)).  The fact that the Baby Powder eliminated friction and moisture when she used it does

23 not eliminate the injury she suffered by purchasing a product she would not have purchased

24 had she known it was not safe.

25   Striking the Class allegations prior to discovery and a motion for class certification is

26 not appropriate.  Whether the Class members have been damaged by purchasing a falsely

27 advertised product and the amount of that damage are classwide issues.  Discovery will inform

28 the parties and the Court whether the Class as alleged or some other Class should be certified.

BLOOD HURST & O'REARDON, LLP

Additionally, Plaintiff satisfies Rule 9(b) because her claims, to the extent based on fraud, are premised on Defendants' omission of the safety risks of using the Baby Powder. Plaintiff alleges who engaged in the concealment, what was concealed, why the information was not disclosed, and how the information was concealed. Rule 9(b) is satisfied.

Plaintiff also sufficiently alleges breach of implied warranty because she alleges the Baby Powder was not merchantable since it was not safe to use by women as intended. The fact that the Baby Powder eliminates moisture and friction does not matter because it is unsafe while doing this. Privity is not required because Plaintiff purchased a product that was intended by Defendants for consumer use.

Finally, Plaintiff does not lack standing to pursue injunctive relief to require Defendants to adequately warn consumers of the safety risks of using the Baby Powder. Holding otherwise would gut the primary purpose of the consumer protection statutes.

Defendants' Motion should be denied.

## II.   BACKGROUND FACTS

### A.    Defendants' Marketing and Sale of an Unsafe Product

Defendants have consistently marketed the Baby Powder for use by women to eliminate friction on the skin, absorb unwanted moisture, and maintain freshness. ¶¶2, 14, 15, 16, 114. Historically, the Baby Powder label and advertising encouraged women to dust themselves with Baby Powder daily to mask odors. ¶15. Although the labels have changed over time, the marketing message has remained the same: the Baby Powder is safe for use by all including on women and babies. ¶¶74, 75. Defendant has never disclosed this important fact about the safety of its product, which consumers reasonably expect is safe. ¶¶73, 74.

The Baby Powder is made up almost entirely of talc. ¶21. Talc is an inorganic material that is used to manufacture plastic, paint, rubber, electric cables, ceramics, food and cosmetics. *Id.* Since 1961, dozens of studies have been conducted regarding perineal use of talc-based powders, such as the Baby Powder, and nearly all have reported an elevated risk of ovarian cancer when the powder is used by women in the genital area, and the majority of the studies show statistically significant elevations. ¶¶24-60. Since at least 1982, Defendants

1  have been aware of the numerous studies that have concluded there is a significantly elevated
2  risk of ovarian cancer with genital talc use.  ¶¶67-72.

3      In February of 2006, the International Association for the Research of Cancer
4  ("IARC") classified genital use of talc-based powder as a "Group 2B" possible human
5  carcinogen.  ¶62.  IARC, which is universally accepted as the international authority on cancer
6  issues, concluded that studies from around the world consistently found an increased risk in
7  ovarian cancer in women from perineal use of talc.  *Id.*  Based on the IARC's classification,
8  the California Department of Public Health ("CDPH") lists "talc-based body powders (perineal
9  use of)" as an ingredient known or suspected to cause cancer, and requires, under the
10  California Safe Cosmetics Act, that manufacturers register any products containing this
11  ingredient with the CDPH.  ¶66.  In violation of this law, Defendants have never registered the
12  Baby Powder with the CDPH.  *Id.*

13      All other authorities agree with the IARC and the CDPH that women's use of the Baby
14  Powder in the genital area leads to a significant increased risk of ovarian cancer.  In 2006, the
15  Canadian government classified talc as a "D2A," "very toxic," "cancer causing" substance
16  under its Workplace Hazardous Materials Information Systems.  ¶64.  Additionally, the
17  National Cancer Institute and American Cancer Society list genital talc use as a "risk factor"
18  for ovarian cancer.  ¶65.

19      Despite the overwhelming authority and Defendants' knowledge that perineal use of
20  the Baby Powder leads to a significant increased risk of ovarian cancer, Defendants have never
21  warned consumers.  ¶73.  Instead, Defendants simply warn consumers to "[a]void contact with
22  eyes" and "avoid inhalation."  *Id.*  Nowhere on the product label or in any other advertising do
23  Defendants inform consumers that use of the Baby Powder by women in the genital area is
24  unsafe because it can lead to an increased risk of ovarian cancer.  ¶74.  Defendants further
25  conceal the safety risks by failing to register the Baby Powder with the CDPH, which
26  maintains a publicly available and searchable database of cosmetics that contain cancer-
27  causing chemicals.  *Id.*  Accordingly, based on Defendants' omissions about safety of the Baby
28  Powder, representations regarding appropriate use, and written warnings that say nothing

BLOOD HURST & O'REARDON, LLP

1    about an increased use of ovarian cancer, consumers reasonably expect that the Baby Powder

2    is safe to be used as marketed.  *Id.*

3        **B.    The Court's Prior Order**

4        The Court dismissed Plaintiff's complaint for lack of Article III standing, finding

5    Plaintiff did not allege she suffered an economic injury for three reasons.  Dkt. 26 ("Order").

6        First, the Court found that Plaintiff's allegations of deception were based on

7    "Defendants' representation that the Baby Powder was 'safe.'"  Order at 6.  The Court found

8    that Plaintiff failed "to identify any specific statements about safety made by Defendants that

9    she found material to her decision to purchase the Baby Powder."  *Id.*  As discussed below,

10   "specific statements" are not needed.  Advertising messages are communicated through both

11   express and implied messaging.  Marketing messages are communicated by through what is

12   said and not said, as well as what is implied or not.  Plaintiff's allegations are based on implied

13   and express marketing messages, including Defendants' omissions regarding the safety and

14   appropriate use of the Baby Powder.

