RICHARD B. GOETZ (S.B. #115666)
rgoetz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: (415) 984-8700
Facsimile: (415) 984-8701

Attorneys for Defendants
JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MONA ESTRADA, On Behalf of Herself and All Others Similarly Situated,

Plaintiff,

v.

JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,

Defendants.

Case No. 2:14-cv-01051-TLN-KJN

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE FIRST AMENDED COMPLAINT**

Hearing Date: July 2, 2015
Time: 2:00 p.m.
Judge: Hon. Troy L. Nunley
Courtroom: 2

First Amended Complaint Filed: April 24, 2015

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ESTRADA SUFFERED NO ECONOMIC INJURY ..... 3

A. Estrada Admits Cornstarch Is *Not* Cheaper ..... 3

B. Estrada's Other Theories of "Economic Injury" Have Already Been Rejected ..... 4

III. ESTRADA'S CLAIMS SOUND IN FRAUD AND MUST COMPLY WITH 9(b) ..... 6

IV. ESTRADA'S CLASS IS OVERBROAD AND SHOULD BE STRICKEN ..... 8

V. ESTRADA'S IMPLIED WARRANTY CLAIM FAILS AS A MATTER OF LAW ..... 9

VI. ESTRADA HAS NO "REAL AND IMMEDIATE THREAT" OF INJURY ..... 10

VII. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Hain Celestial Grp., Inc.*,
-- F. Supp. 3d --, 2015 WL 1744279 (N.D. Cal. Apr. 8, 2015) .......... 10

*Arnold v. Dow*,
91 Cal. App. 698 (2001).......... 10

*Belville v. Ford*,
13 F. Supp. 3d 528 (S.D. W. Va. 2014) .......... 8

*Birdsong v. Apple*,
590 F.3d 955 (9th Cir. 2009).......... 5

*Boysen v. Walgreen*,
2012 WL 2953069 (N.D. Cal. July 19, 2012).......... 1, 4, 5

*Burns v. Tristar*,
2014 WL 3728115 (S.D. Cal. July 25, 2014) .......... 10

*Burr v. Sherwin Williams*,
42 Cal. 2d 682 (1954) .......... 9

*Cole v. Gen. Motors*,
484 F.3d 717 (5th Cir. 2007).......... 2, 6

*Davisson v. Ford*,
2014 WL 4377792 (S.D. Ohio Sept. 3, 2014).......... 8

*Forcellati v. Hyland's*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......... 10

*Frye v. L'Oreal USA*,
583 F. Supp. 2d 954 (N.D. Ill. 2008) .......... 4

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006).......... 10

*Gilbert v. Steelform*,
82 Cal. App. 3d 65 (1978).......... 10

*Gottsdanker v. Cutter Labs.*,
182 Cal. App. 2d 602 (1960).......... 9

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .......... 10

*Herrington v. Johnson & Johnson*,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) .......... 1, 5

*Hicks v. Kaufman*,
89 Cal. App. 4th 908 (2001) .......... 2, 6

*Hinojos v. Kohl's Corp.*,
718 F.3d 1098 (9th Cir. 2013).......... 3, 6

*Hovsepian v. Apple*, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......... 8

*In re Actimmune*, 614 F. Supp. 2d 1037 (N.D. Cal. 2009) .......... 9

*In re All Terrain Vehicles Litig.*, 771 F. Supp. 1057 (C.D. Cal. 1991) .......... 8

*In re Apple*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012) .......... 7

*In re Avandia*, 2011 WL 4007878 (E.D. Pa. Sept. 7, 2011) .......... 1, 3

*In re Bisphenol-A (BPA)*, 687 F. Supp. 2d 897 (W.D. Mo. 2009) .......... 4, 5, 8

*In re Clorox Consumer Litig.*, 2013 WL 3967334 (N.D. Cal. July 31, 2013) .......... 6

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*, 831 F. Supp. 2d 507 (D. Mass. 2011) .......... 2, 4

*In re IKO Roofing*, 757 F.3d 599 (7th Cir. 2014) .......... 6

*In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .......... 9

*In re Neurontin*, 433 F. Supp. 2d 172 (D. Mass. 2006) .......... 1, 3

*In re POM Wonderful*, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) .......... 9

*In re Vioxx Class Cases*, 180 Cal. App. 4th 116 (2009) .......... 8

*Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187 (2011) .......... 10

*Jou v. Kimberly-Clark*, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013) .......... 10

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......... 7

*Khasin v. Hershey*, 2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .......... 1, 3

