Richard B. Goetz
rgoetz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:   (213) 430-6000
Facsimile:   (213) 430-6407

Matthew D. Powers
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:   (415) 984-8700
Facsimile:   (415) 984-8701

Allen Burton (S.B. # 020742001)
aburton@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:   (212) 326-2000
Facsimile:   (212) 326-2061

*Attorneys for Defendants Johnson &
Johnson and Johnson & Johnson
Consumer Companies Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONA ESTRADA, On Behalf of Herself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER COMPANIES INC.,<br><br>    Defendants. | Case No. 3:16-CV-07492-FLW-LHG<br><br>MDL Case No. 2738<br><br>Motion Day: February 21, 2017<br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   BACKGROUND FACTS.....................................................................8

    A.   Estrada's Original Complaint................................................8

    B.   The Eastern District of California's Dismissal Order.........................9

    C.   The Operative First Amended Complaint ...........................................10

III.  LEGAL STANDARD ........................................................................12

IV.   ARGUMENT.....................................................................................14

    A.   Plaintiff Suffered No Injury ................................................14

        1.   Estrada Received the Benefit of Her Bargain...........................16

        2.   Estrada Has Not Alleged an Economic Loss...........................20

    B.   Plaintiff's Class Definition Should Be Stricken .................................22

    C.   Plaintiff's Fraud Claims Should Be Dismissed Under Rule 9(b) .......26

    D.   Plaintiff's Negligent Misrepresentation and Implied Warranty
        Claims Fail as a Matter of Law ...........................................29

        1.   Negligent Misrepresentation Requires a Positive
            Assertion ................................................................29

        2.   Breach of Implied Warranty .................................................30

            a.   Johnson's Baby Powder Is Not "Unmerchantable" .......30

            b.   Plaintiff Lacks Privity....................................................32

    E.   Plaintiff Lacks Standing to Seek Injunctive Relief............................33

V.    CONCLUSION..................................................................................34

# TABLE OF AUTHORITIES

**Page**

## CASES

*Am. Suzuki Motor Corp. v. Superior Court*,
  37 Cal. App. 4th 1291 (1995) ...................................................................32

*Amica Mut. Ins. Co. v. Fogel*,
  656 F.3d 167 (3d Cir. 2011) ...................................................................30

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC*,
  158 Cal. App. 4th 226 (2007) ................................................................ 30, 31

*Aschroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................. 5, 12

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007) ................................................................ 12, 13

*Baltazar v. Apple, Inc.*,
  2011 WL 588209 (N.D. Cal. Feb. 10, 2011) .....................................................28

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................5

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ........................................................... passim

*Boysen v. Walgreen Co.*,
  2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) ........................... 3, 18

*Buckland v. Threshold Enters., Ltd.*,
  155 Cal. App. 4th 798 (2007) .................................................................15

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ...................................................................25

*City of L.A. v. Lyons*,
  461 U.S. 95 (1983)...............................................................................34

*Clark v. McDonald's*,
  213 F.R.D. 198 (D.N.J. 2003)............................................................. 23, 35

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ...........................................................................33

*Cohen v. DirecTV*,
178 Cal. App. 4th 966 (2010) .............................................................................28

*Coleman v. Snowden*,
2016 WL 1628880 (D.N.J. Apr. 25, 2016)..........................................................14

*Cottrell v. Alcon Labs.*,
2015 WL 3889367 (D.N.J. June 24, 2015)............................................... passim

*Crouch v. Johnson & Johnson*,
2010 WL 1530152 (D.N.J. Apr. 15, 2010).................................................. 17, 18

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) .............................................................................28

*Deitz v. Comcast Corp.*,
2006 WL 3782902 (N.D. Cal. Dec. 21, 2006)....................................................35

*Educ. Impact, Inc. v. Danielson*,
2015 WL 381332 (D.N.J. Jan. 20, 2015)............................................................14

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) ...............................................................................14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000).............................................................................................15

*Green v. Green Mountain Coffee Roasters, Inc.*,
279 F.R.D. 275 (D.N.J. 2011)....................................................................... 6, 23

*Hammer v. Vital Pharm., Inc.*,
2012 WL 1018842 (D.N.J. Mar. 26, 2012) ........................................................29

*Herrington v. Johnson & Johnson Consumer Cos.*,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)............................................... 3, 17

*Hicks v. Kaufman & Broad Home Corp.*,
89 Cal. App. 4th 908 (2001) ...............................................................................18

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Hodes v. Van's Int'l Foods*,
2009 U.S. Dist. LEXIS 72193 (C.D. Cal. July 23, 2009)...................................26

*Hoey v. Sony Elec., Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007)................................................................28

*In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*,
2011 WL 4007878 (E.D. Pa. Sept. 7, 2011)........................................................21

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
2010 U.S. Dist. LEXIS 68241 (D.N.J. July 9, 2010) .........................................33

*In re Gerber Probiotic Sales Practices Litig.*,
2013 U.S. Dist. LEXIS 121192 (D.N.J. Aug. 22, 2013) .....................................35

*In re Neurontin Mktg., Sales Practices & Prods.*,
433 F. Supp. 2d 172 (D. Mass. 2006)..................................................................22

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
214 F.R.D. 614 (W.D. Wash. 2003) ....................................................................26

*In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*,
123 F. Supp. 3d 584 (D.N.J. 2015).............................................................. 12, 13

*In re Supreme Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ................................................................................14

*James v. Johnson & Johnson Consumer Cos.*,
2011 WL 198026 (D.N.J. Jan. 20, 2011)...................................................... 3, 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................... 14, 27, 28

*Khasin v. Hershey Co.*,
2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) .....................................................21

*Koh v. S.C. Johnson & Son*,
2010 U.S. Dist. LEXIS 654 (N.D. Cal. Jan. 5, 2010)........................................21

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) ........................................................... 3, 17, 19

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ................................................................ 15, 29

*Lieberson v. Johnson & Johnson*,
   865 F. Supp. 2d 529 (D.N.J. 2011) ...................................................16

*Long v. Graco Children's Prods. Inc.*,
   2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) ...................................33

*Lopez v. Nissan N. Am., Inc.*,
   201 Cal. App. 4th 572 (2011) ...........................................................30

*Loreto v. Proctor & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013) ......................................................21

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................. 13, 15

*Lusardi v. Xerox Corp.*,
   975 F.2d 964 (3d Cir. 1992) ..............................................................16

*Marshall Invs. Corp. v. Krones A.G*,
   572 F. Appx. 149 (3d Cir. 2014) .......................................................30

*Mattson v. Bristol-Myers Squibb Co.*,
   2009 WL 5216996 (D.N.J. Dec. 30, 2009)............................... passim

*Maxwell v. Unilever U.S., Inc.*,
   2013 WL 1435232 (N.D. Cal. Apr. 9, 2013)......................................29

*McNair v. Synapse Grp., Inc.*,
   672 F.3d 213 (3d Cir. 2012) .............................................................34

*McPeak v. S-L Distribution Co.*,
   2014 WL 4388562 (D.N.J. Sept. 5, 2014).........................................23

*Medley v. Johnson & Johnson Consumer Cos.*,
   2011 WL 159674 (D.N.J. Jan. 18, 2011)................................. passim

*Mihalich v. Johnson & Johnson*,
   2016 WL 5106970 (S.D. Ill. Sept. 20, 2016).......................................4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Mikhlin v. Johnson & Johnson*,
2014 WL 6084004 (E.D. Mo. Nov. 13, 2014)....................................................3

*Mladenov v. Wegmans Food Mkts., Inc.*,
124 F. Supp. 3d 360 (D.N.J. 2015) ............................................................ 22, 25

*Mocek v. Alfa Leisure, Inc.*,
114 Cal. App. 4th 402 (2003) .............................................................................31

