**\*FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————— :
MONA ESTRADA, on behalf of herself :
and all others similarly situated, :
 :
            Plaintiff, :
 :     Civil Action No. 16-7492 (FLW)
    v. :
 :         **OPINION**
JOHNSON & JOHNSON and JOHNSON :
& JOHNSON CONSUMER COMPANIES :
INC., :
 :
            Defendants. :
——————————————————————:

**WOLFSON, United States District Judge:**

In this putative consumer class action, which has been transferred to this Court as part of the *In re Johnson & Johnson* MultiDistrict Litigation ("MDL"), Plaintiff Mona Estrada ("Plaintiff") accuses Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Companies ("J&J Consumer") (collectively, "Defendants") of engaging in unfair and illegal business practices by manufacturing, marketing, and distributing baby powder products without informing consumers that use of baby powder by women in the genital area leads to an increased risk of developing ovarian cancer. Plaintiff asserts various California state law consumer-fraud related claims against Defendants.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint (the "FAC" or "Complaint") for lack of standing and failure to state a claim on which relief can be granted. For the reasons set forth below, the Court grants Defendants' Motion on the basis that Plaintiff lacks standing to bring suit, and therefore, all of Plaintiff's claims

are dismissed.  However, Plaintiff is given leave to amend her Complaint, consistent with this Opinion, within thirty-days (30) from the date of the Order accompanying this decision.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of the instant Motion, the Court will recount only relevant facts from the Complaint, taking them as true.  Plaintiff is a resident of Stockton, California.  FAC ¶ 11. Defendant J&J is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.  *Id.* at ¶ 12.  Defendant J&J Consumer is a New Jersey corporation that operates as a subsidiary to J&J.  *Id.* at ¶ 13.

Defendants research, develop, market, and sell consumer products, including Johnson's® Baby Powder ("Baby Powder"), throughout the United States, including California.  *Id.* at ¶ 13. Baby Powder is comprised almost entirely of talc,[1] with a small amount of fragrance.  *Id.* at ¶ 1. According to Plaintiff, Defendants developed Baby Powder in 1893, and manufacture, distribute, market, and sell Baby Powder "as a daily use powder intended to eliminate friction on the skin and to absorb unwanted excess moisture for both babies and women."  *Id.* at ¶ 14.

Plaintiff's allegations center on Defendants' marketing of Baby Powder to women.  In that regard, Plaintiff alleges that Defendants market Baby Powder to women specifically – encouraging women to dust themselves with Baby Powder to maintain freshness and cleanliness, and to mask odors – despite the fact that the use of Baby Powder by women in the genital area results in an increased risk of developing ovarian cancer.  *Id.* at ¶¶ 1, 15.  Plaintiff avers that Defendants failed to disclose the risks associated with the use of Baby Powder by women, and continued to market the product as safe despite knowledge of those risks.  *Id.* at ¶ 1.  In support

---

[1] Talc is a hydrous magnesium silicate, an inorganic material that is mined from the earth.  FAC ¶ 1.

of her allegations regarding the increased cancer risk associated with Baby Powder, Plaintiff cites numerous clinical studies that have been conducted since 1961. *See id.* at ¶¶ 24-60. Plaintiff alleges that since at least 1982, Defendants have been aware of the studies associating talcum powder with an elevated risk of ovarian cancer. *See id.* at ¶¶ 67-72.

On April 28, 2014, Plaintiff filed her original complaint in this matter in the United States District Court for the Eastern District of California.  ECF No. 1.  On March 27, 2015, the Honorable Troy L. Nunley, U.S.D.J., dismissed Plaintiff's original complaint for lack of Article III standing, finding that Plaintiff failed to allege an injury-in-fact. *Estrada v. Johnson & Johnson*, No. 14-01051, 2015 WL 1440466, at *5 (E.D. Cal. Mar. 27, 2015).  Specifically, Judge Nunley found that Plaintiff failed to allege an "economic injury to meet Article III standing because Plaintiff did not allege specific misrepresentations by Defendants, received the benefit-of-the-bargain, and did not allege any alternative product that she would have purchased." *Id.* at *5.

On April 24, 2015, Plaintiff filed the FAC, asserting four causes of action against Defendants.  ECF No. 27.  Plaintiff brings these claims individually and on behalf of putative classes of consumers who have purchased Baby Powder manufactured and sold by Defendants. FAC ¶ 7.  Count I of the FAC seeks injunctive and equitable relief, on the grounds that Defendants violated the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, by failing to disclose the increased risk of ovarian cancer associated with consumption of Baby Powder on its product labels and packages, and by representing that Baby Powder is clinically proven to be safe, gentle, and mild. *Id.* at ¶ 90.  Count II of the FAC asserts claims pursuant to California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, *et seq.*, alleging that Defendants committed unlawful business

3

practices by making misrepresentations and omitting material facts regarding the safety of Baby Powder. *Id.* at ¶¶ 96-97. Count III of the FAC asserts a related claim for negligent misrepresentation. *Id.* at ¶¶ 107-108. Finally, Count IV of the FAC asserts a claim for breach of the implied warranty of merchantability, alleging that Defendants impliedly warranted Baby Powder to be safe, despite the fact that it is unsafe and not merchantable. *Id.* at ¶¶ 114-117.

The FAC alleges that as a result of Defendants' misrepresentations and omissions, Plaintiff suffered economic injury in the form of the purchase price of Baby Powder. Alternatively, the FAC alleges that had Plaintiff known of the increased cancer risk associated with Baby Powder, she would have purchased an alternative cornstarch-based product rather than Baby Powder. Plaintiff does not allege that she suffered any physical harm as a result of consuming Baby Powder.

On May 18, 2015, Defendants filed a motion to dismiss the FAC in the Eastern District of California. ECF No. 29. That motion was fully briefed before Judge Nunley. ECF No. 29-31. However, on October 5, 2016, the case was transferred to this Court by the Multi-District Litigation Panel as part of the *In re Johnson & Johnson* MDL assigned to me. ECF No. 39. Thereafter, Defendants filed the instant Motion to Dismiss on December 22, 2016. ECF No. 47.

Defendants move to dismiss the FAC on several grounds, including that Plaintiff lacks Article III standing to bring the present action, and fails to state a claim on which relief can be granted. Because the Court finds that Plaintiff lacks Article III standing to bring the present action, it need not reach Defendants' other theories.

## II.   LEGAL STANDARD

Standing under Article III of the United States Constitution is an element of subject matter jurisdiction. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir.

2016).  Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *In re Schering Plough Corp.*, 678 F.3d at 243.

In reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.").  In other words, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief"; it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (quoting *Phillips*, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants"; rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Thus, factual allegations must be more than speculative, but the pleading standard "is not akin to a 'probability requirement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## III.    DISCUSSION

### A.    Article III Standing

Article III of the United States Constitution confines the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. art. III, § 2. This "bedrock requirement," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982), protects the system of separation of powers and respect for the coequal branches by restricting the province of the judiciary to "decid[ing] on the rights of individuals." *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). Indeed, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v.*

*Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)); *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("In order to remain faithful to this tripartite structure, the power of the Federal Judiciary may not be permitted to intrude upon the powers given to the other branches.").

The courts have developed several justiciability doctrines to enforce the "case" or "controversy" requirement. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). Among those doctrines, "[t]he Art[icle] III doctrine that requires a litigant to have 'standing' to invoke the power of a federal court is perhaps the most important . . . ." *Allen v. Wright*, 468 U.S. 737, 750 (1984). The seminal standing question is "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Seldin*, 422 U.S. at 498–99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

To satisfy the "irreducible constitutional minimum" of Article III standing, the plaintiff must establish three well-settled elements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.
>
> Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.
>
> Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations, alterations, and citations omitted); *see Spokeo*, 136 S. Ct. at 1547 ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely

to be redressed by a favorable judicial decision.").   Although the plaintiff bears the burden of establishing each of these three elements, the Third Circuit has stressed that the "injury-in-fact element is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009); *see also Spokeo*, 136 S. Ct. at 1547 ("This case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements.") (quoting *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103 (1998)).   To satisfy the injury-in-fact requirement, the injury must be "particularized," such that it affects the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560 n. 1.   The Supreme Court has emphasized that the injury must also be "concrete in both a qualitative and temporal sense"; *i.e.,* the "complainant must allege an injury to himself that is 'distinct and palpable,' as opposed to merely '[a]bstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (internal quotations and citations omitted).   To that end, allegations of a potential future injury, or the mere possibility of a future injury, will not establish standing.   *See id.* at 158; *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("Allegations of 'possible future injury' are not sufficient to satisfy Article III.").

Additionally, the injury-in-fact test "requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *see In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).   Put differently, "[w]hile it does not matter how many persons have been injured by the challenged action, the party bringing suit must show that the action injures him in a concrete and personal way." *Lujan*, 504 U.S. at 581.   The requirement that that the injury affect the plaintiff in a personal and individual way "preserves the vitality of the adversarial process by assuring both that the parties before the court have an actual, as opposed

8

to professed, stake in the outcome, and that 'the legal questions presented . . . will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" *Id.* (quoting *Valley Forge*, 454 U.S. at 472).

The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen*, 468 U.S. at 752. To that end, at the pleading stage, "[a]lthough general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly*, 664 F.3d at 41 (quoting *Whitmore*, 495 U.S. at 155); *see Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("Plaintiffs do not allege an injury-in-fact when they rely on a 'chain of contingencies' or 'mere speculation.'") (citation omitted).

**B.    Statutory Standing**

In addition to satisfying the federal standing requirements under Article III, Plaintiff must also demonstrate statutory standing under the UCL and the CLRA. The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. The CLRA prohibits unfair and deceptive business practices, including various forms of misrepresentation. *See* Cal. Civ. Code § 1770.

To establish standing to bring a claim under either the UCL or the CLRA, a plaintiff must "meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "To adequately plead a CLRA claim, a plaintiff must allege that she

relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result." *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1075 (N.D. Cal. 2014); *see* Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person . . . ."). Similarly, under the UCL, a plaintiff must demonstrate that she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

Where a UCL claim is premised on the basis of a misrepresentation, a plaintiff "must have actually relied on the misrepresentation, and suffered economic injury as a result of that reliance . . . ." *Doe*, 70 F. Supp. 3d at 1075 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). To demonstrate actual reliance, a plaintiff must allege that "the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct[,] . . . by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326 (citation omitted). "While a plaintiff need not demonstrate that the defendant's misrepresentations were 'the sole or even the predominant or decisive factor influencing his conduct,' the misrepresentations must have 'played a substantial part' in the plaintiff's decisionmaking." *Doe*, 70 F. Supp. 3d at 1076 (quoting *In re Tobacco II Cases*, 46 Cal. 4th at 326).

"Both the UCL and the CLRA prohibit not only affirmative misrepresentations, but also material omissions that deceive reasonable consumers." *Doe*, 70 F. Supp. 3d at 1075 (citing *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 925 (N.D. Cal. 2012)). To bring a claim under either the UCL or the CLRA on the basis of an omission, the "omission must be 'contrary to a

representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Donohue*, 871 F. Supp. 2d at 925 (quoting *Baltazar v. Apple, Inc.*, No. 10-3231, 2011 WL 588209, at *4 (N.D. Cal. Feb. 10, 2011)).  There are four circumstances in which a duty to disclose may arise:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact." *Donohue*, 871 F. Supp. 2d at 925.  Additionally, "[t]o establish the causal nexus between the omission and a plaintiff's harm, a plaintiff must plead that she would not have purchased the product or service at issue if she had known the material fact that Defendant allegedly omitted." *Doe*, 70 F. Supp. 3d at 1076.

In the instant case, Plaintiff contends that Defendants have violated the UCL and CLRA through both affirmative misrepresentations regarding the safety of Baby Powder, and through the omission of material facts concerning the alleged risks associated with that product.  Because Plaintiff's claims under the UCL and CLRA require her to demonstrate that she suffered an economic injury-in-fact, and Plaintiff's sole theory of harm for Article III purposes is economic injury, the Court will analyze standing under Article III and the California statutes concurrently. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009).

### C.     Injury-in-Fact

Economic injury is one of the paradigmatic forms of injury-in-fact. *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005).  The FAC sets forth three potential bases from which this Court could find that Plaintiff suffered an economic injury:  (1) that Plaintiff did not receive the benefit of her bargain in purchasing Baby Powder, and thus, her damages are the

purchase price of that product; (2) that Plaintiff would have purchased an alternative product, had she known of the increased cancer risk associated with the use of Baby Powder; and (3) because Defendants failed to disclose the risks associated with the use of Baby Powder, Baby Powder was marketed and sold at a premium price.  The Court will address those three theories in turn.