15       Second, the Court found that Plaintiff cannot allege that she paid a premium for the

16   Baby Powder because "she received all of the intended benefits of the bargain."  *Id.* at 7.  The

17   Court found that because Plaintiff used the Baby Powder for decades and continued to

18   purchase it, she did so "presumably because Plaintiff enjoyed the benefits of the elimination of

19   friction on the skin, absorption of unwanted excess moisture, and the maintenance of

20   freshness," and thus, "Plaintiff indeed received such benefits from the Baby Powder and

21   believed it was worth the price."  *Id.* at 8.  The Court concluded that "Plaintiff received the

22   benefit-of-the-bargain because she received the exact product she intended to purchase . . . ."

23   *Id.*  As discussed below, the Court was incorrect factually and as a matter of law because

24   Plaintiff bargained for a product that she did not receive – Baby Powder that did not create a

25   heightened risk of cancer.  Plaintiff did not receive that which she thought she was purchasing.

26   This is enough for recovery under false advertising statutes.  She does not need to show

27   physical harm resulting from a falsely advertised product.

28

BLOOD HURST & O'REARDON, LLP

00085601
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

Finally, the Court found that Plaintiff failed to allege that she would have purchased an alternative product because she alleges that all talc-based products increase the risk of ovarian cancer. *Id.* Thus, the Court found that any alternative products would have the same alleged repercussions as the Baby Powder. *Id.* While Plaintiff disputes the need to plead an alternative product under the facts of this case, Plaintiff's FAC clarifies the existence of alternative products that she would have purchased had she known.

C.      **Plaintiff's First Amended Complaint Addresses the Court's Prior Order**

The FAC addresses each of the Court's concerns expressed in the prior MTD Order and clarifies for the Court Plaintiff's allegations.

First, Plaintiff's claims are premised on Defendants' omission that use of the Baby Powder as advertised would significantly increase her risk of ovarian cancer. ¶75. The FAC clarifies this by alleging that "[c]ontrary to Defendants' image as one who sells safe products and despite Defendants' knowledge of the increased risk of ovarian cancer, nowhere do Defendants warn of the increased risk of ovarian cancer linked to the use of Johnson's® Baby Powder." ¶20; *see also* ¶73 ("Despite the overwhelming scientific and medical evidence regarding talc use and ovarian cancer that has developed over the past several decades, Defendants' knowledge of the increased risk of ovarian cancer, and their understanding that consumers thoughts and expected they were buying a safe product, Defendants did not warn consumers of these safety risks."). Plaintiff alleges the omission was material because had she known that the Baby Powder increased her risk of ovarian cancer, she would not have purchased it. ¶11.

Second, Plaintiff clarifies that she did not receive the benefit of her bargain because she did not receive the product she reasonably believe she was purchasing – Baby Powder that she was safe to use as advertised. ¶11. Plaintiff alleges that Defendants' only warnings on the label of the Baby Powder are to "Keep the powder away from child's face to avoid inhalation, which can cause breathing problems" and to "[a]void contact with eyes." ¶73. Plaintiff alleges that based on these limited warnings and Defendants' marketing of the Baby Powder as intended to be used by women, Plaintiff reasonably expected that the Baby Powder was safe to

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

1   use as intended and advertised.  ¶19.  But, the Baby Powder was not safe to use and instead,

2   has significantly increased her risk of getting ovarian cancer.  ¶¶1, 4, 22.  Thus, Plaintiff did

3   not receive the benefit of her bargain.

4     Finally, Plaintiff clarifies that "[h]ad [she] known the truth about the safety of using

5   Johnson's® Baby Powder, she would not have purchased the product."  ¶11.  Instead,

6   "Plaintiff would have purchased an alternative product containing cornstarch instead of talc."

7   *Id.*  Plaintiff alleges "[o]ther alternative powder products that are cornstarch based instead of

8   talc-based, do not pose a risk of ovarian cancer and are otherwise functionally the same as talc

9   products."  ¶22; *see also* ¶40.  Plaintiff alleges Article III standing.

10   **III.** **LEGAL STANDARDS**

11     A complaint need not contain detailed factual allegations; rather, it must plead "enough

12   facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

13   U.S. 544, 570 (2007).[1]  A court may only rule on questions of law, and must "accept as true all

14   facts alleged in the complaint, and . . . draw all reasonable inferences in favor of Plaintiffs . . .

15   ."  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008).

16     Under Fed. R. Civ. P. 12(b)(1), a party may challenge the court's subject matter

17   jurisdiction, which includes a plaintiff's Article III standing.  *See Steel Co. v. Citizens for a*

18   *Better Env't*, 523 U.S. 83, 101-02 (1998).  Article III standing requirements are satisfied at the

19   pleading stage by general factual allegations of injury resulting from defendant's conduct.  *See*

20   *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  In a class action, only the named

21   plaintiff must meet these requirements.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974,

22   985 (9th Cir. 2007).  When considering whether a plaintiff has Article III standing, the court

23   must assume the merits of her legal claim.  *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975).