*Klein v. Duchess*, 14 Cal. 2d 272 (1939) .......... 10

*Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) .......... 3

*Kwikset Corp. v. Sup. Ct.*,
51 Cal. 4th 310 (2011) .......... 3, 6

*Long v. Graco*,
2013 WL 4655763 (N.D. Cal. Aug. 26, 2013).......... 10

*Loreto v. Proctor & Gamble*,
515 F. App'x 576 (6th Cir. 2013) .......... 3

*Luman v. Theismann*,
2014 WL 443960 (E.D. Cal. Feb. 4, 2014).......... 10

*Mazza v. Am. Honda*,
666 F.3d 581 (9th Cir. 2012).......... 2, 6

*McLaughlin v. Am. Tobacco*,
522 F.3d 215 (2d Cir.), *abrogated in part by Bridge v. Phoenix*, 553 U.S. 639 (2008) .......... 9

*Merck v. Ratliff*,
2012 Ky. App. LEXIS 31 (2012) .......... 9

*Mikhlin v. Johnson & Johnson*,
2014 WL 6084004 (E.D. Mo. Nov. 13, 2014) .......... 4, 6

*Minkler v. Kramer Labs.*,
2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) .......... 8

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993) .......... 9

*Mocek v. Alfa Leisure*,
114 Cal. App. 4th 402 (2003) .......... 9

*Musgrave v. ICC/Marie Callender's*,
2015 WL 510919 (N.D. Cal. Feb. 5, 2015) .......... 1, 3

*Myers-Armstrong v. Actavis Totowa*,
2009 WL 1082026 (N.D. Cal. Apr. 22, 2009) .......... 1, 5

*Pirelli Armstrong Tire Corp. v. Walgreen*,
2010 U.S. Dist. LEXIS 13908 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011).......... 7

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) .......... 3

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002).......... 2, 4, 5

*Sanders v. Apple*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) .......... 8

*Sevidal v. Target*,
189 Cal. App. 4th 905 (2010) .......... 8

*Tomek v. Apple*,
2012 WL 2857035 (E.D. Cal. July 10, 2010) .......... 9

*Werdebaugh v. Blue Diamond*,
2014 WL 2191901 (N.D. Cal. May 23, 2014) ... 6

*Xavier v. Philip Morris*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) ... 10

**RULES**

Fed. R. Civ. P. 9 ... 7, 8

Fed. R. Civ. P. 9(b) ... 7

## I. INTRODUCTION

Estrada's Opposition confirms her claims should be dismissed with prejudice. Estrada argues she suffered an "economic loss" because she now contends she would have switched to an "alternative" cornstarch product instead of Baby Powder. (*See* Mot. at 11-12.) But Estrada admits she "does not allege the alternative was cheaper" and would not have saved money by switching to an "alternative." (Opposition ("Opp."), Dkt. 30, at 11). Instead, she argues that the price of the "alternative" product is literally irrelevant ("not relevant") and that, even if Estrada did not lose money, she still has suffered an "economic" injury. (Opp. at 10.)

With respect, Estrada's position is nonsensical. The Court rejected Estrada's last complaint for lack of "economic injury" because she "received the exact benefit for which she purchased … Baby Powder" and "cannot claim that she spent money that she would not otherwise have spent …." (Order Dismissing Complaint ("Order"), Dkt. 26, at 8-9.) The only substantive difference between her original complaint and the new FAC is that Estrada now also claims she would have purchased an "alternative product containing cornstarch instead of talc." (*See* FAC ¶ 11.) But if that "alternative product" costs the same as Baby Powder (as Estrada admits), then Estrada "cannot claim that she spent money she would not otherwise have spent."[1]

Estrada's other arguments simply rehash the same theories this Court has already rejected. Just as she did before, Estrada argues "had she known the truth about the safety of using the product, she would not have purchased the product." (Order at 2; *see also* Opp. at 1.) But for Estrada, Baby Powder performed exactly as expected, which is why she continued to use it for more than 50 years. (FAC ¶ 11.) That is why this Court held—as a host of other courts have concluded in similar circumstances[2]— that since Estrada personally "received the benefit-of-the-

[1] *See, e.g.*, *Musgrave v. ICC/Marie Callender's*, 2015 WL 510919, at *7 (N.D. Cal. Feb. 5, 2015) (plaintiff alleged he paid more for "natural" products but could have "purchased less expensive non-natural food products"); *Khasin v. Hershey*, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012) ("Plaintiff alleges that he had cheaper product alternatives for purchase at his disposal."); *In re Avandia*, 2011 WL 4007878, at *1 (E.D. Pa. Sept. 7, 2011) (complaint does not "allege that other drugs Plaintiff identifies as alternatives to Avandia … are less expensive"); *In re Neurontin*, 433 F. Supp. 2d 172, 186 (D. Mass. 2006) (no injury where plaintiffs do not "alleg[e] that cheaper alternatives were available and that [p]laintiffs are seeking any difference in price.").