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)............................................................................................15

*Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*,
2015 WL 510919 (N.D. Cal. Feb. 5, 2015) .......................................................21

*Myers-Armstrong v. Actavis Totowa, LLC*,
2009 WL 1082026 (N.D. Cal. Apr. 22, 2009).............................................. 3, 18

*Neale v. Volvo*,
794 F.3d 353 (3d Cir. 2015) ..............................................................................23

*Neilson v. Union Bank of Cal.*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .............................................................27

*Ramirez v. STi Prepaid LLC*,
644 F. Supp. 2d 496 (D.N.J. 2009)....................................................................16

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ..................................................................... 3, 17, 19

*Rule v. Fort Dodge Animal Health, Inc.*,
607 F.3d 250 (1st Cir. 2010)..............................................................................32

*Sevidal v. Target Corp.*,
189 Cal. App. 4th 905 (2010) ............................................................................29

*Shamsian v. Atl. Richfield Co.*,
107 Cal. App. 4th 967 (2003) ............................................................................30

*Smith v. Chrysler Fin. Co.*,
2004 U.S. Dist. LEXIS 28504 (D.N.J. Dec. 30, 2004).....................................34

# TABLE OF AUTHORITIES
## (continued)

**Page**

*St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*,
   342 F. App'x 809 (3d Cir. 2009) .................................................................. 23, 26

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ................................................................................30

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ......................................................35

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................................... 26, 33

*Young v. Johnson & Johnson*,
   2012 WL 1372286 (D.N.J. Apr. 19, 2012) .................................. 3, 17

## STATUTES

Cal. Bus. & Prof. Code § 17200 *et seq.* ....................................................6

Cal. Bus. & Prof. Code § 17204 ...............................................................15

Cal. Bus. & Prof. Code § 17208 ...............................................................24

Cal. Bus. & Prof. Code § 17535 ...............................................................15

Cal. Civ. Code § 1750 *et seq.* .....................................................................7

Cal. Civ. Code § 1780(a) ...........................................................................15

Cal. Civ. Code § 1783 ................................................................................24

Cal. Health & Safety Code § 25249.8(b) ....................................................2

Prop. 64, § 1, subd. (e) ...............................................................................15

## OTHER AUTHORITIES

*Brilliant Uses for Baby Powder*, Reader's Digest,
   www.rd.com/home/brilliant-uses-for-baby-powder (retrieved on
   Dec. 9, 2016) ........................................................................................5

http://www.cdc.gov/cancer/ovarian/basic_info/risk_factors.htm ..............2

## TABLE OF AUTHORITIES
### (continued)

**Page**

http://www.fda.gov/cosmetics/
    productsingredients/ingredients/ucm293184.htm..............................................2

Serena C. Houghton et al., *Perineal Powder Use and Risk of Ovarian
    Cancer*, 106(9) J. NAT'L CANCER INST. (2014) ......................................1

www.cancer.org/cancer/cancercauses/othercarcinogens/generalinform
    ationaboutcarcinogens/ known-and-probable-human-carcinogens....................2

## RULES

Fed. R. Civ. P. 12(b)(1)...............................................................................15

Fed. R. Civ. P. 12(b)(6)...............................................................................12

Fed. R. Civ. P. 12(f)....................................................................................14

Fed. R. Civ. P. 23.........................................................................................6

Fed. R. Civ. P. 9(b) ........................................................................ 7, 13, 27, 29

## I.      <u>INTRODUCTION</u>

Plaintiff Mona Estrada's First Amended Complaint ("FAC") against

Johnson & Johnson and Johnson & Johnson Consumer Companies Inc.

(collectively, "J&J") rests on the same allegations that Judge Troy L. Nunley in the

Eastern District of California already rejected in dismissing the original complaint

in this case.  *See* March 27, 2015 Order Granting Motion to Dismiss and/or Strike

Complaint, Dkt. 26 (the "Order").  In her original complaint, Estrada contended

that all purchasers of Johnson's Baby Powder should get their money back because

of an alleged health "risk" that had no impact on the vast majority of class

members, including Estrada herself.  Specifically, Estrada alleged a subset of the

product's purchasers—women who regularly used Johnson's Baby Powder in their

genital area for years—was supposedly exposed to a risk of ovarian cancer from

the talc in that product.[1]  But as Judge Nunley already held, Estrada herself

---

[1] For purposes of this Motion, the Court must accept as true Estrada's allegation
that extended use of talc by adult women in their genital area is associated with a
33% increased risk of ovarian cancer.  FAC ¶ 4.  But if this case proceeds, J&J will
prove that Estrada's assertions about those "risks" are completely meritless.  As a
recent study published in the *Journal of the National Cancer Institute* reaffirmed,
"perineal powder use does not appear to influence ovarian cancer risk."  Serena C.
Houghton et al., *Perineal Powder Use and Risk of Ovarian Cancer*, 106(9) J.
Nat'l Cancer Inst. (2014).  None of the older studies Estrada cites actually
establish a causal relationship between female genital talc use and ovarian cancer,
and many of those studies are seriously flawed.  For example, none of the studies
were conducted on the actual products at issue; Cramer (1982) and Chen (1992)
(FAC ¶¶ 27, 34) did not account for confounding factors such as age and obesity;

1

suffered no injury whatsoever (economic or otherwise) because the Baby Powder she purchased performed exactly as she expected it would, and she never suffered any ill effects from the product's supposed health "risks." *See* Order at 8 (since Estrada "received the exact benefits for which she purchased the Baby Powder," she "cannot claim that she spent money that she would not have otherwise spent"). Instead, as that court recognized, Estrada "received the benefit-of-the-bargain for the Baby Powder," and has no cognizable economic injury. *Id.*

With few exceptions, the allegations in the FAC are virtually identical to the claims that Judge Nunley already rejected. Just as in her original complaint, Estrada claims economic injury in the form of the purchase price of Johnson's Baby Powder, even though she admits the product performed as expected and she

_____

and Egi (1961), Cralley (1968), Henderson (1971), Rohl (1976), Cramer (1982), Hartge (1983), Whittemore (1988), Harlow (1989), Cook (1997), Gertig (2000), and Mills (2004) (*id.* ¶¶ 24–27, 29–30, 32, 39, 44–45) included exposures to products with asbestiform talc (J&J's products have been free of asbestiform talc for decades). The U.S. Food and Drug Administration ("FDA") has not restricted the use of non-asbestiform talc in cosmetics. *See* http://www.fda.gov/cosmetics/ productsingredients/ingredients/ucm293184.htm. Non-asbestiform talc (the type of talc used in J&J's products) is also not listed as a cancer-causing agent by the American Cancer Society or by California's Office of Environmental Health Hazard Assessment under California's Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986. *See* Cal. Health & Safety Code § 25249.8(b), www.cancer.org/cancer/cancercauses/othercarcinogens/generalinformationaboutca rcinogens/ known-and-probable-human-carcinogens. In addition, the Centers for Disease Control and Prevention ("CDC") does not list talc use in their risk factors for ovarian cancer. http://www.cdc.gov/cancer/ovarian/basic_info/risk_factors.htm.

never suffered any ill effects from its use.  FAC ¶ 11 ("Plaintiff is not claiming

physical harm or seeking the recovery of personal injury damages.")  In other

words, as before, Estrada "received the exact benefits for which she purchased the

Baby Powder" and never experienced any of the problems she alleges *others* may

have developed.  Order at 8.  Yet she continues to seek a windfall in the form of a

complete refund for a product that, for her, performed exactly as promised.[2]