### 1.      *Benefit-of-the-Bargain*

Plaintiff alleges that she has suffered an economic injury-in-fact, because she did not receive the benefit of her bargain when she purchased Baby Powder.  Specifically, Plaintiff avers that she purchased Baby Powder under the belief that it was safe, and, had she known that using Baby Powder in the genital area led to an increased risk of developing ovarian cancer, she would not have purchased the product.  FAC ¶ 11.  Thus, Plaintiff's theory of harm is purely economic.[2]  In that connection, Plaintiff maintains that she need not allege the existence of a cheaper alternative product, in the context of her benefit-of-the-bargain theory, to show economic harm; rather, her allegation that she would not have purchased Baby Powder, had Defendants disclosed the risks associated with its use, is sufficient to demonstrate injury-in-fact. In other words, Plaintiff contends that standing exists because she paid money for Baby Powder that, absent Defendants' omissions and misrepresentations regarding the alleged cancer risk associated with Baby Powder, she otherwise would not have paid.

Defendants posit that Plaintiff lacks standing, because Plaintiff received the full benefit of her bargain; that is, Plaintiff was able to use the product as intended – for the elimination of

---

[2] Because Plaintiff did not suffer physical harm from using Baby Powder, and does not allege any sort of medical monitoring claim, she cannot premise standing on a theory of physical injury. To that end, it is well established that "[f]ear and apprehension about a possible future physical or medical consequence . . . is not enough to establish an injury in fact."  *Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 636 (3d Cir. 1996) (Wellford, J., concurring).

friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness – without suffering any adverse consequences.  Stated another way, Defendants argue that because Plaintiff received the benefit of her bargain, she cannot claim that she spent money she otherwise would not have for Baby Powder.

At the outset, with respect to Plaintiff's theory of harm based on Defendants' alleged omissions, Plaintiff has not cited, and the the Court has not been able to locate, a case recognizing injury-in-fact under the benefit-of-the-bargain theory premised on an alleged omission, except in circumstances where the plaintiff has pled that the defendant was under an affirmative obligation to disclose the omitted fact.  *Compare Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (finding no standing where the plaintiff alleged that defendant failed to disclose the presence of lead in the product at issue, where FDA guidelines stated that the level of lead in the product did not require a warning), *and Boysen v. Walgreen Co.*, No. 11-06262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) (finding the plaintiff's allegations that he suffered economic injury as a result of the defendant's failure to disclose the presence of arsenic and lead in its products were insufficient to constitute Article III standing, where the plaintiff did not allege that defendant violated FDA guidelines), *with Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 820 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015) (finding standing where the plaintiff alleged that the defendant violated its state law "duty to label Sue Bee Honey in a way that discloses the removal of pollen to potential consumers.").  Here, Plaintiff has not alleged that Defendants were under any legal obligation to disclose the risks associated with Baby Powder on the product's label or advertisements.[3]  Nor

---

[3] While Plaintiff alleges that Defendants failed to register Baby Powder with the California Department of Public Health ("CDPH"), as required under the California State Cosmetics Act, *see* FAC ¶ 66, Plaintiff fails to allege the connection between that purported violation and

does Plaintiff allege that Defendants are in a fiduciary relationship with Plaintiff.  *See Donohue*, 871 F. Supp. 2d at 925.  Absent any authority to the contrary, Plaintiff cannot assert a benefit-of-the-bargain theory of economic harm based on an omission, where Plaintiff has failed to allege that Defendants are under a legal duty to disclose the omitted fact.

Plaintiff's benefit-of-the-bargain theory of economic harm was also previously rejected by Judge Nunley, albeit without indicating whether that dismissal was due to deficiencies in Plaintiff's allegations of omissions or misrepresentations.  *See Estrada*, 2015 WL 1440466 at *5.  On claims nearly identical to those asserted in this case,[4] Judge Nunley reasoned as follows:

> Furthermore, Plaintiff cannot claim that she paid a premium for the Baby Powder because she received all of the intended benefits of the bargain. Plaintiff used the Baby Powder for decades presumably because Plaintiff enjoyed the benefits of the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness. . . . Her continued purchase of the Baby Powder suggests that Plaintiff indeed received such benefits from the Baby Powder and believed it was worth the price. Thus, Plaintiff received the benefit-of-the-bargain for the Baby Powder. Because she received the benefit-of-the-bargain, Plaintiff's allegation that she paid a premium for the Baby Powder fails. Plaintiff received exactly what she paid for—the elimination of friction on the skin, the absorption of unwanted excess moisture, and the maintenance of freshness. Plaintiff's only complaint against the Baby Powder is the alleged risk of ovarian cancer. Plaintiff received the benefit-of-the-bargain because she received the exact product she intended to purchase, unlike the cases she cites where the consumers received products

---

Defendants' marketing of Baby Powder to consumers.  To that end, Plaintiff does not allege that Defendants were under any affirmative duty, as a result of the California State Cosmetics Act or any other law, to disclose the risks associated with Baby Powder on the product's label or in its marketing.  Nor does Plaintiff allege that she relied on the CDPH registration database in determining whether to purchase Baby Powder.  In light of these shortfalls, the Court cannot conclude, based on the FAC, that Defendants were under any affirmative legal duty to disclose the alleged risks associated with Baby Powder.

[4] The only allegation differentiating the FAC from Plaintiff's original complaint, for standing purposes, is the additional allegation that had Plaintiff known of the increased cancer risk associated with Baby Powder, she would have purchased a cornstarch-based alternative.  To that end, in the original complaint, Plaintiff asserted the same theory of harm that she seeks to rely upon in the FAC:  that she purchased Baby Powder as a result of Defendants' misrepresentations and omissions concerning the alleged cancer risk associated with the product, and is entitled to damages in the form of its purchase price.  Additionally, as discussed below, Plaintiff continues to allege, in the FAC, that she relied on the same misrepresentations as identified in the original complaint.

that were mislabeled or defective. Here, Plaintiff received the exact benefits for which she purchased the Baby Powder. Because Plaintiff received the benefit-of-the-bargain, she cannot claim that she spent money that she would not have otherwise spent by paying a premium or by not purchasing the product.

*Id.* at *4.