24   **IV.** **PLAINTIFF HAS ARTICLE III STANDING**

25     Article III standing requires (1) injury-in-fact that is concrete and particularized, as

26   well as actual or imminent; (2) that the injury is fairly traceable to the challenged conduct; and

27   (3) that the injury is redressable.  Order at 3.  Defendants only challenge the "injury-in-fact"

28

BLOOD HURST & O'REARDON, LLP

---

[1] Internal quotations and citations omitted unless otherwise specified.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

1  aspect of Article III standing by arguing that Plaintiff received the benefit of her bargain and

2  did not suffer any economic loss because she does not allege that switching to an alternative

3  product would have saved her money.  Mot. at 9.  Defendants are wrong as a matter of law.

**A.    Plaintiff Suffered Injury-in-Fact and Did Not Receive the Benefit of Her Bargain**

6        Defendants argue that because Plaintiff did not "suffer[] any ill effects from using

7  Johnson's Baby Powder" she "received all the benefits she expected when she bought and

8  consumed the product" and thus, received the benefit of her bargain and did not suffer injury-

9  in-fact.  Mot. at 10.  Defendants misunderstand the injury-in-fact requirement.

10       The Ninth Circuit has been clear that when plaintiffs allege they "'paid more for [a

11  product] than they otherwise would have paid, or bought it when they otherwise would not

12  have done so' they have suffered an Article III injury in fact."  *Hinojos*, 718 F.3d at 1104 n.3

13  (quoting *Mazza*, 666 F.3d at 595).  For example, in *Mazza*, plaintiffs alleged that they paid

14  more for an optional braking system on their cars "than they otherwise would have paid, or

15  bought it when they otherwise would not have done so, because Honda made deceptive claims

16  and failed to disclose the system's limitations."  666 F.3d at 595.  The Ninth Circuit found that

17  this was sufficient to confer Article III standing because plaintiffs "were relieved of their

18  money by Honda's deceptive conduct . . . ."  *Id.*

19       Similarly in *Guido v. L'Oreal USA, Inc.*, 284 F.R.D. 468, 472 (C.D. Cal. 2012),

20  plaintiffs alleged that they purchased hair serum that the defendant manufacturer failed to warn

21  was flammable.  Plaintiffs, alleged they "would not have purchased [the] Serum for the price

22  they paid, or would not have purchased it at all, had they known of its flammable

23  characteristics."  *Id.* at 474.  Defendants argued that because the plaintiffs did not suffer any

24  physical harm or damages from the serum they did not suffer injury-in-fact.  *Id.*  In rejecting

25  the defendants' argument, the court found plaintiffs' allegation that "had they known [the]

26  Serum was flammable, they would have paid less than its retail price or would not have

27  purchased it at all" was sufficient to confer injury-in-fact for Article III standing.  *Id.* at 475.

28

BLOOD HURST & O'REARDON, LLP

7

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

1   Similarly here, Plaintiff suffered injury-in-fact because she alleges "[h]ad [she] known

2   the truth about the safety of using Johnson's® Baby Powder, she would not have purchased

3   the product" or would have purchased an alternative cornstarch-based product. ¶11.

4   The fact that the Baby Powder functioned to keep her skin dry and that Plaintiff does

5   not allege she was diagnosed with ovarian cancer do not matter. *See* Mot. at 10. The

6   California Supreme Court in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)

7   addressed this very issue.[2]   In *Kwikset*, plaintiffs contended they suffered injury-in-fact

8   because they purchased locks that were represented by the defendant as being "Made in

9   U.S.A." when in fact they were not. *Id.* at 317. Defendant argued that plaintiffs did not suffer

10  injury-in-fact because "consumers who receive a fully functioning product have received the

11  benefit of their bargain, even if the product label contains misrepresentations that may have

12  been relied upon by a particular class of consumers." *Id.* In rejecting this argument the

13  *Kwikset* court explained:

14      Plaintiffs selected Kwikset's locksets to purchase in part because they were
15      "Made in U.S.A."; they would not have purchased them otherwise; and, it may
        be inferred, they value what they actually received less than either the money
16      they parted with or working locksets that actually were made in the United
        States. They bargained for locksets that were made in the United States; they
17      got ones that were not.

18  *Id.*

19  The Ninth Circuit recognized the *Kwikset* holding in *Hinojos*, 718 F.3d at 1107, when

20  it rejected the district court's ruling that plaintiff who purchased goods on sale but alleged that

21  the prices were not really sale prices nonetheless "got the 'benefit of the bargain' because

22  [plaintiff] kept the goods that he purchased and they were not defective." The *Hinojos* court

23  held that plaintiff alleged injury-in-fact and did not get the benefit of his bargain because he

24  purchased the products believing they were being sold at a reduced price when he otherwise

25  would not have purchased them. *Id.*

26

27

28

---

[2]   Although *Kwikset* is a state UCL case, satisfaction of the UCL's injury-in-fact standing requirement necessarily satisfies Article III standing. *See* 51 Cal. 4th at 324.

8

1    Similarly here, Plaintiff purchased the Baby Powder reasonably believing that it was

2    safe to use as advertised when in fact it was not.  ¶11.  Plaintiff did not receive the benefit of

3    her bargain because she received a product that was not safe to use as advertised.  ¶¶1, 6.  Had

4    Plaintiff known the truth about the safety, she would not have used it.

5    The Ninth Circuit's opinion in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009),

6    cited by Defendants, actually supports Plaintiff's position.[3]  In *Birdsong*, plaintiffs alleged that

7    earbuds they received with the purchase of iPods were unsafe because they could produce

8    sound at an unsafe level.  *Id.* at 956.  The court found plaintiffs did not have standing based on

9    potential hearing loss because plaintiffs "do not even claim that they used their iPods in a way

10   that exposed them to the alleged risk of hearing loss."  *Id.* at 960.  The court concluded that

11   "[a]t most, the plaintiffs plead a potential risk of hearing loss not to themselves, but to other

12   unidentified iPod users who might *choose* to use their iPods in an unsafe manner."  *Id.* at 960.