[2] *E.g.*, *Herrington v. Johnson & Johnson*, 2010 WL 3448531, at *2-4 (N.D. Cal. Sept. 1, 2010) (carcinogen in shampoo); *Myers-Armstrong v. Actavis Totowa*, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009) (risk with medication); *Boysen v. Walgreen*, 2012 WL 2953069, at *7 (N.D.

bargain" from her Baby Powder purchases, she "cannot claim that she spent money she would not have otherwise spent by paying a premium or by not purchasing the product." (Order at 8.) Estrada now asserts the Court was "incorrect … as a matter of law." (Opp. at 4, 11.) But the cases Estrada cites involved fundamentally different circumstances—*e.g.*, the product at issue failed to deliver a benefit the plaintiff was specifically promised, or the product was a durable good whose ongoing use was impacted by the alleged defect.[3] None of those cases involved the circumstances at issue here, where Estrada bought and used a product that (for Estrada) worked perfectly and provided all of the benefits Estrada expected to receive. As this Court has already held, "[i]f a plaintiff received the benefit of the bargain because the product performed as promised, the plaintiff does not have an injury to satisfy Article III standing." (Order at 4-5.) And it is undisputed that for Estrada "the product performed as promised."

Estrada's Opposition also demonstrates she cannot cure the other problems with her FAC. For example, Estrada's claims are plainly based on allegations of fraud. Yet she still refuses to explain what specific statements she personally relied on when she bought Baby Powder. Instead, Estrada now makes vague assertions about "impressions" that were allegedly created through unidentified advertising and marketing campaigns that Estrada never bothers to explain or identify. This sort of vague and amorphous pleading is exactly what Rule 9 is intended to prevent—here, Estrada is apparently unable to identify any "false" statements she personally relied on, as Rule 9 requires. And Estrada's proposed class is facially overbroad because many class members (*e.g.*, men, and women who bought the product for uses other than on their genital area) were never even exposed to any alleged risk—for those "class members," there is no

---

Cal. July 19, 2012) (undisclosed lead in fruit juice); *Rivera v. Wyeth-Ayerst*, 283 F.3d 315, 319-20 (5th Cir. 2002) (rejecting "no injury" economic claims because "[b]y plaintiffs' own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain."); *In re Fruit Juice*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("[p]laintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.… Plaintiffs received the benefit of the bargain, as a matter of law, when they purchased these products."); *Hicks v. Kaufman*, 89 Cal. App. 4th 908, 923 (2001) ("Cars and tires have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for.").

[3] *E.g., Cole v. Gen. Motors*, 484 F.3d 717, 722 (5th Cir. 2007) (plaintiffs misled into purchasing vehicles with defective airbags); *Mazza v. Am. Honda*, 666 F.3d 581, 595 (9th Cir. 2012) (plaintiffs paid for safety technology on cars that was promised but not delivered).

allegation that even suggests the product was anything other than safe and "fit for ordinary use." Indeed, Estrada's insistence that even men (who obviously have no risk of ovarian cancer) suffered an "economic loss" shows just how extreme Estrada's theories actually are.

In short, Estrada's Opposition confirms she has no economic loss. The Court should dismiss her complaint with prejudice.

## II. ESTRADA SUFFERED NO ECONOMIC INJURY

### A. Estrada Admits Cornstarch Is *Not* Cheaper

In her Opposition, Estrada concedes—for good reason[4]—that her alleged alternative cornstarch product (whatever it may be) was *not* less expensive than Baby Powder. (Opp. at 10-11 ("Plaintiff … does not allege the alternative was cheaper.").) In other words, Estrada openly admits she would have spent the same amount of money even if she had switched to an "alternative" product. That concession is fatal to her claims—the economic loss under an "alternative product" theory is (of course) the *difference in price* between the alternative and the product actually purchased. *See, e.g.*, *Loreto v. Proctor & Gamble*, 515 F. App'x 576, 580 (6th Cir. 2013) ("[P]laintiff would have purchased a lower-priced cold remedy (thus saving money) were it not for [Defendants'] alleged misrepresentations. The 'quantifiable or measurable' loss in this case is the difference in price between [Defendants'] product and the lower-priced competing product.").[5] But here, the difference in price is literally zero. None of the cases Estrada cites dealt with "alternative products,"[6] and certainly do not hold the "alternative" product's price is