---

[2] *See, e.g.*, *Mikhlin v. Johnson & Johnson*, 2014 WL 6084004, *2-3 (E.D. Mo. Nov. 13, 2014) (dismissing nearly identical claims over Baby Powder under Missouri law because plaintiffs "received 100% use (and benefit) from the products and have no quantifiable damages"); *Medley v. Johnson & Johnson Consumer Cos.*, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) ("Short of seeking redress for the unused portion of a bottle of shampoo that was discarded subsequent to discovery of the alleged contamination, a practical and legal absurdity, there is simply no cognizable economic injury."); *James v. Johnson & Johnson Consumer Cos.*, 2011 WL 198026, at *2 (D.N.J. Jan. 20, 2011) (same); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *3 (D.N.J. Apr. 19, 2012) ("[A]lthough [plaintiff] cites various studies … concerning the health dangers of consuming partially hydrogenated oils, Plaintiff does not allege that he himself suffered any adverse health consequences."); *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257 (3d Cir. 2010) (unpublished) (no cognizable injury where plaintiff suffered no adverse health effects from lipstick and failed to allege lipstick did not work for its intended purpose); *Myers-Armstrong v. Actavis Totowa, LLC*, 2009 WL 1082026, at *3–4 (N.D. Cal. Apr. 22, 2009) ("[A]fter consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund …. [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff."); *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010) (rejecting "no injury" economic claims for failure to warn of alleged carcinogens in Johnson's Baby Shampoo ); *Boysen v. Walgreen Co.*, 2012 U.S. Dist. LEXIS 100528 (N.D. Cal. July 19, 2012) (rejecting "no injury" economic claims for failure to warn of alleged lead and arsenic in fruit juices); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319–20 (5th Cir. 2002) (rejecting "no injury" economic

In the FAC, Estrada now also contends that if the "omitted" information had been disclosed, she would have purchased an "alternative" cornstarch-based powder that was "functionally the same" as Baby Powder.  FAC ¶¶ 5, 22.  But Estrada never identifies which cornstarch-based "alternative" she would have (or even could have) purchased.  And more fundamentally, Estrada does *not* allege that buying this unidentified "alternative" would have saved her any money.  Conspicuously absent from the FAC is any allegation that this cornstarch alternative would have been any *cheaper* than the Baby Powder she purchased.  That is no accident:  Talc and cornstarch products are often sold *at the same price*[3]—Estrada cannot allege in good faith that buying an "alternative" cornstarch product would have saved her any money.  Thus, Estrada has not alleged—and,

_____

claims for failure to warn of risks of medication because "[b]y plaintiffs' own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain"); *but see Mihalich v. Johnson & Johnson*, 2016 WL 5106970, at *3-4 (S.D. Ill. Sept. 20, 2016) (plaintiff stated claim related to purchase of baby powder under Illinois law).

[3] *Compare* https://www.riteaid.com/shop/johnsons-baby-powder-15-oz-425-g-0034000 (Johnson's Baby Powder Original, 15 oz, $5.29) *with* https://www.riteaid.com/shop/johnsons-baby-powder-pure-cornstarch-lavender-chamomile-15-oz-425-g-0340041 (Johnson's Pure Cornstarch Baby Powder, Lavender & Chamomile, 15 oz, $5.29) and *compare* https://www.walgreens.com/store/c/johnson's-baby-powder-original/ID=prod6144747-product (Johnson's Baby Powder Original, 22 oz, $6.49) *with* http://www.walgreens.com/store/c/johnson's-baby-pure-cornstarch-powder-aloe-vera--vitamin-e/ID=prod6155197-product (Johnson's Pure Cornstarch Baby Powder, 22 oz, $6.99) (retrieved on December 5, 2016).

under the circumstances, cannot possibly allege—that she "spent money that she would not have otherwise spent."  Order at 8.

Estrada's claim that "all" purchasers suffered an economic injury is also implausible on its face.  *Aschroft v. Iqbal*, 556 U.S. 662, 679 (2009) (to "determin[e] whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As before, Estrada argues that "[a]ll persons who purchased Johnson's Baby Powder" should get their money back because, she contends, women who apply the product directly to their genital area allegedly have an increased risk.  FAC ¶ 78.  But, of course, Baby Powder has dozens of beneficial uses that have nothing to do with that specific use,[4] and Estrada still fails to explain why the elimination of that one particular use would render the product worthless.  At a minimum, Estrada's proposed class allegations should be stricken because her

---

[4] For example, talcum powder is commonly used in shoes and on feet to eliminate moisture and odors, under the arms in addition to or instead of deodorant, on the hands of athletes to prevent slipperiness, on clothing or carpets to absorb grease, on pets as dry shampoo, on sheets to make sleeping more comfortable, on the skin after shaving, on floor boards to silence squeaks, on skin to help remove sticky sand, on sticky rubber products (such as dish gloves) to store and separate, and in litter boxes for freshness.  *See, e.g.*, *Brilliant Uses for Baby Powder*, Reader's Digest, www.rd.com/home/brilliant-uses-for-baby-powder (retrieved on Dec. 9, 2016).

putative class of "all" purchasers cannot meet the requirements of Rule 23, as it includes many individuals who were never exposed to the alleged risk: (1) men (who do not have ovaries), and (2) the many women who bought Baby Powder for uses other than in their genital area.  *See, e.g.*, *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 284-85 (D.N.J. 2011).

Estrada also has not pled any new facts that would alter Judge Nunley's conclusion that she "fails to allege specifically which statements she found material to her decisions to purchase."  Order at 7.  Instead, Estrada continues to argue that she "relied" on statements on the product's label (FAC ¶ 11) that have nothing to do with safety and that, as Judge Nunley recognized, she never actually alleges are false.  Order at 7.  Estrada also cites general safety statements on J&J's website which she still does not plead she actually saw (much less relied on) before buying Baby Powder (FAC ¶¶ 18-19) and which, in any event, Judge Nunley already held "lack sufficient specificity to substantiate an injury" for purposes of Article III standing.  Order at 7.  Thus, although her claims under California's Unfair Competition Law ("UCL"),[5] California's Consumers Legal Remedies Act ("CLRA"),[6] and for negligent misrepresentation are all based in fraud, Estrada never alleges where or when she saw the allegedly false statements, or which

---

[5] Cal. Bus. & Prof. Code § 17200 *et seq*.

specific statements induced her to buy the product.  Fed. R. Civ. P. 9(b); *Mattson v. Bristol-Myers Squibb Co.*, 2009 WL 5216966, at *8-9 (D.N.J. Dec. 30, 2009) (Wolfson, J.).  In short, Estrada has not cured the defects in the original complaint specifically identified by Judge Nunley in the Eastern District of California.

Finally, the FAC continues to suffer from a number of additional flaws. ***First***, Estrada's negligent misrepresentation claim fails because she has not pointed to a specific, actionable affirmative statement that she personally relied on. ***Second***, the implied warranty claim fails because Estrada lacks privity with J&J and does not allege any facts to show that Johnson's Baby Powder (which has many beneficial uses that have nothing to do with the risks alleged in this case) was "unmerchantable" when sold—*i.e.*, that it failed to "possess even the most basic degree of fitness for ordinary use."  ***Third***, injunctive relief is not warranted because Estrada is already aware of the alleged "risk" and thus is not personally threated by a repetition of her supposed "injury."

Nothing in the FAC should change Judge Nunley's conclusion, which is consistent with the principles adopted by courts across the country, including those in this Circuit:  Estrada received exactly what she bargained for, and cannot use her contention that *others* were injured to manufacture a claim for "economic loss." The FAC should be dismissed with prejudice.

---------------------

[6] Cal. Civ. Code § 1750 *et seq*.