The Court finds Judge Nunley's analysis consistent with the law of Third Circuit, as well as with other jurisdictions that have considered similar complaints alleging that a plaintiff did not receive the benefit of his or her bargain, based on both omissions and misrepresentations. For example, in *Koronthaly*, a purchaser of lipstick products filed a class action complaint against the manufacturer for allegedly selling lipstick products that contained lead. 374 F. App'x at 258. While the purchaser did not suffer any physical harm from consuming the products, she attempted to establish standing by alleging that she did not receive the benefit of her bargain. *Id.* at 259. The Third Circuit affirmed the order of the district court granting the manufacturer's motion to dismiss, noting that the "purchases were not made pursuant to a contract, and therefore [the purchaser] could not have been denied the benefit of any bargain." *Id.* More importantly, the Third Circuit held that "[a]bsent any allegation that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect, [the purchaser] has not demonstrated a concrete injury-in-fact." *Id.*

Similarly, in *James v. Johnson & Johnson Consumer Companies, Inc.*, 10-03049, 2011 WL 198026 (D.N.J. Jan. 20, 2011), purchasers of baby shampoo filed an action against the product's manufacturer, alleging that the manufacturer included a toxic ingredient in the shampoo. 2011 WL 198026 at *2. The purchasers did not allege that their children suffered any physical harm after using the shampoo; rather, the purchasers attempted to establish Article III standing by alleging that they suffered economic harm, because they would not have purchased the shampoo had they known of its alleged toxicity. *Id.* The court rejected the purchasers'

theory of standing, holding that the purchasers failed to establish an injury-in-fact.  *Id.*  The court explained that "[o]nce the product had been consumed . . . there was no economic injury for Plaintiffs to complain of, and the fear of future injury is legally insufficient to confer standing. Plaintiffs received the benefit of their bargain so long as there were no adverse health consequences, and the product worked as intended, meaning that the hair of Plaintiff's children was cleansed, and their eyes and skin were not irritated."  *Id.*[5]

Additionally, in *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), the Fifth Circuit held that the purchaser of a prescription painkiller, which had been withdrawn from the market due to a potential increased risk of liver damage associated with its consumption, lacked Article III standing to pursue her class action complaint.  *Id.* at 321.  The Fifth Circuit noted that, as in the present case, the purchaser's theory of harm was economic rather than physical:

> Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back. The plaintiffs do not claim Duract caused them physical or emotional injury, was ineffective as a pain killer, or has any future health consequences to users. Instead, they assert that their loss of cash is an "economic injury."

*Id.* at 319.

In holding that the purchaser failed to demonstrate an injury-in-fact, the *Rivera* court found that she received the benefit of her bargain, because she "paid for an effective pain killer, and she received just that . . . ."  *Id.* at 320.  Additionally, the Fifth Circuit noted that in

---

[5] Similarly, in *Medley v. Johnson & Johnson Consumer Companies, Inc.*, No. 10-02291, 2011 WL 159674 (D.N.J. Jan. 18, 2011), the court held that a class of plaintiffs asserting claims identical to those asserted in *James* lacked standing, where the plaintiffs had consumed the shampoo without adverse health consequences, and the product worked for its intended purpose of cleansing hair.  2011 WL 159674 at *2.

attempting to assert economic harm on a benefit-of-the-bargain theory, the purchaser conflated her tort claims in the context of contract law damages:

> The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege—failure to warn and sale of a defective product—are products liability claims. . . . Yet, the damages they assert—benefit of the bargain, out of pocket expenditures—are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact.

*Id.* at 320–21.[6]

In this case, Plaintiff cannot establish economic injury based on her allegation that she did not receive the benefit of her bargain based upon Defendants' alleged omissions. Plaintiff's claims are similar to those alleged by the consumers in *Koronthaly*, *James*, *Medley*, and *Rivera*: Plaintiff alleges that she consumed Baby Powder; it was effective for its intended uses of eliminating friction, absorbing unwanted excess moisture, and maintaining freshness; she was not physically injured; Defendants failed to list enough warnings about the alleged increased risk of ovarian cancer associated with consumption of Baby Powder; and that Plaintiff would like her

---

[6] In noting that the damages sought by the plaintiff, under the benefit-of-the-bargain theory, constituted contract law damages, the Fifth Circuit echoed the explanation of the Third Circuit in *Koronthaly*; *i.e.*, that a plaintiff must demonstrate the existence of a contract to support a claim that he or she was denied the benefit of the bargain. *See Koronthaly*, 374 F. App'x at 259 ("Furthermore, to the extent that Koronthaly contends that the injury-in-fact was the loss of her 'benefit of the bargain,' she mistakenly relies on contract law. . . . Her lipstick purchases were not made pursuant to a contract, and therefore she could not have been denied the benefit of any bargain.") (internal citation omitted); *see also Bowman v. RAM Med., Inc.*, No. 10-4403, 2012 WL 1964452, at *3 (D.N.J. May 31, 2012) ("Though Plaintiffs cleverly oscillate between contract and tort theories in an attempt to show that a harm amounts to 'injury in fact' as envisioned under the standards for Article III standing, their arguments fall short of concrete proof."). While the Court need not reach the issue of whether benefit-of-the-bargain damages are cognizable on a California consumer fraud claim, based on the fact that Plaintiff was not denied the benefit of her bargain, Plaintiff's failure to allege any contract between herself and Defendants further supports the Court's finding that Plaintiff's benefit-of-the-bargain theory of economic harm is an insufficient basis to find Article III standing in this case.

money back.  Absent an allegation of adverse health consequences from using Baby Powder, or that Baby Powder failed to perform satisfactorily for its intended use, Plaintiff cannot claim that she was denied the benefit of her bargain.  *See Koronthaly*, 374 F. App'x at 259; *James*, 2011 WL 198026 at *2.  In sum, Plaintiff's benefit-of-the-bargain theory of economic harm, based on Defendants' alleged omissions, is an insufficient basis for this Court to find that Plaintiff suffered an injury-in-fact, and, should Plaintiff seek to amend her Complaint to reassert such a theory, she must point to an affirmative legal duty on the part of Defendants to disclose the allegedly omitted facts.

While Plaintiff places reliance on several cases recognizing standing on a benefit-of-the-bargain theory of economic harm, *see Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *In re Mercedes-benz Emissions Litig.*, No. 16-881, 2016 WL 7106020 (D.N.J. Dec. 6, 2016); *Hodges v. Vitamin Shoppe, Inc.*, No. 13-3381, 2014 WL 200270 (D.N.J. Jan. 15, 2014); *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994 (D.N.J. Aug. 23, 2013), those cases are distinguishable from the present matter.  Importantly, in each of those cases, the courts found that the plaintiffs did not receive the benefit of their bargain because either:  (i) the plaintiffs received a defective product; or (ii) the plaintiffs pled facts sufficient for the court to conclude that they would not have purchased the product at issue but for a specific misrepresentation made by the defendants; *i.e.,* that the plaintiff was induced into purchasing the product by a specific misrepresentation.