13   That is, plaintiff did not use the product in the manner complained of.

14   By contrast here, Plaintiff alleged she used the Baby Powder as advertised in the very

15   manner that leads to an increased risk of ovarian cancer.

16   *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319-20 (5th Cir. 2002), also relied on by

17   Defendants, is inapposite.  There, plaintiffs alleged that they purchased and used a painkiller

18   that was labeled as being only appropriate for short-term use and as not recommended for

19   people with preexisting liver conditions.  *Id.* at 316-17.  After plaintiff began using the drug,

20   three people who used the drug "for long-term relief without undergoing liver testing" suffered

21   liver failure.  *Id.* at 317.  Plaintiff alleged that she was injured because they purchased the

22   drug.  *Id.* at 319.  Plaintiff did not allege however, that she suffered personal injury, that the

23   drug was ineffective, or that there were any "future health consequences to users."  *Id.*  Nor did

24

25   ───────────────

[3]    The district court cases relied on by Defendants are similarly inapposite.  *Herrington v.*

26   *Johnson & Johnson Consumer Cos.*, No. 09-1597, 2010 U.S. Dist. LEXIS 90505, at *18 (N.D.
     Cal. Sept. 1, 2010) (although the court acknowledged "overpayment" as an appropriate injury,

27   plaintiff did not allege it); *Boysen v. Walgreen Co.*, No. 11-06262, 2012 U.S. Dist. LEXIS
     100528, at *24 (N.D. Cal. July 19, 2012) (plaintiff failed to allege that he would have

28   purchased an alternative product); *Myers-Armstrong v. Actavis Totowa, LLC*, No. 08-04741,
     2009 U.S. Dist. LEXIS 38112, at *12-*13 (N.D. Cal. Apr. 22, 2009) (plaintiff took the pills
     and received "their beneficial effect with no downside").

BLOOD HURST & O'REARDON, LLP

9                                              Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

1  plaintiff allege what additional warnings could have been made.  *Id.* at 321.  Accordingly, the

2  court found that plaintiff did not suffer any injury because "[b]y [her] own admission, [she]

3  paid for an effective [product], and she received [an effective product]."  *Id.* at 319-20.

4      Several courts have acknowledged the limits of *Rivera*.  For example, in *Cole v. GMC*,

5  484 F.3d 717 (5th Cir. 2007), the Fifth Circuit found that plaintiffs had suffered injury-in-fact

6  because they alleged "that they contracted to purchase [cars] with side impact air bags that

7  would deploy only under certain circumstances involving a side impact but that they received

8  [cars] with air bags that could 'deploy unexpectedly, without a crash . . . .'"  The court found

9  that plaintiffs sufficiently alleged that "their injury is that there is a difference between what

10  they contracted for and what they actually received."  *Id.* at 722.

11      The Fifth Circuit found the allegations in *Cole* were different than those in *Rivera*:

12  > *Rivera* is distinguishable from the instant case.  In *Rivera*, the plaintiffs sought
13  > damages for potential physical injuries; because they never suffered actual
> physical injuries, they could only allege injuries that were suffered by non-
14  > parties.  The *Rivera* plaintiffs did not assert economic harm emanating from
> anything other than potential physical harm.  Here, although plaintiffs do not
15  > assert physical injuries (either their own or those of other persons), they do
> assert their own actual economic injuries.  Plaintiffs allege that each plaintiff
16  > suffered economic injury at the moment she purchased a DeVille because each
> DeVille was defective . . . . Plaintiffs seek recovery of their actual economic
17  > harm (e.g., overpayment, loss in value, or loss of usefulness) emanating from
> the loss of their benefit of the bargain.
18

19  *Id.* at 722-23; *see also I*n *In re Clorox Consumer Litig.*, No. 12-00280, 2013 U.S. Dist. LEXIS

20  107704, at *16-*17 (N.D. Cal. July 31, 2013) (distinguished *Rivera* and finding that in contrast

21  to plaintiff in *Rivera* who alleged wrongs suffered by other people, plaintiffs in *Clorox* "paid a

22  premium for an inferior product as a result of Clorox's misleading advertising.").

23      **B.**      **Plaintiff Alleges Economic Loss**

24      Defendants argue that although Plaintiff alleges she would have purchased an

25  alternative product that was actually safe for use, she does not have standing because those

26  alternative products were not cheaper.  Mot. at 12.  This is not relevant.

27      Plaintiff is not required to allege the alternative product was cheaper.  As the court in

28  *Kwikset* explained, the fact that plaintiffs purchased locksets based in part on the fact that they

10

Case No. 2:14-cv-01051-TLN-KJN

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

1   were "Made in U.S.A." when they were not, "it may be inferred, they value what they actually

2   received less than either the money they parted with or working locksets that actually were

3   made in the United States."  51 Cal. 4th at 332; *see also Pirozzi v. Apple Inc.*, 913 F. Supp. 2d

4   840, 846-47 (N.D. Cal. 2012) (cited by this Court in its Order at 8 and recognizing that

5   someone who purchases a falsely represented product has suffered injury); *Boysen*, 2012 U.S.

6   Dist. LEXIS 100528, *24 (economic injury is alleged if plaintiff would have purchased an

7   alternative product "had defendant's [product] been [accurately] labeled . . . .").

8        Accordingly, here, Plaintiff is not required to allege there was a cheaper product to buy

9   in order to have suffered an economic injury.  Rather, her allegation that she would not have

10  purchased the product had she known it was not safe to use as advertised is sufficient.  ¶11.