[4] As J&J pointed out in its opening brief, talc and cornstarch products are often sold at the same price. (*See* Mot. at 2 n.3.) Indeed, since J&J is a leading provider of both talc and cornstarch products, it is highly likely that any "alternative" cornstarch product Estrada would have purchased would have also been manufactured by J&J.

[5] *See also Musgrave*, 2015 WL 510919, at *7 (plaintiff alleged they could have "purchased less expensive non-natural food products"); *Khasin*, 2012 WL 5471153, at *6 ("Plaintiff alleges that he had cheaper product alternatives for purchase at his disposal."); *Koh v. S.C. Johnson & Son, Inc.*, 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) ("Windex cost more than similar products without misleading labeling."); *Avandia*, 2011 WL 4007878, at *1 (complaint does not "allege that other drugs Plaintiff identifies as alternatives to Avandia … are less expensive"); *Neurontin*, 433 F. Supp. 2d at 186 (no injury where plaintiffs do not "make any allegations that cheaper alternatives were available and that [p]laintiffs are seeking any difference in price.").

[6] *See, e.g.*, *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 329-30 (2011) (plaintiffs allegedly paid premium for "Made in U.S.A." products that were not made in U.S.A.); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013) (retailer made false affirmative statements about sale prices); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012) (no injury where plaintiff

*irrelevant* to Estrada's claim of "economic injury," as she apparently contends. (Opp. at 10 (price "is not relevant").) In short, Estrada's concession that cornstarch is no cheaper means that, by definition, she did not "spen[d] money that she would not have otherwise spent." (Order at 8.)

**B. Estrada's Other Theories of "Economic Injury" Have Already Been Rejected**

Estrada's remaining "economic loss" arguments simply rehash the same positions this Court has already rejected. Other than her "alternative product" allegation—discussed above—Estrada makes no new allegations in support of her economic loss claims. Instead, she reargues the same points she raised before, and contends the Court "was incorrect … as a matter of law." (Opp. at 4.) She was wrong before and is wrong now. As before, the Court should reject Estrada's theory because, *for her*, Baby Powder performed as expected. (Order at 8 ("Because Plaintiff received the benefit-of-the-bargain, she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing the product.").)

In case after case, courts have held that, where (as here) a consumer fully uses a product and receives the promised benefits, the "omission" of a "risk" that never materialized is not grounds for an economic loss claim.[7] In fact, just last year, the court in the Eastern District of Missouri dismissed literally identical "economic loss" claims over Baby Powder under Missouri's consumer protection statutes because (as here) the plaintiffs there "received 100% use (and benefit) from the products and ha[d] no quantifiable damages." *Mikhlin v. Johnson & Johnson*, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014).

In her Opposition, Estrada contends the cases cited by J&J are "inapposite." (Opp. 9 n.3.) But Estrada never quite explains why, exactly, those cases do not apply. That is because they are

alleged overpayment based on false representations about security of Apple devices without identifying specific false statements). As discussed in more detail below, those cases all involved products explicitly advertised as having characteristics or qualities they did not have.

[7] *See, e.g.*, *Boysen*, 2012 WL 2953069, at *7 (undisclosed lead in fruit juice); *In re Bisphenol-A (BPA)*, 687 F. Supp. 2d 897, 910-13 (W.D. Mo. 2009) ("*BPA I*") (undisclosed toxin in baby formula); *Frye v. L'Oreal USA*, 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (undisclosed lead in lipstick); *Rivera*, 283 F.3d at 319-20 (undisclosed risk in prescription drug; court rejected "no injury" economic claims because "[b]y plaintiffs' own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain."); *Fruit Juice*, 831 F. Supp. 2d at 512 ("[p]laintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.… Plaintiffs received the benefit of the bargain ... .").