## II.   BACKGROUND FACTS

### A.   Estrada's Original Complaint

In her original complaint, Estrada alleged she had been buying Johnson's Baby Powder for personal use in her genital area since approximately 1950. Compl. ¶ 9.  She has never developed ovarian cancer and does not contend that her use of the product put her at an increased risk of future health problems.  *Id.* Nonetheless, she argued that she should get her money back because she would not have purchased Baby Powder had she known that women who use talc on their genitals allegedly "have a 33% increased risk of ovarian cancer."  *Id.* ¶ 3.

Specifically, Estrada alleged that Johnson's Baby Powder was "advertised for use by women," that J&J "encouraged" "use of the product in the genital area," and that J&J "intended for women to use the Baby Powder in the very manner most likely to result in an increased risk of ovarian cancer."  *Id.* ¶¶ 4, 13, 70–71. That said, Estrada never actually identified any such statements—she only identified generic website statements such as "Use [Johnson's Baby Powder] anytime you want skin to feel soft, fresh, and comfortable" and that the product is "clinically proven to be safe, gentle, and mild."  *Id.* ¶¶ 16–17.  In any event, Estrada never claimed to have seen or relied on such statements before buying the product.  Estrada did allege that "[p]rior to making her purchase, [she] read the

label for the Baby Powder," but she did not contend that any statements on the label were actually false.  *Id.* ¶¶ 9, 14–15.

### B.      The Eastern District of California's Dismissal Order

On March 27, 2015, Judge Nunley of the Eastern District of California dismissed Estrada's complaint in its entirety, holding that Estrada lacked Article III standing and failed to allege any cognizable theory of injury.  Specifically, the court held that Estrada (1) failed to allege any actionable misrepresentations by J&J, (2) received the full benefit of her bargain when she purchased and used Johnson's Baby Powder for decades without ill effect, and (3) failed to allege that she would (or could) have purchased an alternative product.  Order at 6–9.

*First*, the court held that Estrada lacked standing because she "fail[ed] to identify any specific statements about safety made by Defendants that she found material to her decision to purchase the Baby Powder."  *Id.* at 6.  The statements on the label that Estrada cited—*e.g.*, that "Johnson's Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable"—make no reference to safety; and the statements on J&J's website (*e.g.*, "[c]linically proven to be safe, gentle and mild," "safety is our legacy") "lack[ed] sufficient specificity to substantiate an injury."  *Id.* at 6–7.  More fundamentally, Estrada never claimed "to have relied on the[] online statements," and in fact "could not have relied on them in 1950 when she initially purchased the product."  *Id.* at 7.

**Second**, the court held that Estrada "cannot claim that she paid a premium for the Baby Powder because she received all the intended benefits of the bargain." *Id.* Instead, the fact that Estrada used Baby Powder for decades "suggests that Plaintiff indeed received such benefits from the Baby Powder and believed it was worth the price." *Id.* at 8. Estrada thus "received the exact benefits for which she purchased the Baby Powder. Because [she] received the benefit-of-the-bargain, she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing a product." *Id.*

**Third**, the court held that Estrada lacked any cognizable injury, and thus had no standing, because she failed to allege "that she would have purchased an alternative product." *Id.* The court thus dismissed the complaint in its entirety because Plaintiff "did not allege specific misrepresentations by [J&J], received the benefit-of-the-bargain, and did not allege any alternative product that she would have purchased" that could provide the same benefits for a cheaper price. *Id.* at 9. Because the court dismissed the entire complaint for lack of Article III standing, it did not reach the other arguments in J&J's motion to dismiss. *Id.* at 1 n.1.

### C.    <u>The Operative First Amended Complaint</u>

Estrada filed her FAC on April 24, 2015. Dkt. 27. The FAC is based on the same core allegations as Estrada's original complaint—namely, that everyone who purchased Baby Powder should get their money back because J&J did not disclose

an alleged "risk" for women who apply the product directly to their genital area. FAC ¶ 2.  Just as in her original complaint, Estrada alleges that Johnson's Baby Powder is "advertised for use by women," that J&J "encouraged" "use of the Baby Powder in the genital area," and that J&J "intended for women to use the Baby Powder in the very manner most likely to result in an increased risk of ovarian cancer." *Id.* ¶¶ 6, 15, 18, 74, 75.  And just as before, Estrada alleges she "reli[ed] on the label" (*id.* ¶ 11), citing the same label statements that Judge Nunley already held have nothing to do with safety.  *Id.* ¶¶ 16; Order at 6–7.  She also continues to cite the same "general safety statements" from websites the court held "lack sufficient specificity to substantiate an injury."  FAC ¶¶ 18-19, 74; Order at 7.

In the FAC, Estrada also contends that she "relied" on general "[website] statements and Defendants' marketing and branding efforts."  FAC ¶ 19.  But she does *not* allege that she ever reviewed J&J's website *before* she bought the product, and never explains what specific "marketing and branding efforts" she relied on (if any) when she made her purchases.  *See id.*  Indeed, since Estrada has apparently been using Baby Powder regularly since the 1950s (*id.* ¶ 11), it is implausible that she ever "relied" on J&J's website at all.  *See* Order at 7.

Finally, Estrada also contends, for the first time, that she apparently "would have purchased an alternative product containing cornstarch instead of talc."  FAC ¶¶ 5, 11, 75.  But she does not identify the alternative product she would have

11

used, much less allege that this never-identified alternative would have been cheaper than Baby Powder.

## III.   LEGAL STANDARD

Motions to dismiss should be granted where, as here, the plaintiff fails to state any valid claim for relief.  Dismissal under Rule 12(b)(6) is appropriate if a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  While the court must accept all well-pled *facts* as true, the court need not assume the truth of legal conclusions merely because they are pled in the form of factual allegations.  *Id.* at 677-79.  A court "need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss."  *In re Plavix Mktg., Sales Practices & Prods. Liab. Litig.*, 123 F. Supp. 3d 584, 593 (D.N.J. 2015) (Wolfson, J.).  "Ultimately, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  *Mattson*, 2009 WL 5216966, at *5.

Next, "[a] motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007).  "Once a 12(b)(1) challenge is raised, the plaintiff bears the burden of demonstrating the existence of subject matter jurisdiction."  *Plavix*, 123 F. Supp. 3d at 593-94.  The plaintiff "bears the burden of

establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Ballentine*, 486 F.3d at 810.  At an "irreducible constitutional minimum," Article III requires that the plaintiff show she has personally suffered some actual or threatened injury as a result of defendant's illegal conduct and that the injury is "fairly traceable to the challenged action" and is "likely … [to be] redressed by a favorable decision."  *Cottrell v. Alcon Labs.*, 2015 WL 3889367, at *3 (D.N.J. June 24, 2015) (Wolfson, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also* Order at 4 ("[C]onsistent with the requirements of Article III, plaintiffs must allege an injury that is 'concrete and particularized *as to themselves*.'") (emphasis in original; internal citation omitted)).

In addition, the fraud-based CLRA, UCL, and negligent misrepresentation claims must meet the heightened pleading standard of Rule 9(b), which requires that Estrada "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Mattson*, 2009 WL 5216966, at *11 (applying Rule 9(b) to fraud claims, and noting that plaintiff "must plead with particularity pursuant to Rule 9(b) with respect to her Negligent Misrepresentation claim"). Under Rule 9(b), Estrada must plead the time, place, and content of the alleged false representation or omission—"the who, what, when, where, and how"—as

13

well as facts demonstrating her reliance on the allegedly fraudulent conduct.

*Mattson*, 2009 WL 5216966, at *8; *Frederico v. Home Depot*, 507 F.3d 188 (3d

Cir. 2007); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d

Cir. 2006); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

Under Rule 12(f), the Court "may strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

Civ. P. 12(f).  The "purpose of a motion to strike is to simplify the pleadings and

save time and expense by excising from a plaintiff's complaint any redundant,

immaterial, impertinent, or scandalous matter which will not have any possible

bearing on the outcome of the litigation."  *Educ. Impact, Inc. v. Danielson*, 2015

WL 381332, at *20 (D.N.J. Jan. 20, 2015) (Wolfson, J.).