First, in *Kwikset*, the Supreme Court of California was tasked with determining whether purchasers of locksets labeled as "Made in U.S.A." had statutory standing under California's UCL and False Advertising Law ("FAL").  51 Cal. 4th at 316.  The state statutes at issue required the plaintiffs to demonstrate that they suffered an economic injury-in-fact.  *See id.* at

323.  The court found that the plaintiffs had sustained their burden of demonstrating economic

injury-in-fact, holding that "plaintiffs who can truthfully allege they were deceived by a

product's label into spending money to purchase the product, and would not have purchased it

otherwise, . . . have standing to sue." *Id.* at 317.  The court reasoned as follows:

> For each consumer who relies on the truth and accuracy of a label and is deceived by
> misrepresentations into making a purchase, the economic harm is the same: the consumer
> has purchased a product that he or she paid more for than he or she otherwise might have
> been willing to pay if the product had been labeled accurately. This economic harm—the
> loss of real dollars from a consumer's pocket—is the same whether or not a court might
> objectively view the products as functionally equivalent. A counterfeit Rolex might be
> proven to tell the time as accurately as a genuine Rolex and in other ways be functionally
> equivalent, but we do not doubt the consumer (as well as the company that was deprived
> of a sale) has been economically harmed by the substitution in a manner sufficient to
> create standing to sue. Two wines might to almost any palate taste indistinguishable—but
> to serious oenophiles, the difference between one year and the next, between grapes from
> one valley and another nearby, might be sufficient to carry with it real economic
> differences in how much they would pay. Nonkosher meat might taste and in every
> respect be nutritionally identical to kosher meat, but to an observant Jew who keeps
> kosher, the former would be worthless.
>
> A consumer who relies on a product label and challenges a misrepresentation contained
> therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs
> have here, that he or she would not have bought the product but for the misrepresentation.
> That assertion is sufficient to allege causation—the purchase would not have been made
> but for the misrepresentation. It is also sufficient to allege economic injury. From the
> original purchasing decision we know the consumer valued the product as labeled more
> than the money he or she parted with; from the complaint's allegations we know the
> consumer valued the money he or she parted with more than the product as it actually is;
> and from the combination we know that because of the misrepresentation the consumer
> (allegedly) was made to part with more money than he or she otherwise would have been
> willing to expend, *i.e.*, that the consumer paid more than he or she actually valued the
> product. That increment, the extra money paid, is economic injury and affords the
> consumer standing to sue.

*Id.* at 329–30.

In so holding, however, the *Kwikset* court did not reach the issue of whether an individual

who actually receives the full benefit of his or her bargain has standing to raise a claim.  *See id.*

at 332 ("Whether or not a party who actually received the benefit of his or her bargain may lack

standing, in this case, under the allegations of the complaint, plaintiffs did not."). Rather, the court explained that the plaintiffs had set forth allegations sufficient to conclude that they purchased the locksets "because they were 'Made in U.S.A.'; they would not have purchased them otherwise; and, it may be inferred, they value what they actually received less than either the money they parted with or working locksets that actually were made in the United States." *Id*. In other words, the court found that the plaintiffs did not receive the benefit of their bargain because they purchased lockets that the defendant had represented were manufactured in the United States, but were not. *Id.*[7]

Second, in *In re Mercedes-benz Emissions Litig.*, a class of consumers alleged that the defendants misled them into "purchasing certain 'BlueTec Clean Diesel' vehicles . . . by misrepresenting the environmental impact of these vehicles during on-road driving." 2016 WL 7106020 at *1. The consumers attempted to establish standing on a benefit-of-the-bargain theory, arguing that "they would not have purchased their BlueTEC vehicles or would have paid less had they known about [the defendants'] misrepresentations and omissions." *Id.* at *4. In finding that the consumers had pled an injury-in-fact sufficient to withstand a motion to dismiss, the court emphasized that the consumers' complaint identified "precise representations" made by the defendants, which the consumers relied on in purchasing their vehicles. *Id.* Indeed, the court listed the following misrepresentations alleged in the consumers' complaint:

> "Mercedes vigorously markets its BlueTEC vehicles as 'the world's cleanest and most advanced diesel' with 'ultra-low emissions, high fuel economy and responsive performance' that emits 'up to 30% lower greenhouse-gas emissions than gasoline' and that Mercedes 'also represents that its BlueTEC vehicles 'convert[ ] the nitrogen oxide emissions into harmless nitrogen and oxygen' and 'reduces the nitrogen oxide in the exhaust gases by up to 90%.'"

---

[7] In so holding, the California Supreme Court thus endorsed the benefit-of-the-bargain theory of economic harm, in the context of CLRA claims, where a plaintiff can allege that he or she was induced into purchasing a product by a specific misrepresentation.

"Mercedes promotes its Clean Diesel vehicles as 'Earth Friendly: With BlueTEC, cleaner emissions are now an equally appealing benefit.'"

"Mercedes' advertisements, promotional campaigns, and public statements represented that the Affected Vehicles had high fuel economy, low emissions, reduced NOx by 90%, had lower emissions than comparable diesel vehicles, and had lower emissions than other comparable vehicles."

*Id.* at *5. The court found that, taking those allegations as true on a motion to dismiss, the consumers had "plausibly pled that the products received did not live up to the claims made by Defendants," and thus, that they suffered an injury-in-fact. *Id.* at *4.

Third, in *Hodges*, a consumer alleged that the defendant mislabeled and falsely advertised a dietary supplement "as a bodybuilding, fitness training and endurance developing formula," when, "contrary to statements made by [the defendant] about the Product's efficacy, the Product cannot deliver the promised results because the Product's ingredients are ineffective and/or because the instructed dosage is insufficient to achieve the results." 2014 WL 200270 at *1. Although the consumer did not suffer physical harm, the court held that he had satisfied the injury-in-fact requirement by alleging that he was induced into purchasing the product after reading and relying on the defendant's misrepresentations, and as a result "bought merchandise that was 'useless.'" *Id.* at *2.