11       Indeed, the Court's concern here in its prior Order was simply that Plaintiff had not

12  alleged she would have purchased an alternative product.  Order at 8-9.  The concern was not

13  that there was a cheaper alternative product.  That is because Plaintiff is injured by purchasing

14  a product from Defendants that she would not have otherwise purchased had it been

15  appropriately labeled as unsafe to use as advertised.

16       *Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172, 186 (D. Mass. 2006),

17  relied on by Defendants, does not hold otherwise.  There, plaintiffs alleged they were injured

18  because defendant's misrepresentations regarding a particular prescription drug caused them to

19  purchase excessive doses instead of cheaper alternatives.  *Id.*  Plaintiff here, however, does not

20  allege the alternative was cheaper.  Rather, she alleges that had she known the truth about the

21  Baby Powder being unsafe, she would have purchased a safe alternative product.  Thus, her

22  loss comes in purchasing a product she otherwise would not have purchased.  *See Kwikset*, 51

23  Cal. 3d at 332; *Pirozzi*, 913 F. Supp. 2d at 846-47; *Hinojos*, 718 F.3d at 1107.

24  **V.    THE CLASS DEFINITION SHOULD NOT BE STRICKEN**

25       Defendants argue that the Class definition as pled should be stricken because some

26  people in the Class did not use the product as Plaintiff did, were not exposed to the same risks,

27  and thus, did not suffer injury.  Mot. at 13.

28

BLOOD HURST & O'REARDON, LLP

00085601

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

1    Defendants' argument is not that a class action cannot be maintained.  It is that the

2    class as defined cannot be maintained as a class action.  Motions to strike class allegations "are

3    disfavored because a motion for class certification is a more appropriate vehicle" for

4    arguments about class propriety.  *Thorpe v. Abbott Labs, Inc.*, 534 F. Supp. 2d 1120, 1125

5    (N.D. Cal. 2008).  "[T]he granting of motions to dismiss class allegations before discovery has

6    commenced is rare."  *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007).

7    That is because a motion for class certification provides a court with the benefit of discovery

8    so that the court can determine whether the class as pled, or some other class, should be

9    certified.  Whether the Class as defined in the FAC or some other Class should be certified

10   cannot be determined on the pleadings.

11   Additionally, Defendants confuse Article III standing in a class action with injury.  In a

12   class action, only the plaintiff must demonstrate standing for purposes of Article III.  *See*

13   *Bates*, 511 F.3d at 985.  Plaintiff does this by alleging she purchased a product based on

14   Defendants' material omissions she otherwise would not have purchased.  *See supra* §IV.A.

15   Whether the Class has suffered injury is a different question.  The injury is not, as

16   Defendants have stated, the increased risk of ovarian cancer.  Mot. at 13.  The injury to

17   Plaintiff and the Class, including people who purchased the Baby Powder but never used it, is

18   the cost of purchasing a product that had characteristics different than reasonably expected

19   (here, reasonably believing it to be safe when it was not).  ¶11.  Thus, Plaintiff and all other

20   Class members are damaged in the same amount every time they purchased the Baby Powder.

21   Injuries based on the purchase of a mislabeled product are well-suited for class treatment.  *See*

22   *In the Matter of: IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014)

23   ("every purchaser of a [product] is injured (and in the same amount per [product]) by delivery

24   of a [product] that does not meet the quality standard represented by the manufacturer").  That

25   is because the "[t]he proper measure of restitution in a mislabeling case is the amount

26   necessary to compensate the purchaser for the difference between a product as labeled and the

27   product as received."  *Werderbaugh v. Blue Diamond Growers*, No. 12-2724, 2014 U.S. Dist.

28   LEXIS 71575, at *77 (N.D. Cal. May 23, 2014) (citing *Colgan v. Letherman Tool Group, Inc.*,

12

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

135 Cal. App. 4th 663, 700 (2006)). Defendants' argument is nothing but a factual argument for which there is no basis in the complaint.

Defendants' ascertainability argument is similarly misplaced. *See* Mot. at 14. Rule 23 "focus[es] on the question of whether the class can be ascertained by objective criteria" as opposed to "subjective standards (*e.g.*, a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, person who were discriminated). 1 Rubenstein, *Newberg on Class Action* § 3:3; *Manual for Complex Litigation* § 21:222 (4th ed. 2004); *see also Daar v. Yellow Cab*, 67 Cal. 2d 695, 706 (1967); *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282-83 (11th Cir. 2011). "In this Circuit, it is enough that the class definition describes a set of common characteristics sufficient to show a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *McCrary v. Elations Co., LLC*, No. 13-00242, 2014 U.S. Dist. LEXIS 8443, at \*24-\*25 (C.D. Cal. Jan. 13, 2014).[4]

Here, the Class is defined by objective criteria based on class members' purchase of the Baby Powder, not their use of it. Accordingly, ascertainability is not at issue.

## VI. PLAINTIFF SATISFIES RULE 9(B)

Defendants argue that Plaintiff fails to satisfy Rule 9(b) because she does not allege a representation regarding safety on which she relied in making her purchase. Mot. at 15.

First, only those aspects of the UCL allegations that "aver fraud" or are "grounded in fraud" implied Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003). Absent allegations satisfying all of the necessary elements of fraud, Rule 9(b) does not apply. *See Johns v. Bayer Corp.*, No. 09cv1935, 2010 U.S. Dist. LEXIS 10926, at \*14 (S.D. Cal. Feb. 9, 2010). For example, under the unfair prong of the UCL, it is unfair for Defendants to continue to sell a product that is harmful to women without appropriate warnings. This would not implicate Rule 9(b).