squarely on point. In *Myers-Armstrong*, for example, the plaintiffs' claims that the defendants' pills were adulterated were rejected because consumers who "consum[ed] … pills and obtain[ed] their beneficial effect with no downside" have no claim for economic loss. 2009 WL 1082026, at *4. In *Herrington*, the court rejected the plaintiff's claims because he could not plead that, for him, the product (baby shampoo allegedly containing undisclosed "carcinogens") "failed to perform" as promised. 2010 WL 3448531, at *4. And in *Boysen*, the court held a plaintiff who had purchased fruit juice allegedly containing lead and arsenic lacked any economic injury because he had fully consumed the juice and experienced no physical injury. 2012 WL 2953069, at *7; *see also Rivera*, 283 F.3d at 319-20 ("[b]y plaintiff's own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain."); *BPA I*, 687 F. Supp. 2d at 912 (consumers "who disposed of or used the products before learning about [toxin in infant bottles] … received all the benefits they desired and were unaffected by Defendants' alleged concealment. While they may contend they would not have purchased the goods had they known …, these Plaintiffs received 100% use (and benefit) from the products and have no quantifiable damages").[8] Just as in those cases, Estrada "received exactly what she paid for—the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness" (Order at 8) and "is not claiming physical harm or seeking the recovery of personal injury damages." (*Id.* at 2; Opp. at 4; FAC ¶ 11.)[9] Under the circumstances, the allegation that *others* might have been injured does not give Estrada the right to sue. *E.g.*, *Myers-Armstrong*, 2009 WL 1082026, at *4 ("[T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff.").

---

8 *Birdsong v. Apple* supports J&J's position, not Estrada's. (*See* Opp. at 9.) In *Birdsong*, the Ninth Circuit rejected the claim (like Estrada's claim here) that the fact that the headphones they bought could have injured their hearing (but did not) justified a claim of economic loss. 590 F.3d 955, 960 (9th Cir. 2009). That Estrada alleges she used the product in a way that exposed her to a "risk" is a meaningless distinction—the problem with Estrada's claim is that for her (as with the plaintiffs in *Birdsong*), the alleged "risk" never actually materialized.

9 Estrada asserts in passing that "Baby Powder was not safe to use and instead, has significantly increased her risk of getting ovarian cancer." (Opp. at 6.) Estrada has never alleged (in the original complaint or the FAC) she is at an increased risk of ovarian cancer or requires medical monitoring. If Estrada intends to argue she somehow is at an increased risk from using Baby Powder, she was required (but failed twice) to make this allegation. She should not be permitted to raise this contention for the first time now, in her second Opposition brief.

The cases Estrada cites (*see* Opp. at 7-10), on the other hand, are readily distinguishable. In most of her cases, the plaintiffs were (unlike Estrada) affirmatively promised a specific benefit they never actually received. In *Mazza*, for example, the plaintiffs paid for an optional technology package based on allegedly false misrepresentations about its capabilities. 666 F.3d at 595. In *Kwikset*, the plaintiffs bought the products because they had been (falsely) labeled as "Made in U.S.A." 51 Cal. 4th at 329-30. And in *Hinojos*, a retailer allegedly induced plaintiffs to "purchase [luggage and clothing] on the basis of false price information" regarding a "sale" that did not actually exist. 718 F.3d at 1105-07. In those cases, the plaintiffs paid for, but did not receive, goods with specific qualities they had been affirmatively promised (*e.g.*, "Made in U.S.A.").[10] And the other cases Estrada cites involved products that had *not* been consumed and whose ongoing use was impacted by a defect.[11] But again, as here, a consumer who "uses up" a product without experiencing a defect has "received what he bargained for." *Hicks*, 89 Cal. App. 4th at 923 ("Cars and tires have a limited useful life. At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap. If the defect has not manifested itself in that time span, the buyer has received what he bargained for.").

Estrada does not seek compensation for unused Baby Powder. And for her, the product she used for decades performed as promised—she "receive[d] 100% use (and benefit) from the products." *See Mikhlin*, 2014 WL 6084004, at *3; (Order at 7-8). Estrada has no economic injury as a matter of law. (*See* Order at 7-8.)

## III. ESTRADA'S CLAIMS SOUND IN FRAUD AND MUST COMPLY WITH 9(b)

In her Opposition, Estrada argues (as she did last time) that Rule 9(b) does not apply to

---

[10] *See also In re Clorox*, 2013 WL 3967334, at *2-4 (N.D. Cal. July 31, 2013) (cat litter "did not perform as advertised" and allegedly was "worse at eliminating cat odors than other baking-soda-based cat litters."); *In re IKO Roofing*, 757 F.3d 599, 603 (7th Cir. 2014) (manufacturer (falsely) advertised asphalt tiles as meeting specific standard); *Werdebaugh v. Blue Diamond*, 2014 WL 2191901, at *1 (N.D. Cal. May 23, 2014) (products falsely labeled "Natural") (of note, the class was subsequently decertified, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014)).