A complaint should be dismissed with prejudice where amendment "would

be futile."  *Coleman v. Snowden*, 2016 WL 1628880, at *2 (D.N.J. Apr. 25, 2016)

(Wolfson, J.); *see also Medley*, 2011 WL 159674, at *2 (dismissing "no injury"

claim against J&J and noting that "Plaintiff should consider this issue to have been

fully litigated and thus precluded for future consideration by the Court").

## IV.   <u>ARGUMENT</u>

### A.   <u>Plaintiff Suffered No Injury</u>

Estrada's entire FAC should be dismissed with prejudice under Rule

12(b)(1) because, as before, she has not alleged facts showing that she suffered any

cognizable Article III "injury."[7]  To satisfy Article III standing, a plaintiff must allege an injury-in-fact that is (1) concrete and particularized, as well as actual or imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling.  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 140 (2010); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan*, 504 U.S. at 560–61; *Medley*, 2011 WL 159674, at *1-2; *Cottrell*, 2015 WL 3889367, at *2-3.  And in class actions, the named representative must allege and show that she personally has been injured to sustain a cause of action.  *Lusardi v. Xerox Corp.*, 975 F.2d 964, 983 (3d Cir. 1992) (noting that "[i]t is axiomatic that an uninjured plaintiff cannot bring suit on behalf of an injured class"); *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504-05 (D.N.J. 2009); *Lieberson v. Johnson & Johnson*, 865 F. Supp. 2d 529, 537

---

[7] In addition to Article III standing, a plaintiff must establish statutory standing to bring claims under the UCL or CLRA.  *See* Cal. Bus. & Prof. Code §§ 17204, 17535; Cal. Civ. Code § 1780(a).  These statutes require the plaintiff to show that he or she has suffered an "economic injury."  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011).  The economic injury requirement is "narrower than federal standing ... which may be predicated on a broader range of injuries."  *Id*. at 324.  Thus, after the UCL was amended by Proposition 64, statutory standing under the UCL is somewhat narrower than Article III standing.  *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (quoting Prop. 64, § 1, subd. (e)).  In this case, Estrada lacks statutory standing for substantially the same reasons she lacks Article III standing.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–61 & n.4 (9th Cir. 2009) (explaining that "insofar as the UCL incorporates Article III's injury in fact requirement, the plaintiffs would lack an Article III injury in fact for the same reasons").

(D.N.J. 2011) (Wolfson, J.) ("[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action.").  Estrada fails to allege any new facts in the FAC that would support a cognizable theory of injury because (1) as Judge Nunley in the Eastern District already held, consistent with case law in this Circuit, she received the full benefit of her bargain, and (2) she does not (and cannot) allege that switching to an "alternative" cornstarch product would have saved her any money.

### 1.    Estrada Received the Benefit of Her Bargain

Here, Estrada admits she never suffered any ill effects from using Johnson's Baby Powder—she has no personal injury claim and does not assert any kind of "medical monitoring" claim (*i.e.*, she does not allege that she still suffers from an increased risk even though she no longer uses talc in her genital area).  Instead, she continues to assert (as she did before) that she is entitled to a refund because other talc users (but not her) may have experienced problems.  But "[m]erely asking for money does not establish an injury in fact," and, as the Fifth Circuit explained more than a decade ago, a plaintiff suffers no injury where, "[b]y plaintiffs' own admission, [she] paid for an effective [product], and she received just that—the benefit of her bargain." *Rivera*, 283 F.3d at 319-20.  Here, Estrada has suffered no economic injury because her own allegations demonstrate that she received all the benefits she expected when she bought and consumed the product—in fact, she

continued to buy it for decades—and never suffered any of the ill effects that she contends may have impacted other consumers.  Since she "received the exact benefits for which she purchased the Baby Powder … she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing the product."  Order at 8.

The fact that a product might pose a risk to others does not grant uninjured purchasers the right to sue.  Many courts—including several in this District—have rejected similar attempts to transform "no injury" claims into consumer protection cases.  *See, e.g.*, Order at 7-8; *Medley*, 2011 WL 159674, at *2; *James*, 2011 WL 198026, at *2; *Young*, 2012 WL 1372286, at *3-4; *Crouch v. Johnson & Johnson*, 2010 WL 1530152, at *5 (D.N.J. Apr. 15, 2010); *Koronthaly*, 374 F. App'x at 259; *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *5 (N.D. Cal. Sept. 1, 2010); *Birdsong*, 590 F.3d at 959–61 & n.4.

In *Medley*, for example, Judge Cavanaugh rejected economic injury claims brought by plaintiffs for "the price [of J&J's] shampoo" based on allegations that the shampoo contained undisclosed methyl chloride, even though the plaintiffs used the shampoo "without adverse health reactions."  2011 WL 159674, at *2. The plaintiffs alleged that had they "known the true nature of Defendant's baby shampoo, they neither would have purchased it nor allowed their children to be exposed to it."  *Id.*  But as the court held, these allegations were insufficient to

establish economic harm.  *Id.*  "Once the product had been consumed …, there was

no economic injury for Plaintiffs to complain of …. Plaintiffs received the benefit

of their bargain so long as there were no adverse health consequences, and the

product worked as intended, meaning that the hair on Plaintiff's children was

cleansed, and their eyes and skin were not irritated."  *Id.*  Thus, "[s]hort of seeking

redress for the unused portion of a bottle of shampoo that was discarded

subsequent to discovery of the alleged contamination, a practical and legal

absurdity, there is simply no cognizable economic injury."  *Id.*[8]

 The Third Circuit has rejected similar claims on Article III standing grounds.

---

[8] *See also Cottrell*, 2015 WL 3889367, at *3-4 (no standing where plaintiffs received what they were promised); *Crouch*, 2010 WL 1530152, at *5 (rejecting "no injury" economic claims for failure to warn of alleged carcinogens in Johnson's Baby Shampoo); *Boysen*, 2012 U.S. Dist. LEXIS 100528, at *23–24 (no economic harm from purchase of juice containing lead and arsenic where plaintiff had fully consumed juice and experienced no physical injury); *Myers-Armstrong*, 2009 WL 1082026, at *4 ("[A]fter consuming the pills and obtaining their beneficial effect with no downside, the consumer cannot get a refund on the theory that [he would not have purchased the pills had he known they] came from a source of uncertain quality.... [T]he civil law should not be expanded to regulate every hypothetical ill in the absence of some real injury to the civil plaintiff."); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001) ("Cars and tires have a limited useful life.  At the end of their lives they, and whatever defect they may have contained, wind up on a scrap heap.  If the defect has not manifested itself in that time span, the buyer has received what he bargained for."); *Rivera*, 283 F.3d at 319 (plaintiff did not suffer cognizable harm where she alleged that: "[defendants] sold [a product]; [plaintiff] purchased and used [the product]; [defendants] did not list enough warnings on [the product], and/or [the product] was defective; other patients were injured by [the product]; [plaintiff] would like her money back.").