Finally, in *In re Gerber Probiotic Sales Practices Litig.*, a class of consumers asserted that the defendant engaged in deceptive, false, and misleading marketing and labeling of its products, because, "despite representations to the contrary, the Products (1) do not provide immune system benefits; and (2) are not are not near equal to breast milk." 2013 WL 4517994 at *1. The consumers' complaint identified specific representations made by the defendant in the labeling, packaging, and advertisement of the products, which the consumers alleged were "likely to mislead consumers, acting reasonably under the circumstances, into believing that the

Products are superior to other products because they are the near-equivalent of breast milk and that they provide immune system benefits." *Id.* at \*2. In arguing that the consumers did not suffer an injury-in-fact, the defendant sought to rely on "a number of consumer protection cases where the products at issue contained potentially dangerous substances, but the plaintiffs suffered no ill effects." *Id.* at \*5. The court rejected that argument and held that the consumers suffered an injury-in-fact. *Id.* Specifically, the court found that, unlike in the consumer protection cases cited by the defendant, the consumers sufficiently alleged an injury-in-fact by claiming "that they paid a premium for the Products at issue based on false, deceptive, and misleading representations." *Id.*

Unlike the consumers in *Kwikset*, *In re Mercedes-benz Emissions Litig.*, *Hodges*, and *In re Gerber Probiotic Sales Practices Litig.*, Plaintiff fails to allege facts sufficient for this Court to find that Plaintiff suffered an economic injury-in-fact. Not only does Plaintiff fail to allege that Baby Powder was ineffective for its intended use; to the contrary, she continued purchasing Baby Powder for a substantial period, and consumed the product in its entirety each time. Moreover, as discussed below, Plaintiff has not sufficiently alleged that she was induced into purchasing Baby Powder based on specific misrepresentations made by Defendants on the product's label or advertisements, or on Defendants' website.

In the FAC, Plaintiff alleges that she was deceived into believing that Baby Powder was "safe," based on the following representations that were allegedly made by Defendants on the product's label:

- The current Baby Powder label, which states that "Johnson's® Baby Powder is designed to gently absorb excess moisture helping skin feel comfortable. Our incredibly soft, hypoallergenic, dermatologist and allergy-tested formula glides over skin to leave it feeling delicately soft and dry while providing soothing relief." FAC ¶ 4.

- The recommendation on the label to "[u]se anytime you want skin to feel soft, fresh and comfortable. For baby, use after every bath and diaper change," which Plaintiff argues conveys "the message that the Baby Powder is appropriate for use by all consumers, including women.'' FAC ¶ 7.

With regard to the alleged misrepresentations on the Baby Powder label, the FAC alleges that "[p]rior to making her purchase, Plaintiff read the label for Baby Powder," and that, "[i]n reliance on the label," Plaintiff believed that Baby Powder was safe.  FAC ¶ 11.  However, the label does not expressly state that the product is "safe," and, unlike the cases cited above, Plaintiff has not alleged that but for those generalized representations, she would not have purchased Baby Powder.  Indeed, as Judge Nunley recognized, "[t]hese statements lack sufficient specificity to substantiate an injury."  *Estrada*, 2015 WL 1440466 at *4.  The FAC fares no better.  Plaintiff does not sufficiently allege that she was induced into purchasing Baby Powder by the statements on the product's label.

The FAC alleges further that Defendants deceived Plaintiff into believing that Baby Powder was safe based on the following misrepresentations in their advertisements and on their website:

- Statements on a website maintained by Defendants that "safety is our legacy" and "[y]ou have our commitment that every beauty and baby care product from the Johnson & Johnson Family of Consumer Companies is safe and effective when used as directed." FAC ¶ 7.
- A "Five-Level Safety Assurance Process" marketed by Defendants, which states that "for decades, ours has been one of the most thorough and rigorous product testing processes in our industry – to ensure safety and quality of every single product we make." FAC ¶ 7.
- Defendants' "Promise to Parents and their Babies," stating that "[w]hen you bring our baby care products into your home, you can be assured of our commitment to the safety of your family and families around the world." FAC ¶ 7.
- The statement on Defendants' website for Baby Powder, stating that the product is "[c]linically proven to be safe, gentle and mild."  FAC ¶ 7.

To the extent Plaintiff's misrepresentation claims arise from Defendants' advertising and website, the Court finds that Plaintiff has not sufficiently alleged that she relied on those

statements in purchasing Baby Powder.  *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846–47

(N.D. Cal. 2012) (finding that although "[o]verpaying for goods or purchasing goods a person

otherwise would not have purchased based upon alleged misrepresentations by the manufacturer

would satisfy the injury in fact requirement," there was no injury-in-fact where the plaintiff

"fail[ed] to allege specifically which statements she found material to her decision to purchase an

Apple Device or App.").  With respect to those alleged misrepresentations, the FAC alleges only

that "[r]elying on these statements and Defendants' marketing and branding efforts, consumers,

including Plaintiff, reasonably believe Defendants are a company that can be trusted to provide

safe products, and that their Baby Powder is in fact safe."  FAC ¶ 19.  However, Plaintiff has not

pled any facts demonstrating that she read or was aware of those statements prior to purchasing

Baby Powder, or that she would not have purchased Baby Powder but for the alleged

misrepresentations.  *See Branca v. Nordstrom, Inc.*, No. 14-2062, 2015 WL 1841231, at *4 (S.D.

Cal. Mar. 20, 2015) (finding the plaintiff failed to allege standing based on statements on the

defendant's website, where the plaintiff did "not allege that he observed-or was even aware of-

Nordstrom Rack's website. Thus, Plaintiff alleges no facts to demonstrate, or even suggest, that

he had would not have purchased the items absent the representations on the website.").  Indeed,

Plaintiff alleges that she purchased Baby Powder for general use from "about 1950 to sometime

in 2013," FAC ¶ 3; a substantial number of these years predate any of the Internet advertisements

on which she allegedly relied.

      In short, the Court cannot find that Plaintiff has adequately alleged that she specifically

relied upon Defendants' representations in purchasing Baby Powder, and was subsequently

denied the benefit of that bargain upon learning that Baby Powder allegedly causes an increased

risk of ovarian cancer.  Rather, Plaintiff received a product that was effective for its intended

uses, and Plaintiff has not alleged sufficiently that she was induced into purchasing that product by deceptive conduct. Accordingly, Plaintiff's benefit-of-the-bargain theory of economic harm, based on Defendants' alleged omissions and misrepresentations, is an insufficient basis for this Court to conclude that Plaintiff suffered an injury-in-fact.

### 2. Alternative Product

Next, Plaintiff alleges that had she been properly warned by Defendants, she would have purchased an alternative cornstarch-based powder, that does not have the same increased cancer risk as talc-based powders. Defendants argue that although consumers who can allege that they would have purchased a cheaper alternative product are generally able to establish economic harm, here, Plaintiff fails to allege that a cornstarch-based product would have been *cheaper* than Baby Powder.