Second, a plaintiff need not rely on an express representation to satisfy Rule 9(b). Rather, reliance on labels that omit material facts is sufficient. *See Herremans v. BMW of N.*

---

[4]     The issue is not as Defendants describe. The Third Circuit recently clarified that even its ascertainability requirement can be easily met. *See Byrd v. Aaron's Inc.*, No. 14-3050, 2015 U.S. App. LEXIS 6190, \*20 (3d Cir. Jan. 23, 2015).

BLOOD HURST & O'REARDON, LLP

*Am., LLC*, No. 14-02363, 2014 U.S. Dist. LEXIS 145957, *24-*26 (C.D. Cal. Oct. 3, 2014); *see also Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 935 (N.D. Cal. 2013) ("Although Plaintiffs' allegations do allege a fraud based in part on omissions, a plaintiff must still plead such claim with particularity."). With claims based on omissions, "the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Herremans*, 2014 U.S. Dist. LEXIS 145957, at *24. When a plaintiff alleges who engaged in the concealment, what was concealed, why the information was not disclosed, and how the information was concealed, Rule 9(b) is satisfied. *Id.* at *27-*28.

That is precisely what Plaintiff does here. Plaintiff alleges Defendants failed to warn consumers (who) about the safety and increased risk of ovarian cancer (what) so that they could continue to sell the Baby Powder to women (why). ¶¶1, 73 (who); ¶¶1, 6, 11, 19, 23 (what); ¶¶6, 75, 77 (why). Plaintiff satisfies Rule 9(b).

Finally, actionable advertising messages are not limited to express statements. Implied statements, communicated through a variety of contexts, including pictures, symbols, colors, and beliefs about a company created through marketing the good will of the company, can all convey advertising messages. *Williams v. Gerber Prods.*, 552 F.3d 934, 939 (9th Cir. 2008) (images conveying false advertising messages actionable under UCL and CLRA); *Committee on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 205, 214 (1983) (implied advertising messages created by words and images may form basis of UCL and common law fraud claims). Accordingly, Plaintiff need not allege a specific statement to satisfy Rule 9(b).

## VII.   PLAINTIFF PLEADS NEGLIGENT MISREPRESENTATION

Defendants argue that Plaintiff's negligent misrepresentation claim must be dismissed because Plaintiff fails to allege a positive assertion upon which she relied. Mot. at 16. However, Defendants completely ignore the full allegations contained in Plaintiff's FAC.

Defendants argue that "Estrada claims only to have seen and relied on the product's label and various generic statements on J&J's website," but goes on to improperly argue that Plaintiff "does not claim any of the statements on the product label are actually false." *Id.* at

BLOOD HURST & O'REARDON, LLP

17; *see also* ¶¶11, 19.  Defendants flatly state, without support, that "[plaintiff's] claims still appear to be based on an 'omission' – namely that J&J should have affirmatively disclosed some type of information about the 'risk' Estrada alleges."  Mot. At 17.  Certainly, such a disclosure should have been made by Defendants, but that omission is not the basis for plaintiff's negligent misrepresentation claim.  Plaintiff's FAC clearly pleads Defendants' false statements.

Plaintiff alleges that "Defendants misrepresented that the Baby Powder was clinically proven to be gentle and safe when they knew or should have known that there is an increased risk of ovarian cancer for women who use talc powders in the genital area."  ¶107; *see also* ¶¶16, 19, 74.  In support of this allegation, Plaintiff's Complaint sets forth the "positive assertions" upon which Plaintiff relied.  Specifically, the Complaint alleges that Defendants' product label declares the talc-containing products are "gently," "helping," "comfortable," "tested," "delicate," "soft," and "soothing."  ¶16.  All of these representations, in light of the known scientific evidence linking genital use of talc with ovarian cancer, are ***certainly false*** – a product that causes ovarian cancer cannot be truthfully and accurately described as gentle, helpful, comfortable, tested, delicate, soft, or soothing.  Yet, these very statements and misrepresentations by Defendants are on the label upon which Plaintiff relied.  ¶¶19, 115.

Additionally, the FAC alleges that Defendants misrepresented on their website that their product is "Clinically proven to be safe, gentle and mild."  ¶19.  The FAC alleges that Defendants continued to deceive consumers by encouraging women to use the Baby Powder in the very manner that can lead to the increased cancer risk and represented on the labeling and other marketing that their Baby Powder is "clinically proven mildness" and "clinically proven to be safe, gentle and mild."  ¶74.  The FAC further alleges that "[r]elying on these statements and Defendants' marketing and branding efforts, consumers, including Plaintiff, reasonably believe Defendants are a company that can be trusted to provide safe products, and that their Baby Powder product was in fact safe."  ¶19.