[11] *See Cole*, 484 F.3d at 722-23 (plaintiffs misled into purchasing vehicles with defective airbags, resulting in "a difference between what they contracted for and what they actually received"). And in *Guido v. L'Oreal USA, Inc.*, the court emphasized that plaintiffs "suffered a loss in value and usefulness of the [allegedly flammable hair] serum." 284 F.R.D. 468, 474-75, 480 n.10 (C.D. Cal. 2012) (citing testimony about hair serum that plaintiff possessed but could no longer use).

her claims because, according to Estrada, they are not "grounded in fraud." (Opp. at 13 ("only those aspects of the UCL that 'aver fraud' or are 'grounded in fraud' implied [sic] Rule 9(b)"). Again, that argument is meritless: Estrada repeatedly argues J&J misrepresented and omitted information about Baby Powder's alleged "risk"—if any of her allegations do not "sound in fraud," they are difficult to identify. (*E.g.*, Opp. at 3; FAC ¶¶ 18-19, 73.)[12]

Here, just as before, Estrada "fails to identify any specific statements about safety made by [J&J] that she found material to her decision to purchase the Baby Powder." (Order at 6.) Most of the statements Estrada cites have nothing to do with "safety" (*e.g.*, "soothing," "soft"), and her assertion that Baby Powder was not "soothing" is just a rehash of the same unsupported argument that the Court rejected last time:

> [Plaintiff] merely argues that the Baby Powder is not 'gently,' 'helping,' 'comfortable,' 'tested,' 'delicate,' 'soft,' or 'soothing' because it allegedly increases the risk of ovarian cancer. … These arguments are not mutually exclusive[, and] Plaintiff does not allege specifically why the Baby Powder cannot be 'gently,' 'helping,' 'comfortable,' tested,' 'delicate,' 'soft,' or 'soothing' when it also increases the risk of ovarian cancer. Thus, the Court does not give this argument any weight.

(Order at 7 n.8.) As before, the only "safety" statement Estrada cites is on J&J's website (FAC ¶¶ 18-19; Opp. at 2, 4, 13-14). Yet even in her Opposition Estrada still does not clearly assert that she *personally saw or relied upon* the website before buying Baby Powder. (Opp. at 12-13.) It is, of course, extremely unlikely a customer who had been buying Baby Powder for 50+ years could have relied on a statement on J&J's website when she made those purchases. If Estrada actually relied on an online statement when she bought her Baby Powder, she was required to specifically allege those facts. That she still has not done so speaks volumes.

For the first time, Estrada also contends J&J made some sort of "implied statements" that

---

[12] Claims based on a "unified course of fraudulent conduct" must comply with Rule 9. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). And claiming that "fraud" is also "unfair" does not allow plaintiffs to escape Rule 9(b). (*See* Opp. at 13.) "[I]f adding an allegation of unfairness to every allegation of fraud required a fall-back to the more relaxed pleading standard under Rule 8(a), then all consumer fraud cases would be pleaded with these words and be subject to the less stringent standard." *Pirelli Armstrong Tire Corp. v. Walgreen*, 2010 U.S. Dist. LEXIS 13908, at *20 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011); *In re Apple*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (when unfair/unlawful UCL claims "are entirely dependent upon allegations that Defendant made misrepresentations and omissions that are 'grounded in fraud' … those claims are subject to the heightened pleading requirement of Rule 9(b)").

"convey[ed]" a "message" of safety through "pictures, symbols, colors, and beliefs." (*Id*. at 14.) But she never explains what "pictures, symbols, colors [or] beliefs" she is referring to when she saw and relied on those items (if ever), or why they conveyed a "safety" message about Baby Powder. (*Id.*; FAC ¶¶ 18-19.) This is exactly what Rule 9 is intended to prevent, and courts have rejected similar attempts to bring amorphous claims of "fraud" that are untethered to any particular statement or advertisement.[13]

## IV. <u>ESTRADA'S CLASS IS OVERBROAD AND SHOULD BE STRICKEN</u>

In her Opposition, Estrada argues her class definition ("all consumers") is appropriate because it is based on "objective" criteria. (Opp. 13.) Estrada is wrong. In the Ninth Circuit, "[n]o class may be certified that contains members lacking Article III standing … [Instead,] [t]he class must … be defined in such a way that anyone within it would have standing." *Sanders v. Apple*, 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).[14] And here, the "objective" criteria Estrada identifies ("all purchasers") include a huge percentage of individuals who have no claim under any possible theory: men, and women who bought Baby Powder to use in ways that have nothing to do with the specific use Estrada claims is "risky."[15] Since the bulk of her proposed "class" has