In *Koronthaly*, an unpublished decision, the plaintiff alleged she was misled into purchasing unsafe lipstick containing lead.  374 F. App'x at 259; *see also Cottrell*, 2015 WL 3889367, at *5 (citing *Koronthaly*).  The Third Circuit rejected her assertion of economic harm and affirmed the dismissal of her claim for lack of standing, noting that the plaintiff "concede[d] that she … suffered no adverse health effects from using the lipsticks."  *Koronthaly*, 374 F. App'x at 259.  "Absent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [plaintiff] has not demonstrated a concrete injury-in-fact."  *Id.*

The Ninth Circuit reached a similar conclusion in a case involving allegedly defective headphones.  In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), the plaintiffs argued they had suffered an economic injury because (according to the plaintiffs) Apple's earbuds could cause physical injury (hearing loss) if used at high volume for extended periods of time.  But since the *Birdsong* plaintiffs had not actually suffered any hearing loss, the court rejected their claims.  *Id.* at 959–61 & n.4.  As the Ninth Circuit explained, "[t]he risk of injury the plaintiffs allege is not concrete and particularized *as to themselves*."  *Id.* at 960.

Here, Estrada seeks compensation because she bought a product that, although it worked as expected, also allegedly exposed her to a "risk"—but she never actually suffered any injury from that risk.  Just like the plaintiffs in *Medley*,

*Koronthaly*, *Crouch*, *Herrington*, *Boysen*, *Myers-Armstrong*, *Birdsong*, and the host of other cases in this District and nationwide, Estrada has received the "benefit of her bargain" and has no valid claim of injury—economic or otherwise. She thus lacks standing and her entire FAC should be dismissed with prejudice.

### 2.    Estrada Has Not Alleged an Economic Loss

In her FAC, Estrada now claims she would have purchased an "alternative cornstarch based powder" that does not carry the same alleged "risk."  FAC ¶¶ 5, 11, 22, 75.  But since she cannot allege that this "alternative" product would have been any less expensive, she would have spent the same amount of money either way and, accordingly, did not suffer any sort of "economic loss."

To be sure, under some circumstances, customers who can allege that they would have purchased a cheaper alternative product may be able to allege an economic loss.[9]  But here, Estrada does ***not*** allege that switching to cornstarch

---

[9] *See Musgrave v. ICC/Marie Callender's Gourmet Prods. Div.*, 2015 WL 510919, at *7 (N.D. Cal. Feb. 5, 2015) (plaintiff alleged "that had he known that the products were not 'all natural,'" he would have "purchased less expensive non-natural food products"); *Khasin v. Hershey Co.*, 2012 WL 5471153, at *6 (N.D. Cal. Nov. 9, 2012) ("Plaintiff alleges that he had cheaper product alternatives for purchase at his disposal."); *Koh v. S.C. Johnson & Son*, 2010 U.S. Dist. LEXIS 654, at *5 (N.D. Cal. Jan. 5, 2010) ("[P]laintiff has sufficiently alleged that he did *not* receive the benefit of the bargain in that Windex cost more than similar products without misleading labeling."); *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 580 (6th Cir. 2013) (unpublished) ("[P]laintiff would have purchased a lower-priced cold remedy (thus saving money) were it not for [defendants'] alleged misrepresentations.  The 'quantifiable or measurable' loss in this case is the

would have saved her any money.  Instead, she simply alleges that talc and cornstarch were "functionally the same," and that cornstarch was a potential alternative.  FAC ¶ 22.

That is not enough.  Without an allegation that the "alternative" would have been cheaper, Estrada's "economic loss" arguments all fail.  *See Medley*, 2011 WL 159674, at *2 n.2 ("It should be noted that Plaintiffs have not alleged economic injury on a theory that they paid a premium price for this brand of shampoo …, more so than comparable but less expensive alternatives."); *Cottrell*, 2015 WL 3889367, at *5 ("Plaintiffs have [not] alleged any comparable cheaper products that they would have purchased …."); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 4007878, at *1 (E.D. Pa. Sept. 7, 2011) (complaint does not "allege that other drugs Plaintiff identifies as alternatives to Avandia … are less expensive"); *see also In re Neurontin Mktg., Sales Practices & Prods.*, 433 F. Supp. 2d 172, 186 (D. Mass. 2006) (no injury where plaintiffs do not "make any allegations that cheaper alternatives were available and that [p]laintiffs are seeking any difference in price").

For example, switching to a cornstarch "alternative" that would have been more expensive than Johnson's Baby Powder could not possibly constitute an

_____

difference in price between [defendants'] product and a lower-priced competing product.").

"economic loss"—under those circumstances, Estrada would have paid more for a product that, for her, was "functionally the same" as Baby Powder.  At the end of the day, Estrada "received exactly what she paid for—the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness" (Order at 8)—at a price that was apparently the same (or better) than any of the "alternatives" on the market.  Estrada therefore lacks any cognizable economic injury sufficient to confer standing and her claims should be dismissed.

### B.   Plaintiff's Class Definition Should Be Stricken

Next, the Court should strike Estrada's class definition because many—and probably most—members of Estrada's proposed class were never even *exposed* to the risks Estrada alleges.  Courts may strike class allegations at the pleading stage "if the complaint demonstrates that a class action cannot be maintained."  *See, e.g.*, *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368 (D.N.J. 2015); *Clark v. McDonald's*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003) (class allegations should be stricken "when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23"); *St. Louis Park Chiropractic, P.A. v. Fed. Ins. Co.*, 342 F. App'x 809, 812-13 (3d Cir. 2009) (affirming order striking class allegations).[10]  Courts have stricken or dismissed

---

[10] While absent class members do not all have to establish Article III standing, *see Neale v. Volvo*, 794 F.3d 353 (3d Cir. 2015), this does not preclude striking class

claims when the putative class was defined to include individuals who, from the face of the complaint, experienced no injury. *See, e.g.*, *Green*, 279 F.R.D. at 284-85 (class allegation could not be maintained because plaintiffs agreed that not all putative class members had experienced the defect and the entire class did "not presently have a claim against Defendants"); *cf. McPeak*, 2014 WL 4388562, at *4, 10-11 (considering striking class allegations when putative class members lack injury, but declining to do so when facts show that Plaintiffs may meet Rule 23 after discovery).

As before, Estrada seeks to represent a class of "[a]ll persons who purchased Johnson's Baby Powder in California and [in] states with laws that do not conflict with the laws asserted here." FAC ¶ 78.[11] But the "risk" that Estrada claims exists is very specific—it only applies to adult women who use the product in a particular way and for an extended period of time. *Id.* ¶ 4 ("Women who used talc-based powders to powder their genital area have a 33% increased risk of ovarian

_____

allegations where, as here, "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Clark*, 213 F.R.D. at 205 n.3; *McPeak v. S-L Distribution Co.*, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (class allegations should be stricken "when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23").

[11] Estrada's class definition is also overbroad because it includes members who purchased Johnson's Baby Powder outside of the three-year statute of limitations period provided by the CLRA or the four-year statute of limitations provided by the UCL. *See* Cal. Civ. Code § 1783; Cal. Bus. & Prof. Code § 17208.

cancer[.]").  Estrada's proposed class definition necessarily includes consumers who were never exposed to that alleged risk and thus have no possible claim: men, and women who purchased Johnson's Baby Powder for any use other than directly on their genitals.  There is no possibility that discovery could show that these individuals have a claim.  Indeed, even if Estrada's economic loss claims were proper (they are not), the only purchasers who could assert those claims would be women who bought the product for use in their genital area.  The current class definition is thus extraordinarily overbroad and should be stricken.