Courts have found that a legally cognizable Article III injury-in-fact exists where a consumer alleges that, absent the defendant's misrepresentations or omissions, the consumer would have purchased a cheaper alternative product.[8] *See Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 580-81 (6th Cir. 2013); *In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. 05-01699, 2007 WL 2028408, at *7 (N.D. Cal. July 10, 2007); *see also Musgrave v. ICC/Marie Callender's Gourmet Prod. Div.*, No. 14-02006, 2015 WL 510919, at *7 (N.D. Cal. Feb. 5, 2015) (finding standing where the plaintiff alleged that "had he known that the products were not 'all natural,' he would have purchased other 'all natural' brands or, if such alternatives were not available, would have purchased *less expensive* non-natural food products.") (emphasis added); *Victor v. R.C. Bigelow, Inc.*, No. 13-02976, 2014 WL 1028881, at

---

[8] Indeed, Defendants acknowledge that "under some circumstances, customers who can allege that they would have purchased a cheaper alternative product may be able to allege an economic loss." Defs.' Mot. to Dismiss 20.

*1, 4 (N.D. Cal. Mar. 14, 2014) (finding standing where plaintiff alleged, *inter alia*, that

"'cheaper alternatives' [were] available."); *Khasin v. Hershey Co*., No. 12-01862, 2012 WL

5471153, at *6 (N.D. Cal. Nov. 9, 2012) (holding that the plaintiff alleged facts sufficient to find

Article III standing, where plaintiff alleged "that he had *cheaper product alternatives* for

purchase at his disposal," and would not have purchased the products at issue but for the

defendant's omissions, which violated labeling standards) (emphasis added); *James*, 2011 WL

198026 at *2 n. 2 ("It should be noted that Plaintiffs have not alleged economic injury on a

theory that they paid a premium price for this brand of shampoo based on Johnson & Johnson's

misrepresentation of their product as being safe and non-toxic for children, more so than

comparable but less expensive alternatives."); *In re Vioxx Consol. Class Action*, No. 4247, 2006

Cal. App. Unpub. LEXIS 11771, at *14-16 (App. Div. Jul. 18, 2006) ("[P]laintiffs allege they

lost the purchase price of Vioxx, or at least the difference between the purchase price and the

price of a traditional NSAID [cheaper alternative], as a result of defendant's deceptive practices.

This sufficiently states an injury under the CLRA, UCL and FAL.").

For example, in *Loreto*, the plaintiffs brought a consumer-fraud action against the

defendant for including allegedly misleading statements about the health benefits of Vitamin C

in their multi-symptom flu and cold relief products.  *See* 515 F. App'x at 576-77.  The plaintiffs

alleged that but for the defendant's false or misleading statements regarding the benefits of

Vitamin C, they "would have purchased a lower-priced competing product instead."  *Id.* at 578.

The district court found that the plaintiffs had failed to demonstrate an ascertainable loss under

New Jersey's Consumer Fraud Act, because the plaintiffs did not allege that the product failed to

effectively treat their colds; *i.e.*, "plaintiffs received precisely what they paid for—an effective

cold remedy." *Id.* at 580.

On appeal, the Sixth Circuit reversed, finding that the plaintiffs had demonstrated an ascertainable loss, and thus could demonstrate an injury-in-fact for Article III purposes,[9] by alleging "that they suffered an out-of-pocket loss when they purchased DayQuil or NyQuil Plus Vitamin C instead of a lower-priced competing cold medicine that did not contain the vitamin." *Id.* at 580. The Sixth Circuit found that the plaintiffs' measure of damages was "the difference in price between Procter & Gamble's product and a lower-priced competing product." *Id.* In so holding, the Sixth Circuit rejected the defendant's attempt to rely on *Rivera* and *Medley* for the proposition that the plaintiffs could not demonstrate an injury-in-fact, distinguishing those cases on the grounds that: (1) the plaintiffs in *Rivera* failed to allege that that "they would have purchased a lower-priced alternative but for the failure to warn," *id.* at 581; and (2) the parents in *Medley* "never alleged an economic injury from paying a premium for the product." *Id.*

Similarly, in *In re Bextra*, the plaintiffs alleged that the defendants marketed their prescription pain relief medication by intentionally misrepresenting its effectiveness and safety over other less expensive drugs. 2007 WL 2028408 at *1. The defendants moved to dismiss, arguing that the plaintiffs had failed to demonstrate an injury-in-fact. *Id.* at *5. In holding that the plaintiffs had demonstrated that they sustained an injury-in-fact, based on their allegation that they would have purchased a cheaper alternative product but for the defendants' misleading advertisements, the court noted that the cheaper alternative product allegation distinguished that case from those cases holding that a plaintiff who receives the benefit of his or her bargain cannot claim economic damage:

---

[9] Specifically, in rejecting the defendant's argument that the plaintiffs did not suffer an injury-in-fact, the Sixth Circuit found that "Plaintiffs' allegation that they suffered a monetary loss by paying more for a cold remedy because of the company's misrepresentation establishes a cognizable injury." *Loreto*, 515 F. App'x at 581.

> Defendants' theory, and the theory articulated in many of the cases they cite, is that the plaintiffs cannot state a claim because they were willing to pay a certain amount for an effective pain reliever that caused fewer gastrointestinal symptoms, and since they did not suffer from any such symptoms, plaintiffs received exactly what they paid for. *The distinction here, however, is the additional allegation that but for the misrepresentation that Celebrex is better than the cheaper drugs on the market, plaintiffs could have received the same benefit at a lower price*. None of the cases cited by defendants include such an allegation. Plaintiffs have sufficiently alleged causation for their state consumer protection law claims.

*Id.* at *7 (emphasis added).

Unlike the plaintiffs in *Loreto* and *In re Bextra*, here, the FAC does not allege that a *cheaper* alternative product was available, and that Plaintiff's damages are the difference in price between Baby Powder and that alternative product. In that regard, while the FAC does allege that Plaintiff would have purchased an alternative cornstarch-based product, had Plaintiff known of the alleged increased risk of ovarian cancer, the FAC does not allege that the cornstarch-based product would have been *cheaper* than Baby Powder. Indeed, in her Opposition to Defendants' Motion to Dismiss, Plaintiff notes specifically that she "does not premise her injury on allegations that the alternative cornstarch product was cheaper." Pl.'s Opp. to Defs.' Mot. to Dismiss 17. Accordingly, since Plaintiff does not allege that an alternative cornstarch-based product would have been cheaper than Baby Powder, and indeed, disavows that theory, I cannot find that Plaintiff has suffered an economic injury-in-fact on her alternative product theory of harm.