BLOOD HURST & O'REARDON, LLP

Case No. 2:14-cv-01051-TLN-KJN
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

00085601

BLOOD HURST & O'REARDON, LLP

1   Despite Defendants' argument to the contrary, Plaintiff clearly alleges in detail

2   Defendants' positive assertions that were false, *i.e.*, misrepresentations upon which she

3   relied to make her purchasing decisions.  Regardless, the law does not require the positive

4   assertions alleged to be as explicit as "Baby Powder does not cause cancer."  The fact that

5   Defendants make many positive assertions about the appropriate use of the Baby Powder and

6   its applicability to a demographic as sensitive as babies is sufficient for a reasonable

7   consumer to infer that such a product is safe for that purpose and does not cause cancer.  *See,*

8   *e.g., Randi W. v. Muroc Joint Unified School Dist.*, 14 Cal. 4th 1066, 1084 (1997) (holding

9   child sexual assault victim stated claim for negligent misrepresentation where defendant

10  [school district]'s letters recommending [former employee] for hire "without reservation or

11  qualification, constituted affirmative representations that strongly implied [former employee]

12  was fit to interact appropriately and safely with female students," and finding "[t]hese

13  representations were false and misleading in light of [former employee's] repeated sexual

14  improprieties" with students.); *Tijsseling v. General Acc. Assur. Corp.*, 55 Cal. App. 3d 623,

15  626 (1976) (holding seller of real property negligently misrepresented condition of property to

16  buyer, even though no express statements had been made); and *Mary Pickford Co. v. Bayly*

17  *Bros., Inc.*, 12 Cal. 2d 501, 525-26 (1939) ("[A] person who sells a security impliedly

18  represents that a permit therefore has been secured where one is required by the Corporate

19  Securities Act for such a sale.")

20  **VIII.   PLAINTIFF PLEADS AN IMPLIED WARRANTY CLAIM**

21  **A.      Plaintiff Sufficiently Alleges the Baby Powder Is Unmerchantable**

22  Defendants argue that Plaintiff fails to allege the Baby Powder was unmerchantable

23  and had "no beneficial use" and instead, Plaintiff merely "chose[] to use the product in a

24  particular way that she contends is unsafe . . . ."  Mot. at 17.  Defendants ignore the allegations

25  in the FAC and misunderstand the meaning of unmerchantable.

26  Plaintiff alleges that "[f]or decades Defendants have manufactured, distributed,

27  marketed and sold Johnson's® Baby Powder as a daily use powder intended to eliminate

28  friction on the skin and to absorb unwanted excess moisture for both babies and women" (¶14)

16

00085601

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

and that "[h]istorically, the Baby Powder label and advertising encouraged women to dust themselves with the Baby Powder daily to mask odors" (¶15).   Plaintiff also alleges that Defendants have been aware of the consumers' uses of Baby Powder, including by women in the genital area, for decades.  ¶¶22, 67-72.

"The core test of merchantability is fitness for the ordinary purpose for which goods are used."  *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 228 (2006) (citing Cal. Comm. Code § 2314).   A product's safety during ordinary use is included in this.   For example, a vehicle that is "in safe condition and substantially free from defects is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used."  *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007).   Simply because "a vehicle provides transportation from point A to point B," does not mean that the vehicle complies with its implied warranty of merchantability if it is unsafe to drive.  *Id.*

Similarly here, simply because the Baby Powder eliminates moisture and friction does not mean it is merchantable if it is not safe for that purpose when used by women as advertised and known to Defendants.

### B.      Privity Is Not Required

Relying entirely on *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008), Defendants contend that privity is required for Plaintiff's implied warranty claim and there is no exception for third party beneficiaries of the warranty.  Mot. at 18.

Although privity is ordinarily required for implied warranty claims, "exceptions to the privity requirement have been found in cases involving foodstuffs, drugs and pesticides, substances marketed with the knowledge the purchaser may not by the ultimate consumer of the products."  *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011) (citing *Klein v. Duchess Sandwich Co., Ltd.*, 14 Cal. 2d 272, 283-84 (1939); *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 607 (1960); *Arnold v. Dow Chemical*, 91 Cal. App. 4th 698, 720 (2001)).  This is because "where the plaintiff consumer is an intended third-party beneficiary of the contract for sale of a good" between a manufacturer and a seller, the warranty is intended for the end user – the consumer.  *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices*

BLOOD HURST & O'REARDON, LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

00085601

1   & *Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1222 (C.D. Cal. 2011); *Gilbert Fin. Corp. v.*

2   *Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69-70 (1978).

3          Here, the Baby Powder is intended for human use on the body.  Defendants sell the

4   Baby Powder at wholesale for the intended purpose of consumers purchasing the product from

5   the retailers.  Thus, privity is not required because the Baby Powder is "marketed with the

6   knowledge the purchaser may not be the ultimate consumer of the product." *Jones*, 198 Cal.

7   App. 4th at 1201.

8          Additionally, privity is not required where "plaintiff relies on written labels or

9   advertisements of a manufacturer." *Clemens*, 534 F.3d at 1023 (citing *Burr v. Sherwin*

10  *Williams Co.*, 42 Cal. 3d 682, 696 (1954)).  Plaintiff alleges she relied on the Baby Powder

11  label when making her purchases, and as a result reasonably believed the Baby Powder was

12  safe to us to eliminate unwanted moisture and friction.  ¶11.  Plaintiff alleges that the label did

13  not inform her to not use the Baby Powder in her genital area.  ¶¶73-75.

14         *Clemens*, cited by Defendants, is inapposite.  There, plaintiff alleged that the head

15  gasket on certain cars was defective, needing to be repaired due to persistent oil

16  leaks.  534 F.3d at 1021.  The *Clemens* court simply found that none of the privity

17  requirements applied in the car sales context. *Id.* at 1023.

18  **IX.   PLAINTIFF DOES NOT LACK STANDING TO SEEK INJUNCTIVE RELIEF**

19         Defendants narrowly construe the Article III requirements and argue that Plaintiff does

20  not have standing to seek injunctive relief because she is aware of the alleged increased risk of

21  ovarian cancer.  Mot. at 19.  Defendants, again, misapply the law.