---

[13] *E.g.*, *In re All Terrain Vehicle Litig.*, 771 F. Supp. 1057, 1060 (C.D. Cal. 1991) (rejecting claims that, "through their nationwide advertising campaigns conducted over approximately eighteen years, [defendants] created and cultivated the false impression that ATV's were suitable and safe for recreational use"); *Davisson v. Ford*, 2014 WL 4377792, at *9 (S.D. Ohio Sept. 3, 2014) (9(b) not satisfied where plaintiffs "do not attempt to explain what advertisements each Plaintiff saw or relied on, resorting instead to generalized allegations and the repeated assertion that … they recall that safety and reliability were frequent elements in the advertisements"); *Belville v. Ford*, 13 F. Supp. 3d 528, 543-44 (S.D. W. Va. 2014) ("Merely stating there were 'themes' of safety and reliability … does not meet the heightened pleading standard under Rule 9(b) to support a fraud claim."); *BPA I*, 687 F. Supp. 2d at 904 ("[G]eneral platitudes" about defendant's "commitment to safety and quality" or "general allegations about a particular Defendant's marketing and advertising strategy … do not satisfy Rule 9(b)").

[14] *See also Hovsepian v. Apple*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (class of "all" iMac buyers "not ascertainable because it includes members who ... have no injury and no standing to sue"); *Minkler v. Kramer Labs.*, 2013 WL 3185552, at *3 (C.D. Cal. Mar. 1, 2013) ("Class will include members who derived benefit from Fungi–Nail and are satisfied users of the product … '[s]uch members have no injury and no standing to sue'") (citation omitted)).

[15] *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) (CLRA requires "'not only that a defendant's conduct was deceptive but that the deception caused [the plaintiff's] harm.'"); *Sevidal v. Target*, 189 Cal. App. 4th 905, 924 (2010) ("Even after the *Tobacco II* decision, the UCL and FAL still require some connection between the defendant's alleged improper conduct and the unnamed class members who seek restitutionary relief.").

no injury,[16] her class claims should be stricken from the FAC.

## V. ESTRADA'S IMPLIED WARRANTY CLAIM FAILS AS A MATTER OF LAW

Next, Baby Powder is not "unmerchantable" just because one particular use (among many) is associated with a "risk." *See Tomek v. Apple*, 2012 WL 2857035, at *6-7 (E.D. Cal. July 11, 2012) (product not "unmerchantable" if many customers used it safely). Products are unmerchantable only if they lack "even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Leisure*, 114 Cal. App. 4th 402, 406 (2003). Here, Plaintiff *does not* claim Baby Powder failed to perform, and most users were never exposed to the "risk" she alleges. Nor can Estrada evade the privity requirement, which she concedes is "ordinarily required" (Opp. 17). The "written labels" exception (*id*. at 18) "is applicable only to express warranties." *Burr v. Sherwin Williams*, 42 Cal. 2d 682, 696 (1954). And the "food and pharmaceutical" exception applies only to goods "designed solely for the introduction into the body of a human being"—i.e., *not* Baby Powder. *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602, 607 (1960) (applying exception to