These problems with Estrada's class definition cannot be solved by amendment.  Even if Estrada were to limit her class,[12] there is no administratively feasible way to ascertain which consumers might actually qualify as class members.  Proof of purchase would not establish membership because the product has many uses that have nothing to do with the alleged risk.  Instead, the Court would need to determine, on a consumer-by-consumer basis: (1) that the consumer purchased Johnson's Baby Powder (rather than a similar J&J product, such as Johnson's Baby Pure Cornstarch Powder, or another brand of talcum powder); (2) when the product was purchased; (3) the price paid; and (4) the quantity purchased; as well as, for each purchase, (5) that the product was purchased by an

---

[12] *E.g.*, so that the class encompass only those women who purchased Johnson's Baby Powder exclusively for use in their genital area.

adult female or on behalf of an adult female; (6) who used the product on her

genitals; (7) and did not put the product to any other use.  Johnson's Baby Powder

can be purchased over the counter for a few dollars at retail locations throughout

the country—J&J obviously has no record of all purchasers, much less a record

that could identify the purchasers' sex and reasons for purchase.  As many courts

have held, class treatment is not appropriate where class member identification

depends, as would be the case here, on unverifiable memories.  *E.g.*, *Mladenov*,

124 F. Supp. 3d at 368 (striking class allegations at the motion to dismiss stage on

ascertainability grounds, since no records would describe which customers

purchased the relevant grocery product advertised in stores by signs with certain

misleading language); *Carrera v. Bayer Corp.*, 727 F.3d 300, 311 n.9 (3d Cir.

2013) (vacating class certification because there was no ascertainable way to

reliably determine class members who purchased a diet supplement, adding that

"[i]t would appear that the less reliable a class member's memory is, the more

reliable any screening method would have to be");  *St. Louis Park Chiropractic*,

342 F. App'x at 812-13 (affirming order striking class allegations).[13]

---

[13] *See also In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 617–18 (W.D. Wash. 2003) (finding class treatment inappropriate when the class depends on "the vagaries of memory" to prove class membership); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089–90 (N.D. Cal. 2011) (rejecting class of "twenty pack-years" smokers because attesting to the number of cigarettes smoked over decades is categorically different from swearing that "I have been to

## C.   **Plaintiff's Fraud Claims Should Be Dismissed Under Rule 9(b)**

Judge Nunley also correctly held that Estrada's original complaint "fail[ed] to identify any specific statement about safety made by [J&J] that she found material to her decision to purchase the Baby Powder," and thus does not have a cognizable "injury for Article III standing."  Order at 6–7.  The FAC should be dismissed for the same reasons: Estrada still does not identify a single false or misleading statement by J&J that she relied on at the time of her purchases.

Estrada does allege, again, that she "reli[ed] on the label."  FAC ¶ 11.  But as Judge Nunley recognized, the product is not labeled "safe," and Estrada does not contend that any statements on the label are actually false.  Order at 7.  Estrada also cites generic statements on J&J's website—*e.g.*, "[Baby Powder] keeps skin feeling soft, fresh and comfortable.  It's a classic," "[u]se anytime you want skin to feel soft, fresh and comfortable," "safety is our legacy," "[c]linically proven to be safe, gentle and mild," "[y]ou have our commitment that every beauty and baby care product … is safe and effective when used as directed."  FAC ¶¶ 18, 19.  But Estrada does not claim to have personally seen or relied on those statements.  *Id.* ¶¶ 11, 19.  And, in any event, the statements are similar to those that Judge Nunley

---

Paris"); *Hodes v. Van's Int'l Foods*, 2009 U.S. Dist. LEXIS 72193, at *11 (C.D. Cal. July 23, 2009) (denying class certification when plaintiffs were unlikely to be able to prove the product they "purchased, in what quantity, and for what purpose").

already held "lack[ed] sufficient specificity to substantiate an injury."  Order at 7.

And although Estrada sprinkles in vague new allegations about unspecified

"marketing and branding efforts" that "convey the message" that the product is

safe (FAC ¶¶ 18–20), none of those come close to "stat[ing] with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Mattson*, 2009

WL 5216966, at *8-10 (allegations of fraud and negligent misrepresentation must

satisfy the heightened particularity standard under Rule 9(b)); *Neilson v. Union*

*Bank of Cal.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003).

Estrada was required to plead the "who, what, when, where, and how" of the

alleged fraudulent representation or omission—as well as facts demonstrating her

reliance on the alleged "fraud."  *Mattson*, 2009 WL 5216966, at *8; *Kearns*, 567

F.3d at 1124.  But Estrada never specifically identifies the various statements to

which she alludes, she never explains *which* specific statements (if any) that she

personally either saw or heard, *when* or *where* she saw or heard them, or *which*

specific statements (if any) induced her to purchase the product.  *Mattson*, 2009

WL 5216966, at *9 ("Plaintiff fails to identify any specific advertisements she

viewed, how she was misled by these advertisements, how these advertisements

affected her prescription for Plavix and how these advertisements caused any of

her injuries."); *Cohen v. DirecTV*, 178 Cal. App. 4th 966, 978–79 (2010) (plaintiff

must allege he was exposed to specific deceptive representation); *Kearns*, 567 F.3d

at 1126 (applying Rule 9(b) to dismiss UCL claims where plaintiff failed to specify "what the television advertisements or other sales material specifically stated ... when [plaintiff] was exposed to them or which ones he found material ... [and] which sales material he relied upon in making his decision to buy"); *accord Baltazar v. Apple, Inc.*, 2011 WL 588209, at *2 (N.D. Cal. Feb. 10, 2011).

Estrada's allegations still fall far short of demonstrating a cognizable injury, let alone pleading her fraud-based UCL,[14] CLRA, and negligent misrepresentation claims with the specificity required by Rule 9(b). *Mattson*, 2009 WL 5216966, at *9; *see also Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at *4 (D.N.J. Mar. 26, 2012) ("[A] complaint sounding in fraud must do more than assert generalized facts, it must allege facts specific to the plaintiff."); *Maxwell v. Unilever U.S., Inc.*, 2013 WL 1435232, at *4 (N.D. Cal. Apr. 9, 2013) (complaint did not "provide an unambiguous account of the 'time, place, and specific content of the false representations'"); *Kwikset*, 51 Cal. 4th at 326; *Sevidal v. Target Corp.*,

---

[14] Estrada's allegations under the "unlawful" prong of the UCL are also defective because she has not pled (and cannot prove) facts supporting a claim that J&J's conduct was "unlawful." Because Estrada cannot identify a single law that J&J has violated, her claims under the "unlawful" prong fail. *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 837 (2006) (because the court rejected Daugherty's claims under the CLRA, he "cannot state a violation of the UCL under the 'unlawful' prong predicated on a violation of either statute, as there were no violations"); *Hoey v. Sony Elec., Inc.*, 515 F. Supp. 2d 1099, 1105-06 (N.D. Cal. 2007) (UCL claims predicated on other claims that were not adequately pled must be dismissed).

189 Cal. App. 4th 905, 928–29 (2010).[15]  This is the second time Estrada has been

unable to plead sufficient facts to support her claims.  At this point, the Court

should dismiss her fraud-based claims with prejudice.

### D.    Plaintiff's Negligent Misrepresentation and Implied Warranty Claims Fail as a Matter of Law[16]

#### 1.    Negligent Misrepresentation Requires a Positive Assertion

Under California law, to state a claim for negligent misrepresentation,

Estrada must point to a "positive assertion" that she saw and relied upon—

"omissions" are insufficient as a matter of law.  *Lopez v. Nissan N. Am., Inc.*, 201

Cal. App. 4th 572, 596 (2011) (negligent misrepresentation "requires a positive

assertion, not merely an omission"; "carefully worded" report that may have been

misleading, but was not false, could not support a negligent misrepresentation

claim); *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 983–84 (2003);

---

[15] As explained in Section IV.D.1, *infra*, Estrada's negligent misrepresentation claim cannot be premised on an omission or on statements that are merely misleading.  Rather, she must point to an affirmatively false statement.