### 3.    *Premium Price*

Finally, the FAC alleges that as a result of Defendants' misrepresentations and omissions, Defendants "have been able to sell the product for more than they otherwise would have had they properly informed consumers about the safety risks." FAC ¶¶ 6, 77. Plaintiff's argument essentially falls into the "price premium" line of cases. In price premium cases, a plaintiff

alleges that the defendant's misrepresentations or omissions caused that plaintiff to overpay for a product. *See In re Clorox Consumer Litig.*, No. 12-00280, 2013 WL 3967334, at *4 (N.D. Cal. July 31, 2013) (finding that the plaintiff adequately alleged an injury-in-fact, where the plaintiff alleged that he would not have purchased the defendant's product over competitors' products, but for the defendant's advertisements that its product was superior); *Manchouck v. Mondelēz Int'l Inc.*, No. 13-02148, 2013 WL 5400285, at *1-2 (N.D. Cal. Sept. 26, 2013), *aff'd sub nom. Manchouck v. Mondelez Int'l, Inc.*, 603 F. App'x 632 (9th Cir. 2015) (finding injury-in-fact where the plaintiff alleged that she would not have paid a premium price for the defendant's products, but for the defendant's misrepresentations that those products were "made with real fruit.").

For example, in *In re Clorox Consumer Litig.*, a putative class of plaintiffs brought an action against the manufacturer of Fresh Step cat litter, alleging that but for the manufacturer's advertisements regarding the alleged superiority of Fresh Step cat litter over competing products, they would not have paid a premium for that product. 2013 WL 3967334 at *1. Specifically, the plaintiffs pointed to the manufacturer's advertisements, which represented that "Fresh Step is the only cat litter that uses carbon, and that Fresh Step is better at eliminating cat waste odors than other brands of cat litter that use baking soda." *Id.* To support their argument that the manufacturer charged a premium for its carbon-based cat litter, the plaintiffs alleged that the manufacturer sold its carbon-based cat litter at a higher price than a competing brand's non-carbon-based litter. *See id.* The manufacturer moved for judgment on the pleadings, arguing that the plaintiffs lacked Article III standing. *See id.* at *2. The court found that the plaintiffs had sufficiently pled an injury

by alleging that they paid a premium for the carbon-based cat litter as a result of the manufacturer's advertisements. *See id.* at *4.[10]

Here, by contrast, Plaintiff's threadbare allegation that she purchased Baby Powder at a premium, without any factual allegations to support that claim, is insufficient to find an injury-in-fact. *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1280 (C.D. Cal. 2016) ("It is true that both overpayment and diminution in value are theoretically cognizable injuries-in-fact. . . . But, a plaintiff must still plead facts sufficient to establish these injuries-in-fact.") (internal citation omitted).  Plaintiff has not alleged that she would not have paid a premium for Baby Powder, but for Defendants' advertisements of that product as superior to competing products. Indeed, Plaintiff does not allege that Defendants advertised Baby Powder as superior to other products.  Nor does the FAC set forth any comparable, cheaper products to demonstrate that Baby Powder was in fact sold at a premium price.  Accordingly, Plaintiff has not sufficiently alleged that she purchased Baby Powder at a premium.

---

[10] In so holding, the court distinguished the case from *Rivera*, reasoning as follows:

> Clorox's cases are inapposite. Unlike the instant action, the advertisements in the cited cases did not compare the defendants' products to their competitors'. Accordingly, none of Clorox's authority addresses the question presented here: does paying a premium for a product as a result of claims of product superiority constitute an injury in fact when the purportedly inferior product is cheaper and more effective? To the extent that the cited cases discuss economic injuries, they are distinguishable. For example, in *Rivera,* the court rejected the plaintiff's assertion that she had not received the benefit of her bargain, since, by her own admission, she had paid for and received an effective pain killer. 283 F.3d 320. In contrast, here, Plaintiffs allege that they paid a premium for an inferior product as a result of Clorox's misleading advertising.

*In re Clorox Consumer Litig.*, 2013 WL 3967334 at *4.

## IV.   <u>CONCLUSION</u>

In sum, while the Court is cognizant that "[i]njury-in-fact is not Mount Everest," *Danvers Motor Co.*, 432 F.3d at 294, the Count cannot find, based on the allegations in the FAC, that Plaintiff has suffered an injury-in-fact.  Because Plaintiff does not have standing to bring the present action, the the FAC must be dismissed for lack of subject matter jurisdiction.  *See Ballentine*, 486 F.3d at 810.  Moreover, it is well-settled that, absent subject matter jurisdiction, the Court is without authority to address the parties' remaining merit-based arguments.  *Adams v. Ford Motor Co.*, 653 F.3d 299, 304 (3d Cir. 2010).  For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's lack of standing to bring suit.  Plaintiff is given leave to amend her Complaint, consistent with this decision, within thirty-days (30) from the date of the Order accompanying this Opinion.  Specifically, to the extent that Plaintiff seeks to amend her benefit-of-the-bargain theory on the basis of an omission, Plaintiff must allege that Defendants had an affirmative legal obligation to disclose the omitted fact.  In addition, to the extent Plaintiff seeks to amend her benefit-of-the-bargain theory on the basis of the alleged misrepresentations appearing in Defendants' advertisements or on their website, Plaintiff must allege that she actually relied on those misrepresentations in purchasing Baby Powder.[11]

---

[11] Should Plaintiff choose to amend, Plaintiff must bear in mind the Court's advisement regarding the sufficiency of her misrepresentation allegations.  Additionally, while the Court need not reach, for the purposes of this Opinion, the issue of whether Plaintiff's consumer-fraud based claims satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), should Plaintiff choose to amend, any allegations of misrepresentation will need to be pled with particularity in accordance with Rule 9(b).  *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see, e.g.*, *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015) (finding that plaintiffs did not satisfy Rule 9(b) where the plaintiffs failed to identify which specific misrepresentations they were exposed to and relied on); *In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, No. 14-3722, 2015 WL 4591236, at *31 n. 46 (D.N.J. July 29, 2015) (dismissing consumer-fraud claims for failure to satisfy Rule 9(b)'s heightened

Plaintiff will not be given leave to amend her alternative product theory, however, in light of her concession that a cornstarch-based alternative would not have been cheaper than Baby Powder. Should Plaintiff seek to assert a price premium claim, that claim must be pled with sufficient factual support.

Dated: July 14, 2017                              /s/ Freda L. Wolfson_____
                                                  Hon. Freda L. Wolfson
                                                  United States District Judge

---

pleading standard, where the plaintiffs failed to allege "that they saw or relied upon a specific misrepresentation by Caterpillar.").