22         "Construing Article III standing as narrowly as defendant suggests in consumer

23  protection cases would eviscerate the intent of the California legislature in creating consumer

24  protection statutes because it would effectively bar any consumer who avoids the offending

25  product from seeking injunctive relief." *Larsen v. Trader Joe's Co.*, No. 11-05188, 2012 U.S.

26  Dist. LEXIS 162402, at *9-*12 (N.D. Cal. June 14, 2012).  Numerous courts have agreed and

27  correctly ruled that there is standing for injunctive relief. *See Koehler v. Litehouse, Inc.*, No.

28  12-04055, 2012 U.S. Dist. LEXIS 176971, at *15-*16 (N.D. Cal. Dec. 13, 2012); *Ries v.*

BLOOD HURST & O'REARDON, LLP

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC

BLOOD HURST & O'REARDON, LLP

1  *Arizona Beverage USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) ("[W]ere the Court to

2  accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to

3  defeat standing for an injunction, then injunctive relief would never be available in false

4  advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*, No. 10-04173,

5  2011 U.S. Dist. LEXIS 41077, at *19-*21 (C.D. Cal. Apr. 11, 2011) ("If the Court were to

6  construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates,

7  federal courts would be precluded from enjoining false advertising under California consumer

8  protection laws because a plaintiff who had been injured would always be deemed to avoid the

9  cause of the injury thereafter ('once bitten, twice shy') and would never have Article III

10 standing."); *Cabral v. Supple, LLC*, No. 12-00085, 2012 U.S. Dist. LEXIS 137365, at *5-*6

11 (C.D. Cal. Sept. 19, 2012) (in case involving allegations that defendant misrepresented the

12 benefits of its beverage, the court "agree[d] with the reasoning and conclusion of *Henderson v.*

13 *Gruma*" and denied defendant's motion to dismiss); *Contreras v. Johnson & Johnson*

14 *Consumer Cos., Inc.*, No. 12-7099, 2012 U.S. Dist. LEXIS 186949, at *7-*8 (C.D. Cal. Nov.

15 29, 2012) ("If Plaintiff were not allowed to [pursue injunctive relief] because of an argument

16 that there was an insufficient threat of future injury as to her, no individual would ever be able

17 to seek such relief . . . .").

18       The narrow construction of Article III that Defendants advocate "would surely thwart

19 the objective of California's consumer protection laws."  *Henderson*, 2011 U.S. Dist. LEXIS

20 41077, at *20.  That is because "[i]f the Court were to construe Article III as narrowly as

21 defendant advocates, federal courts would be precluded from enjoining false advertising under

22 California consumer laws because a plaintiff who had been injured would always be deemed to

23 avoid the cause of the injury thereafter . . . and would never have Article III standing."

24 *Koehler*, 2012 U.S. Dist. LEXIS, at *15-*16.

25       Additionally, the fact that Defendants have not changed their practices and informed

26 consumers of the safety risks is sufficient to confer Article III standing.  *See Henderson*, 2011

27 U.S. Dist. LEXIS 41077, at *20-*21 (because defendant did not offer evidence that it had

28 "removed its allegedly misleading advertising from its products" plaintiff satisfied Article III

standing requirements to pursue injunctive relief).  As stated in *Ries*, "the fact that [plaintiffs] discovered the supposed deception some years ago does not render the advertising any more truthful.  Should plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence." 287 F.R.D. at 533.  Similarly, here, the fact that Plaintiff is now aware of the safety risks associated with the Baby Powder does not make the product any safer or Defendants' labels sufficient.

Further, Plaintiff here represents a class of people.  "Once a plaintiff has been wronged, he is entitled to injunctive relief only if he can show that he faces a 'real or immediate threat . . . that he will again be wronged in a similar way.'"  *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quoting *L.A. v. Lyons*, 461 U.S. 95, 111 (U.S. 1983)).  Without intervention, Plaintiff and the represented class are realistically threatened by repetition of Defendants' conduct, a requirement that must be satisfied when seeking injunctive relief.  *See Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (quoting *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001)).  An order from the Court enjoining Defendants to adequately warn consumers concerning the safety risks associated with the use of the Baby Powder would redress the harm suffered by Plaintiff and the represented class and will prevent future harm. *See Vietnam Veterans of Am. v. CIA*, 288 F.R.D. 192, 205 (N.D. Cal. 2012) ("[A] plaintiff demonstrates redressability if the court's statement would require the defendant to act in any way that would redress past injuries or prevent future harm.").  For these reasons, the Defendants' motion should be denied.

## X.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: June 8, 2015

By:       *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAULA M. ROACH (254142)701 B Street,
Suite 1700
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com
proach@bholaw.com

BEASLEY, ALLEN, CROW, METHVIN,
            PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III (*pro hac vice*)
LANCE C. GOULD (*pro hac vice*)
ALISON DOUILLARD HAWTHORNE
      (*pro hac vice*)
272 Commerce Street
Post Office Box 4160
Montgomery, AL 36103
Tel: 334/269-2343
224/954-7555 (fax)
Dee.Miles@BeasleyAllen.com
Lance.Gould@BeasleyAllen.com
Alison.Hawthorne@BeasleyAllen.com

THE SMITH LAW FIRM
ALLEN SMITH, JR.
618 Towne Center Blvd., Suite B
Ridgeland, MS  39157
Tel: 601/952-1422
601/952-1426 (fax)
allen@smith-law.org

*Attorneys for Plaintiff and the Class*

BLOOD HURST & O'REARDON, LLP

Case No. 2:14-cv-01051-TLN-KJN

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC**

00085601

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 8, 2015.

*s/  Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

Case No. 2:14-cv-01051-TLN-KJN
00085601
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS/MOTION TO STRIKE FAC