---

16 In her opposition to J&J's last motion to dismiss, Estrada argued the price of Baby Powder should be treated like a stock, such that "everyone who purchased the Baby Powder [was] injured" because they paid an "inflated" market price that would have been lower if J&J had "disclosed" the alleged risk. (Opp., Dkt. 21, at 1 ("[A]ll consumers … were injured … because Defendants were able to sell the Baby Powder at an inflated price."). This time, Estrada appears to repeat that same argument in truncated form, asserting (as before) that literally "all … class members" (even men) were "damaged in the same amount every time they purchased the Baby Powder." (Opp., Dkt. 30, at 12.) This sort of "price inflation" or "fraud on the market" theory of injury derives from securities cases involving stock exchanged in an efficient market that immediately adjusts, in theory, to new information. Courts have repeatedly rejected attempts to extend "fraud on the market" to consumer class actions. *See Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1089, 1108 (1993) ("The [so-called] fraud-on-the-market doctrine would open the door to class action lawsuits based on exceedingly speculative theories."); *In re POM Wonderful*, 2014 WL 1225184, at *3-4 (C.D. Cal. Mar. 25, 2014) (plaintiffs' "Price Premium model depends upon a 'fraud on the market' theory … [but the court is not] aware of any authority applying a fraud on the market theory to a consumer action"); *In re Actimmune*, 614 F. Supp. 2d 1037, 1054 (N.D. Cal. 2009) (rejecting attempt "to use a fraud-on-the-market theory to circumvent the reliance element of [UCL and CLRA] claims"); *Merck v. Ratliff*, 2012 Ky. App. LEXIS 31, at *20 (2012) ("every other jurisdiction … which has been confronted with the [fraud-on-the-market] theory has rejected it outside of the securities litigation context."). Indeed, if the market for Baby Powder were "efficient" like stocks—it is not—the public studies Estrada cites in the FAC would have been reflected in the product's price. *In re IPO*, 471 F.3d 24, 43 (2d Cir. 2006) ("Plaintiffs' own allegations as to how slow the market was to correct the alleged price inflation despite what they also allege was widespread knowledge of the scheme indicate the very antithesis of an efficient market."); *McLaughlin v. Am. Tobacco*, 522 F.3d 215, 224 (2d Cir.) ("the market for consumer goods … is anything but efficient"), *abrogated in part by Bridge v. Phoenix*, 553 U.S. 639 (2008). The Court should reject the invitation to do what no court has ever done: adopt a securities-style "price inflation" theory of injury for California's consumer protection laws.

vaccine).[17] Estrada's implied warranty claim should be dismissed.[18]

## VI. ESTRADA HAS NO "REAL AND IMMEDIATE THREAT" OF INJURY

Finally, Estrada does not deny she is not "'realistically threatened by a *repetition*'" of any injury. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (citation omitted). Instead, she relies on cases following *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *4 (C.D. Cal. Apr. 11, 2011), to argue that Article III should not "thwart the objective of California's consumer protection laws." (Opp. 19.) But many courts have rejected *Henderson* because "'a public-policy exception to the standing requirement ... does not square with Article III's mandate.'" *Luman v. Theismann*, 2014 WL 443960, at *8 (E.D. Cal. Feb. 4, 2014) (citation omitted).[19] "[I]t almost goes without saying that [California's interest in its consumer protection laws] can never overcome a constitutional standing prerequisite." *Anderson*, 2015 WL 1744279, at *5.

## VII. CONCLUSION

J&J respectfully requests that the Court dismiss the complaint with prejudice.

Dated: June 18, 2015

MATTHEW D. POWERS
O'MELVENY & MYERS LLP

By /s/ *Matthew D. Powers*
Matthew D. Powers
Attorneys for Defendants
Johnson & Johnson and Johnson & Johnson Consumer Companies, Inc.

---

[17] *See also Klein v. Duchess*, 14 Cal. 2d 272, 283-84 (1939) (defective food); *Arnold v. Dow*, 91 Cal. App. 4th 698, 720 (2001) (pesticides). *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187 (2011), is inapplicable—it applied an exception for hazardous chemicals handled by employees.

[18] *Gilbert v. Steelform*, 82 Cal. App. 3d 65, 69-70 (1978), still does not help Estrada—that court did "not need to decide the issue of privity" (*id.*) and later courts rejected attempts to use *Gilbert* to create a third-party beneficiary exception. *Xavier v. Philip Morris*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011); *Long v. Graco*, 2013 WL 4655763, at*12 (N.D. Cal. Aug. 26, 2013).

[19] *See also Anderson v. Hain Celestial Grp.*, -- F. Supp. 3d --, 2015 WL 1744279, at *5 (N.D. Cal. Apr. 8, 2015) ("Potential 'evisceration' of the intent underlying a statutory scheme may be unfortunate, but it is not a valid reason to confer standing in federal court when the paramount constitutional obligation is otherwise left unsatisfied."); *Burns v. Tristar*, 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) (Article III does not allow federal courts to enjoin conduct under the CLRA or UCL absent a "'real and immediate threat of repeated injury.'"); *Forcellati v. Hyland's*, 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014) ("[I]t is improper 'to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws.'"); *Jou v. Kimberly-Clark*, 2013 WL 6491158, at *3-4 (N.D. Cal. Dec. 10, 2013) ("disagree[ing] with *Henderson* to the extent it holds a plaintiff may seek injunctive relief even if she fails to allege any interest in purchasing the product in the future").