[16] California substantive law applies to these two state common law claims.  An MDL transferee court applies the substantive state law from the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Marshall Invs. Corp. v. Krones A.G*, 572 F. App'x 149, 152 n.4 (3d Cir. 2014) ("When a case is transferred under 28 U.S.C. § 1407 for consolidated pretrial proceedings, the transferee court must 'apply the same state substantive law … that would have been applied by a state court in the jurisdiction in which a case was filed.'") (citation omitted); *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011) ("[W]hen a civil action is transferred from one district court to another ..., the transferee forum must apply the law of the initial forum.").

*Apollo Capital Fund LLC v. Roth Capital Partners, LL*C, 158 Cal. App. 4th 226, 243 (2007).  But here, Estrada claims only to have seen and relied on the product's label and various generic statements on J&J's website and does not claim any of the statements are actually false.  FAC ¶¶ 11, 19.  Instead, her claims still appear to be based on an "omission"—namely, that J&J should have affirmatively disclosed some type of information about the "risk" Estrada alleges.  *Id.* ¶ 11 ("Defendants knew the Baby Powder was unsafe for Plaintiff to use in the genital area, but did not inform Plaintiff of the safety risk and omitted this safety information from its labelling.").  Her negligent misrepresentation claim therefore fails as a matter of law.  *Apollo Capital*, 158 Cal. App. 4th at 243.

### 2. Breach of Implied Warranty

#### a. Johnson's Baby Powder Is Not "Unmerchantable"

To assert a claim for breach of the implied warranty of merchantability, Estrada must allege facts showing that Johnson's Baby Powder failed to "possess even the most basic degree of fitness for ordinary use" such that it was "unmerchantable" when sold.  *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  In the FAC, Estrada admits that the "intended use" of Johnson's Baby Powder is "as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture," yet she does not allege that the product failed to live up to this intended purpose—*i.e.*, that it did not "eliminate friction on the

skin" or "absorb unwanted excess moisture."  FAC ¶¶ 14, 114.

While Estrada may have chosen to use the product in a particular way that she contends is unsafe, she does **not** claim that Johnson's Baby Powder failed to perform as promised or that the product has no beneficial use—as set out above (*see* n. 4, *supra*), consumers use Johnson's Baby Powder and other talc-based products in a multitude of ways that have nothing to do with the alleged risky behavior identified in Estrada's FAC.  The fact that a risk could be associated with a particular use of a product does not make that product unmerchantable.  *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1297–98 (1995) (rejecting plaintiffs' argument that "the test of merchantability is ... whether [the product] is free of all speculative risks, safety-related or otherwise" and holding that a product is not unmerchantable where "a small percentage" had safety issues but "the vast majority ... did what they were supposed to do for as long as they were supposed to do it.") (internal quotation marks and citation omitted); *see also Birdsong*, 590 F.3d at 958–59; *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 252 (1st Cir. 2010) ("Recovery generally is not available under the warranty of merchantability where the defect that made the product unfit caused no injury to the claimant ....").  Here, Estrada does not claim that she did not get full ordinary use from the product, or that she has any risk of suffering physical injury from the product.  *Birdsong*, 590 F.3d at 959.  And as Judge Nunley recognized, the fact

that Estrada admittedly used Johnson's Baby Powder for over sixty years "suggests that [she] indeed" was satisfied with the product and reaped the benefits of its intended uses.  Order at 7-8.  Since Estrada fails to allege that Johnson's Baby Powder "lacks any minimum level of quality," her implied warranty claim should be dismissed.  *Birdsong*, 590 F.3d at 958.

### b.    Plaintiff Lacks Privity

Estrada's implied warranty claim should also be dismissed because Estrada does not claim to have purchased Johnson's Baby Powder directly from J&J.  As the Ninth Circuit recognized in *Clemens v. DaimlerChrysler Corp.*, under California law a "plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."  534 F.3d 1017, 1023 (9th Cir. 2008); *see also In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 68241, at *31-38 (D.N.J. July 9, 2010) ("[u]nlike courts in some other jurisdictions, California courts have retained the traditional privity requirement" for implied warranty claims).  And while some "federal district court judges erroneously have inferred a third-party [beneficiary] exception to California's privity rule[,] … [n]o reported California decision has held that the purchaser of a consumer product may dodge the privity rule by asserting that he or she is a third-party beneficiary of the distribution agreements linking the manufacturer to the retailer who ultimately made the sale."  *Xavier*, 787 F. Supp. 2d at 1083–84; *see*

*also Long v. Graco Children's Prods. Inc.*, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (following *Clemens* and declining to recognize a third-party beneficiary exception to the privity rule under California law).

### E.      Plaintiff Lacks Standing to Seek Injunctive Relief

Finally, Estrada's request for injunctive relief—including her demand that the Court "enjoin[ ] Defendants from continuing the unlawful practices as set forth herein"—fails because she has not alleged (and could not credibly allege) that she is personally threatened by imminent injury.  *See McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225-26 (3d Cir. 2012) (holding that when "prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct") (citing *City of L.A. v. Lyons*, 461 U.S. 95, 105 (1983)). Estrada is already personally aware of the alleged increased "risk" of ovarian cancer through personal genital use and cannot possibly be deceived by any alleged misstatements or omissions about the risk in the future.  Because she cannot be personally threatened by the conduct she seeks to enjoin, she lacks standing to pursue claims for injunctive relief.  *See McNair*, 672 F.3d at 224-25 (finding plaintiffs lacked Article III standing to seek injunctive relief for allegedly unlawful magazine subscription practices, as they were not current customers and "[u]nless they decide to subscribe again, then, there is no reasonable likelihood that they will be injured by those techniques in the future.  They do not allege that they

intend to subscribe again."); *Smith v. Chrysler Fin. Co.*, 2004 U.S. Dist. LEXIS 28504, at *10 (D.N.J. Dec. 30, 2004) (finding no "real and immediate threat that [plaintiffs] will suffer an injury" from their hypothetical future purchase of a Chrysler financed by the defendant); *In re Gerber Probiotic Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 121192, at *21-23 (D.N.J. Aug. 22, 2013) (dismissing injunctive relief claim when no named plaintiff is likely to suffer future injury). Thus, Estrada's claims for injunctive relief should be stricken and/or dismissed.[17]

## V.   CONCLUSION

As discussed above, Estrada lacks Article III standing and her claims all fail as a matter of law.  Accordingly, J&J requests that the Court dismiss the entire First Amended Complaint with prejudice—or, in the alternative, strike Estrada's request for injunctive relief and her overly broad proposed class definition.

---

[17] Estrada's failure to allege facts sufficient to support her individual claim for injunctive relief likewise dooms her prayer for injunctive relief on behalf of the class. *See Clark*, 213 F.R.D. at 224 (striking class claims when the named plaintiff did not have an individual right to assert that claim); *see also Deitz v. Comcast Corp.*, 2006 WL 3782902, at *4 (N.D. Cal. Dec. 21, 2006) (class averments did not cure the defect in plaintiff's complaint because "[u]nless the named plaintiff is himself entitled to seek injunctive relief, he 'may not represent a class seeking that relief'") (internal citations omitted); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 626 (N.D. Cal. 2011) ("Allegations that a defendant's continuing conduct subjects unnamed class members to the alleged harm is insufficient if the named plaintiffs are themselves unable to demonstrate a likelihood of future injury.").

Dated:  December 22, 2016              Respectfully submitted,
        New York, New York

   *s/ Allen Burton*
Allen Burton
aburton@omm.com
O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

Richard B. Goetz
rgoetz@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Matthew D. Powers
mpowers@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

*Attorneys for Defendants*
*Johnson & Johnson and Johnson &*
*Johnson Consumer Companies Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of DEFENDANTS'

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST

AMENDED COMPLAINT was served via the Court's CM/ECF system on this

22nd day of December, 2016.

By:   *s/ Allen Burton*
      ALLEN BURTON

1